# EXHIBIT A-44

CHRISTINA TAYLOR, on her own
behalf and as Parent and Natural
Guardian of I.H., a Minor

        Plaintiff,

   v.

MEAD JOHNSON & COMPANY, LLC,
et al.,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

MARCH TERM, 2022
No. 2606

*Filed and Attested by the
Office of Judicial Records
28 SEP 2023 02:58 pm
G. IMPERATO*

## <u>ORDER</u>

    **AND NOW,** this ____ day of _____ 2023, upon consideration of the

Preliminary Objections of Defendants Mead Johnson & Company, LLC and Mead

Johnson Nutrition Company (collectively, "Mead Johnson" or "Moving Defendants") to

Plaintiffs' Amended Complaint, and any Response thereto, it is hereby **ORDERED** that

the Preliminary Objections are **SUSTAINED**.  It is further **ORDERED** that all claims

against Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition

Company are hereby **DISMISSED** with prejudice.

             **BY THE COURT:**

                            J.

| | |
|---|---|
| **CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor** | : **COURT OF COMMON PLEAS**<br>: **PHILADELPHIA COUNTY**<br>:<br>: **MARCH TERM, 2022** |
| Plaintiff, | : **No. 2606** |
| v. | :<br>: |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** | :<br>:<br>: |
| Defendants. | :<br>: |

## <u>ORDER</u>

**AND NOW**, this ___ day of _____, 2023, upon consideration of the Preliminary Objections of Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, "Mead Johnson" or "Moving Defendants") to Plaintiffs' Amended Complaint, and any Response thereto, it is hereby **ORDERED** that the Preliminary Objections are **SUSTAINED**. It is further **ORDERED** that:

1. Count I of Plaintiffs' Amended Complaint is **DISMISSED** with prejudice;

2. Count II of Plaintiffs' Amended Complaint is **DISMISSED** with prejudice;

3. Count III of Plaintiffs' Amended Complaint is **DISMISSED** with prejudice;

4. Count IV of Plaintiffs' Amended Complaint is **DISMISSED** with prejudice;

5. Count V of Plaintiffs' Amended Complaint is **DISMISSED** with prejudice;

6. Plaintiffs' Amended Complaint is **STRICKEN** for lack of specificity;

7. Plaintiffs' claims for punitive damages as to Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company are **DISMISSED** with prejudice, along with all allegations of oppressive, reckless, malicious and/or fraudulent conduct;

8. Plaintiff Christina Taylor's claims in her own right are **DISMISSED** with prejudice; and

Case ID: 220302606<br>Control No.: 23096740

9.    Plaintiffs' Amended Complaint is **STRICKEN** for lack of an appropriate

verification.

**BY THE COURT:**

_____

                                                        J.

3

**NOTICE TO PLEAD:**

**To Plaintiff:** You are hereby notified to file a written response to the enclosed Preliminary Objections within twenty (20) days from service hereof or a judgement may be entered against you.

**/s/ Kenneth A. Murphy__**
**Attorney for Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company**

**ATTORNEYS FOR DEFENDANTS MEAD JOHNSON & COMPANY, LLC, AND MEAD JOHNSON NUTRITION COMPANY**

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 875-0609
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

**WELSH & RECKER, P.C.**
Catherine M. Recker, Esquire
Amy B. Carver, Esquire
Richard D. Walk, III, Esquire
306 Walnut Street
Philadelphia, PA  19106
215-972-6430
cmrecker@welshrecker.com
abcarver@welshrecker.com
rwalk@welshrecker.com

| | |
|---|---|
| **CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor** : | **COURT OF COMMON PLEAS** **PHILADELPHIA COUNTY** |
| : | |
| Plaintiff, : | **MARCH TERM, 2022** |
| v. : | **No. 2606** |
| : | |
| **MEAD JOHNSON & COMPANY, LLC, et al.**, : | |
| : | |
| Defendants. : | |

4

Case ID: 220302606
Control No.: 23096740

**PRELIMINARY OBJECTIONS OF DEFENDANTS MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY TO PLAINTIFFS' AMENDED COMPLAINT**

Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (hereinafter "Moving Defendants" or "Mead Johnson") hereby preliminarily object to Plaintiffs' Amended Complaint, and, in support thereof, aver as follows:

**I.    INTRODUCTION**

1.      The case before the Court involves speculative and unsupported allegations by Plaintiffs that the minor Plaintiff, I.H., developed a condition known as necrotizing enterocolitis ("NEC") following her alleged ingestion of "Similac and/or Enfamil cow's milk-based products" manufactured and sold by Moving Defendants and/or defendant Abbott Laboratories ("Abbott"). Plaintiffs fail to identify the particular product that I.H. purportedly ingested, and the entirety of Plaintiffs' claims rest on their unsubstantiated conclusion that the product or products consumed by I.H. are unreasonably dangerous. Plaintiffs acknowledge that premature infants such as I.H. have an inherent high risk of developing NEC. The Complaint is otherwise devoid of factual support for Plaintiffs' claim that Mead Johnson's product caused I.H. to develop NEC.  Plaintiffs allege only that I.H. was born on a certain date; *may* have been provided one of Defendants' pre-term infant feeding products; and, at some point, developed NEC.  But, Plaintiffs have failed to identify which Mead Johnson product the infant received, if any; what else the infant was fed; when I.H. ingested the product; when I.H. was diagnosed with NEC; what treatment was provided for that condition; or what short- or long term- injury I.H., now almost 13 years old, allegedly sustained. Plaintiffs nowhere allege how cow's milk, or cow's milk-based products (of which Mead

5

Case ID: 220302606
Control No.: 23096740

Johnson sells multiple varieties for different purposes), purportedly *cause* NEC, or how the facts of I.H.'s case square with any mechanism of action. Pennsylvania's procedural rules do not allow for such gaps in logic and omissions of material facts in a complaint. Accordingly, Plaintiffs' Complaint should be dismissed.

2. Plaintiffs instituted this action via the filing of a Complaint on March 24, 2022, against Moving Defendants as well as Co-Defendant Abbott, The Pennsylvania Hospital of the University of Pennsylvania and The Trustees of the University of Pennsylvania ("HUP").

3. Moving Defendants filed Preliminary Objections to Plaintiffs' Complaint arguing, among other points, that Plaintiffs failed to adequately allege information about the products Plaintiff-minor allegedly ingested, the basis for their belief that those products are unreasonably dangerous, and the injuries they allegedly sustained. At the Court's urging, Plaintiffs amended their Complaint on September 8, 2023. *See* Plaintiffs' Amended Complaint, attached as Exhibit "A." None of these issues were addressed in the amended pleading.

4. Plaintiffs have filed 21 Amended Complaints, all essentially identical, against Moving Defendants, Abbott, HUP, and other hospitals in Philadelphia based on claims relating to alleged ingestion of cow's milk-based products by premature infants following their birth.

5. As suggested by the Court at the July 24, 2023 Scheduling Conference, Mead Johnson intended to file these preliminary objections in the *Abdullah* case and explain that the arguments advanced are applicable in each of the actions in which plaintiffs have filed amended complaints. Because plaintiffs have opted not to amend

Case ID: 220302606
Control No.: 23096740

their complaint in *Abdullah*, Mead Johnson has filed these preliminary objections in the instant action and advances them in each of the additional 20 actions where plaintiffs have filed an Amended Complaint: *Carter*, No. 220302588; *Goodmond 1*, No. 220400208; *Goodmond 2*, No. 220400212; *Henderson*, No. 220400127; *Kajuffa*, No. 220302978; *Mays*, No. 220302963; *McMillian*, No. 220400140; *Moment*, No. 220400142; *Parker*, No. 220302983; *Ross*, No. 220302981; *Sanders*, No. 220400153; *Short*, No. 220400159; *Stills*, No. 220302617; *Thomas*, No. 220400158; *Walker-Savage*, No. 220400156; *Watson*, No. 220302967; *Wieger 1*, No, 220302614; *Wieger 2*, No. 220302601; *Wiggins*, No. 220302986; *Williams*, No. 220400141.

6.      Plaintiffs allege that "upon information and belief" the Plaintiff-minors, including I.H., developed NEC, a gastrointestinal disorder that occurs in premature infants, caused by either Moving Defendants' products "and/or" the products of co-defendant Abbott. *See* Plaintiffs' Amended Complaint, attached as Exhibit "A" at ¶ 1, 13.

7.      In addition to asserting product liability claims against Moving Defendants and Abbott, as the infant formula manufacturers, Plaintiffs have brought claims against The Pennsylvania Hospital of the University of Pennsylvania and The Trustees of the University of Pennsylvania alleging liability on theories of failure to warn and corporate liability.

8.      The factual background regarding the Plaintiff-minor's birth, diagnosis and injuries are limited to four (4) paragraphs in the Amended Complaint.

9.      Plaintiffs aver that I.H. was born prematurely October 9, 2010 and that "[u]pon information and belief I.H. was fed Similac and/or Enfamil cow's milk-based products by staff at Pennsylvania Hospital from shortly after her birth." *Id.*, ¶¶ 11-12.

Case ID: 220302606
Control No.: 23096740

10. Plaintiffs further allege that "upon information and belief" I.H. developed NEC shortly after first ingesting the Defendant manufacturers' products. *Id.*, ¶ 13.

11. Plaintiffs generally allege that I.H. "was forced to undergo surgery and has continued to suffer long term health effects," with no specific description of those alleged injuries or long-term health effects. *Id.*, ¶ 14.

12. Since filing their original complaint, Plaintiffs have added to the factual background about their own circumstances only information about I.H.'s gestational age and birthweight  Their amendments do not include product identification or additional information about their injuries.

13. Moving Defendants Preliminarily Object to Plaintiffs' Amended Complaint for the reasons stated below and as more fully set forth in the accompanying Memorandum of Law, which is incorporated herein by reference.

## II. ARGUMENT

### A. DEMURRER FOR FAILURE TO STATE A CLAIM AS TO COUNTS I, II, III, IV, & V

14. To survive preliminary objections, Plaintiffs must aver sufficient facts, together with the documents and exhibits attached thereto, to make out a *prima facie* case as to all elements of the cause of action. *Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 35 (Pa. Super. 2015).  They have failed to do so with respect to all counts against the Moving Defendants on the issue of whether cow's milk-based products are unreasonably dangerous.

15. The threshold inquiry in all products liability cases is whether there is a defect which rendered the product unreasonably dangerous." *Weiner v. American Honda Motor Co., Inc.,* 718 A.2d 305, 307 (Pa. Super. 1998). "A product is defective

Case ID: 220302606
Control No.: 23096740

when it is not safe for its intended use, i.e., the product left the supplier's control lacking any element necessary to make it safe for its intended use." *Id.* at 308. Whether a product is "unreasonably dangerous" is a question of law. *Id.*

16.     Plaintiffs allege in Counts I and II of the Amended Complaint that Moving Defendants, "as the manufacturers and/or sellers of the products at issue in this litigation," owed Plaintiffs and the public a duty to manufacture, sell, and distribute their products in a manner that was not unreasonably dangerous and to warn of unreasonable risk of harm posed by their products.

17.     Plaintiffs similarly allege in Count III (Negligence) that Moving Defendants, owed Plaintiffs and the public a duty to exercise reasonable care to design, test, manufacture, inspect, and distribute products that were free of unreasonable risk of harm, and in in Count IV (Intentional Misrepresentation) and Count V (Negligent Misrepresentation) that they owed Plaintiffs and the public a duty to provide truthful, accurate, and fulsome information about their cow's milk-based products.

18.     Each count brought against Moving Defendants therefore rests on Plaintiffs' theory that cow's milk-based products are unreasonably dangerous, and for strict liability purposes in Counts I & II, defective.

19.     In fact, the Moving Defendants' cow's milk-based products are regulated by FDA and legally marketed for use in pre-term infants.  Moreover, in Plaintiffs' own Complaint they acknowledge that "[p]reterm and low-birth-weight infants are *especially susceptible* to NEC." *See* Exhibit "A" at ¶ 16 (emphasis added).

20.     In support of their theories and claims, Plaintiffs offer only vague references to unidentified "[e]xtensive scientific research, including numerous

Case ID: 220302606
Control No.: 23096740

randomized controlled trials" that purportedly prove Moving Defendants' cow's milk-based products cause NEC in preterm and low-birth-weight infants. Plaintiffs neither cite specifically to any randomized trial or consensus statement, nor do they offer an explanation of the purported method of action by which cow's milk-based formula products allegedly cause NEC.

21.    In their original complaint, Plaintiffs did specifically cite five studies comparing cow's milk-based products to breast milk, a Surgeon General report on the subject, and a statement by the American Academy of Pediatrics. Those studies, the report and the statement purportedly reference higher rates of NEC in preterm and low birth weight infants fed cow's milk-based diets than those fed breast milk. They do not establish or prove causation. At most, they suggest that breast milk may be protective against the risk of NEC. Having abandoned reliance on these scientific authorities, Plaintiffs' Amended Complaint is even more deficient in establishing that Defendants' cow's milk-based products are unreasonably dangerous within the meaning of § 402(A) of the Restatement (Second) of Torts.

22.    Given that Plaintiffs have offered nothing but the bald assertion that there is "extensive scientific research" that Moving Defendants' products cause NEC, Plaintiffs have failed to adequately allege that the products are unreasonably dangerous. Accordingly they have failed to state claims for defective design and failure-to-warn. Counts I through V should be stricken.

**B.    DEMURRER FOR FAILURE TO STATE A CLAIM AS TO COUNTS IV & V**

23.    Plaintiffs' claims for intentional and negligent misrepresentation (Counts IV and V) fail because Plaintiffs fail to plead their allegations with particularity as required

10

Case ID: 220302606
Control No.: 23096740

by Pa. R. Civ. P. 1019(b). Specifically, Plaintiffs do not allege that they received and relied upon any particular false representation from Moving Defendants. *See Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (setting forth the elements of intentional and negligent misrepresentation and noting that both require a false representation upon which the plaintiff ultimately relied).

24.     Intentional misrepresentation requires: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Bortz*, 729 A.2d at 560 (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

25.     Negligent misrepresentation similarly requires a false representation and reliance, "though the speaker need not know his or her words are untrue." *Id.* at 561.

26.     To adequately plead a claim for fraud, Pennsylvania law requires that "(1) the pleadings must adequately explain the nature of the claim to the opposing party so as to permit the preparation of a defense, and (2) they must be sufficient to convince the court that the averments are not merely subterfuge." *Pezzano v. Mosesso*, 2014 WL 5421587, at *5 (Pa. Commw. Oct. 24, 2014) (quoting *Martin v. Lancaster Battery Co., Inc.*, 606 A.2d 444, 448 (Pa. 1992)). Plaintiffs' complaint fails on the first prong.

27.     Plaintiffs do not allege any specific representation upon which they relied. Nor do Plaintiffs identify the allegedly defective Mead Johnson product that I.H. received. Ex. A, Am. Compl. ¶ 46 (alleging that Mead Johnson "markets and sells *multiple products* specifically targeting premature infants). Instead, the complaint is

11

Case ID: 220302606
Control No.: 23096740

devoid of any allegation that I.H. received *any* Mead Johnson product at all. *See*; ¶ 90 (alleging that "Abbott ***and/or*** Mead Johnson's products were fed") (emphasis added). Plaintiffs cannot claim reliance on an alleged misrepresentation when there is no identified product to misrepresent. *Kepner v. Tine*, No. 835 EDA 2015, 2015 Pa. Super. Unpub. LEXIS 4257, at *6 (Pa. Super. Nov. 25, 2015) (affirming dismissal of a fraudulent misrepresentation claim for failure to plead a particular misrepresentation). And, crucially, the Moving Defendants are left wondering which, if any, product they should defend and what alleged "misrepresentations" to contest. *Pezzano*, 2014 WL 5421587, at *5.

28.     Pennsylvania law demands more. *See* Pa. R. Civ. P. 1019(b).  Other courts around the country have dismissed similar misrepresentation claims for lack of specificity.  *E.g.*, Ex. B, *In re Mead Johnson Product Cases*, CJC-23-005257, at 6–8 (Cal. Sup. Ct. July 7, 2023); *Casino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (Cal. Ct. App. 2014) ("[W]hen a plaintiff asserts fraud against a corporation, the plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.") (internal quotation marks omitted); *Peterson v. Clark Lake Homes Inc.*, 2022 WL 16910578, at *4 (Minn. Ct. App. (Nov. 14, 2022) (requiring identification of the "who, what, when, where, and how" for a claim of fraud).

29.     Moreover, failure to allege any relationship between a specific misrepresentation (which they do not identify), a specific product (which they do not identify), and an injury means there can be no inference of proximate causation. *See Kepner*, No. 835 EDA 2015, 2015 Pa. Super. Unpub. LEXIS 4257, at *6 (requiring a

Case ID: 220302606
Control No.: 23096740

particular misrepresentation); *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 969 (Pa. Super. Ct. 1985) (affirming dismissal of negligence claim where plaintiff failed to properly identify the product or its manufacturer). Causation is a hallmark of any tort action in Pennsylvania, including misrepresentation. *Bortz*, 729 A.2d at 560 (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)). *See also Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 524 (W.D. Pa. 2003) ("Proof of causation is a necessary element in a products liability action. Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence, strict product liability, or misrepresentation") (applying Pennsylvania law) (citing *O'Brien v. Sofamar, S.N.C.*, No. CIV. A. 96–8015, 1999 WL 239414 (E.D. Pa.1999)). Absent identification of the manufacturer of the allegedly defective product, "there can be no allegations of . . . legal causation, and hence there can be no liability." *Cummins*, 495 A.2d at 968–69 (citing *Hamil v. Bashline*, 392 A.2d 1280 (Pa. 1978)).

30.     Thus, Plaintiffs' intentional and negligent misrepresentation claims against Moving Defendants must be dismissed.

**C.     MOTION TO STRIKE PLAINTIFFS' COMPLAINT FOR INSUFFICIENT SPECIFICITY AS TO THE FACTS AND ALLEGED INJURIES**

31.     Pursuant to Pa.R.C.P. 1028(a)(3), a party may file preliminary objections in the nature of a motion to strike for insufficient specificity in a pleading. Plaintiffs' failure to specify the nature of the products ingested and injuries sustained serves as an alternative ground on which all of their claims should be stricken.

32.     A plaintiff's Complaint is required to provide a defendant with notice of what the plaintiff's claims are and the grounds upon which they rest, and the Complaint

13

Case ID: 220302606
Control No.: 23096740

must also formulate the issues by summarizing the facts essential to support the claims.

*Alpha Tau Omega Fraternity v. The University of Pennsylvania*, 464 A.2d 1349, 1352

(Pa. Super. 1983) (citations omitted).

33. Pennsylvania Rule of Civil Procedure 1019(a) provides that "the material

facts on which a cause of action or defense is based shall be stated in a concise and

summary form." Pa.R.C.P. 1019(a). As the Superior Court has noted,

> Rule 1019(a) requires fact pleading. The purpose of 1019(a) is to require the pleader to disclose the material facts sufficient to enable the adverse party to prepare his case. **A complaint therefore must do more than give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. It should formulate the issues by fully summarizing the material facts. Material facts are ultimate facts, i.e., those facts essential to support the claim. Evidence from which such facts may be inferred not only need not but should not be alleged. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense.**

*Baker v. Rangos*, 324 A,2d 498, 505-506 (Pa. Super. 1974) (citations and

internal quotations omitted) (emphasis added).

34. Further, it is well established that, with regard to the description of injuries

sustained by a plaintiff, the Complaint must be stated with sufficient particularity to put

the defendant on notice of evidence that may be produced at trial. *Kelly v. Martino*, 99

A.2d 901 (Pa. 1953). **A plaintiff's Complaint must set forth the extent, nature,**

**location and duration of the injuries suffered, and injuries that are permanent**

**should be stated specifically.** *Miller v. Perrige*, 71 Pa. D. & C.2d 476, 479–80 (Pa.

Com. Pl. 1975). *See, also, Kopan v. Hawk*, 14 Pa. D. & C.2d 713, 714 (Pa. Com. Pl.

14

Case ID: 220302606
Control No.: 23096740

1958) ("A catchall averment of "other injuries" is nothing more than a generalized averment under which any injuries whatever could be proved at the trial. Defendant would have no knowledge in advance of the trial of what they are.").

35.    As noted above, Plaintiffs' Complaint is facially deficient with regard to the specificity of the allegations of the relevant facts and injuries at issue in this case, each of which are uniquely within her competence:

- Plaintiffs' allegation that "upon information and belief," the minor was fed Similac and/or Enfamil shortly after her birth (Exhibit "A," ¶at ¶ 12) does not comply with the fact-pleading requirements of Rule 1019(a), since such allegations do not provide Moving Defendants with appropriate notice of the facts as to whether the minor actually ingested cow's milk-based products;

- Plaintiffs have failed to identify which of the numerous products sold by Abbott and Mead Johnson under the Similac and Enfamil brand names were ingested by the minor. *Id*. at ¶¶ 45-46;

- Plaintiffs do not describe the period of time in which such products were ingested, when the minor was allegedly diagnosed with NEC, or what treatment was provided for that condition;

- Plaintiffs do not specify the nature of the injuries and "long-term health effects" that are alleged to have resulted from the diagnosis of NEC.

36.    Furthermore, Plaintiffs' damages claim is not stated with particularity and is amorphous, vague, and open-ended. Pursuant to Pennsylvania pleading

Case ID: 220302606
Control No.: 23096740

requirements, Moving Defendants should not be compelled to defend a claim for which the statement of injury is unspecified and subject to change.

37.     These omissions are fatal defects in Plaintiff's Amended Complaint. Therefore, Plaintiffs' Amended Complaint should be stricken in its entirety.

**D.     <u>MOTION TO STRIKE PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES</u>**

38.     In the *Ad Damnum* clauses of Counts I, II, III, IV, and V of the Amended Complaint, Plaintiffs make baseless accusations that Moving Defendants engaged in oppressive, reckless, malicious and/or fraudulent conduct that allegedly justify an award of punitive damages. *See* Exhibit "A," pp. 26, 29, 32, 35, and 38.

39.     Punitive damages can be awarded only for conduct involving some element of outrage. *Hutchinson v. Luddy*, 582 Pa. 114, 870 A.2d 766 (2005). For that reason, Pennsylvania Supreme Court decisions establish that "punitive damages are an 'extreme remedy' available in only the most exceptional matters." *Wagner v. Onofrey*, 2006 Pa. Dist. & Cnty. Dec. LEXIS 333, *11 (Pa. Com. Pl. 2006) (citing *Phillips v. Cricket Lighters*, 584 Pa. 179, 188, 883 A.2d 439, 445 (2005)). Punitive damages may not be awarded for misconduct that constitutes ordinary negligence such as inadvertence, mistake and errors of judgment. *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985); *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 437 (Pa. Super. 1987).

40.     Where the facts as averred show nothing more than negligence, a lapse in judgment, or mere inadvertence, courts in Pennsylvania have dismissed pleas and claims for punitive damages, often at the pleadings stage of litigation and even if the complaint alleged severe injuries or death. *See, e.g., Brownawell v. Bryan*, 40 Pa. D. & C.3d 604, 606 (Pa. Com. Pl. 1985) (dismissing punitive damages claim where a plaintiff

16

Case ID: 220302606
Control No.: 23096740

alleged that a physician negligently performed a spinal fusion surgery that left the plaintiff with severe neurological defects, and noting that "**the mere pleading of outrageous conduct** does not, of course, satisfy the requirement stating facts which, if proven, would form a basis for a jury concluding that the conduct was such that an award of punitive damages was warranted.") (emphasis added); *Wagner*, *supra* at \*11 (contentions that physician failed to prescribe antibiotics, order certain tests or request an infectious disease consult constituted "nothing more than ordinary negligence and are insufficient to support an award of punitive damages.")

41.    Here, the Amended Complaint contains no specific allegations of conduct that would permit recovery of punitive damages as to Moving Defendants. Read most generously, Plaintiffs' Complaint alleges that Moving Defendants failed to warn co-defendant HUP of a risk of NEC associated with its legally-marketed cow's milk-based product– a risk about which Plaintiff alleges that HUP was already aware. *See* Am. Compl. ¶¶ 72-76. And with respect to I.H.'s care, Plaintiffs merely allege that "upon information and belief" I.H. may have been given a product sold by Moving Defendants absent any context to indicate that such a product was inappropriate based on the specific issues involved in I.H.'s medical care and condition following birth.

42.    For example, the Amended Complaint gives no indication of whether Plaintiff-parent refused or was unable to provide breast milk and provides no information as to discussions between her and any health care providers regarding the purported use of cow's milk-based products.

43.    Plaintiffs' allegations of oppressive, malicious and similar conduct must be rejected as mere boilerplate. Indeed, the fact that Plaintiffs have filed numerous

Case ID: 220302606
Control No.: 23096740

lawsuits against at least four other hospitals in Philadelphia based on identical claims belies the contention that Moving Defendants engaged in outrageous or malicious conduct in allegedly selling a cow's milk-based product that was used to feed the Plaintiff-minor.

44.     The facts underlying Plaintiffs' bare assertions of oppressive, reckless, malicious and fraudulent conduct do not even remotely meet the requisite standard under Pennsylvania law that would permit an award of punitive damages. Absent specific factual allegations to justify the claim that Moving Defendants' actions as they pertain to Plaintiffs' particular facts and circumstances were extreme and outrageous, there is no basis for an award of punitive damages in this case, and Plaintiffs' claims for such must be stricken from the Complaint pursuant to Rule 1028(a)(3).

E.     **MOTION TO STRIKE PLAINTIFF-PARENT'S CLAIMS**

45.     The Court should strike Plaintiff-parent's claims to recover damages in her own right and as the parent and natural guardian of I.H.

46.     In each count of the complaint, Plaintiff-parent alleges that she "suffered significant emotional distress, loss of income, and/or other harms" and that "[h]er life has been significantly affected by the Injured Infant's injuries." See Ex. A, ¶¶ 91, 99, 108, 117, and 127.

47.     This is insufficient.  Plaintiff-Parent fails to meet the pleading requirements of Pa.R.C.P. 1020(b), which provides as follows:

> If persons join as plaintiffs under Rules 2228, 2229(a) or (e), the complaint shall state the cause of action, any special damage, and the demand for relief of each plaintiff in a separate count, preceded by a heading naming the parties to the causes of action therein set forth.

Case ID: 220302606
Control No.: 23096740

48. Plaintiff-parent plainly does not allege any claim in separate counts or state any cause of action. Rather, the claims are incorporated in a single, tagalong paragraphs at the end of the existing counts.

49. Additionally, Plaintiff-parent does not complain of any physical injury. It is well established that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009) (citing *Adams v. Copper Beach Townhome Comtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. 2003)); *Miller v. Evenflo Co., Inc.*, 2009 WL 10689606, at *4 (W.D. Pa. Dec. 21, 2009) (dismissing plaintiff-parents' tort claims where only physical injury was to minor plaintiff). So too for claims sounding in strict products liability. *Schmidt v. Boardman Co.*, 11 A.3d 924, 953 (Pa. 2011) ("We would hold that, for purposes of a strict products liability claim, a plaintiff's recovery for emotional distress is limited to that which is proximately caused by contemporaneous physical impact").

### F. MOTION TO STRIKE PLAINTIFFS' COMPLAINT FOR FAILURE TO COMPLY WITH Pa.R.C.P. 1024

50. Finally, Pennsylvania Rule of Civil Procedure 1024(a) requires verification of every pleading containing a factual averment based upon the signer's personal knowledge or information and belief.

51. Rule 1024(c) requires that the verification be made by one or more of the parties filing the pleading.

52. In this case, Plaintiffs' counsel signed the verification for the original Complaint, in violation of Rule 1024. The operative Amended Complaint is bereft of <u>any</u> verification. *See* Exhibit "A."

19

Case ID: 220302606
Control No.: 23096740

53. Accordingly, the Amended Complaint should be stricken for lack of an appropriate verification.

WHEREFORE, Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company respectfully request that this Honorable Court sustain the instant Preliminary Objections and enter the attached proposed Order.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: September 28, 2023

/s/ Kenneth A. Murphy
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire

**WELSH & RECKER, P.C.**

/s/ Catherine M. Recker
Catherine M. Recker, Esquire
Amy B. Carver, Esquire
Richard D. Walk, III, Esquire

**Attorneys for Defendants,**
**Mead Johnson & Company, LLC and**
**Mead Johnson Nutrition Company**

20

Case ID: 220302606
Control No.: 23096740

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

**WELSH & RECKER, P.C.**
Catherine M. Recker, Esquire
Amy B. Carver, Esquire
Richard D. Walk, III, Esquire
306 Walnut Street
Philadelphia, PA 19106
215-972-6430
cmrecker@welshrecker.com
abcarver@welshrecker.com
rwalk@welshrecker.com

**ATTORNEYS FOR DEFENDANTS
MEAD JOHNSON & COMPANY, LLC,
AND MEAD JOHNSON NUTRITION
COMPANY**

| | |
|---|---|
| **CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor** : | **COURT OF COMMON PLEAS PHILADELPHIA COUNTY** |
| : | |
| : | |
| : | **MARCH TERM, 2022** |
| Plaintiff, : | **No. 2606** |
| v. : | |
| : | |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** : | |
| : | |
| Defendants. : | |

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY OBJECTIONS OF DEFENDANTS MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY TO PLAINTIFFS' AMENDED COMPLAINT**

**I.     MATTER BEFORE THE COURT**

Preliminary Objections of Defendants Mead Johnson & Company, LLC and Mead

Johnson Nutrition Company (collectively, "Mead Johnson" or "Moving Defendants") to

Plaintiffs' Amended Complaint.

1

Case ID: 220302606
Control No.: 23096740

The case before the Court involves speculative and unsupported allegations by Plaintiffs that the minor Plaintiff, I.H., developed a condition known as necrotizing enterocolitis ("NEC") following her alleged ingestion of "Similac and/or Enfamil cow's milk-based products" manufactured and sold by Moving Defendants and/or defendant Abbott Laboratories ("Abbott"). Plaintiffs fail to identify the particular product that I.H. purportedly ingested, and the entirety of Plaintiffs' claims rest on their unsubstantiated conclusion that the product or products consumed by I.H. are unreasonably dangerous. Plaintiffs acknowledge that premature infants such as I.H. have an inherent high risk of developing NEC. The Complaint is otherwise devoid of factual support for Plaintiffs' claim that Mead Johnson's product caused I.H. to develop NEC. Plaintiffs allege only that I.H. was born on a certain date; *may* have been provided one of Defendants' pre-term infant feeding products; and, at some point, developed NEC. But, Plaintiffs have failed to identify which Mead Johnson product the infant received, if any; what else the infant was fed; when I.H. ingested the product; when I.H. was diagnosed with NEC; what treatment was provided for that condition; or what short- or long term- injury I.H., now almost 13 years old, allegedly sustained. Plaintiffs nowhere allege how cow's milk, or cow's milk-based products (of which Mead Johnson sells multiple varieties for different purposes), purportedly *cause* NEC, or how the facts of I.H.'s case square with any mechanism of action. Pennsylvania's procedural rules do not allow for such gaps in logic and omissions of material facts in a complaint. Accordingly, Plaintiffs' Complaint should be dismissed.

Case ID: 220302606
Control No.: 23096740

## II.    STATEMENT OF QUESTIONS PRESENTED

1.    Whether this Honorable Court should dismiss Count I of Plaintiffs' Complaint "Strict Liability for Design Defect" cause of action with prejudice because Plaintiffs' Amended Complaint does not support the claim that cow's milk-based products are unreasonably dangerous, and Moving Defendants cannot be held liable for a defective design?

*Suggested Answer in the affirmative.*

2.    Whether this Honorable Court should dismiss Count II of Plaintiffs' Amended Complaint "Strict Liability for Failure to Warn" cause of action with prejudice because Plaintiffs' Complaint does not support the claim that cow's milk-based products are unreasonably dangerous, and Moving Defendants cannot be held liable for failure-to-warn?

*Suggested Answer in the affirmative.*

3.    Whether this Honorable Court should dismiss Count III of Plaintiffs' Amended Complaint "Negligence" cause of action with prejudice on the basis of absence of proof of an unreasonably dangerous product?

*Suggested Answer in the affirmative.*

4.    Whether this Honorable Court should dismiss Count IV of Plaintiffs' Amended Complaint "Intentional Misrepresentation" cause of action with prejudice on the basis of absence of proof of an unreasonably dangerous product, and failure to plead any specific representation allegedly relied upon by Plaintiffs?

*Suggested Answer in the affirmative.*

3

Case ID: 220302606
Control No.: 23096740

5.     Whether this Honorable Court should dismiss Count V of Plaintiffs'
Amended Complaint "Negligent Misrepresentation" cause of action with prejudice on the
basis of absence of proof of an unreasonably dangerous product, and failure to plead
any specific representation allegedly relied upon by Plaintiffs?

*Suggested Answer in the affirmative.*

6.     Whether this Honorable Court should strike Plaintiffs' Amended Complaint
in its entirety for insufficient specificity of the facts and alleged injuries?

*Suggested Answer in the affirmative.*

7.     Whether this Honorable Court should strike Plaintiffs' claims for punitive
damages as to Moving Defendants because the Amended Complaint fails to plead facts
providing a basis for an award of punitive damages?

*Suggested Answer in the affirmative.*

8.     Whether this Honorable Court should strike Plaintiffs' Amended Complaint
for failure to provide a client verification as required by Pa.R.C.P. 1024?

*Suggested Answer in the affirmative.*

## III.     <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

In approximately March, 2022, Plaintiffs filed nearly 30 essentially identical
lawsuits against Moving Defendants and Abbott in Philadelphia based on claims relating
to alleged ingestion of cow's milk-based products by premature infants in the hospital
following their birth.[1]  On September 8, 2023, Plaintiffs voluntarily amended 21 of their

---

[1]     In addition to asserting product liability claims against Moving Defendants and Co-Defendant, Abbott,
Plaintiffs have alleged that the Pennsylvania Hospital of the University of Pennsylvania and the Trustees of the
University of Pennsylvania ("HUP") are liable based on claims of failure to warn and corporate liability.  Lawsuits
involving identical claims have been filed against Pennsylvania Hospital, Temple University Hospital, Albert Einstein
Medical Center and Thomas Jefferson University Hospital.

Case ID: 220302606
Control No.: 23096740

Complaints. Plaintiffs allege that the Plaintiff-minors, including I.H., developed NEC, a gastrointestinal disorder that occurs in premature infants, caused by either Moving Defendants' products "and/or" the products of co-defendant Abbott. *See* Plaintiffs' Amended Complaint, attached as Exhibit "A" at ¶ 1, 13. Many of the allegations of the Complaint are pleaded "upon information and belief," including the allegations that Plaintiff-minors actually received infant formula or fortifier, and that they developed NEC shortly after being fed with infant formula or fortifier. As discussed in detail below, Plaintiffs' claims against Moving Defendants are legally and factually deficient.

Moving Defendants manufacture and sell products, including those under the brand name "Enfamil," to help meet the nutritional needs of infants. *Id.* ¶ 4. Some of their products are designed to be fed to premature or low-birth-weight infants who have special nutritional needs at birth. *Id.* ¶ 46. These products include formulas, which are given to infants who are not fed breast milk, and fortifiers, which are used to supplement pumped breast milk with additional nutrients. *See id.* ¶ 50 (photo of Enfamil Human Milk Fortifier: "For premature and low-birth-weight infants fed breast milk"). Some Enfamil products, particularly those intended to be fed to premature or low-birth-weight infants, are intended to be used only under the supervision of a physician. *See id.* (photo of Enfamil Human Milk Fortifier: "To be used only under the supervision of a physician"). Co-defendant Abbott also sells formulas and fortifiers meant to be fed to premature or low-birth-weight infants under the brand name "Similac." *Id.* at ¶¶ 45, 50. Plaintiffs aver that Abbott sells at least seven types of products directed to preterm and/or low birth weight infants, six of which use the name Similac, and that Mead

Case ID: 220302606
Control No.: 23096740

Johnson sells eight types of infant formulas and fortifiers using the Enfamil brand name. Id., ¶¶ 45-46.

Infant formulas and fortifiers for pre-term and low-birth-weight infants are regulated by the FDA. Mead Johnson is required to submit information about its pre-term products, including their ingredients, to the FDA, 21 C.F.R. § 107.50(b)(3), and the FDA is required to review that submission. The FDA may also impose changes to such a product's composition or labeling. Id. § 107(d)(1).

The formula and fortifier products identified by Plaintiffs as being manufactured by Moving Defendants are made using ingredients derived from cow's milk. *Id.* ¶ 12. Although Plaintiffs aver that NEC is caused by cow's milk-based products, Plaintiffs make passing reference in their Complaint to research studies and reports that, at best, suggest only that NEC is more common in premature and low birth weight infants fed with cow's milk-based products as compared with similar infants fed with breast milk.

Moreover, Plaintiffs' Complaint provides scant information regarding I.H.'s own circumstances. Plaintiffs aver that I.H. was born prematurely on October 9, 2010 and that "[u]pon information and belief I.H. was fed Similac and/or Enfamil cow's milk-based products by staff at Pennsylvania Hospital shortly after her birth." *Id.* at ¶ 12. Plaintiffs further allege that "upon information and belief" I.H. developed NEC shortly after first ingesting the Moving Defendants and Co-Defendant Abbott's products. *Id.*, ¶ 13. Plaintiffs provide no details regarding her condition following birth other than that she developed NEC on an unidentified date. Further, Plaintiffs allege no facts as to whether Plaintiff-parent provided breast milk to I.H., whether she had the opportunity to use donor milk, and if I.H. actually received a cow's milk product, what it was, how much,

6

Case ID: 220302606
Control No.: 23096740

and for how long.  Finally, the Amended Complaint is silent as to the nature and extent of I.H.'s alleged injuries other than a vague reference to "surgery" and "long term health effects." *Id.* ¶ 14.

Further, the Amended Complaint does not provide any details whatsoever regarding communications between Plaintiff-parent and medical providers at HUP regarding the allegations that I.H. may have been fed with Mead Johnson and/or Abbott cow's milk-based products in the hospital. Plaintiffs conceded in the Complaint that mothers are encouraged by their healthcare professionals to breastfeed. *Id.* ¶ 49. However, Plaintiffs do not provide any information regarding discussions between Plaintiff-parent and any health care providers at HUP related to breastfeeding and/or using cow's milk-based products in this case. As noted, Plaintiffs plead that Plaintiff-minor ingested formula "on information and belief" only, and similarly plead "on information and belief" that Plaintiff-minor developed NEC as a result.

Each of these deficits was identified in Moving Defendants' Preliminary Objections to Plaintiffs' originally filed Complaint.  None has been remedied in this Amended Complaint.

## IV.  ARGUMENT

### A.  DEMURRER FOR FAILURE TO STATE A CLAIM AS TO COUNTS I, II, III, IV & V

Pursuant to Pa.R.C.P. 1028(a)(4), a party may file preliminary objections to a complaint, in the nature of a demurrer, for legal insufficiency in a pleading. A court should grant a demurrer where, accepting as true all well pled facts, a legal cause of action cannot be maintained upon those facts. Pa.R.C.P. 1028(a)(4); *See also, Willet v. Pennsylvania Med. Catastrophe Loss Funds,* 702 A.2d 850, 853 (Pa. 1997). In this

7

Case ID: 220302606
Control No.: 23096740

case, Counts I, II, III, IV, and V of Plaintiffs' Amended Complaint should be stricken pursuant to this Rule, as Plaintiffs have failed to plead with sufficient detail to survive the pleading stage that Moving Defendants' cow's milk-based products were unreasonably dangerous. Moreover, because Plaintiffs have failed to cure this deficiency even after amending their complaint, the strike should be with prejudice.

To survive preliminary objections, Plaintiffs must aver sufficient facts, together with the documents and exhibits attached thereto, to make out a *prima facie* case as to all elements of the cause of action. *Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 35 (Pa. Super. 2015). "The threshold inquiry in all products liability cases is whether there is a defect which rendered the product unreasonably dangerous." *Weiner v. American Honda Motor Co., Inc.,* 718 A.2d 305, 307 (Pa. Super. 1998). "A product is defective when it is not safe for its intended use, i.e., the product left the supplier's control lacking any element necessary to make it safe for its intended use." *Id.* at 308. Whether a product is "unreasonably dangerous" is a question of law. *Id.*

Plaintiffs allege in Counts I and II of the Amended Complaint that Moving Defendants, "as the manufacturers and/or sellers of the products at issue in this litigation," owed Plaintiffs and the public a duty to manufacture, sell, and distribute their products in a manner that was not unreasonably dangerous and to warn of unreasonable risk of harm posed by their products. Plaintiffs similarly allege in Count III (Negligence) that Moving Defendants, owed Plaintiffs and the public a duty to exercise reasonable care to design, test, manufacture, inspect, and distribute products that were free of unreasonable risk of harm, and in in Count IV (Intentional Misrepresentation) and Count V (Negligent Misrepresentation) that they owed Plaintiffs and the public a duty to

8

Case ID: 220302606
Control No.: 23096740

provide truthful, accurate, and fulsome information about their cow's milk-based products. Each count brought against Moving Defendants therefore rests on Plaintiffs' theory that cow's milk-based products are unreasonably dangerous, and for strict liability purposes in Counts I & II, defective.

In fact, the Moving Defendants' cow's milk-based products are regulated by FDA and legally marketed for use in pre-term infants. Moreover, in Plaintiffs' own Complaint they acknowledge that "[p]reterm and low-birth-weight infants are *especially susceptible* to NEC." *See* Exhibit "A" at ¶ 16 (emphasis added).

In support of their theories and claims, Plaintiffs offer only vague references to unidentified "[e]xtensive scientific research, including numerous randomized controlled trials" that purportedly prove Moving Defendants' cow's milk-based products cause NEC in preterm and low-birth-weight infants. Plaintiffs neither cite specifically to any randomized trial or consensus statement nor offer an explanation of the purported method of action by which cow's milk-based formula products allegedly cause NEC.

In their original complaint, Plaintiffs did specifically cite five studies comparing cow's milk-based products to breast milk, a Surgeon General report on the subject, and a statement by the American Academy of Pediatrics. Those studies, the report and the statement purportedly reference higher rates of NEC in preterm and low birth weight infants fed cow's milk-based diets than those fed breast milk. They do not establish or prove causation. At best, they suggest that breast milk may be protective against the risk of NEC. Having abandoned reliance on these scientific authorities, Plaintiffs' Amended Complaint is even more deficient in establishing that Defendants' cow's milk-

Case ID: 220302606
Control No.: 23096740

based products are unreasonably dangerous within the meaning of § 402(A) of the Restatement (Second) of Torts.

Moreover, as *Weiner* notes, Plaintiffs must aver sufficient facts demonstrating the Moving Defendants' products are unreasonably dangerous **for their intended use**, triggering Moving Defendants' duty to warn. The only factual reference Plaintiffs make with regard to intended use is to marketing campaigns, where Defendant Manufacturers allegedly advertised that "cow's milk-based products are necessary for proper growth and development of preterm infants." *See* Exhibit "A" at ¶ 51. They have not averred sufficient facts to demonstrate that cow's milk-based products are unreasonably dangerous for this purpose.

Consequently, Plaintiffs' Counts I through V should be stricken with prejudice or failure to state a claim.

**B.    DEMURRER FOR FAILURE TO STATE A CLAIM AS TO COUNTS IV & V**

Plaintiffs' claims for intentional and negligent misrepresentation (Counts IV and V) fail because Plaintiffs do not allege that they received and relied upon any specific representation from Moving Defendants. *See Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (setting forth the elements of intentional and negligent misrepresentation and noting that both require a false representation upon which the plaintiff ultimately relied). The complaint not only fails to identify the allegedly defective Mead Johnson product that I.H. received, it fails even to allege that I.H. received *any* Mead Johnson product. *See* Ex. A, Am. Compl. ¶ 46 (alleging that Mead Johnson "markets and sells **multiple products** specifically targeting premature infants); ¶ 90 (alleging that "Abbott **and/or** Mead Johnson's products were fed") (emphasis added). Plaintiffs cannot claim reliance

10

on an alleged misrepresentation when there is no identified product to misrepresent. *Kepner v. Tine*, No. 835 EDA 2015, 2015 Pa. Super. Unpub. LEXIS 4257, at *6 (Pa. Super. Nov. 25, 2015) (affirming dismissal of a fraudulent misrepresentation claim for failure to plead a particular misrepresentation).

Pennsylvania law demands more. *See* Pa. R. Civ. P. 1019(b).  Other courts around the country have dismissed similar misrepresentation claims for lack of specificity.  *E.g.*, Ex. B, *In re Mead Johnson Product Cases*, CJC-23-005257, at 6–8 (Cal. Sup. Ct. July 7, 2023); *Casino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (Cal. Ct. App. 2014) ("[W]hen a plaintiff asserts fraud against a corporation, the plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.") (internal quotation marks omitted); *Peterson v. Clark Lake Homes Inc.*, 2022 WL 16910578, at *4 (Minn. Ct. App. (Nov. 14, 2022) (requiring identification of the "who, what, when, where, and how" for a claim of fraud).

Intentional misrepresentation requires: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  *Bortz*, 729 A.2d at 560 (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

Negligent misrepresentation similarly requires a false representation and reliance, "though the speaker need not know his or her words are untrue." *Id.* at 561.

Case ID: 220302606
Control No.: 23096740

Here, Plaintiffs' misrepresentation claims fail because they fail to sufficiently allege any relationship between a specific misrepresentation (which they do not identify), a specific product (which they do not identify), and an injury. *See Kepner*, No. 835 EDA 2015, 2015 Pa. Super. Unpub. LEXIS 4257, at *6 (requiring a particular misrepresentation); *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 969 (Pa. Super. Ct. 1985) (affirming dismissal of negligence claim where plaintiff failed to properly identify the product or its manufacturer). Causation is a hallmark of any tort action in Pennsylvania. *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 524 (W.D. Pa. 2003) ("Proof of causation is a necessary element in a products liability action. Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence, strict product liability, or misrepresentation") (applying Pennsylvania law) (citing *O'Brien v. Sofamar*, S.N.C., No. CIV. A. 96–8015, 1999 WL 239414 (E.D. Pa.1999)). Absent identification of the manufacturer of the allegedly defective product, "there can be no allegations of . . . legal causation, and hence there can be no liability." *Cummins*, 495 A.2d at 968–69 (citing *Hamil v. Bashline*, 392 A.2d 1280 (Pa. 1978)). Plaintiffs' intentional and negligent misrepresentation claims against Moving Defendants must therefore be dismissed.

### C.    MOTION TO STRIKE PLAINTIFFS' COMPLAINT FOR INSUFFICIENT SPECIFICITY AS TO THE FACTS AND ALLEGED INJURIES

Pursuant to Pa.R.C.P. 1028(a)(3), a party may file preliminary objections in the nature of a motion to strike for insufficient specificity in a pleading. Plaintiffs' failure to specify the nature of the products ingested and injuries sustained serves as an alternative ground on which all of their claims should be stricken.

Case ID: 220302606
Control No.: 23096740

A plaintiff's Complaint is required to provide a defendant with notice of what the plaintiff's claims are and the grounds upon which they rest, and the Complaint must also formulate the issues by summarizing the facts essential to support the claims. *Alpha Tau Omega Fraternity v. The University of Pennsylvania*, 464 A.2d 1349, 1352 (Pa. Super. 1983) (citations omitted). Pennsylvania Rule of Civil Procedure 1019(a) provides that "the material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019(a). As the Superior Court has noted,

> Rule 1019(a) requires fact pleading. The purpose of 1019(a) is to require the pleader to disclose the material facts sufficient to enable the adverse party to prepare his case. **A complaint therefore must do more than give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. It should formulate the issues by fully summarizing the material facts. Material facts are ultimate facts, i.e., those facts essential to support the claim. Evidence from which such facts may be inferred not only need not but should not be alleged. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense.**

*Baker v. Rangos*, 324 A,2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted) (emphasis added).

Further, it is well established that, with regard to the description of injuries sustained by a plaintiff, the Complaint must be stated with sufficient particularity to put the defendant on notice of evidence that may be produced at trial. *Kelly v. Martino*, 99 A.2d 901 (Pa. 1953). **A plaintiff's Complaint must set forth the extent, nature, location and duration of the injuries suffered, and injuries that are permanent should be stated specifically.** *Miller v. Perrige*, 71 Pa. D. & C.2d 476, 479–80 (Pa.

13

Case ID: 220302606
Control No.: 23096740

Com. Pl. 1975). *See, also, Kopan v. Hawk*, 14 Pa. D. & C.2d 713, 714 (Pa. Com. Pl. 1958) ("A catchall averment of "other injuries" is nothing more than a generalized averment under which any injuries whatever could be proved at the trial. Defendant would have no knowledge in advance of the trial of what they are.")

As noted above, Plaintiffs' Complaint is facially deficient with regard to the specificity of the allegations of the relevant facts and injuries at issue in this case, each of which are uniquely within her competence. Specifically, Plaintiffs' description of the material facts relating to the minor's care and treatment, diagnosis and injuries is limited to four paragraphs, which are utterly insufficient to enable defendants to prepare their defenses. *See* Exhibit "A," ¶¶ 11-14. Plaintiffs' allegation that "upon information and belief," the minor was fed Similac and/or Enfamil shortly after her birth (*Id*. at ¶ 12) does not comply with the fact-pleading requirements of Rule 1019(a), since such allegations do not provide Moving Defendants with appropriate notice of the facts as to whether the minor actually ingested cow's milk-based products. Further, Plaintiffs have failed to identify which of the numerous products sold by Abbott and Mead Johnson under the Similac and Enfamil brand names were ingested by the minor. *Id*. at ¶¶ 45-46. Plaintiffs' Complaint further fails to provide a description of the material facts as to the period of time in which such products were ingested, when the minor was allegedly diagnosed with NEC and what treatment was provided for that condition.

In short, Plaintiffs' Complaint is inconsistent with the requirements of the Pennsylvania Rules of Civil Procedure as to the necessary specificity for the description of the facts and alleged injuries sustained. The facts in the Complaint are pleaded

14

almost entirely "on information and belief." These omissions are fatal defects in Plaintiff's Complaint. Therefore, Plaintiffs' Complaint should be stricken in its entirety.

### D.     MOTION TO STRIKE PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES

As in the other infant formula cases, in the *Ad Damnum* clauses of Counts I, II, III, IV, and V of the Complaint, Plaintiffs make baseless accusations that Moving Defendants engaged in oppressive, reckless, malicious and/or fraudulent conduct that allegedly justify an award of punitive damages. *See* Exhibit "A," pp. 26, 29, 32, 35, and 38. However, the Complaint contains no specific allegations of conduct that would permit recovery of punitive damages as to Moving Defendants. Accordingly, Plaintiffs' claims for punitive damages should be stricken.

Punitive damages can be awarded only for conduct involving some element of outrage. *Hutchinson v. Luddy*, 582 Pa. 114, 870 A.2d 766 (2005). For that reason, Pennsylvania Supreme Court decisions establish that "punitive damages are an 'extreme remedy' available in only the most exceptional matters." *Wagner v. Onofrey*, 2006 Pa. Dist. & Cnty. Dec. LEXIS 333, *11 (Pa. Com. Pl. 2006) (citing *Phillips v. Cricket Lighters*, 584 Pa. 179, 188, 883 A.2d 439, 445 (2005)). Punitive damages may not be awarded for misconduct that constitutes ordinary negligence such as inadvertence, mistake and errors of judgment. *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985); *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 437 (Pa. Super. 1987). An award of punitive damages must be supported by evidence of conduct more serious than the mere commission of the underlying tort. *Allstate Ins. Co. v. A.M. Pugh Assoc., Inc.*, 604 F. Supp. 85, 99 (M.D. Pa. 1984).

Case ID: 220302606
Control No.: 23096740

Where the facts as averred show nothing more than negligence, a lapse in judgment, or mere inadvertence, courts in Pennsylvania have dismissed pleas and claims for punitive damages, often at the pleadings stage of litigation and even if the complaint alleged severe injuries or death. *See, e.g., Brownawell v. Bryan*, 40 Pa. D. & C.3d 604, 606 (Pa. Com. Pl. 1985) (dismissing punitive damages claim where a plaintiff alleged that a physician negligently performed a spinal fusion surgery that left the plaintiff with severe neurological defects, and noting that "**the mere pleading of outrageous conduct** does not, of course, satisfy the requirement stating facts which, if proven, would form a basis for a jury concluding that the conduct was such that an award of punitive damages was warranted.") (emphasis added); *Wagner*, *supra* at *11 (contentions that physician failed to prescribe antibiotics, order certain tests or request an infectious disease consult constituted "nothing more than ordinary negligence and are insufficient to support an award of punitive damages.").

Here, the Amended Complaint contains no specific allegations of conduct that would permit recovery of punitive damages as to Moving Defendants. Read most generously, Plaintiffs' Complaint alleges that Moving Defendants failed to warn co-defendant HUP of a risk of NEC associated with its legally-marketed cow's milk-based product– a risk about which Plaintiff alleges that HUP was already aware.  *See* Am. Compl. ¶¶ 72-76.  And with respect to I.H.'s care, Plaintiffs merely allege that "upon information and belief" I.H. may have been given a product sold by Moving Defendants absent any context to indicate that such a product was inappropriate based on the specific issues involved in I.H.'s medical care and condition following birth.  For example, the Amended Complaint gives no indication of whether Plaintiff-parent refused

16

or was unable to provide breast milk and provides no information as to discussions between her and any health care providers regarding the purported use of cow's milk-based products.

Plaintiffs' allegations of oppressive, malicious and similar conduct must be rejected as mere boilerplate. As discussed above, the FDA reviews Moving Defendants' pre-term infant feeding products and has not restricted the use of cow's milk-based products for such infants. Indeed, the fact that Plaintiffs have filed numerous lawsuits against at least four other hospitals in Philadelphia based on identical claims belies the contention that Moving Defendants engaged in outrageous or malicious conduct in allegedly in allegedly selling a cow's milk-based product that was used to feed the Plaintiff-minor. Absent specific factual allegations to justify the claim that Moving Defendants' actions as they pertain to Plaintiffs' particular facts and circumstances were extreme and outrageous, there is no basis for an award of punitive damages in this case, and Plaintiffs' claims for such must be stricken from the Complaint pursuant to Rule 1028(a)(3).

### E.     MOTION TO STRIKE PLAINTIFF-PARENT'S CLAIMS

The Court should strike Plaintiff-parent's claims to recover damages in her own right and as the parent and natural guardian of I.H., both because they are inadequately pled and because she has not suffered physical injury.

In each count of the complaint, Plaintiff-parent alleges that she "suffered significant emotional distress, loss of income, and/or other harms" and that "[h]er life has been significantly affected by the Injured Infant's injuries." See Ex. A, ¶¶ 91, 99,

17

Case ID: 220302606
Control No.: 23096740

108, 117, and 127.  This is insufficient.  Plaintiff-Parent fails to meet the pleading requirements of Pa.R.C.P. 1020(b), which provides as follows:

> If persons join as plaintiffs under Rules 2228, 2229(a) or (e), the complaint shall state the cause of action, any special damage, and the demand for relief of each plaintiff in a separate count, preceded by a heading naming the parties to the causes of action therein set forth.

Plaintiff-parent plainly does not allege any claim in separate counts or state any cause of action. Rather, the claims are incorporated in a single, tagalong paragraphs at the end of the existing counts.

Additionally, Plaintiff-parent does not complain of any physical injury. It is well established that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009) (citing *Adams v. Copper Beach Townhome Comtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. 2003)); *Miller v. Evenflo Co., Inc.*, 2009 WL 10689606, at *4 (W.D. Pa. Dec. 21, 2009) (dismissing plaintiff-parents' tort claims where only physical injury was to minor plaintiff). So too for claims sounding in strict products liability. *Schmidt v. Boardman Co.*, 11 A.3d 924, 953 (Pa. 2011) ("We would hold that, for purposes of a strict products liability claim, a plaintiff's recovery for emotional distress is limited to that which is proximately caused by contemporaneous physical impact").

### F. MOTION TO STRIKE PLAINTIFFS' COMPLAINT FOR FAILURE TO COMPLY WITH Pa.R.C.P. 1024

Pennsylvania Rule of Civil Procedure 1024(a) requires verification of every pleading containing a factual averment based upon the signer's personal knowledge or information and belief. Rule 1024(c) requires that the verification be made by one or

Case ID: 220302606
Control No.: 23096740

more of the parties filing the pleading. In this case, Plaintiffs' counsel signed the verification for the original Complaint, in violation of Rule 1024. The Amended Complaint is bereft of <u>any</u> verification. *See* Exhibit "A." Accordingly, the Complaint should be stricken for lack of an appropriate verification.

## V. <u>REQUESTED RELIEF</u>

For the foregoing reasons, Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company respectfully request that this Honorable Court sustain their Preliminary Objections and enter the attached Order.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated:  September 28, 2023

/s/ Kenneth A. Murphy
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire

**WELSH & RECKER, P.C.**

/s/ Catherine M. Recker
Catherine M. Recker, Esquire
Amy B. Carver, Esquire
Richard D. Walk, III, Esquire

**Attorneys for Defendants,**
**Mead Johnson & Company, LLC and**
**Mead Johnson Nutrition Company**

Case ID: 220302606
Control No.: 23096740

## CERTIFICATE OF SERVICE

I, Kenneth A. Murphy, Esquire, do hereby certify that on this day I caused a true and correct copy of the foregoing Preliminary Objections of Defendants Mead Johnson & Company and Mead Johnson Nutrition Company to Plaintiffs' Complaint, and accompanying Memorandum of Law, to be served via electronic filing, on the following counsel of record, addressed as follows:

**Kline & Specter, P.C.**
Thomas R. Kline, Esquire
Tobias Millrood, Esquire
Elizabeth Crawford, Esquire
Melissa Merk, Esquire
Timothy A. Burke, Esquire
Helen Lawless, Esquire
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
tom.kline@klinespecter.com
tobi.millrood@klinespecter.com
melissa.merk@klinespecter.com
elissa.crawford@klinespecter.com
timothy.burke@klinespecter.com
helen.lawless@klinespecter.com
*Attorneys for Plaintiffs*

**Burns White, LLC**
James Young, Esquire
Richard Margulies, Esquire
Susan R. Engle, Esquire
1880 John F. Kennedy Blvd., 10th Floor
Philadelphia, PA 19103
jayoung@burnswhite.com
rsmargulies@burnswhite.com
sengle@burnswhite.com
*Counsel for Defendants, The Trustees of the University of Pennsylvania d/b/a The Hospital of the University of Pennsylvania and The Trustees of the University of Pennsylvania d/b/a Penn Medicine*

**Campbell Conroy & O'Neil, PC**
Joseph E. O'Neil, Esquire
Meghann C. Porth, Esquire
Ryan J. O'Neil, Esquire

1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
joneil@campbelltriallawyers.com
mporth@campbelltriallawyers.com
roneil@campbelltriallawyers.com
*Attorneys for Defendant, Abbott Laboratories*

**Jones Day**
Jennifer B. Flannery, Esquire
Marques Hillman Richeson
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
jbflannery@jonesday.com
mhricheson@jonesday.com
*Attorneys for Defendant, Abbott Laboratories*

**Troutman Pepper Hamilton Sanders, LLP**
Sean P. Fahey, Esquire
Ronni E. Fuchs, Esquire
3000 Two Logan Square
Philadelphia, PA 19103
sean.fahey@troutman.com
ronni.fuchs@troutman.com
*Attorneys for Defendant, Abbott Laboratories*

**Eckert Seamans Cherin Mellot**
Donald Brooks, Jr., Esquire
Brooke A. Scicchitano, Esquire
50 S. 16th Street, 22nd Floor
Philadelphia, PA 19102
dbrooks@eckertseamans.com
bscicchitano@eckertseamans.com
*Attorneys for Defendant, Thomas Jefferson University Hospitals, Inc. d/b/a
Thomas Jefferson University Hospital and Thomas Jefferson University
d/b/a Jefferson Health System*

By:     /s/ Kenneth A. Murphy
        Kenneth A. Murphy, Esquire

Dated: September 28, 2023

Case ID: 220302606
Control No.: 23096740

# EXHIBIT A

Case ID: 220302606
Control No.: 23096740

**KLINE & SPECTER, P.C.**
By:
    Thomas R. Kline, Esq.
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos.: 28895 / 77764 / 313702 /
320927 / 205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Jack.oneill@klinespecter.com



*Filed and Attested by the Office of Judicial Records 08 SEP 2023 04:13 pm E. HAURIN*

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor,<br><br>    *Plaintiff*,<br><br>   v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL,<br><br>    *Defendants*. | IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL TRIAL DIVISION<br><br>MARCH TERM 2022<br>NO. 2606 |

## NOTICE TO PLEAD AND DEFEND

<table>
<tr><td align="center"><b>NOTICE</b></td><td align="center"><b>ADVISO</b></td></tr>
<tr><td>You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.</td><td>Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usno no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.</td></tr>
</table>

1

Case ID: 220302606
Control No.: 23096740

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

2

KLINE & SPECTER, P.C.
By:
    Thomas R. Kline, Esq.
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos.: 28895 / 77764 / 313702 /
320927 / 205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Jack.oneill@klinespecter.com

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor, <br><br> *Plaintiff*, <br><br> v. <br><br> MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL, <br><br> *Defendants*. | IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY <br><br> CIVIL TRIAL DIVISION <br><br> MARCH TERM 2022 <br> NO. 2606 |

## FIRST AMENDED COMPLAINT

Plaintiff brings this Amended Complaint and Demand for Jury Trial (the "Amended Complaint") against Mead Johnson & Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories (collectively "the Defendant Manufacturers"), and The Trustees of the University of Pennsylvania d/b/a Penn Medicine and Pennsylvania Hospital of the University of

3

Case ID: 220302606
Control No.: 23096740

Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively "Penn Medicine" or "Pennsylvania Hospital"), together "Defendants." Plaintiff alleges the following upon personal knowledge as to Plaintiff's own acts and experiences and upon information and belief, including investigation conducted by Plaintiff's attorneys, as to all other matters.

## I.  INTRODUCTION

1.      This action arises out of the injuries suffered by a premature infant (the "Injured Infant") who was given the Defendant Manufacturers' cow's milk-based infant feeding products at Pennsylvania Hospital. Pennsylvania Hospital, managed by Penn Medicine, acquired and supplied the Defendant Manufacturers' products to the Injured Infant and negligently failed to warn of their unreasonably dangerous properties in a reasonable manner. This caused the Injured Infant to develop necrotizing enterocolitis ("NEC"), a life-altering and potentially deadly disease that largely affects premature babies who are given cow's milk-based feeding products. As a result, the Injured Infant was seriously injured, resulting in long term health effects and accompanying harm to their parent ("the Plaintiff Parent").

2.      Plaintiff brings these causes of action against Defendants to recover for injuries that are the direct and proximate result of the Injured Infant's consumption of the Defendant Manufacturers' unreasonably dangerous cow's milk-based infant feeding products, which were acquired and supplied without adequate warning to the Injured Infant at Pennsylvania Hospital, owned and operated by Penn Medicine.

## II.  PARTIES

3.      Plaintiff Christina Taylor is a natural adult person and a resident of Delaware. Ms. Taylor is the parent and natural guardian of I.H., a minor. Ms. Taylor's address is 9 Aidone Drive, New Castle, Delaware 19720.

Case ID: 220302606
Control No.: 23096740

4.      Defendant Mead Johnson Nutrition Company is a corporation, incorporated under the laws of the State of Delaware. Its principal place of business is Illinois.  Defendant Mead Johnson & Company, LLC, is a limited liability company, organized under the laws of the State of Delaware. Its citizenship is that of its sole member, Mead Johnson Nutrition Company.  Defendants Mead Johnson Nutrition Company and Mead Johnson & Company, LLC, (together, "Mead") are manufacturers of cow's milk-based infant feeding products and market many of these products under the "Enfamil" brand name.

5.      Defendant Abbott Laboratories ("Abbott") is a corporation, incorporated under the laws of the State of Illinois.  Its principal place of business is in Illinois.  Abbott is a manufacturer of cow's milk-based infant feeding products and markets many of its products under the "Similac" brand name.

6.      Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital is a non-profit corporation incorporated and registered to do business under the laws of the Commonwealth of Pennsylvania.  Its principal place of business is Philadelphia, Pennsylvania. Pennsylvania Hospital is a registered name of The Pennsylvania Hospital of the University of Pennsylvania Health System.  The sole member of The Pennsylvania Hospital of the University of Pennsylvania Health System is The Trustees of the University of Pennsylvania.

7.      Defendant The Trustees of the University of Pennsylvania d/b/a Penn Medicine is a non-profit corporation registered to do business in the Commonwealth of Pennsylvania.  Its principal place of business is Philadelphia, Pennsylvania. Penn Medicine is a registered name of The Trustees of the University of Pennsylvania.

### III.     JURISDICTION AND VENUE

5

Case ID: 220302606
Control No.: 23096740

8.     This Court has jurisdiction in this matter pursuant to 42 Pa. C.S.A. § 931. Defendants conduct authorized business in the Commonwealth of Pennsylvania.  They have sufficient minimum contacts with and purposefully avail themselves of the markets of this Commonwealth. This suit arises out of Defendants' forum-related activities, such that the Court of Common Pleas of Philadelphia County's exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice.

9.     Venue is proper in the Court of Common Pleas of Philadelphia County pursuant to Rules 1006(b), 1006(c)(1), and 2179(a) of the Pennsylvania Rules of Civil Procedure because Defendants are corporations or similar entities that regularly conduct business in Philadelphia County, which is also the county where Plaintiff's causes of action arose, and the county where the occurrences took place out of which Plaintiff's causes of action arose.

10.    This action is not subject to the Compulsory Arbitration Program of the Court of Common Pleas of Philadelphia County because the amount in controversy, excluding interest and costs, is in excess of $50,000.

## IV.     FACTUAL ALLEGATIONS

### *I.H.'s NEC Diagnosis*

11.    I.H. was born prematurely at Pennsylvania Hospital in Philadelphia, Pennsylvania on October 9, 2010.

12.    At birth, I.H.'s gestational age was approximately 25 weeks and she weighed 879 grams. Upon information and belief, I.H. was fed Similac and/or Enfamil cow's milk-based products by staff at Pennsylvania Hospital after her birth.

13.    Upon information and belief, I.H. developed NEC after ingesting Defendant Manufacturers' products.

6

14. I.H.'s diagnosis of NEC occurred during her course of treatment at Defendant Hospital's NICU. I.H. suffered injuries, including but not limited to, a diagnosis of NEC, NEC treatment including surgery, and gastrointestinal issues, and she continues to suffer other long-term health effects.

### *Cow's Milk-Based Feeding Products Are Known to Cause NEC*

15. NEC is a devastating disease that is the most frequent and lethal gastrointestinal disorder affecting preterm infants. NEC develops when harmful bacteria breach the walls of the intestine, causing portions of the intestine to become inflamed and often to die. Once NEC develops, the condition can progress rapidly from mild feeding intolerance to systemic and fatal sepsis. Up to 30 percent of NEC-diagnosed infants die from the disease.

16. Preterm and low-birth-weight infants are especially susceptible to NEC because of their underdeveloped digestive systems. Extensive scientific research, including numerous randomized controlled trials, has confirmed that cow's milk-based feeding products cause NEC in preterm and low-birth-weight infants, which in turn may lead to other medical complications, surgeries, long-term health problems, and death.

### *Safer, Nutritionally Superior Alternatives to Cow's Milk-Based Products Exist*

17. A range of options are available that allow preterm and low-birth-weight infants to be fed exclusively human milk-based nutrition. For example, in addition to the mother's own milk, an established network delivers pasteurized donor breast milk to hospitals nationwide. Moreover, hospitals have access to shelf-stable formula and fortifiers derived from pasteurized breast milk.

18. A diet based exclusively on breast milk and breast milk fortifiers provides all the nutrition necessary to support premature and low-birth-weight infants without the elevated risk of NEC associated with cow's milk-based products.

Case ID: 220302606
Control No.: 23096740

19.     The Defendant Manufacturers' products not only pose a threat to infants' health, but also displace the breast milk they could otherwise receive.   This displacement only increases infants' vulnerability to NEC.

20.     Breast milk-based nutrition nourishes infants while creating a significantly lower risk of NEC.

21.     At the time the Injured Infant was fed the Defendant Manufacturers' products, the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death.

22.     Despite the scientific consensus that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants, the Defendant Manufacturers have made no changes to their products or the products' packaging, guidelines, instructions, or warnings.     Instead, they have continued to sell their unreasonably dangerous products.     In addition, they incentivize hospitals that know the risks to use their products by providing them to the hospital for free or at a significant discount, in order that vulnerable infants and their families will become accustomed to using their products before discharge.  And, in fact, the Defendant Manufacturers offer contracts to hospitals—which the hospitals accept—that actually *prevent* the health care providers from offering alternative products—even safer ones— on pain of risking the hospital's advantageous formula pricing strategy.

### *Ms. Taylor Discovers Her Claim*

23.     Because of the Defendants' concealment and misrepresentations, described more fully herein, Ms. Taylor did not know, and had no reason to know or suspect, that I.H.'s NEC could have been caused by the Defendant Manufacturers' products.

Case ID: 220302606
Control No.: 23096740

***Despite Exercising Diligence, a Reasonable Investigation Did Not Reveal and
Would Not Have Revealed a Factual Basis Earlier
Because Defendants Hid the Cause of NEC from Ms. Taylor***

24.     Despite exercising reasonable diligence, Ms. Taylor was unable to have made the discovery earlier via a reasonable investigation because the Defendants in this litigation concealed the wrongful cause of I.H.'s injuries.

25.     Ms. Taylor is a layperson with no medical background or training that would have given her any reason to doubt the response she received from her Penn Medicine health care providers at the time.

26.     Given that Penn Medicine's health care providers were in charge of the care of her newborn infant, Ms. Taylor had no reason to doubt their word.

27.     Additionally, the risk of necrotizing enterocolitis was not disclosed on the labeling or packaging of *any* of the Defendant Manufacturers' products.

28.     What is more, necrotizing enterocolitis is a disease that can occur in children who are *not* fed the Defendant Manufacturers' products, and the Defendant Manufacturers have worked to mislead parents into a false sense of security about the use of those products. Publicly disseminated materials from each Defendant Manufacturer disguise the role their products play in causing the disease—and affirmatively say, even today, that their products are safe and do not cause NEC. In fact, some publicly disseminated materials from the formula manufacturers even suggest that formula may help *reduce* the risk of this terrible and potentially fatal disease.

29.     For example, Abbott's website stays that "[t]he specific cause of NEC is unknown, but it's most often seen in very low birth weight premature babies," and that "about 10% of babies who are born prematurely develop NEC." The website suggests that "new preliminary studies" suggest for the first time that "NEC prevention may . . . be possible" with the use of human milk

9

Case ID: 220302606
Control No.: 23096740

oligosaccharides to "dramatically curb intestinal inflammation" and reduce the risk of NEC. Abbott states that these human milk oligosaccharides are found in "certain Similac formulas" although they are "not currently available in Similac's premature infant formulas."[1] Likewise, the website for Mead Johnson's products states that necrotizing enterocolitis is "one of the most common and serious intestinal disease[s] among premature babies." And it deflects responsibility from Mead Johnson's products: "Necrotizing enterocolitis happens when tissue in the small or large intestine is injured or inflamed."[2]

30.     Because of the misleading information distributed by the Defendant Manufacturers, as further detailed below, any search conducted by Ms. Taylor immediately after I.H.'s diagnosis, or at any time prior to seeing an the advertisement, would not have led a reasonable person to suspect that the Defendant Manufacturers' products could have caused I.H.'s injuries.

31.     Ms. Taylor also did not know, and had no reason to know or suspect, that Penn Medicine breached its duty of care by distributing the Defendant Manufacturers' products to her. Not only was Ms. Taylor unaware that the Defendant Manufacturers' products caused I.H.'s injuries and death, but the Defendant Manufacturers' distribution agreements with Penn Medicine—which allowed Penn Medicine to secure sweetheart deals for otherwise expensive premature infant formula in exchange for product placement and access to the hospital staff—were also not public or knowable to Ms. Taylor, nor could any reasonable investigation outside of litigation have uncovered the terms of those agreements.

---

[1] The Role of HMOs in Reducing NEC, https://www.nutritionnews.abbott/pregnancy-childhood/prenatal-breastfeeding/the-promising-role-of-hmos-in-reducing-risk-of-nec/ (last visited July 28, 2023).

[2] Special Feeding Concerns for Preemies, https://www.enfamil.com/articles/special-feeding-concerns-for-preemies/ (last visited July 29, 2023).

Case ID: 220302606
Control No.: 23096740

***Despite Exercising Reasonable Diligence, the Defendants' Fraudulently Concealed the Risks of NEC from Defendant Manufacturers' Products to Divert, Prevent, and Mislead Plaintiff Regarding the Cause of Her Child's NEC Diagnosis***

32.    In addition to the averments above, the Defendants have acted in concert to fraudulently convey false and misleading information concerning the risk of NEC, and potentially death, caused by Defendant Manufacturers' preterm infant formula products.

33.    The Defendants' actions as set forth herein constitute knowing misrepresentation, omission, suppression, and concealment of material facts, made with the intent that Plaintiff would rely upon such concealment, suppression, or omission, in connection with the use of Defendants' preterm infant products.

34.    Plaintiff did not know, and could not learn, the truth concerning the uses, risks and benefits of Defendant Manufacturers' preterm infant products due to Defendants' deliberate misrepresentations and concealment, suppression and omission of material facts and important information regarding the risks of NEC, and potentially death, from the products.

35.    Moreover, Defendant Hospital further participated in the intentional concealment—on information and belief, it allowed the Defendant Manufacturers' sales representatives into its hospital to provide samples and free products that did not warn of their serious dangers, and to provide "education" to its NICU staff that was incomplete as to the true risks of feeding their patients the Defendant Manufacturers' products.

36.    Additionally, Defendant Hospital failed to inform Ms. Taylor that the Defendant Manufacturers' products caused Plaintiff's NEC, even when she directly asked the cause. As noted above, after learning of Plaintiff's NEC diagnosis, Ms. Taylor was understandably concerned about the degrading health of her newborn infant. But even though Defendant Hospital knew of the increased risk of NEC from formula, it did not disclose that the formula provided to I.H. could

Case ID: 220302606
Control No.: 23096740

increase the risk of NEC to preterm infants. Not one person at the NICU mentioned that the Defendant Manufacturers' formula products could have been the cause of Plaintiff's injuries.

37.     Defendant Hospital was aware that the Defendant Manufacturers' products caused NEC in premature infants. Defendant Hospital was also aware that the Defendant Manufacturers did not provide warnings on their products. However, Defendant Hospital did not warn Ms. Taylor of the risks of the products. Instead, and notwithstanding the sweetheart deal Defendant Hospital agreed to in exchange for preterm infant formula at little to no cost, Defendant Hospital repeatedly informed Ms. Taylor that it would do everything it could possibly do to keep her infant safe. Though this was clearly not true given the known risks of preterm formula for babies like I.H., it was enough for Ms. Taylor to trust that Defendant Hospital was providing preterm formula in the best interest of her child.

38.     Defendants' affirmative acts of fraud and concealment, as averred herein, diverted, prevented, and/or mislead Plaintiff from discovering the medical cause of her child's NEC diagnosis.

### The Defendant Manufacturers' False and Misleading Marketing Regarding Cow's Milk-Based Infant Products

39.     Abbott and Mead have aggressively marketed their cow's milk-based products as medically endorsed and nutritionally equivalent alternatives to breast milk, including prior to the Injured Infant's birth.

40.     Abbott's and Mead's marketing approach includes targeting the parents of preterm infants while they are still in the hospital with messages that the Defendant Manufacturers' cow's milk formulas and fortifiers are necessary for the growth and development of their vulnerable children. Often these tactics implicitly discourage mothers from breastfeeding, which reduces the mother's supply of breast milk. None of the Defendant Manufacturers' marketing materials, including their

Case ID: 220302606
Control No.: 23096740

promotional websites, reference the science showing how significantly their products increase the risk of NEC.

41.     Undoubtedly aware of the impact of their advertising, the Defendant Manufacturers, along with other formula manufacturers, are willing to spend massive sums to disseminate their message.

42.     Recognizing the abuse and dangers of infant formula marketing, in 1981, the World Health Assembly—the decision-making body of the World Health Organization—developed the International Code of Marketing of Breast-milk Substitutes ("the Code"), which required companies to acknowledge the superiority of breast milk, the negative effect on breastfeeding of introducing partial bottle-feeding, and the difficulty of reversing the decision not to breastfeed. The Code also forbade advertising or other forms of promotion of formula to the general public, as well as providing sample products to mothers or members of their families.

43.     While Abbott and Mead acknowledge the Code on their websites and claim to support the effort to encourage mothers to breastfeed for as long as possible, this is little more than lip service. Instead, the Defendant Manufacturers' aggressive marketing exploits new parents' darkest fears— that the nutrition they are supplying to their child will not provide the best chance of survival— while wholly failing to warn that their products come with a significantly increased risk of NEC.

44.     For example, Abbott's website, on a paged titled "Infant Formula Marketing," states: "We agree with the World Health Organization that breastfeeding provides the best nutrition for babies, and we support its goal to increase breastfeeding. We also recognize that for infants who aren't breastfed—for medical reasons or otherwise—infant formula is the only appropriate, safe alternative to meet babies' nutritional needs." This statement ignores the existence of donor milk, as well as human milk-based formula.

13

Case ID: 220302606
Control No.: 23096740

45. Abbott markets and sells multiple products specifically targeting preterm and low-birthweight infants, including Liquid Protein Fortifier, Similac NeoSure, Similac Human Milk Fortifiers, Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30. In advertising these products, Abbott emphasizes the products' purported ability to assist underdeveloped babies in reaching their growth targets. For example, on the since-edited webpage regarding Similac NeoSure, Abbott noted: "Your premature baby didn't get her full 9 months in the womb, so her body is working hard to catch up. During her first full year, feed her Similac NeoSure, a nutrient-enriched formula for babies who were born prematurely, and help support her development." Yet, no mention was made of the accompanying significantly increased risk of NEC. At some point, the website was edited to remove this statement. However, upon information and belief, the statement remained on the website until at least December 2020.

46. Mead markets and sells multiple products specifically targeting premature infants, including Enfamil NeuroPro EnfaCare Infant Formula, Enfamil Premature Infant Formula 24 Cal High Protein, Enfamil Premature Infant Formula 30 Cal with Iron, Enfamil Premature Infant Formula 24 Cal with Iron, Enfamil Premature Infant Formula 20 Cal with Iron, Enfamil 24 Cal Infant Formula, and Enfamil Human Milk Fortifier (acidified liquid and powder). In advertising these products, Mead emphasizes the purported similarities between its formula and breast milk, while failing to include any information about the nutritional deficits and dangers that accompany formula use. For example, the since-edited webpage for Enfamil Enfacare stated: "Premature babies fed Enfamil® formulas during the first year have achieved catch-up growth similar to that of full term, breastfed infants" and noted that Enfamil formulas include "expert-recommended

Case ID: 220302606
Control No.: 23096740

levels of DHA and ARA (important fatty acids found naturally in breast milk) to support brain and eye development."

47.    One Enfamil advertisement, introducing a new product line called Enfamil NeuroPro, is entirely focused on favorably comparing Enfamil's formula to breast milk, without any mention of the product's extreme risks. Indeed, the terms "human milk" and "breast milk" are used 13 times in the advertisement, including in such statements as "for decades human milk has inspired the advancements in Enfamil formulas and now through extensive global research, we are taking an even closer look at human milk" and "only Enfamil NeuroPro has a fat blend of MFGM and DHA previously found only in breast milk." The webpage for the product has made similar manipulative claims, stating "Enfamil is backed by decades of breast milk research and multiple clinical studies" and it claims that "to create our best formulas, we collaborated on some of the most extensive breast milk studies to date[.]"

48.    Formula manufacturers have long used their relationships with hospitals and the discharge process to encourage parents to substitute formula for breast milk.  They offer free or reduced-cost formula to hospitals for use with infants before discharge.  And they offer free formula, coupons, and even entire gift baskets to parents before their infants' discharge from the NICU or hospital.

49.    Through this early targeting, the Defendant Manufacturers create brand loyalty under the guise of a "medical blessing," in hopes that new parents continue to use formula after they leave the hospital, resulting in increased expense for parents, significantly increased risk for babies, and increased profit for the Defendant Manufacturers.  The Defendant Manufacturers' giveaways and gift baskets send confusing signals to mothers who are simultaneously being encouraged to breastfeed by their healthcare professionals, and they have been shown to negatively impact breastfeeding rates.

Case ID: 220302606
Control No.: 23096740

50.     Further, when the Defendant Manufacturers recognized a shift in the medical community towards an exclusive breast milk-based diet for premature infants, Abbott developed a product called "Similac Human Milk Fortifier," and Mead developed "Enfamil Human Milk Fortifier." These names are misleading in that they suggest that the products are derived from breast milk, when, in fact, they are cow's milk-based products.   The packaging appears as:




51.     The Defendant Manufacturers have designed powerful misleading marketing campaigns to deceive parents into believing that: (1) cow's milk-based products are safe, including for preterm infants; (2) cow's milk-based products are equal, or even superior, substitutes to breast milk; (3) cow's milk-based products are necessary for proper growth and development of preterm infants; and (4) physicians consider the Defendant Manufacturers' cow's milk-based products to be a first choice.   This marketing scheme is employed despite all Defendants knowing of and failing to warn

16

of the extreme risk of NEC and death that cow's milk-based products pose to preterm infants like the Injured Infant.

52.     The Defendant Manufacturers have also designed powerful marketing campaigns to both the general public and health care providers at hospitals like Pennsylvania Hospital.   The Defendant Manufacturers know that sales made to hospitals are key drivers of brand loyalty, and thus are a key opportunity to drive better downstream business—*i.e.*, retail purchases by parents after they have left the hospital.   On information and belief, the Defendant Manufacturers know that the formula products used in a hospital's NICU are related to getting and keeping the overall hospital contracts.   And the Defendant Manufacturers know that, just like any celebrity endorsement, when mothers of newborn infants see medical professionals using a certain brand, the mothers are more likely to continue to purchase that same brand after discharge.   The Defendant Manufacturers are thus heavily motivated to ensure that NICU departments are using their products.

53.     Abbott and Mead Johnson focus their sales teams and training heavily on hospital NICU departments.   They train their sales representatives how to increase the number of babies on their formula, and they emphasize the need to be the dominant formula manufacturer in the NICU so they can own that profitable ground and secure a great return on their substantial investment in NICU formula and other products.

54.     To leverage hospitals' NICUs and secure babies in the hospital and at retail, the Manufacturer Defendants pull out all the stops to convince hospitals, including Defendant Hospital, to purchase their products.   For example: Abbott and Mead Johnson provide samples of their products to hospitals for free.

Case ID: 220302606
Control No.: 23096740

55.     On information and belief, to get the hospitals on board with supplying their formula for premature infants, Abbott and Mead Johnson work with hospitals to secure contracts that have special pricing discounts if a certain level of the formula-fed babies in the hospital receive just that one manufacturer's products; similar to a restaurant being a Coke or Pepsi restaurant.  And notwithstanding the increased risk of the Defendant Manufacturers' products for the hospitals' most fragile patients—the preterm infants—the decision makers at these hospitals seek out these types of contracts to better the hospitals' own bottom lines.

56.     On information and belief, Abbott and Mead Johnson also seek promises and/or assurances that the full range of health care providers at the hospitals, including the nurse practitioners and other staff who would pull the infant formula off the shelf, are grabbing the respective company's own formula products to give to the preterm infants.  The goal of this tactic was to ensure that the Defendant Manufacturers and key people at the hospital would be sending a shared message that the preterm infant formula products were safe and without risk, even though that is not what the science said.

57.     Prior to I.H.'s birth, Abbott sent sales representatives to Defendant Hospital.  Those sales representatives provided information about Abbott's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Abbott's products were safe to give to preterm infants like I.H.  Abbott maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed.  These sales representatives did not disclose that Abbott's products could cause NEC in preterm infants.

58.     Prior to I.H.'s birth, Mead Johnson sent sales representatives to Defendant Hospital.  Those sales representatives provided information about Mead Johnson's products to Defendant

18

Case ID: 220302606
Control No.: 23096740

Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Mead Johnson's products were safe to give to preterm infants like I.H. Mead Johnson maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. These sales representatives did not disclose that Mead Johnson's products could cause NEC in preterm infants.

59.     Mead Johnson and Abbott believed and intended that the misrepresentations that its sale representatives shared with Defendant Hospital would be used to make feeding decisions for preterm infants like I.H.

### *The Defendant Manufacturers' Inadequate Warnings*

60.     Although Mead promotes an aggressive marketing campaign designed to convince parents that its cow's milk-based products are safe and necessary for the growth of a premature infant, the product is in fact extremely dangerous for premature infants. Enfamil products significantly increase the chances of a premature infant developing potentially fatal NEC.

61.     The Enfamil products Mead markets specifically for premature infants are commercially available at retail locations and online. No prescription is necessary.

62.     Despite knowing of the risk of NEC, the packaging of Mead's products does not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with Mead's products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

63.     Mead cites no medical literature or research to guide the use of its products.

64.     Despite knowing of the risk of NEC, Mead did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

Case ID: 220302606
Control No.: 23096740

65.    Mead deceived the public, parents, physicians, other medical professionals, and medical staff into believing that Enfamil products were a safe and necessary alternative, supplement and/or substitute to breast milk.

66.    Mead Johnson failed to provide, and continues to fail to provide, a full accounting of the risk of NEC as documented, by underrepresenting and misrepresenting the risk to the public and the medical community.

67.    Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Mead failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies.  Like Mead, Abbott promotes an aggressive marketing campaign designed to make parents believe that its products are safe and necessary for the growth of premature infants, despite the products in fact being extremely dangerous for premature infants. Abbott's products significantly increase the chances of a premature infant getting potentially fatal NEC.

68.    The products Abbott markets specifically for premature infants are available at retail locations and online. No prescription is necessary.

69.    Despite knowing of the risk of NEC, Abbott did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Abbott likewise did not provide instructions or guidance for how to avoid NEC.

70.    Abbott deceived the public, parents, physicians, other medical professionals, and medical staff into believing that its products were a safe and necessary alternative, supplement and/or substitute to breast milk.

20

Case ID: 220302606
Control No.: 23096740

71.     Despite knowing of studies documenting an increased risk of NEC from its products, Abbott did not act to make parents or the medical community aware of those risks, and instead took steps to conceal or prevent those risks from becoming public.  Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Abbott failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies.

### *Penn Medicine's Failure to Warn*

72.     On information and belief, Penn Medicine, which operates Pennsylvania Hospital, was aware of the significantly increased risk of NEC and death associated with providing Abbott's and Mead's cow's milk-based products to its premature infant patients.  It knew or should have known that feeding these cow's milk-based products can cause NEC in premature infants who otherwise would not have developed this devastating condition.  However, instead of warning of the dangers, or supplying breast milk-based feeding products to preterm infants like the Injured Infant, Penn Medicine has continued to source, distribute, and supply the Defendant Manufacturers' products in its hospitals without any adequate warning.

73.     To that end, Penn Medicine has participated in studies designed to increase the use of donor milk while, at the same time, reducing formula feeding in neonates.    The University of Pennsylvania School of Nursing, an affiliate of Penn Medicine, has conducted extensive research into the risks associated with feeding formula to premature infants.   It recently partnered with the National Institute of Nursing Research to publish clinical determinations based on its experience "changing hospital systems and influencing policy," and its findings were unequivocal:

> This is what we know about the science of human milk: it reduces the risk of necrotizing enterocolitis, reduces the risk of infection, [and] creates greater enteral feed tolerance and more rapid weaning from intravenous nutrition. . . .

Other Penn Medicine research has similarly concluded that "[h]uman milk decreases the incidence

Case ID: 220302606
Control No.: 23096740

and severity of . . . necrotizing enterocolitis (NEC)."

74.     Penn Medicine also purports to adhere to the tenets of the "Baby Friendly Hospital Initiative," which seeks to increase rates of breastfeeding initiation, exclusivity, and diet duration. The "Baby Friendly Hospital Initiative" specifically targets a reduction in the rates of NEC in preterm infants by encouraging implementation of exclusive breast milk diets among new mothers. Although Pennsylvania Hospital has maintained its "Baby Friendly" designation for years, it has not eliminated or restricted the use of formula or fortifier for preterm infants in its hospitals.

75.     Finally, medical providers and staff at Penn Medicine have acknowledged the risks associated with providing the Defendant Manufacturers' cow's milk-based products to premature infant patients instead of breast milk-based nutrition.   In an internal newsletter from 2012 touting donor milk programs, Penn Medicine acknowledged the benefits of a human milk-based diet, quoting a staff lactation consultant:

> Donor milk is not inexpensive. It costs about $4.25 per ounce, but the return on investment is huge. "Preemies given mother's milk get discharged three to four days sooner and also have a six to 10 times lower risk of getting a gastrointestinal complication called necrotizing enterocolitis," Carpenter said, adding that the infection can cost up to $250,000 to treat. The average cost to provide a preemie with donor milk: $125.

76.     These statements demonstrate that Penn Medicine knew or should have known of the high increased risk of NEC for premature infants posed by the Defendant Manufacturers' products.

77.     Although Penn Medicine knew or should have known of the serious danger of the Defendant Manufacturers' products, it has continued to purchase, supply, and distribute these products to preterm infants without providing full and adequate warnings of the attendant risks to parents, healthcare professionals, and other medical staff at its relevant facilities.   As a result, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products at Pennsylvania

Case ID: 220302606
Control No.: 23096740

Hospital, causing their injuries. This occurred even though hospitals across the country, including Pennsylvania Hospital, warn and obtain consent from parents before providing other safer forms of nutrition, such as donor breast milk.

78.     Penn Medicine's failure to warn of the risks posed by the Defendant Manufacturers' products is entrenched (and compounded) by the financial benefits it accrues from its relationships with the Defendant Manufacturers. On information and belief, it has received the Defendant Manufacturers' cow's milk-based products for free and/or at a significant discount, and has granted their sales representatives access to its healthcare professionals and medical staff. These sales representatives have provided deceptive information that Penn Medicine reasonably knew or should have known would ultimately reach parents through those staff. This arrangement dovetails with the Defendant Manufacturers' own marketing strategies" and use of salespersons.

### *Safer Alternative Designs*

79.     The Defendant Manufacturers' cow's milk-based products made specifically for premature infants are unreasonably unsafe for those infants. The Defendant Manufacturers could have used pasteurized breast milk instead of cow's milk in their products, which would have produced a safer product.

80.     Prolacta Bioscience manufactures and sells breast milk-based feeding products, specifically designed for preterm infants, which contain no cow's milk. This alternative design provides all the necessary nutrition for growth and development that cow's milk-based products provide, without the same unreasonably dangerous and deadly effects.

81.     On information and belief, Abbott and Mead were aware of the significantly increased risk of NEC and death associated with their cow's milk-based products, and instead of warning of the dangers, or removing them altogether, Abbott and Mead have continued to use cow's milk as the

Case ID: 220302606
Control No.: 23096740

foundation of their products.

## CAUSES OF ACTION
## COUNT I:  STRICT LIABILITY FOR DESIGN DEFECT
### (Against Abbott and Mead)

82.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

83.     Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was not unreasonably dangerous.

84.     Abbott and Mead also owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was merchantable and reasonably suited for their intended use.

85.     Abbott and Mead knew that their products would be used to feed premature infants like the Injured Infant and knew (or reasonably should have known) that use of their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, and that such use was therefore unreasonably dangerous to premature infants, not reasonably suited for the use intended, not merchantable, and had risks that exceeded a reasonable buyer's expectations.   Nonetheless, they continued to sell and market their defective products as appropriate for premature infants.

86.     The Injured Infant ingested Abbott and/or Mead's unreasonably dangerous cow's milk-based products.  The risks of feeding those products to the Injured Infant outweighed the benefits. An ordinary consumer would not expect those products to carry a significant risk of serious injury and death from NEC.

87.     Abbott and Mead knew (or reasonably should have known) that breast milk-based nutrition did not carry the same risks of NEC, serious injury, and death that their products do.

24

Case ID: 220302606
Control No.: 23096740

88.     Abbott's and Mead's products contained cow's milk at the time they left the manufacturing facility.

89.     Abbott and Mead did not develop a human-milk based product that was safer for premature infants and did not reformulate their products to reduce the risk of NEC, serious injury, and death, even though doing so was economically and technologically feasible and even though pasteurized breast milk was an available alternative.

90.     Abbott's and/or Mead's products were fed to the Injured Infant, which caused and/or increased the risk of their NEC and injuries.

91.     As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.  Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

    a.      For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

    b.      For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

    c.      For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

Case ID: 220302606
Control No.: 23096740

    d.      For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

    e.      For interest as permitted by law;

    f.      For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

    g.      For such other and further relief as the Court deems proper.

## COUNT II:  STRICT LIABILITY FOR FAILURE TO WARN
### (Against Abbott and Mead)

92.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

93.    Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide adequate warnings or instructions about the dangers and risks associated with the use of their products with preterm infants, specifically including but not limited to the risk of NEC, serious injury, and death.

94.    Abbott's and Mead's duty to warn is part of their general duty to design, manufacture, and sell their infant products in a manner that is reasonably safe for their foreseeable uses.   By designing their products with cow's milk-based ingredients, Abbott and Mead undertook a duty to warn of the unreasonable risk of harm posed by those ingredients, specifically including the significantly increased risk of NEC, severe injury, and death.   The failure to warn makes the products at issue in this litigation unreasonably dangerous.

95.    Specifically, Abbott and Mead breached their duty to warn of the foreseeable risks of the infant products at issue in this litigation because they knew or should have known that their cow's

Case ID: 220302606
Control No.: 23096740

milk-based premature infant products would be fed to premature infants like the Injured Infant, and that their products might cause the Injured Infant to develop NEC, severe injury, or death, yet they failed to provide adequate warnings of those risks. Among other risks, the Defendant Manufacturers:

a. Failed to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

b. Failed to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

c. Inserted warnings and instructions on their products that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

d. "Black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infant; and/or

e. Failed to disclose well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

f. Failed to insert a warning or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

g. Failed to provide a warning in a method reasonably calculated or expected

Case ID: 220302606
Control No.: 23096740

to reach the parents of newborns, like the Plaintiff Parent; and/or

h.      Failed to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products.

96.     Abbott's and Mead's products contained cow's milk at the time they left the manufacturing facility.

97.     As a direct and proximate result of the inadequacy of the warnings and the pervasive marketing campaigns suggesting the safety and necessity of the Defendant Manufacturers' products, the Injured Infant were fed cow's milk-based products, which caused and/or increased risk of their developing NEC.

98.     The unwarned-of risks are not of a kind that an ordinary consumer would expect. Had physicians and medical staff known of the extreme risk associated with feeding premature infants cow's milk-based formula, they would not have fed the Injured Infant those products.   Had the Plaintiff Parent known of the significant risks of feeding the Injured Infant cow's milk-based formula, they would not have allowed such products to be fed to the Injured Infant.

99.     As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a.      For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.      For damages for past, present, and future emotional distress, loss of

28

enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.  For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.  For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.  For interest as permitted by law;

f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.  For such other and further relief as the Court deems proper.

## COUNT III: NEGLIGENCE
### (Against Abbott and Mead)

100.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

101.    Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to exercise reasonable care to design, test, manufacture, inspect, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

102.    At all times relevant to this action, the Injured Infant's healthcare professionals and medical

29

Case ID: 220302606
Control No.: 23096740

staff used the products at issue in their intended manner and for their intended purpose.

103.    Abbott and Mead, directly or indirectly, negligently, and/or defectively made, created, manufactured, designed, assembled, tested, marketed, sold, and/or distributed the cow's milk-based infant products at issue in this litigation and thereby breached their duty to the general public and the Plaintiff Parent.

104.    Specifically, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based infant products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by:

  a. Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

  b. Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

  c. Inserting warnings and instructions that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

  d. Failing to insert a large and prominent "black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infants; and/or

  e. Failing to provide well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

  f. Failing to insert a warning or instruction to healthcare professionals and

Case ID: 220302606
Control No.: 23096740

other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

g. Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns, like the Plaintiff Parent; and/or

h. Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products.

105. In addition, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes in infants who ingest their products.

106. As a direct and proximate result of the Defendant Manufacturers' failure to act in a reasonably prudent manner and their breach of duty, the Injured Infant was fed cow's milk-based products, which caused and/or increased the risk of their developing NEC.

107. Had Abbott and Mead satisfied their duties to the consuming public in general, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

108. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers,

Case ID: 220302606
Control No.: 23096740

individually, jointly and severally, as follows:

       a.     For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

       b.     For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

       c.     For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

       d.     For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

       e.     For interest as permitted by law;

       f.     For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

       g.     For such other and further relief as the Court deems proper.

### COUNT IV:  INTENTIONAL MISREPRESENTATION
### (Against Abbott and Mead)

109.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

110.    At all times relevant to this action, the Injured Infant consumed the Defendant Manufacturers' products in their intended manner and for their intended purpose.

32

Case ID: 220302606
Control No.: 23096740

111.     Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, fulsome information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

112.     Abbott and Mead breached their duty through misrepresentations made to consumers, physicians, and medical staff in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable and intended recipients of this information.

113.     Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis and prior to the time the Injured Infant was fed their products:

  a.     That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

  b.     That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

  c.     That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or

  d.     That cow's milk-based products were safe for premature infants; and/or

  e.     That cow's milk-based products were necessary for optimum growth; and/or

  f.     That cow's milk-based products were similar or equivalent to breast milk;

33

Case ID: 220302606
Control No.: 23096740

and/or

g.      That their products were safe and more like breast milk than other infant

products and that they had removed the harmful ingredients of cow's milk

when, in fact, the cow's milk in their products was still capable of causing

NEC, serious injury, and death; and/or

h.      That their products were based on up-to-date science, which made them safe

for premature infants; and/or

i.      Omitting the material fact that their products significantly increased the risk

of NEC in premature infants.

114.    Abbott and Mead had actual knowledge, or, at a minimum, a reckless indifference, to whether the aforementioned misrepresentations were false. The Defendant Manufacturers' misrepresentations were intended to, and in fact did, mislead physicians and medical staff, including the Injured Infant's physicians and medical staff, to provide their infant products to babies, including the Injured Infant.

115.    The Plaintiff Parent was not aware that these misrepresentations were false and justifiably relied on them. The Defendant Manufacturers' misrepresentations induced the Plaintiff Parent to allow their children to be fed Abbott's and Mead's infant products, in reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging. Had Abbott and Mead not committed these intentional misrepresentations, the Injured Infant would not have been exposed to the Defendant Manufacturers' unreasonably dangerous cow's milk-based products.

116.    As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased risk of their developing NEC and subsequent injuries.

Case ID: 220302606
Control No.: 23096740

117.    As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.    Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a.    For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.    For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.    For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.    For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.    For interest as permitted by law;

f.    For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.    For such other and further relief as the Court deems proper.

Case ID: 220302606
Control No.: 23096740

## COUNT V:  NEGLIGENT MISREPRESENTATIONS
### (Against Abbott and Mead)

118.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

119.    At all times relevant to this action, the Injured Infant consumed the products at issue in their intended manner and for their intended purpose.

120.    Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, and complete information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

121.    In the course of their business, Abbott and Mead breached their duty through misrepresentations made to consumers, physicians, and medical staff in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable recipients of this information.

122.    Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis and prior to the time the Injured Infant was fed their products:

      a.     That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

      b.     That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

36

Case ID: 220302606
Control No.: 23096740

c.    That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or

d.    That cow's milk-based products were safe for premature infants; and/or

e.    That cow's milk-based products were necessary for optimum growth; and/or

f.    That cow's milk-based products were similar or equivalent to breast milk; and/or

g.    That their products were safe and more like breast milk than other infant products and that they had removed the harmful ingredients of cow's milk when, in fact, the cow's milk in their products was still capable of causing NEC, serious injury, and death; and/or

h.    That their products were based on up-to-date science, which made them safe for premature infants; and/or

i.    Omitting the material fact that their products significantly increased the risk of NEC in premature infants.

123.    Abbott and Mead were negligent or careless in not determining those representations to be false.

124.    The Defendant Manufacturers' misrepresentations were intended to and did in fact induce physicians and medical staff, including the Injured Infant's physicians and medical staff, to provide their products to babies, including the Injured Infant.

125.    The Defendant Manufacturers' misrepresentations induced, and were intended to induce, the Plaintiff Parent to allow their child to be fed Abbott's and Mead's infant products, in justifiable reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging. Had Abbott and Mead not committed these negligent

Case ID: 220302606
Control No.: 23096740

misrepresentations, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

126.    As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased of their developing NEC and subsequent injuries.

127.    As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.    Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a.    For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.    For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.    For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.    For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.    For interest as permitted by law;

Case ID: 220302606
Control No.: 23096740

f.     For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.     For such other and further relief as the Court deems proper.

**COUNT VI: FAILURE TO WARN**
**(Against Penn Medicine and Pennsylvania Hospital)**

128.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

129.    Penn Medicine and Pennsylvania Hospital as purchaser, supplier, and/or distributor of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to purchase, supply, and distribute products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose, and/or to formulate, adopt, and enforce adequate rules and policies for the same.

130.    At all times relevant to this action, the Injured Infant used the cow's milk-based products purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

131.    Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital, managing these individuals during their treatment of the Injured Infant.

132.    Penn Medicine and Pennsylvania Hospital negligently, outrageously, and recklessly supplied and distributed the Defendant Manufacturers' milk-based infant feeding products to these healthcare professionals and medical staff for use on premature infants, including the Injured Infant.

133.    Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute,

39

and/or sell their products at Pennsylvania Hospital. The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff. These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products to consumers, such as the Plaintiff Parent.

134. Penn Medicine and Pennsylvania also knowingly, and intentionally, allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

135. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that they acquired, distributed, and supplied the Defendant Manufacturers' cow's milk-based infant products that these products significantly increased the risk of NEC, serious injury, and death.

136. Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

      a.    Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or

      b.    Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

      c.    Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an

Case ID: 220302606
Control No.: 23096740

informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

d.  Failing to provide its healthcare professionals and medical staff with the well- researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

e.  Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns; and/or

f.  Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

g.  Failing to prevent the Defendant Manufacturers' sales representatives from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

137.  Reasonable hospitals under the same or similar circumstances would have warned of the above risks, would have instructed their healthcare professionals and medical staff—as well as patients—on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

138.  Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

41

Case ID: 220302606
Control No.: 23096740

139.    Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to warn its medical providers and patients about the Defendant Manufacturers' unreasonably dangerous products, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

140.    As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

141.    As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the Defendant Manufacturers' unreasonably dangerous products, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

a.    For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.    For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine's conduct;

c.    For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

Case ID: 220302606
Control No.: 23096740

    d.     For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from Penn Medicine and Pennsylvania Hospital's oppressive, outrageous, reckless, and/or malicious conduct, as permitted by law;

    e.     For interest as permitted by law;

    f.     For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

    g.     For such other and further relief as the Court deems proper.

**COUNT VII: CORPORATE LIABILITY OF HEALTH-CARE PROVIDER**
**(Against Penn Medicine and Pennsylvania Hospital)**

142.    Plaintiff incorporates by references each of the preceding paragraphs as if fully set forth herein.

143.    At all relevant times, Penn Medicine and Pennsylvania Hospital owed a duty of care to the Injured Infant to ensure their safety and well-being while the Injured Infant was under the care of Pennsylvania Hospital staff.   Specifically, Penn Medicine and Pennsylvania Hospital had a duty to the Injured Infant to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the Injured Infant.   Further, Penn Medicine and Pennsylvania Hospital owed a duty to the Injured Infant to oversee its healthcare professionals and medical staff that provided patient care to the Injured Infant.

144.    Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to formulate, adopt, and enforce adequate rules and policies for the purchase, supply, distribution, and use of products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose and ensured quality care for the Injured Infant.

145.    At all times relevant to this action, the Injured Infant used the cow's milk-based products

43

purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

146.     Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute, and/or sell their products at Pennsylvania Hospital.   The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff.   These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products.

147.     Penn Medicine and Pennsylvania Hospital also knowingly allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

148.     Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that it formulated, adopted, and enforced its rules for the acquisition, distribution, and supply of the Defendant Manufacturers' cow's milk-based infant products, including the access afforded the Defendant Manufacturer's sales representatives, that these products significantly increased the risk of NEC, serious injury, and death for premature infants.

149.     Penn Medicine and Pennsylvania Hospital  knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

Case ID: 220302606
Control No.: 23096740

150.     Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

     a.    Failing to formulate, adopt, and enforce adequate rules and policies that would have restricted the use of cow's milk-based products for feeding premature babies; and/or

     b.    Failing to formulate, adopt, and enforce adequate rules and policies that warned the Plaintiff Parent that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

     c.    Failing to formulate, adopt, and enforce adequate rules and policies that warned its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature babies like the Injured Infant; and/or

     d.    Failing to formulate, adopt, and enforce adequate rules and policies to instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

     e.    Failing to formulate, adopt, and enforce adequate rules and policies to provide its healthcare professionals and medical staff with the well-researched and well- established studies that link cow's milk-based products to NEC and death in premature infants; and/or

     f.    Failing to formulate, adopt, and enforce adequate rules and policies to

45

Case ID: 220302606
Control No.: 23096740

ensure a warning in a method reasonably calculated/expected to reach the parents of newborns, like the Plaintiff Parent; and/or

g.    Failing to formulate, adopt, and enforce adequate rules and policies to prevent the Defendant Manufacturers' sales representative from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants; and/or

h.    Failing to establish a donor milk program that was sufficient to meet the needs of the premature babies, like the Injured Infant.

151.    A reasonable hospital under the same or similar circumstances would have formulated, adopted, and enforced adequate policies, and rules to restrict the feeding of cow's milk-based products to premature babies, including developing an adequate donor milk program, instructing its healthcare professionals and medical staff on the safe use of Defendants Manufacturers' cow's milk-based products, and restricting the marketing of the Defendant Manufacturers' unreasonably dangerous products to its healthcare professionals, medical staff, and parents of premature infants under its care.

152.    Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to formulate, adopt, and enforce adequate rules and policies to ensure the quality care of its patients, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

153.    As a direct and proximate result of Penn Medicine and Pennsylvania Hospital failure to formulate and enforce adequate policies and rules related to the danger posed by the Defendant

46

Case ID: 220302606
Control No.: 23096740

Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

154.    As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital negligent, reckless, and outrageous conduct the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

155.    In the alternative, Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to oversee the practicing healthcare professionals and medical staff that provided the products at issue to infants under Pennsylvania Hospital's care, including the Injured Infant.

156.    Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital and was responsible for overseeing those individuals during their treatment of the Injured Infant.

157.    Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, recklessly, and outrageously breached its duty by:

> a.    Failing to oversee its healthcare professionals and medical staff on their use of cow's milk-based products for feeding premature babies; and/or
>
> b.    Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or
>
> c.    Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature

Case ID: 220302606
Control No.: 23096740

babies like the Injured Infant; and/or

d.      Failing to oversee its healthcare professionals and medical staff to restrict their feeding of cow's milk-based products to premature babies; and/or

e.      Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

f.      Failing to provide its healthcare professionals and medical staff with the well- researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

g.      Failing to provide its healthcare professionals and medical staff with warnings about the dangers of the Defendants' Manufacturers products in a method reasonably calculated/expected to reach the parents of newborns; and/or

h.      Failing to provide statistical evidence to its healthcare professionals and medical staff showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

i.      Failing to oversee its healthcare professionals and medical staff to ensure that the Defendant Manufacturers' sales representatives' misrepresentations that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants had not influenced the use and/or misuse of the Defendant Manufacturers' products.

48

Case ID: 220302606
Control No.: 23096740

158.    A reasonable hospital under the same or similar circumstances would have warned of the above risks, would have instructed its healthcare professionals and medical staff on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

159.    A reasonable hospital under the same or similar circumstances would have overseen and managed its healthcare professionals and medical staff to ensure that they received proper training and updating on the risks associated with feeding cow's milk-based formula to premature infants.

160.    Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to oversee its healthcare professionals and medical staff who provide patient care, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

161.    As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to oversee its healthcare professionals and medical staff on the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

162.    As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's negligent and reckless conduct, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

      a.    For compensatory damages in an amount to be proven at trial and in

49

Case ID: 220302606
Control No.: 23096740

excess of $50,000 and this Court's arbitrational limit;

b.  For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine and Pennsylvania Hospital's conduct;

c.  For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.  For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from Penn Medicine's oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.  For interest as permitted by law;

f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.  For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

163.  Plaintiff hereby demands a jury trial for all claims triable.


Dated:   9/8/2023

                                 Respectfully submitted,

                                 **KLINE & SPECTER, P.C.**

By:   /s/ Timothy A. Burke
                                 Thomas R. Kline, Esq.
                                 Tobias L. Millrood, Esq.
                                 Elizabeth A. Crawford, Esq.

Case ID: 220302606
Control No.: 23096740

Timothy A. Burke, Esq.
John P. O'Neill, Esq.
Attorney I.D. Nos.: 28895 / 77764 / 313702 /
320927 / 205677

Benjamin Whiting, Esq. (pro hac vice)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
Fax: (312) 971-3502
ben.whiting@kellerpostman.com

51

Case ID: 220302606
Control No.: 23096740

# EXHIBIT B

Case ID: 220302606
Control No.: 23096740



**FILED**
San Francisco County Superior Court

JUL 1 2 2023

CLERK OF THE COURT

BY: _Claudia Miller_
Deputy Clerk

E-SERVICE
70372801
Jul 12 2023
03:26PM
File & ServeXpress

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATED PROCEEDINGS SPECIAL TITLE (RULE 3.550) | JUDICIAL COUNCIL COORDINATION PROCEEDING No. 5257 |
| | Case No. CJC-23-005257 |
| MEAD JOHNSON PRODUCT CASES | ORDER ON DEFENDANT ABBOTT LABORATORIES' DEMURRER TO AMENDED COMPLAINTS |

**This Document Relates To:**

*Benjiman Cribb v. Mead Johnson & Company, LLC, et al.*, San Joaquin Superior Court, Case No. STK-CV-UMT-2022-0002205

*Harrell v. Abbott Laboratories, et al.*, San Francisco County Superior Court, Case No. CGC-22-598976

*Hartwick, et al. v. Mead Johnson & Company, LLC, et al.*, Alameda County Superior Court, Case No. 22CV0088337

*Thomas, et al. v. Mead Johnson & Company LLC, et al.*, Alameda County Superior Court, Case No. 22CV008511

*Tracy, et al. v. Mead Johnson & Company, LLC, et al.*, San Francisco County Superior Court, Case No. CGC-22-598819

Case ID: 220302606
Control No.: 23096740

1  *Woods v. Mead Johnson & Company, LLC, et al.,*
   San Joaquin Superior Court, Case No. STK-CV-
2  UMT-2022-0002209

3          Defendant Abbott Laboratories' Demurrer to Amended Complaints came on for hearing on July

4  10, 2023.  Having considered the pleadings and papers on file in the action, and the arguments of counsel

5  presented at the hearing, the Court hereby sustains the demurrer with leave to amend.

6                                            **BACKGROUND**

7          In this coordinated proceeding, Plaintiffs are parents or representatives of their minor children or

8  of the estates of their minor children ("Injured Infants"), who filed actions against Mead Johnson &

9  Company, LLC, Mead Johnson Nutrition Company ("Mead Johnson" or "Mead"), and Abbott

10 Laboratories ("Abbott") (collectively, "Defendant Manufacturers") and various hospitals and medical

11 centers.

12         Plaintiffs allege the Injured Infants consumed Defendant Manufacturers' cow's milk-based

13 products and developed necrotizing enterocolitis ("NEC").  Injured Infants sustained injuries with lifelong

14 effects or passed away.  Plaintiffs seek to state causes of action for strict products liability based on design

15 defect and failure to warn, negligence, intentional misrepresentation, negligent misrepresentation,

16 survival, and wrongful death against Defendant Manufacturers.

17         Abbott demurs to the following complaints:  (1) Second Amended Complaint ("SAC") in

18 *Benjiman Cribb v. Mead Johnson & Company, LLC, et al.*, San Joaquin Superior Court, Case No. STK-

19 CV-UMT-2022-0002205 ("*Cribb*"); (2) SAC in *Harrell v. Abbott Laboratories, et al.*, San Francisco

20 County Superior Court, Case No. CGC-22-598976 ("*Harrell*"); (3) First Amended Complaint ("FAC") in

21 *Hartwick, et al. v. Mead Johnson & Company, LLC, et al.*, Alameda County Superior Court, Case No.

22 22CV0088337 ("*Hartwick*"); (4) FAC in *Thomas, et al. v. Mead Johnson & Company LLC, et al.*,

23 Alameda County Superior Court, Case No. 22CV008511 ("*Thomas*"); (5) FAC in *Tracy, et al. v. Mead

24 Johnson & Company, LLC, et al.*, San Francisco County Superior Court, Case No. CGC-22-598819

25 ("*Tracy*"); and (6) SAC in *Woods v. Mead Johnson & Company, LLC, et al.*, San Joaquin Superior Court,

26 Case No. STK-CV-UMT-2022-0002209 ("*Woods*") (collectively, "Complaints").  (Demurrer, 3.)  Abbott

27 demurs on the ground that Plaintiffs' causes of action are time-barred by Code of Civil Procedure § 335.1

Case ID: 220302606
Control No.: 23096740

and Plaintiffs have not stated causes of action for intentional misrepresentation and negligent misrepresentation. (Demurrer, 3-6.)[1] Mead Johnson joins Abbott's demurrer. (Joinder, 3-4.) Plaintiffs oppose the demurrer.

**LEGAL STANDARD**

A demurrer lies where "the pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc. § 430.10(e).) A demurrer admits "all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The complaint is given a reasonable interpretation, reading it as a whole and its parts in their context. (*Id.*) The Court accepts as true, and liberally construes, all properly pleaded allegations of material fact, as well as those facts which may be implied or reasonably inferred from those allegations; its sole consideration is whether the plaintiff's complaint is sufficient to state a cause of action under any legal theory. (*O'Grady v. Merchant Exchange Prods., Inc.* (2019) 41 Cal.App.5th 771, 776-777.)

**DISCUSSION**

**I.      Plaintiffs' Allegations Are Insufficient To Invoke The Discovery Rule.**

Abbott contends the parent Plaintiffs' direct claims are time-barred under Code of Civil Procedure § 335.1 because the statute of limitations began to run on the date of the Injured Infants' alleged NEC diagnosis and Plaintiffs filed suit long after the statute of limitations. (Opening Brief, 5.) In addition, Abbott asserts that the claims brought by Plaintiffs on behalf of deceased infants are time-barred for both the estate and Plaintiffs because these actions "were brought more than two years after the infant's alleged date of death." (Opening Brief, 5-6; see Joinder, 6.) Plaintiffs do not dispute that the applicable statute of limitations is two years. Rather, Plaintiffs assert their complaints are timely under the discovery rule. (Opposition, 4-7.)

Code of Civil Procedure "Section 335.1 provides a two-year statute of limitations for injury or wrongful death." (*Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1070; Code Civ. Proc. § 335.1 ["Within two years: An action for assault, battery, or injury to, or for the death of, an

---

[1] Abbott's Request for Judicial Notice is denied as the documents are not relevant to the Court's resolution of Abbott's demurrer.

Case ID: 220302606
Control No.: 23096740

individual caused by the wrongful act or neglect of another."].)  The two-year statute of limitations period under Code of Civil Procedure § 335.1 "begins to run when the cause of action accrues." (*Daley v. Regents of University of California* (2019) 39 Cal.App.5th 595, 602.)

"Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.)  For both negligence and strict liability products liability claims, "the last element to occur is generally, as a practical matter, the injury to the future plaintiff." (*Id.* at 809.)  "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Id.* at 807; *Carrillo v. County of Santa Clara* (2023) 89 Cal.App.5th 227, 234.)  The discovery rule "sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing.  The first to occur under these two tests begins the limitations period." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)

Under the objective test, which applies here,

> A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements."  Under this standard, accrual does not wait until the plaintiff knows facts supporting each specific legal element of the cause of action; it occurs when the plaintiff has "reason to at least suspect that a *type of wrongdoing has injured them*."  "In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation."

(*Daley*, 39 Cal.App.5th at 603, quoting *Fox,* 35 Cal.4th at 807-808 (cleaned up).)[2]  "To rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." (*Carrillo*, 89 Cal.App.5th at 234.)  "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations

---

[2] The discovery rule applies to personal injury and wrongful death claims under § 335.1. (*Daley*, 39 Cal.App.5th at 603-606.)

Case ID: 220302606
Control No.: 23096740

1  will not withstand demurrer." (*Fox*, 35 Cal.4th at 808 (cleaned up).) "Mere conclusory assertions that

2  delay in discovery was reasonable are insufficient and will not enable the complaint to withstand general

3  demurrer.  Arguments that discovery-rule issues are necessarily factual and cannot be resolved on

4  demurrer have been rejected." (*Ventura29 LLC v. City of San Buenaventura* (2023) 87 Cal.App.5th 1028,

5  1044-1045 (cleaned up).)

6  Here, it is undisputed that the Complaints show on their face that Plaintiffs' claims would be

7  barred without the benefit of the discovery rule.  As Defendants show, ten of the infants on whose behalf

8  Plaintiffs assert claims were born between 3 to 16 years before the Complaints were filed.  (Opening

9  Brief, 3 [table].)  And the four infants as to whom Plaintiffs bring wrongful death and survival claims died

10  from 3 to 17 years before the Complaints were filed.  (*Id.* at 4 [table].)  In each case, Plaintiffs allege that

11  the infants were administered Defendant Manufacturers' products "shortly after [their] birth," and

12  developed NEC "[s]hortly after" first ingesting those products.  (E.g., *Cribb* SAC ¶¶ 11, 12.)  Thus,

13  Plaintiffs' claims would only be timely if the discovery rule delayed accrual of their causes of action.

14  The allegations regarding delayed discovery are nearly identical in each complaint.  In particular,

15  Plaintiffs allege they "did not know, and had no reason to know or suspect, that [Injured Infants] NEC

16  could have been caused by the Defendant Manufacturers' products.  [Plaintiffs] learned of the direct

17  connection between the Defendant Manufacturers' products and NEC only when [they] learned of this

18  litigation, less than one year before [they] filed suit." (*Cribb* SAC ¶ 15; *Harrell* SAC ¶ 18; *Hartwick* FAC

19  ¶¶ 16, 22; *Thomas* FAC ¶¶ 20, 26, 32, 38, 50; *Tracy* FAC ¶¶ 20, 32, 42; *Woods* FAC ¶ 15.)[3]  Plaintiffs

20  allege that "[d]espite exercising reasonable diligence, [Plaintiffs] were unable to have made the discovery

21  earlier via a reasonable investigation because the Defendant Manufacturers in this litigation concealed the

22  wrongful cause of the Injured Infants' injuries and/or death." (*Cribb* SAC ¶ 16; *Harrell* SAC ¶ 19;

23  *Hartwick* FAC ¶ 23; *Thomas* FAC ¶ 51; *Tracy* FAC ¶ 43; *Woods* FAC ¶ 16; see, e.g., *Cribb* SAC ¶ 17

24  ["risk of [NEC] was hidden and not warned about on the face of *any* of the Defendant Manufacturers'

25  products." (emphasis in original)]; *Harrell* SAC ¶ 20 [same]; *Hartwick* FAC ¶ 24 [same]; *Thomas* FAC ¶

26  

27  [3] Plaintiff Parent Robneisha Johnson does not allege she did not know and that a reasonable investigation
did not reveal a factual basis to know R.M.B.'s NEC was caused by Defendant Manufacturers' products.
(See *Tracy* FAC ¶¶ 33-37.)  She also does not allege when she learned of the connection between

28  Defendant Manufacturers' products and NEC.  (See *id.*)

Case ID: 220302606
Control No.: 23096740

52 [same]; *Tracy* FAC ¶ 44 [same]; *Woods* FAC ¶ 17 [same].)  Plaintiffs allege "any research conducted . . . immediately after the Injured Infants' injury and/or death, or at any time prior to learning of this litigation, would not have led a reasonable person to suspect that the Defendant Manufacturers' products could have caused the Injured Infants' injuries and/or death" due to "misleading information distributed by the Defendant Manufacturers." (*Cribb* SAC ¶ 20; *Harrell* SAC ¶ 21; *Hartwick* FAC ¶ 27; *Thomas* FAC ¶ 55; *Tracy* ¶ 47; *Woods* FAC ¶ 20.)  Plaintiffs further allege "the Defendant Manufacturers' distribution agreements with [Defendant Hospitals] were also not public or knowable to the Plaintiff Parents, nor could any reasonable investigation outside of litigation have uncovered the terms of those agreements." (*Cribb* FAC ¶ 21; *Harrell* SAC ¶ 22; *Hartwick* FAC ¶ 28; *Thomas* FAC ¶ 56; *Tracy* ¶ 48; *Woods* FAC ¶ 21.)

Plaintiffs' allegations are insufficient to invoke the discovery rule because Plaintiffs do not adequately plead specific facts showing the time and manner of discovery and their inability to have made earlier discovery despite reasonable diligence.  As to the first factor, each Plaintiff alleges they only "learned of the direct connection between the Defendant Manufacturers' products and NEC [] when they learned of this litigation." (*Cribb* SAC ¶ 15; *Harrell* SAC ¶ 18; *Hartwick* FAC ¶¶ 16, 22; *Thomas* FAC ¶¶ 20, 26, 32, 38, 50; *Tracy* FAC ¶¶ 20, 32, 42; *Woods* FAC ¶ 15.)  However, not all Plaintiffs can allege they learned the factual bases for their causes of action from this litigation.  At least one of the Plaintiffs must be the impetus for this litigation.[4]

The second factor is not met either.  "In order to employ the discovery rule to delay accrual of a cause of action, a plaintiff must demonstrate that he or she conducted a reasonable investigation of all potential causes of his or her injury." (*Fox*, 35 Cal.4th at 809.)

> Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury.  If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light.  In order to adequately

---

[4] Plaintiffs explained at the hearing that the reference to "the litigation" signified the nationwide NEC litigation generally, not necessarily the individual complaints included in this coordinated proceeding, and that Plaintiffs discovered the cause of their injuries as a result of communications with Plaintiffs' counsel regarding such litigation.  (See also Opposition, 6 [asserting that Plaintiffs "did not discover the cause of injury . . . until they became aware of others' lawsuits"].)  That general explanation is insufficient; each Plaintiff must allege specific facts regarding the timing and manner of discovery.

1  allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent
2  investigation of the circumstances of the injury, he or she could not have reasonably discovered
   facts supporting the cause of action within the applicable statute of limitations period.

3  (*Id.*; see *id.* at 811 [finding the plaintiff's first amended complaint was "insufficient to withstand demurrer
4  because it failed to allege specific facts that" the plaintiff "did not discover, nor suspect, nor was there any
5  means through which her reasonable diligence would have revealed, or through which she would have
6  suspected the [allegedly defective product] as a cause of her injury until the deposition of" her doctor was
7  taken.].)  Even if Defendant Manufacturers allegedly failed to disclose the true facts, Plaintiffs must allege
8  that they acted with reasonable diligence to determine the cause of their injuries and were unable to have
9  made earlier discovery despite such diligence.  (See *Eidson v. Medtronic, Inc.* (N.D. Cal. 2013) 981
10 F.Supp.2d 868, 893-894 [complaint filed more than six years after injury occurred failed to allege facts
11 "establishing what steps [plaintiffs] actually took to investigate after they discovered" the injury or
12 "demonstrating why despite their alleged 'diligence,' they were unable to discover the connection 'until a
13 date within the applicable statute of limitations,' other than to blame Defendants for making
14 misrepresentations and omissions.  They do not explain how Defendants' alleged actions delayed their
15 discovery."].)  Accordingly, Abbott's demurrer is sustained with leave to amend on this ground.

16 **II.  Plaintiffs Do Not Plead Misrepresentation Claims With Particularity.**

17      Abbott argues Plaintiffs' allegations as to intentional and negligent misrepresentation lack
18 specificity because Plaintiffs "fail to identify any specific false statements, and they fail to allege that any
19 of the plaintiffs ever saw, heard of, or otherwise relied upon any of those allegedly false statements."
20 (Opening Brief, 10; see *id.* at 11-14; Joinder, 6-7; Reply, 12-13; Mead Reply, 3-8.)  The Court agrees.

21      "The essential elements of . . . intentional misrepresentation are: (a) misrepresentation (false
22 representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to
23 defraud, i.e., to induce reliance; (d) actual and justifiable reliance; and (e) resulting damage." (*Berry v.*
24 *Frazier* (2023) 90 Cal.App.5th 1258, 1268.)  The elements of negligent misrepresentation are the same,
25 except no scienter or intent to defraud is required.  (*Nissan Motor Acceptance Cases* (2021) 63
26 Cal.App.5th 793, 823.)  Fraud must be pled with particularity, which "necessitates pleading *facts* which
27 show how, when, where, to whom, and by what means the false representations were made." (*State ex*

Case ID: 220302606
Control No.: 23096740

*rel. Edelweiss Fund, LLC v. JPMorgan Chase & Company* (2023) 90 Cal.App.5th 1119, 1136-1137, quoting *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (internal quotations omitted).) General and conclusory allegations are insufficient. (*Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1109.)

As to misrepresentations, Plaintiffs allege Defendant Manufacturers "aggressively marketed [] cow's milk-based products as medically endorsed and nutritionally equivalent alternatives to breast milk." (*Cribb* SAC ¶ 37; *Harrell* SAC ¶ 42; *Hartwick* FAC ¶ 44; *Thomas* FAC ¶ 72; *Tracy* FAC ¶ 64; *Woods* FAC ¶ 37.) Plaintiffs allege this aggressive "marketing approach includes targeting the parents of preterm infants before they deliver and while they are still in the hospital with messages that the Defendant Manufacturers' [products] are safe and necessary for the growth and development of their vulnerable children." (*Cribb* SAC ¶ 38; *Harrell* SAC ¶ 43; *Hartwick* FAC ¶ 45; *Thomas* FAC ¶ 72; *Tracy* FAC ¶ 65; *Woods* FAC ¶ 38.) Plaintiffs allege Defendant Manufacturers made statements on their respective websites implying their products are safe while failing to warn of the risk of NEC, ignoring the existence of donor milk or human milk-based formula, representing their products support infant development, and representing their products are a substitute for human breast milk. (*Cribb* SAC ¶¶ 43-46, 50; *Harrell* SAC ¶¶ 50-51, 55; *Hartwick* FAC ¶¶ 50-53, 57; *Thomas* FAC ¶¶ 53-54, 78-81, 85; *Tracy* FAC ¶¶ 45-46, 69-73, 77; *Woods* FAC ¶¶ 44-46, 50.) Plaintiffs also allege, on information and belief, that Defendant Manufacturers made nine false statements of material fact. (*Cribb* SAC ¶¶ 111, 121; *Harrell* SAC ¶¶ 112, 122; *Hartwick* FAC ¶¶ 120, 130; *Thomas* FAC ¶¶ 149, 159; *Tracy* FAC ¶¶ 144, 154; *Woods* FAC ¶¶ 110, 120.)[5]

These allegations of misrepresentation are insufficient. To allege misrepresentation against a corporation, "the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469, quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157.) No specific allegations are pled in the Complaints. Plaintiffs must plead with particularity, as required, to place Defendants on notice of "certain

---

[5] "[A] pleading made on information and belief is insufficient if it merely asserts the facts so alleged without alleging such information that leads the plaintiff to believe that the allegations are true." (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1158-1159 (cleaned up).) Plaintiffs' allegations on information and belief fail to comply with this standard.

Case ID: 220302606
Control No.: 23096740

definite charges which can be intelligently met" and "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 838, quoting *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217 (internal quotations omitted).)[6]

As to reliance, Plaintiffs allege they were "not aware that [Defendant Manufacturers'] misrepresentations were false and justifiably relied on them." (*Cribb* SAC ¶ 114; *Harrell* SAC ¶ 115; *Hartwick* SAC ¶ 123; *Thomas* FAC ¶ 152; *Tracy* FAC ¶ 147; *Woods* FAC ¶113.) Plaintiffs allege the "misrepresentations induced the Plaintiff Parents to allow their children to be fed [Defendant Manufacturers'] infant products, in reliance on all the messaging they received about formula feeding, including directly or indirectly, the Defendant Manufacturers' messaging." (*Cribb* SAC ¶ 114; *Harrell* SAC ¶ 115; *Hartwick* FAC ¶ 123; *Thomas* FAC ¶ 152; *Tracy* FAC ¶ 147; *Woods* FAC ¶ 113; see *Cribb* SAC ¶ 124; *Harrell* SAC ¶ 125; *Hartwick* FAC ¶ 133; *Thomas* FAC ¶ 162; *Tracy* FAC ¶ 157; *Woods* FAC ¶ 123.)

"To allege actual reliance on misrepresentations with the required specificity for a fraud count, the plaintiff must plead that he believed the representations to be true … and that in reliance thereon (or induced thereby) he entered into a transaction." (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 231-232, quoting *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1063 (cleaned up); see *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 [negligent misrepresentation must also be pled with specificity].) The plaintiff must show that the reliance was reasonable by showing that (1) the matter was material in the sense that a reasonable person would find it important in determining how he or she would act and (2) it was reasonable for the plaintiff to have relied on the misrepresentation." (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1194.)

Here, Plaintiffs' general allegations are insufficient to plead reliance. None of the Plaintiffs allege they actually saw and relied on any misrepresentations. Plaintiffs do not identify the specific representations each Plaintiff relied upon and when those representations were made. In addition,

---

[6] Plaintiffs' reliance on *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235 (Opposition, 8-9), a class action, is misplaced.

Case ID: 220302606
Control No.: 23096740

Plaintiffs' allegations raise a fundamental issue with reliance.  Specifically, Plaintiffs allege "Hospital

Defendants' staff provided the Defendant Manufacturers' products to the Injured Infants directly, and

concealed from the Plaintiff Parents relevant information about those feedings, including that they had the

ability to request for their children other, non-cow's milk-based options." (*Cribb* SAC ¶ 74; *Harrell* SAC

¶ 76; *Hartwick* FAC ¶ 83; *Thomas* FAC ¶ 112; *Tracy* FAC ¶ 107; *Woods* FAC ¶ 73.)  "A plaintiff

establishes [actual] reliance when the misrepresentation or nondisclosure was an immediate cause of the

plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or

nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other

transaction." (*Hoffman*, 228 Cal.App.4th at 1193 (cleaned up).)  Therefore, if "relevant information about

[] feedings" was concealed from Plaintiff Parents, then it raises the issue of whether Plaintiffs could even

have relied on any purported representations.  (See also *Davis v. Abbott Labs* (C.D. Cal. 2021) 562

F.Supp.3d 585, 588 [granting motion to dismiss negligent misrepresentation claim where there were "no

allegations in the FAC that indicate Plaintiff relied on any of Defendant's alleged misrepresentations.

HMF [Similac Human Milk Fortifier] would have been administered by Baby Anderson's physician in

the NICU, and no allegations suggest that Plaintiff specifically chose HMF to be administered to her son

after relying on Defendant's representation that HMF was safe.  The factual allegations do not plausibly

suggest that Plaintiff relied on anything other than the doctor's judgment and assessment that HMF was a

proper supplement for Baby Anderson at the time he was admitted to the NICU.  If Plaintiff relied on the

NICU physician to administer the HMF while Baby Anderson was in the hospital, it is unclear how

Plaintiff could rely on any representations made by Defendant."]; *Ferry v. Mead Johnson & Co., LLC* (D.

Conn. 2021) 514 F.Supp.3d 418, 450-451 [dismissing claims for intentional and negligent

misrepresentation where, among other things, plaintiff did not allege that infant's parents or doctors ever

looked at Mead Johnson's website, did not allege that parents or doctors relied on any of the defendants'

representations, and did not allege facts giving rise to a strong inference of scienter]; *Hunte v. Abbott

Laboratories, Inc.* (D. Conn. 2021) 556 F.Supp.3d 70, 87-88, 90-93 [same].)

Accordingly, Abbott's demurrer is sustained with leave to amend on this ground.

1

## CONCLUSION AND ORDER

2

For the foregoing reasons, Abbott Laboratories' demurrer to the amended complaints is sustained

3

with leave to amend.  Plaintiffs shall file individual amended complaints by July 31, 2023.  Defendants

4

shall have thirty days to respond to the individual complaints.

5

IT IS SO ORDERED.

6

7

Dated: July 12, 2023

8

9

Ethan P. Schulman
Judge of the Superior Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case ID: 220302606
Control No.: 23096740.

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))

I, Felicia Green, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On July 12, 2023, I electronically served ORDER ON DEFENDANT ABBOTT LABORATORIES' DEMURRER TO AMENDED COMPLAINTS via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: JUL 12 2023

Brandon E. Riley, Court Executive Officer

By: _Felicia Green_
Felicia Green, Deputy Clerk

# EXHIBIT A-45

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

Filed and Attested by the
Office of Judicial Records
28 SEP 2023 03:47 pm
G. IMPERATO

| | |
|---|---|
| HOLLI CARTER, et al., : | |
| *Plaintiff*, : | MARCH TERM, 2022 |
| v. : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| *Defendants*. : | |
| BRANDY GOODMOND, et al., : | |
| *Plaintiff*, : | APRIL TERM, 2022 |
| v. : | No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| *Defendants*. : | |
| BRANDY GOODMOND, et al., : | |
| *Plaintiff*, : | APRIL TERM, 2022 |
| v. : | No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| *Defendants*. : | |
| JANEE HENDERSON, et al., : | |
| *Plaintiff*, : | APRIL TERM, 2022 |
| v. : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| *Defendants*. : | |
| KRISTEN KAJUFFA, et al., : | |
| *Plaintiff*, : | MARCH TERM, 2022 |
| v. : | No. 220302978 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| *Defendants*. : | |
| NAFEESAH MAYS, et al., : | |
| *Plaintiff*, : | MARCH TERM, 2022 |
| v. : | No. 220302963 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| *Defendants*. : | |
| CATHERINE McMILLIAN, et al., : | |
| *Plaintiff*, : | APRIL TERM, 2022 |
| v. : | No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| *Defendants*. : | |

| | |
|---|---|
| DAMEKA MOMENT, et al., | : |
| *Plaintiff,* | : APRIL TERM, 2022 |
| v. | : No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| NYDIA PARKER, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302983 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| ALEXANDRIA ROSS, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302981 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| LOREN SANDERS, et al., | : |
| *Plaintiff,* | : APRIL TERM, 2022 |
| v. | : No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| SAMAYA SHORT, et al., | : |
| *Plaintiff,* | : APRIL TERM, 2022 |
| v. | : No. 220400159 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| ALICE STILLS, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| CHRISTINA TAYLOR, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302606 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| NATISHA THOMAS, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al.,                     :           *Plaintiff,*           :              v.                  : MEAD JOHNSON & COMPANY, LLC, et al.,     :            *Defendants.*          : | MARCH TERM, 2022<br>No. 220400156 |
| JEANNATE WATSON, et al.,<br>     *Plaintiff,*    :<br>     v.      :<br>MEAD JOHNSON & COMPANY, LLC, et al.,  :<br>     *Defendants.*  :| MARCH TERM, 2022<br>No. 220302967 |
| GINA WIEGER, et al.,<br>     *Plaintiff,*    :<br>     v.      :<br>MEAD JOHNSON & COMPANY, LLC, et al.,  :<br>     *Defendants.*  :| MARCH TERM, 2022<br>No. 220302614 |
| GINA WIEGER, et al.,<br>     *Plaintiff,*    :<br>     v.      :<br>MEAD JOHNSON & COMPANY, LLC, et al.,  :<br>     *Defendants.*  :| MARCH TERM, 2022<br>No. 220302601 |
| SHANITA WIGGINS, et al.,<br>     *Plaintiff,*    :<br>     v.      :<br>MEAD JOHNSON & COMPANY, LLC, et al.,  :<br>     *Defendants.*  :| MARCH TERM, 2022<br>No. 220302986 |
| MELVENIA WILLIAMS, et al.,<br>     *Plaintiff,*    :<br>     v.      :<br>MEAD JOHNSON & COMPANY, LLC, et al.,  :<br>     *Defendants.*  :| APRIL TERM, 2022<br>No. 220400141 |

Case ID: 220302606
Control No.: 23096781

**<u>ORDER OF THE COURT</u>**

On this _____ day of _____, 2023, upon consideration of defendant Abbott Laboratories' preliminary objections to plaintiffs' amended complaints, its brief in support, and any response thereto, it is hereby ORDERED that defendant Abbott Laboratories' preliminary objections to plaintiffs' amended complaints are SUSTAINED. It is further ORDERED that Counts I through V of plaintiffs' complaints are DISMISSED as to Abbott Laboratories.

BY THE COURT:

_____

## NOTICE TO PLEAD

To: Plaintiffs

You are hereby notified to file a written response to the enclosed Preliminary Objections within twenty (20) days from service hereof or a judgment may be entered against you.

_Counsel for Defendant Abbott Laboratories_

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Sean P. Fahey (PA Bar No. 73305)
3000 Two Logan Square
Philadelphia, PA 19103
215.981.4296
Sean.Fahey@troutman.com

Ronni E. Fuchs (PA Bar No. 65561)
301 Carnegie Center, Suite 400
Princeton, NJ 08540
609.951.4183
Ronni.Fuchs@troutman.com

**CAMPBELL CONROY & O'NEIL, P.C.**
Joseph E. O'Neil (PA Bar No. 29053)
Meaghann C. Porth (PA Bar No. 307629)
Ryan J. O'Neil (PA Bar No. 314034)
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
610.964.1900
JONeil@CampbellTrialLawyers.com
MPorth@campbell-trial-lawyers.com
RONeil@campbell-trial-lawyers.com

**JONES DAY**
Marques Hillman Richeson (admitted _pro hac vice_)
901 Lakeside Avenue
Cleveland, OH 44114
216.586.7195
mhricheson@jonesday.com

Jennifer B. Flannery (PA Bar No. 74546)
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
404.581.8008
jbflannery@jonesday.com

_Attorneys for Defendant Abbott Laboratories_

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | | |
|---|---|---|
| HOLLI CARTER, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| BRANDY GOODMOND, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| BRANDY GOODMOND, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| JANEE HENDERSON, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| KRISTEN KAJUFFA, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302978 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| NAFEESAH MAYS, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302963 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| CATHERINE McMILLIAN, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

Case ID: 220302606
Control No.: 23096781

| | |
|---|---|
| DAMEKA MOMENT, et al., | : |
| *Plaintiff,* | : APRIL TERM, 2022 |
| v. | : No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| NYDIA PARKER, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302983 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| ALEXANDRIA ROSS, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302981 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| LOREN SANDERS, et al., | : |
| *Plaintiff,* | : APRIL TERM, 2022 |
| v. | : No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| SAMAYA SHORT, et al., | : |
| *Plaintiff,* | : APRIL TERM, 2022 |
| v. | : No. 220400159 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| ALICE STILLS, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| CHRISTINA TAYLOR, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302606 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

| | |
|---|---|
| NATISHA THOMAS, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

-3-

Case ID: 220302606
Control No.: 23096781

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al., | : |
|       *Plaintiff,* | :   MARCH TERM, 2022 |
|       v. | :   No. 220400156 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       *Defendants.* | : |

| | |
|---|---|
| JEANNATE WATSON, et al., | : |
|       *Plaintiff,* | :   MARCH TERM, 2022 |
|       v. | :   No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       *Defendants.* | : |

| | |
|---|---|
| GINA WIEGER, et al., | : |
|       *Plaintiff,* | :   MARCH TERM, 2022 |
|       v. | :   No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       *Defendants.* | : |

| | |
|---|---|
| GINA WIEGER, et al., | : |
|       *Plaintiff,* | :   MARCH TERM, 2022 |
|       v. | :   No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       *Defendants.* | : |

| | |
|---|---|
| SHANITA WIGGINS, et al., | : |
|       *Plaintiff,* | :   MARCH TERM, 2022 |
|       v. | :   No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       *Defendants.* | : |

| | |
|---|---|
| MELVENIA WILLIAMS, et al., | : |
|       *Plaintiff,* | :   APRIL TERM, 2022 |
|       v. | :   No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       *Defendants.* | : |

-4-

Case ID: 220302606
Control No.: 23096781

## <u>DEFENDANT ABBOTT LABORATORIES' PRELIMINARY OBJECTIONS<br>TO PLAINTIFFS' AMENDED COMPLAINTS</u>

This Court recognized obvious deficiencies in the 29 complaints that plaintiffs previously filed in the preterm infant nutrition cases and allowed plaintiffs time to cure these deficiencies—but plaintiffs have failed to do so. Instead, in 21 of the 29 cases, plaintiffs filed "amended" complaints that fail to remedy any of the fatal deficiencies recognized by the Court in the first instance. Rather than fixing the pleading defects, plaintiffs recycle the nearly identical, generic allegations they previously made—without any attempt to differentiate among the individual cases involving different infants born across different decades, at four different hospitals, with entirely different NICU teams and treatment courses involving different feeding regimens and nutrition products. Plaintiffs' carbon-copy amended complaints remain legally insufficient and are pled with insufficient specificity. Pursuant to Rules 1028(a)(2), 1028(a)(3) and 1028(a)(4) of the Pennsylvania Rules of Civil Procedure, Abbott's preliminary objections should be sustained, and all claims against Abbott should be dismissed. In support of its preliminary objections, Abbott states the following:

1.     In the above-captioned lawsuits, plaintiffs attack—without basis—specialized infant formulas and fortifiers essential to the survival and development of premature infants in Neonatal Intensive Care Units ("NICUs"). Plaintiffs filed each of these actions against defendants Mead Johnson & Company LLC, Mead Johnson Nutrition Company (together, "Mead Johnson"), Abbott, and each infant's hospital of birth (collectively, "defendants"), alleging that medical professionals at the hospital defendant administered Abbott's and/or Mead Johnson's cow's milk-based infant nutrition products to plaintiff, and that plaintiff was injured as a result.

2.     In their original complaints, plaintiffs alleged seven causes of action, five of which were asserted against Abbott and Mead Johnson: strict products liability design defect (Count I),

Case ID: 220302606<br>Control No.: 23096781

strict products liability failure to warn (Count II), negligence (Count III), intentional misrepresentation (Count IV), and negligent misrepresentation (Count V). The remaining claims (Counts VI and VII) were asserted against the hospital defendant. Each complaint was filed by a parent ("plaintiff-parent") on his or her own behalf, and also as a parent and natural guardian of the infant plaintiff ("plaintiff") (together "plaintiffs").

3.      On June 12, 2023, Abbott filed preliminary objections to plaintiffs' complaints on the grounds that their claims were legally insufficient and pled with insufficient specificity. Mead Johnson and certain hospital defendants filed preliminary objections as well.

4.      During a case management conference held on July 29, 2023, this Court acknowledged deficiencies in the complaints and provided plaintiffs with an opportunity to file amended complaints to correct, among other things, clear deficiencies related to product identification and plaintiffs' misrepresentation claims.

5.      On September 8, 2023, plaintiffs filed amended complaints in 21 of the 29 preterm infant nutrition cases pending at that time. The amended complaints involve the same basic claims as the original complaints, premised on allegations that medical professionals at the infants' birth hospitals administered Abbott's and/or Mead Johnson's cow milk-based infant nutrition products to them as newborns, and that they were injured as a result. *See, e.g.*, *Carter* Amended Complaint (the reference "Am. Compl.") ¶¶ 1-2, 12.[1]

---

[1] The substantive allegations against Abbott in all 21 amended complaints are nearly identical, although the precise paragraph numbering may diverge slightly. The amended complaints in the following 6 cases use identical paragraph numbering:  *Carter* (the reference Am. Compl.), *Henderson, Short, Thomas, Walker-Savage, Wieger (M.P.)*. Paragraph numbers for the other 15 complaints are cited in footnotes herein. With respect to the subject matter of this particular footnote, the same allegations are found at Am. Compl. ¶¶ 1-2, 12: *Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*; Am. Compl. ¶¶ 1-2, 11: *Kajuffa, Parker, Ross, Wiggins*. The Amended Complaint in this case is attached as Exhibit A.

Case ID: 220302606
Control No.: 23096781

6.      Plaintiffs' amended complaints fail to cure the deficiencies previously identified by the defendants and recognized by this Court.

## I.  PRELIMINARY OBJECTION FOR LEGAL INSUFFICIENCY OF ALL CLAIMS.

7.      Abbott incorporates the foregoing paragraphs as if set forth herein.

8.      Pursuant to Pa. R. Civ. P. 1028(a)(4), a preliminary objection may be filed by any party to a pleading regarding the legal insufficiency of a pleading.

9.      "The threshold inquiry in all products liability cases is whether there is a defect which rendered the product unreasonably dangerous." *Weiner v. Am. Honda Motor Co., Inc.*, 718 A.2d 305, 307 (Pa. Super. Ct. 1998). Plaintiffs must allege sufficient facts demonstrating that Abbott's products were unreasonably dangerous for their intended use, triggering a duty to warn.

10.     Despite a second opportunity, plaintiffs fail to do so. Plaintiffs' amended complaints are devoid of any ***facts*** showing that Abbott's preterm infant nutrition products are "unreasonably dangerous" when administered to premature and low birth weight infants. Tellingly, plaintiffs removed citations to the handful of studies on which they relied in their original complaints—none of which supported plaintiffs' bald contention that cow's milk-based feeding products cause NEC.

11.     Accordingly, this preliminary objection should be sustained, and all Counts against Abbott should be dismissed.

## II.  PRELIMINARY OBJECTION FOR LEGAL INSUFFICIENCY OF PLAINTIFFS' STRICT LIABILITY CLAIMS.

12.     Abbott incorporates the foregoing paragraphs as if set forth herein.

13.     Pursuant to Pa. R. Civ. P. 1028(a)(4), a preliminary objection may be filed by any party to a pleading regarding the legal insufficiency of a pleading.

Case ID: 220302606
Control No.: 23096781

14.     Counts I and II are strict liability claims that require plaintiffs to identify the specific product that allegedly caused plaintiff's injury. *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 968 (Pa. Super. Ct. 1985) (Pennsylvania "imposes liability for physical harm caused to the user only upon that person who sold a product in a defective condition. A plaintiff must therefore at least *designate* the product alleged to be defective in order to recover from the one who sells it.") (emphasis added).

15.     Once again, plaintiffs fail to do so. Instead, they simply allege in each case, without referring to any medical records containing product identification information, that "Abbott's and/or Mead [Johnson]'s products" were administered to plaintiff and caused plaintiff's injuries. *See* Am. Compl. ¶ 93.[2]

16.     Accordingly, this preliminary objection should be sustained, and Counts I and II against Abbott should be dismissed.

## III. PRELIMINARY OBJECTION FOR LEGAL INSUFFICIENCY OF PLAINTIFFS' NEGLIGENCE CLAIM.

17.     Abbott incorporates the foregoing paragraphs as if set forth herein.

18.     Pursuant to Pa. R. Civ. P. 1028(a)(4), a preliminary objection may be filed by any party to a pleading regarding the legal insufficiency of a pleading.

19.     Count III is a claim for negligence, requiring plaintiffs to identify the product that injured them and to allege a reasonably close causal connection between Abbott's conduct with respect to that product and the resulting injuries to plaintiffs. *See Cummins*, 495 A.2d at 968.

---

[2] Same allegation found at Am. Compl. ¶ 90: *Taylor*; Am. Compl. ¶ 91: *Moment, Stills, Williams*; Am. Compl. ¶ 93: *Henderson, Short, Thomas, Walker-Savage, Wieger MP*; Am. Compl. ¶ 94: *Sanders, Wieger SP*; Am. Compl ¶ 97: *Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 103: *McMillian*.

Case ID: 220302606
Control No.: 23096781

Because plaintiffs fail to identify the specific product giving rise to their claims, they also fail to establish a causal connection between Abbott's conduct and their injuries.

20.     Accordingly, this preliminary objection should be sustained, and Count III against Abbott should be dismissed.

## IV. PRELIMINARY OBJECTION FOR INSUFFICIENT SPECIFICITY IN PLEADING PLAINTIFFS' MISREPRESENTATION CLAIMS.

21.     Abbott incorporates the foregoing paragraphs as if set forth herein.

22.     Pursuant to Pa. R. Civ. P. 1028(a)(3), a preliminary objection may be filed by any party to a pleading regarding insufficient specificity in a pleading.

23.     Counts IV and V are claims for intentional and negligent misrepresentation; these fraud-based claims are subject to heightened pleading requirements under Pa. R. Civ. P. 1019(b). Plaintiffs once again fail to allege with particularity that they saw, heard, or were otherwise exposed to any purported misrepresentations made by Abbott. They also do not specifically allege who made the supposed misrepresentations, or when they supposedly did so. Moreover, plaintiffs cannot plausibly allege reliance on misrepresentations to which they were not exposed. *See Presbyterian Med. Ctr. v. Budd*, 832 A.2d 1066, 1073 (Pa. Super. Ct. 2003) (affirming order sustaining preliminary objections to complaint where plaintiff failed to "establish every element of its fraud claim with sufficient particularity").

24.     Accordingly, this preliminary objection should be sustained, and Counts IV and V against Abbott should be dismissed.

## V. PRELIMINARY OBJECTION FOR INSUFFICIENT SPECIFICITY IN DIFFERENTIATING BETWEEN DEFENDANTS THROUGHOUT COMPLAINT.

25.     Abbott incorporates the foregoing paragraphs as if set forth herein.

26.     Pursuant to Pa. R. Civ. P. 1028(a)(3), a preliminary objection may be filed by any party to a pleading regarding insufficient specificity in a pleading.

Case ID: 220302606
Control No.: 23096781

27.     In the unnumbered paragraph of the amended complaints appearing before paragraph 1, plaintiffs collectively refer to Abbott and Mead Johnson as "the Defendant Manufacturers" without explaining what relationship, if any, exists between these corporations, or why the acts of Mead Johnson should be attributed to Abbott, or vice versa. Am. Compl. ¶ 1.[3]

28.     Paragraphs 1 and 13 of the reference Amended Complaint generally allege that plaintiff was given "the Defendant Manufacturers' cow's milk-based" products, without specifying which product from which manufacturer was administered to plaintiff. *Id.* ¶¶ 1, 13.[4]

29.     Paragraph 14 of the reference Amended Complaint generally alleges that plaintiff developed necrotizing enterocolitis ("NEC") shortly after being administered the Defendant Manufacturers' products, again without specifying which product from which manufacturer was administered. *Id.* ¶ 14.[5]

30.     Paragraph 54 of the reference Amended Complaint alleges that "Defendant Manufacturers have designed powerful misleading marketing campaigns to deceive parents," without specifying any particular act of deception by any individual defendant, and without providing any details surrounding when plaintiff saw the allegedly misleading marketing campaigns. *Id.* ¶ 54.[6]

---

[3] Same allegation found at Am. Compl. ¶ 1 in all amended complaints.

[4] Same allegation found at Am. Compl. ¶¶ 1, 12: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶¶ 1, 13: *Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[5] Same allegation found at Am. Compl. ¶ 13: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 14: *Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[6] Same allegation found at Am. Compl. ¶ 51: *Ross, Wiggins, McMillian, Taylor*; Am. Compl ¶ 52: *Moment, Stills, Williams*; Am. Compl. ¶ 53: *Kajuffa, Parker*; Am. Compl. ¶ 54: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Wieger SP, Goodmond Ryh G., Goodmond Rya G., Mays, Watson*; Am. Compl. ¶ 55: *Sanders*.

Case ID: 220302606
Control No.: 23096781

31.     Across Counts I through V of the amended complaints, plaintiffs allege wrongful conduct by Abbott and/or Mead Johnson without differentiating between the defendants, or specifying each defendant's distinct role in each claim. *See* Am. Compl. Counts I-V.

32.     Because plaintiffs have continued to lump Abbott and Mead Johnson together without differentiating between the distinct acts or omissions of these distinct corporations, Abbott lacks clarity regarding its alleged role in these cases. Plaintiffs' allegations are thus insufficiently pled under Rule 1028(a)(3) and warrant dismissal. *See Bouchon v. Citizen Care, Inc.*, 176 A.3d 244, 260 (Pa. Super. Ct. 2017) (affirming dismissal of complaint where plaintiff did not differentiate between defendants in averring the conduct and claims).

33.     Accordingly, this preliminary objection should be sustained, and all claims against Abbott should be dismissed, or in the alternative, all paragraphs in which plaintiffs fail to differentiate between defendants should be stricken—which would leave only a shell of a complaint that would warrant dismissal in any event.[7]

## VI. PRELIMINARY OBJECTION REGARDING PLAINTIFF-PARENTS' TIME-BARRED CLAIMS IN 20 CASES.

34.     Abbott incorporates the foregoing paragraphs as if set forth herein.

35.     Pursuant to Pa. R. Civ. P. 1028(a)(4), a preliminary objection may be filed by any party to a pleading regarding the legal insufficiency of a pleading.

36.     Pennsylvania law establishes a two-year statute of limitations for negligent, intentional, or otherwise tortious conduct. *See* 42 Pa. Cons. Stat. § 5524(2) & (7).

---

[7] For example, in the reference Amended Complaint, plaintiffs fail to differentiate between defendants in each of the following paragraphs: 1-2, 12-13, 19, 21-24, 26-27, 30-31, 33-44, 46, 52, 54-59, 62, 78-84, and 85-130. These deficiencies appear in all of the amended complaints, though paragraph numbering differs across some of the cases.

Case ID: 220302606
Control No.: 23096781

37.     While the statute of limitations began running on plaintiff-parents' claims on or around the date of the infant-plaintiffs' birth (second column in the chart below), plaintiff-parents' complaints in 20 cases were not filed until the date appearing in the third column below—in all instances, many years after the statute of limitations period had expired (fourth column in chart below).

| Plaintiff Name | Alleged Date of Birth | Filing Date of Complaint | Time Elapsed from Birth to Filing |
|---|---|---|---|
| Carter, Holli (obo J.C.) | 10/06/2014 | 03/24/2022 | 7 years and 5 months |
| Goodmond, Brandy (obo Rya G.) | 12/31/2007 | 04/04/2022 | 14 years and 3 months |
| Goodmond, Brandy (obo Ryh G.) | 08/01/2010 | 04/04/2022 | 11 years and 8 months |
| Henderson, Janee (obo S.C.) | 07/15/2007 | 04/04/2022 | 14 years and 8 months |
| Kajuffa, Kristen (obo B.K.) | 01/18/2007 | 03/29/2022 | 15 years and 2 months |
| Mays, Nafeesah (obo A. R.) | 07/15/2005 | 03/29/2022 | 16 years and 8 months |
| McMillian, Catherine (obo T.M.) | 11/14/2005 | 04/04/2022 | 16 years and 4 months |
| Moment, Dameka (obo A.M.) | 11/30/2017 | 04/04/2022 | 4 years and 4 months |
| Parker, Nydia (obo M.H.) | 07/31/2016 | 03/29/2022 | 5 years and 7 months |
| Sanders, Loren (obo Q.S.) | 03/17/2007 | 04/04/2022 | 15 years |
| Short, Samaya (obo S.M.) | 10/26/2017 | 04/04/2022 | 4 years and 5 months |
| Stills, Alice (obo M.E.) | 09/28/2007 | 03/24/2022 | 14 years and 5 months |
| Taylor, Christina (obo I.H.) | 10/09/2010 | 03/24/2022 | 11 years and 5 months |
| Thomas, Natisha (obo R.T.) | 12/24/2015 | 04/04/2022 | 6 years and 3 months |
| Walker-Savage, Trina, and Clifton Isaiah Savage, Jr. | 08/09/2002 | 040/4/2022 | 19 years and 7 months |
| Watson, Jeannate (obo B.I.) | 02/05/2015 | 03/29/2022 | 7 years and 1 months |
| Wieger, Gina (obo M.P.) | 12/13/2013 | 03/24/2022 | 8 years and 3 months |

Case ID: 220302606
Control No.: 23096781

| Plaintiff Name | Alleged Date of Birth | Filing Date of Complaint | Time Elapsed from Birth to Filing |
|---|---|---|---|
| Wieger, Gina (obo S.P.) | 12/13/2013 | 03/24/2022 | 8 years and 3 months |
| Wiggins, Shanita (obo T.B.) | 01/28/2010 | 03/29/2022 | 12 years and 2 months |

38.     Plaintiff-parents' claims in these cases are thus time-barred. And plaintiffs have not alleged sufficient facts to support any application of the discovery rule.

39.     Accordingly, plaintiff-parents' claims should be dismissed, and this preliminary objection should be sustained.

## VII. PRELIMINARY OBJECTION REGARDING PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES.

40.     Abbott incorporates the foregoing paragraphs as if set forth herein.

41.     Pursuant to Pa. R. Civ. P. 1028(a)(4), a preliminary objection may be filed by any party to a pleading regarding the legal insufficiency of a pleading.

42.     Pursuant to Pa. R. Civ. P. 1028(a)(3), a preliminary objection may be filed by any party to a pleading regarding insufficient specificity in a pleading.

43.     Without sufficient basis, plaintiffs demand punitive damages from Abbott in the *ad damnum* clause of each of Counts I through V.

44.     Plaintiffs' demands for punitive damages in Counts III and V are legally insufficient, as these Counts plainly sound in negligence and punitive damages are not available for claims of "ordinary negligence" under Pennsylvania law. *See Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985) (citing RESTATEMENT OF TORTS (SECOND) § 908, comment e).

45.     Additionally, plaintiffs' demands for punitive damages in Counts I through V are insufficiently specific. Plaintiffs make bare allegations that Abbott's conduct was "malicious" without providing any factual support for the same. *See Whiting v. Nationwide Ins. Co.*, 9 Pa. D.

-13-

Case ID: 220302606
Control No.: 23096781

& C.3d 789, 792 (1979) (dismissing plaintiffs' punitive damages request where "factual averments in support of . . . conclusory allegations are totally lacking").

46.     Accordingly, Abbott respectfully requests that plaintiffs' demands for punitive damages in each of Counts I through V be stricken.

## VIII. PRELIMINARY OBJECTION REGARDING PLAINTIFFS' FAILURE TO PROPERLY VERIFY THEIR AMENDED COMPLAINTS.

47.     Abbott incorporates the foregoing paragraphs as if set forth herein.

48.     Pursuant to Pa. R. Civ. P. 1028(a)(2), a preliminary objection may be filed by any party to a pleading regarding a party's failure to conform to a rule of court.

49.     Pa. R. Civ. P. 1024(a) provides that "[e]very pleading containing an averment of fact not appearing of record in the action . . . shall state that the averment . . . is true upon the signer's personal knowledge or information and belief and shall be verified. *See* Pa. R. Civ. P. 1024(a).

50.     Rule 1024(c) provides that the verification "shall be made by one or more of the parties filing the pleading," unless a qualifying exception applies. *See id.* R. 1024(c). In the event the verification is signed by someone other than the filing party, the verification must set forth "the reason why the verification is not made by a party." *See id.*

51.     Here, plaintiffs' amended complaints are neither verified by plaintiffs themselves nor by their counsel.

52.     Plaintiffs failed to conform to Rule 1024(c) in verifying their complaints and, accordingly, Abbott respectfully requests that this Court strike the complaints.

WHEREFORE, pursuant to Pa. R. Civ. P. 1028(a)(2), 1028(a)(3), and 1028 (a)(4), Abbott respectfully requests that this Court sustain these preliminary objections and dismiss Counts I, II, III, IV, and V against Abbott.

Case ID: 220302606
Control No.: 23096781

Dated: September 28, 2023

*/s/ Sean P. Fahey*
Sean P. Fahey (PA Bar No. 73305)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
3000 Two Logan Square
Philadelphia, PA 19103
215.981.4296
Sean.Fahey@troutman.com


*/s/ Ronni E. Fuchs*
Ronni E. Fuchs (PA Bar No. 65561)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
301 Carnegie Center, Suite 400
Princeton, NJ 08540
609.951.4183
Ronni.Fuchs@troutman.com

Respectfully Submitted:

*/s/ Joseph E. O'Neil*
Joseph E. O'Neil (PA Bar No. 29053)
Meaghann C. Porth (PA Bar No. 307629)
Ryan J. O'Neil (PA Bar No. 314034)
**CAMPBELL CONROY & O'NEIL, P.C.**
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
610.964.6388
JONeil@CampbellTrialLawyers.com
MPorth@campbell-trial-lawyers.com
RONeil@campbell-trial-lawyers.com

*/s/ Marques Hillman Richeson*
Marques Hillman Richeson (admitted *pro hac vice*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44114
216.586.7195
mhricheson@jonesday.com

*/s/ Jennifer B. Flannery*
Jennifer B. Flannery (PA Bar No. 74546)
**JONES DAY**
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
404.581.8008
jbflannery@jonesday.com

*Attorneys for Defendant Abbott Laboratories*

-15-

Case ID: 220302606
Control No.: 23096781

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | | |
|---|---|---|
| HOLLI CARTER, et al.,<br>   *Plaintiff,*<br>   v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302588 |
| BRANDY GOODMOND, et al.,<br>   *Plaintiff,*<br>   v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400208 |
| BRANDY GOODMOND, et al.,<br>   *Plaintiff,*<br>   v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400212 |
| JANEE HENDERSON, et al.,<br>   *Plaintiff,*<br>   v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400127 |
| KRISTEN KAJUFFA, et al.,<br>   *Plaintiff,*<br>   v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302978 |
| NAFEESAH MAYS, et al.,<br>   *Plaintiff,*<br>   v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302963 |
| CATHERINE McMILLIAN, et al.,<br>   *Plaintiff,*<br>   v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400140 |
| DAMEKA MOMENT, et al.,<br>   *Plaintiff,*<br>   v. | :<br>:<br>: | APRIL TERM, 2022<br>No. 220400142 |

| | | |
|---|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| NYDIA PARKER, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302983 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| ALEXANDRIA ROSS, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302981 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| LOREN SANDERS, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| SAMAYA SHORT, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400159 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| ALICE STILLS, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| CHRISTINA TAYLOR, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302606 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| NATISHA THOMAS, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| TRINA WALKER-SAVAGE and CLIFTON | : | |
| ISAIAH SAVAGE, JR., et al., | : | MARCH TERM, 2022 |
| *Plaintiff,* | : | No. 220400156 |
| v. | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |

-2-

Case ID: 220302606
Control No.: 23096781

| | |
|---|---|
| *Defendants.* | : |
| JEANNATE WATSON, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |
| GINA WIEGER, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |
| GINA WIEGER, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |
| SHANITA WIGGINS, et al., | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |
| MELVENIA WILLIAMS, et al., | : |
| *Plaintiff,* | : APRIL TERM, 2022 |
| v. | : No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | : |

-3-

Case ID: 220302606
Control No.: 23096781

**<u>DEFENDANT ABBOTT LABORATORIES' BRIEF IN SUPPORT OF</u>**
**<u>PRELIMINARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINTS</u>**

### MATTER BEFORE THE COURT

The preliminary objections of Abbott Laboratories ("Abbott") to plaintiffs' amended complaints are before this Court. Under Pennsylvania Rules of Civil Procedure 1028(a)(2), 1028(a)(3) and 1028(a)(4), Abbott respectfully requests that this Court dismiss Counts I, II, III, IV, and V of the amended complaints for insufficient specificity, legal insufficiency of pleading, and/or failure to conform to a rule of court.

### STATEMENT OF QUESTIONS INVOLVED

1. Should the Court sustain Abbott's preliminary objections to the amended complaints and dismiss all claims against Abbott (Counts I-V) as legally insufficient for failure to properly plead the product at issue is unreasonably dangerous? Answer: Yes.

2. Should the Court sustain Abbott's preliminary objections to the amended complaints and dismiss the strict liability claims (Counts I and II) as legally insufficient? Answer: Yes.

3. Should the Court sustain Abbott's preliminary objections to the amended complaints and dismiss the negligence claim (Count III) as legally insufficient? Answer: Yes.

4. Should the Court sustain Abbott's preliminary objections to the amended complaints and dismiss the intentional and negligent misrepresentation claims (Counts IV and V) as insufficiently pled? Answer: Yes.

5. Should the Court sustain Abbott's preliminary objections and dismiss the amended complaints as insufficiently pled for failure to properly differentiate between the manufacturer defendants, or alternatively, strike all paragraphs in which plaintiffs fail to differentiate between those defendants? Answer: Yes.

-4-

Case ID: 220302606
Control No.: 23096781

6.     Should the Court sustain Abbott's preliminary objections to the amended complaints and dismiss plaintiff-parents' claims as time-barred? Answer: Yes.

7.     Should the Court sustain Abbott's preliminary objections to the amended complaints and strike plaintiffs' requests for punitive damages in Counts I through V as both legally insufficient and lacking sufficient specificity? Answer: Yes.

8.     Should the Court sustain Abbott's preliminary objections to the amended complaints and strike plaintiffs' improperly verified amended complaints for failure to conform to a rule of court? Answer: Yes.

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs filed twenty-one nearly identical amended complaints with this Court in a misguided attempt to attack specialized infant formulas and fortifiers essential to the survival and development of premature infants in neonatal intensive care units ("NICUs"). Mead Johnson & Company LLC, Mead Johnson Nutrition Company (together, "Mead Johnson") and Abbott develop and manufacture infant nutrition products, including products tailored to address the distinct nutritional needs of premature, low birthweight infants.[1] These infants face complex challenges and often daunting odds. For one, they typically have underdeveloped or maldeveloped gastrointestinal systems. This poses a serious challenge for NICU specialists caring for the infants. The best nutrition for a premature infant is the nutrition it would have received in the womb. Once this optimal nutrition source is no longer an option, the infant must have an alternative source. Milk from the infant's mother is the closest natural substitute, but it may not be available or nutritionally sufficient on its own to meet the premature infant's extraordinary needs. The same is

---

[1] Abbott manufactures infant nutrition products under the "Similac" brand name. Am. Compl. ¶ 5. Mead Johnson manufactures infant nutrition products under the "Enfamil" brand name. *Id.* ¶ 4. These allegations are in the same paragraphs across all amended complaints.

Case ID: 220302606
Control No.: 23096781

true of donor milk. Accordingly, NICU specialists use their judgment to fill the supply and/or nutritional gaps with specialized formula and fortifier products designed to meet the needs of premature, low-birth-weight infants. This litigation targets these life-saving products.

The infants in these cases all allegedly developed necrotizing enterocolitis ("NEC"), which is primarily a disease of prematurity that can result in inflammation and death of intestinal tissue. Plaintiffs admit that premature infants' underdevelopment makes them "especially susceptible to NEC." *See* Am. Compl. ¶ 16.[2] Indeed, NEC affects around 8% of infants in NICUs, including infants who receive only human milk, as well as those who receive no "food" at all. Neonatologists are experts in dealing with the risks of NEC and the many other medical risks these vulnerable premature infants face.

Each plaintiff-parent alleges that their infant was born prematurely at a Philadelphia-area hospital. *See id.* ¶ 11.[3] Their amended complaints allege "upon information and belief" that their infant was administered "Similac and/or Enfamil cow's milk-based products" by medical professionals at the respective hospital after his/her birth. *Id.* ¶ 12.[4] Plaintiffs further claim that their infant developed NEC shortly after the administration of Abbott and/or Mead Johnson's product and experienced long-term health effects. *Id.* ¶¶ 13-14.[5]

---

[2] Same allegation found at Am. Compl. ¶ 15: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 16: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, McMillian, Sanders, Taylor, Wieger, SP*.

[3] Same allegation found at Am. Compl. ¶ 10: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 11: *Carter, Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[4] Same allegation found at Am. Compl. ¶ 11: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 12: *Carter, Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[5] Same allegation found at Am. Compl. ¶¶ 12-13: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶¶ 13-14: *Carter, Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

Case ID: 220302606
Control No.: 23096781

Plaintiffs allege that Abbott and/or Mead Johnson manufactured and sold their products knowing they were unreasonably dangerous and not suited for their intended use because they purportedly cause NEC, and that Abbott and/or Mead Johnson failed to warn plaintiffs and the public of this potential harm. *See, e.g, id.* ¶ 22.[6] According to plaintiffs, Abbott and Mead Johnson also made false statements of material fact "on an ongoing and repeated basis" to consumers, physicians, and medical staff in their advertising and marketing materials prior to the time their infants were administered preterm infant nutrition products. *Id.* ¶ 116.[7]

Plaintiffs each bring five claims against Abbott and Mead Johnson: strict products liability design defect (Count I), strict products liability failure to warn (Count II), negligence (Count III), intentional misrepresentation (Count IV), and negligent misrepresentation (Count V). Plaintiffs also bring failure to warn (Count VI) and corporate liability (Count VII) claims against the hospital at which their infant was born.

As the Court recognized at the July 29, 2023 conference, noticeably absent from all of plaintiffs' complaints is any identification of the products that were actually administered to their infants. Although plaintiffs acknowledge that Abbott and Mead Johnson sell many different products, there are no allegations in the amended complaints identifying any product sold by Abbott as the specific product that was administered to any specific infant. Further, there are no allegations indicating that plaintiffs saw, heard, or were otherwise exposed to the allegedly false

---

[6] Same allegation found at Am. Compl. ¶ 21 *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 22: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[7] Same allegation found at Am. Compl. ¶ 113: *Taylor*; Am. Compl. ¶ 114: *Moment, Stills, Williams*; Am. Compl. ¶ 116: *Henderson, Short, Thomas, Walker-Savage, Wieger MP*; Am. Compl. ¶ 117: *Sanders, Wieger SP*; Am. Compl. ¶ 120: *Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 126: *McMillian*.

Case ID: 220302606
Control No.: 23096781

representations made by Abbott and/or Mead Johnson about their products. These pleading deficiencies, among others, have not been cured by plaintiffs, and are fatal to their claims.

## ARGUMENT

Despite a second bite at the apple, the allegations in plaintiffs' amended complaints remain legally insufficient, lack sufficient specificity, and/or fail to conform to a rule of court because:

- plaintiffs do not sufficiently allege that the product(s) at issue are unreasonably dangerous;

- plaintiffs never identify the product administered to their infant;

- plaintiffs do not plead with specificity that any misrepresentations were made to them;

- plaintiffs impermissibly lump Abbott and Mead Johnson together without distinguishing the conduct purportedly attributable to each;

- plaintiff-parents' claims in 20 of the actions[8] are barred by the statute of limitations;

- plaintiffs fail to plead their requests for punitive damages with the requisite legal sufficiency and factual specificity; and

- plaintiffs' amended complaints are not verified.

Accordingly, all claims against Abbott should be dismissed.

## **Legal Standard**

Pennsylvania is a fact-pleading jurisdiction. *See generally* Pa. R. Civ. P. 1019. A complaint must therefore set forth the material facts upon which a claim is based. Pa. R. Civ. P. 1019(a). Indeed, "[t]he purpose of the pleadings is to place the defendants on notice of the claims upon which they will have to defend." *Carlson v. Cmty. Ambulance Servs.*, 824 A.2d 1228 (Pa. Super. Ct. 2003) (quoting *Yacoub v. Lehigh Valley Med.*, 805 A.2d 579, 588 (Pa. Super. Ct. 2002)). So

---

[8] *See* Chart in Abbott Preliminary Objections, ¶ 37.

Case ID: 220302606
Control No.: 23096781

the "complaint must give the defendants fair notice of the plaintiff's claims and a summary of the material facts that support those claims." *Carlson*, 824 A.2d at 1228.

To that end, Rule 1028 of the Pennsylvania Rules of Civil Procedure provides that a party may file preliminary objections asserting that a pleading is insufficiently specific. Pa. R. Civ. P. 1028(a)(3). When assessing whether a pleading is sufficiently specific, the relevant question is "whether the complaint is sufficiently clear to enable the defendant to prepare [its] defense, or whether the plaintiff[']s complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that [the defendant] may know without question upon what grounds to make [its] defense." *Rambo v. Greene*, 906 A.2d 1232 (Pa. Super. Ct. 2006).

Rule 1028 of the Pennsylvania Rules of Civil Procedure also provides that a party may file preliminary objections asserting that the pleading is legally deficient. Pa. R. Civ. P. 1028(a)(4). Generally, where a legal deficiency is "apparent on the face of the complaint," it "is needless to prolong proceedings when the matter can be correctly and quickly decided on preliminary objections in the nature of a demurrer." *Wurth v. City of Phila.*, 584 A.2d 403, 407 (Pa. Commw. Ct. 1990).

"Preliminary objections in the nature of [a] demurrer test the legal sufficiency of the plaintiff's complaint." *Sexton v. PNC Bank*, 792 A.2d 602, 604 (Pa. Super. Ct. 2002). The question presented by the demurrer is whether, on the facts alleged, no recovery is possible. *Presbyterian Med. Ctr. v. Budd*, 832 A.2d 1066, 1070 (Pa. Super. Ct. 2003) (citation omitted). In answering this question, the court is "precluded from considering any conclusions of law or inferences which are not supported by the factual allegations contained in the complaint." *Hart v. O'Malley*, 647 A.2d 542, 553 (Pa. Super. Ct. 1994). Thus, a plaintiff cannot maintain a cause of action by stating conclusions of law, argumentative allegations, and expressions of opinion. *Neill v. Eberle*, 620

Case ID: 220302606
Control No.: 23096781

A.2d 673, 675 (Pa. Commw. Ct. 1993). And a court "may not supply a fact missing [from] the complaint" in order to cure a defective pleading. *Hart*, 647 A.2d at 553.

## I. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO SHOW AN UNREASONABLY DANGEROUS DEFECT, AS REQUIRED FOR COUNTS I-V.

Pursuant to Pa. R. Civ. P. 1028(a)(4), Abbott demurs to Counts I-V of plaintiffs' amended complaints. "The threshold inquiry in all products liability cases is whether there is a defect which rendered the product unreasonably dangerous." *Weiner v. Am. Honda Motor Co.*, 718 A.2d 305, 307 (Pa. Super. Ct. 1998). "A product is defective when it is not safe for its intended use, i.e., the product left the supplier's control lacking any element necessary to make it safe for its intended use." *Id.* at 308.[9] Plaintiffs' amended complaints fail to allege sufficient facts demonstrating that Abbott's cow's milk-based products were unreasonably dangerous for their intended use.

In their initial complaints, plaintiffs cited a number of studies and reports ostensibly supporting their claim that cow's milk-based feeding products cause NEC in preterm and low-birth-weight infants. As detailed in Abbott's prior preliminary objections, plaintiffs' reliance on these materials was misleading because none of them stood for this proposition, and instead showed simply that human breast milk may be protective against the risk of NEC.

Tellingly, plaintiffs removed all factual allegations related to these studies and reports from their amended complaints. *See* Am. Compl. at p. 7. Now, plaintiffs merely allege that "[e]xtensive scientific research, including numerous randomized controlled trials, has confirmed that cow's

---

[9] The law of product liability within Pennsylvania has developed under the principles outlined in Section 402A of the Second Restatement of Torts. *High v. Penn. Supply, Inc.*, 154 A.3d 341 (Pa. Super. Ct. 2017). Specifically, Section 402(A) provides: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if the seller is engaged in the business of selling such a product, and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. The rule stated in Subsection (1) applies although the seller has exercised all possible care in the preparation and sale of his product, and the user or consumer has not bought the product from or entered into any contractual relation with the seller." RESTATEMENT OF TORTS (SECOND) § 402(A).

-10-

Case ID: 220302606
Control No.: 23096781

milk-based feeding products cause NEC in preterm and low-birth-weight infants," without any *facts* to support this bald assertion. *Id.* ¶ 16.[10] Nor have they alleged any *facts* supporting a "scientific consensus that . . . cow's milk-based products present a dire threat to the health and development of preterm infants" or that cow's milk-based products "cause NEC and greatly increase the likelihood that a baby will develop NEC." *Id.* ¶¶ 21-22;[11] *see also Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014) (holding that "[b]lind suspicions and unsupported accusations simply do not state a cause of action pursuant to any theory of tort recovery" under Pennsylvania law).

Instead, plaintiffs (again) simply allege that "[b]reast milk-based nutrition nourishes infants while creating a significantly lower risk of NEC." *Id.* ¶ 20.[12] As Abbott previously explained, the mere fact that certain components in human breast milk may reduce the risk of NEC is not equivalent to a showing that cow's milk-based products ***cause*** NEC. As plaintiffs still acknowledge, all premature, low birth weight infants, including those who are administered human breast milk exclusively, are especially susceptible to and at high risk of developing NEC. Am.

---

[10] Same allegation found at Am. Compl. ¶ 15: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 16: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, McMillian, Sanders, Taylor, Wieger, SP*.

[11] Same allegation found at Am. Compl. ¶¶ 20-21 *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶¶ 21-22: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[12] Same allegation found at Am. Compl. ¶ 19 *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 20: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

Case ID: 220302606
Control No.: 23096781

Compl. ¶ 16.[13] Indeed, plaintiffs even concede that NEC is "a disease that can occur in children who are *not* fed the Defendant Manufacturers' products" at all. *Id.* ¶ 31 (emphasis in original).[14]

Thus, Plaintiffs' amended complaints are devoid of facts sufficient to show that Abbott's products are unreasonably dangerous, and their claims against Abbott are insufficient as a matter of law.

## II. PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD THEIR STRICT LIABILITY CLAIMS (COUNTS I-II)

### A. Plaintiffs' Amended Complaints Again Fail to Identify the Specific Product That Allegedly Caused the Infants' Injuries

Plaintiffs fail to allege sufficient facts to support their strict liability claims (Counts I and II) because plaintiffs' amended complaints still fail to identify the specific product that allegedly caused their injuries. *See* Pa. R. Civ. P. 1028(a)(4). It is well-settled that, in order to plead a strict liability claim in Pennsylvania, the "plaintiff must [] at least designate the product alleged to be defective[.]" *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 969 (Pa. Super. Ct. 1985). "Absent such identification, there can be no allegations of duty, breach of duty, or legal causation, and hence there can be no liability." *Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 191-92 (Pa. Super. Ct. 1993).

Despite this Court's recognition of plaintiffs' failure to identify which defendant's product their infant was administered, plaintiffs' amended complaints again fail to identify the specific product they maintain caused their alleged injuries. Instead, as before, plaintiffs broadly allege that Abbott and Mead Johnson manufacture and sell cow's milk-based infant feeding products under

---

[13] Same allegation found at Am. Compl. ¶ 15: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 16: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, McMillian, Sanders, Taylor, Wieger, SP*.

[14] Same allegation found at Am. Compl. ¶ 28: *Ross, Wiggins, Taylor*; Am. Compl. ¶ 29: *McMillian*; Am. Compl. ¶ 30: *Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Kajuffa, Parker*; Am. Compl. ¶ 31: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Wieger SP*; Am. Compl. ¶ 32: *Sanders*.

Case ID: 220302606
Control No.: 23096781

the Similac or Enfamil brand names, Am. Compl. ¶¶ 4-5,[15] and surmise "upon information and belief" that their infant was administered "Similac and/or Enfamil" products. *Id.* ¶ 12.[16] These allegations are plainly insufficient because plaintiffs also claim that, similar to a restaurant offering Coke or Pepsi, the hospital defendants use either Similac **_or_** Enfamil in their respective NICUs. *Id.* ¶ 22[17]; *id.* ¶ 58.[18] Yet, plaintiffs still fail to identify which product from which manufacturer was allegedly administered to their infant. As such, even viewing the amended complaints in the light most favorable to plaintiffs, their strict liability claims fail for lack of product identification. *See Cummins*, 495 A.2d at 968-69 (holding that the plaintiff's failure to identify the offending product was "a fatal deficiency to his [strict liability] claim" and that "the complaint [could] not adequately aver the requisite connection between the [defendants] and the defective product"); *Klein v. Council of Chem. Assocs.*, 587 F. Supp. 213, 221 (E.D. Pa. 1984) (dismissing strict liability claim where plaintiffs did not identify the specific product sold or distributed by the defendants that caused the plaintiffs' harm).

**B.   Plaintiffs Are Not Excused from Satisfying the Product Identification Requirement**

Prior to filing their amended complaints, nearly every plaintiff was provided medical records by the hospital defendant at which their infant was born that contain information about which product their infant was administered in the NICU. Plaintiffs, therefore, cannot truthfully assert that they are unable to identify which product their infant was administered prior to

---

[15] Same allegations found at Am. Compl. ¶¶ 4-5 in all Amended Complaints.

[16] Same allegation found at Am. Compl. ¶ 11: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶  12: *Carter, Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[17] Same allegation found at Am. Compl. ¶ 21 *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 22: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

[18] Same allegation found at Am. Compl. ¶ 55: *Ross, Wiggins, McMillian, Taylor*; Am. Compl. ¶ 56: *Moment, Stills, Williams*; Am. Compl. ¶ 57: *Kajuffa, Parker*; Am. Compl. ¶ 58: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Wieger SP*; Am. Compl. ¶ 59: *Sanders*.

Case ID: 220302606
Control No.: 23096781

developing NEC. In an effort to evade their pleading obligations, plaintiffs' amended complaints now seek to hold Abbott and Mead Johnson "jointly and severally" liable for their claims alleged in Counts I-V. Plaintiffs also allege (for the first time) that Abbott, Mead Johnson, and the hospital defendants "acted in concert" to "fraudulently convey false and misleading information concerning the risk of NEC . . . caused by Defendant Manufacturers' preterm infant formula products." *Id.* ¶ 35.[19]

No Pennsylvania court has applied any such theory of alternative liability to excuse a product liability plaintiff from identifying the specific product they claim caused their alleged harm. *See, e.g.*, *Cummins*, 495 A.2d at 970 (affirming an order sustaining preliminary objections to a complaint that sought to allege a theory of enterprise liability premised on a bald averment that members of the tire and rim assembly industry collaborated in the "intentional manufacture, promotion and distribution of a generically similar defective device with the knowledge that a safer [] device was available"); *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174-75 (Pa. 1997) (holding that plaintiffs failed to establish a concert of action where they were unable to identify the manufacturer of the lead pigment that caused alleged injuries); *Burnside v. Abbott Lab.*, 505 A.2d 973, 982 (Pa. Super. Ct. 1985) (holding Pennsylvania law forecloses cause of action for concerted action where plaintiff is "unable to isolate a particular manufacturer as the causative agent of his injuries").

Abbott and Mead Johnson likewise cannot be held jointly and severally liable as a matter of law. "While there is some authority that a single cause of action may be pled against two or more defendants who are alleged to be jointly and severally liable, that cannot be the case where

---

[19] Same allegation found at Am. Compl. ¶ 32: *Ross, Wiggins, McMillian, Taylor*; Am. Compl. ¶ 33: *Stills, Williams*; Am. Compl. ¶ 34: *Moment, Kajuffa, Parker*; Am. Compl. ¶ 35: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Wieger SP*; Am. Compl. ¶ 36: *Sanders*.

Case ID: 220302606
Control No.: 23096781

the factual background underlying each defendant's liability is different." *Bouchon v. Citizen Care, Inc.*, 176 A.3d 244, 258 (Pa. Super. Ct. 2017) (citing *Gen. State Auth'y v. Lawrie and Green*, 356 A.2d 851, 854 (Pa. Commw. Ct. 1976)). Here, because Abbott and Mead Johnson manufacture different products at different locations, with different manufacturing processes, using different formulations and different ingredients, and market their products differently, plaintiffs have no basis for asserting joint and several liability. *See Cummins*, 495 A.2d at 972 (preliminary objections properly sustained as to complaint seeking to impose industry-wide liability where plaintiffs failed to allege that manufacturers placed fungible products with "identical" qualities on the market). For all these reasons, plaintiffs cannot be excused from satisfying their requirement to identify the specific product that allegedly caused harm.

## III. PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD A NEGLIGENCE CLAIM (COUNT III).

Plaintiffs' negligence claim fails for the same reason as their strict-liability claims do: they simply fail to identify the product that allegedly caused their injuries. To state a negligence-based products liability claim, "the plaintiff must identify the defendant as the manufacturer or seller of *the offending product* before a plaintiff's injuries may be found to be proximately caused by the negligence of the defendant." *Long v. Krueger, Inc.*, 686 F. Supp. 514, 517 (E.D. Pa. 1988) (citing *Cummins*, 495 A.2d at 967). "Absent such identification, there can be no allegations of duty, breach of duty or legal causation, and hence there can be no liability." *Cummins*, 495 A.2d at 967-68.

As noted above, plaintiffs allege only "upon information and belief" that their infant was administered "Similac and/or Enfamil" products and developed NEC shortly thereafter. *See, e.g.*,

-15-

Case ID: 220302606
Control No.: 23096781

Am. Compl. ¶¶ 4-5[20]; *id.* ¶ 12.[21] Plaintiffs do not, however, identify the exact product (if any) made by Abbott giving rise to their claims. Accordingly, they "cannot allege a casual [sic] connection between conduct of the defendants and [plaintiff's] injuries." *Klein*, 587 F. Supp. at 223; *see also Cummins*, 495 A.2d at 967 (affirming dismissal of negligence claim where plaintiff failed to identify a specific product and the identity of the manufacturer, supplier, or seller of the product; and therefore did not establish a causal connection between his injury and the defendants' conduct).

## IV. PLAINTIFFS FAIL TO PLEAD THEIR INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIMS (COUNTS IV-V) WITH SUFFICIENT PARTICULARITY.

Plaintiffs' amended complaints do nothing to remedy the fatal lack of specificity regarding their misrepresentation claims. Despite the concerns this Court expressed, plaintiffs again fail to allege with any specificity that they saw or heard any Abbott representation, let alone a misrepresentation. Nor do plaintiffs allege any facts to support justifiable reliance on any purported statement by Abbott.

"Averments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation[.]" *Bata v. Cent.-Penn Nat. Bank of Philadelphia*, 224 A.2d 174, 179 (Pa. 1966). To protect against generalized and unsupported accusations of fraud, the Pennsylvania Rules of Civil Procedure requires each element of fraud be "averred with particularity." *Presbyterian Med. Ctr.*, 832 A.2d at 1072-1073 (citing Pa. R. Civ. P. 1019(b)). "Merely alleging fraud as a legal conclusion adds nothing if it is not based upon facts

---

[20] Same allegations found at Am. Compl. ¶¶ 4-5 in all amended complaints.

[21] Same allegation found at Am. Compl. ¶ 11: *Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 12: *Carter, Henderson, Short, Thomas Walker-Savage, Wieger MP, Moment, Stills, Williams, Goodmond Rya G., Goodmond Ryh G., Mays, Watson, McMillian, Sanders, Taylor, Wieger SP*.

Case ID: 220302606
Control No.: 23096781

clearly and explicitly set forth as constituting such fraud." *Dwyer v. Rothman*, 431 A.2d 1035, 1037 (Pa. Super. Ct. 1981) (citing *Hornsby v. Lohmeyer*, 72 A.2d 294 (Pa. 1950)).

To state a claim for intentional misrepresentation, plaintiffs must plead: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) that the resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (internal citation omitted). Similarly, to state a claim for negligent misrepresentation, plaintiffs must plead facts showing (1) a misrepresentation of a material fact; (2) that the representor either knew or should have known of the misrepresentation; (3) that the representor intended the representation to induce another to act; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation. *See id.* at 561. The amended complaints fail in multiple ways to plead these elements with specificity.

*First*, "at the very least, a plaintiff must set forth the *exact* statements or actions plaintiff alleges constitute the fraudulent misrepresentations." *Youndt v. First Nat'l Bank*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005) (internal citations and quotations omitted) (emphasis added). While plaintiffs generally allege that Abbott made representations in its marketing materials, such generalized allegations are woefully deficient and lacking in specificity to set forth a claim of fraud. *See id.* And, in any event, plaintiffs do not allege that Abbott made any of these representations directly to them, or that they read, saw, heard, or were otherwise exposed to any specific product label or any other specific representation from Abbott before their infant was administered Abbott's products. Accordingly, plaintiffs again fail to plead facts showing that their infants' injuries were caused by their reliance on Abbott's representations. *See, e.g.*, *Rivello v. N.J.*

Case ID: 220302606
Control No.: 23096781

*Auto. Full Ins. Underwriting Ass'n*, 638 A.2d 253, 257 (Pa. Super. Ct. 1994) (affirming dismissal of misrepresentation claim where plaintiff failed to sufficiently allege justifiable reliance on the alleged misrepresentation or that his injury was proximately caused by the alleged misrepresentation); *Youndt*, 868 A.2d 539 (holding that fraud claim failed where plaintiff did not plead all elements with particularity); *Feudale v. Aqua Pa., Inc.*, 122 A.3d 462, 466 n.5 (Pa. Commw. Ct. 2015) (concluding that plaintiff failed to "allege[ ] any justifiable reliance on his part on the [alleged false representation], nor could he, as the alleged false representation was not made to him, but instead to [a third party]"); *Feingold v. Unitrin Direct*, Civ. A. No. 12-1250, 2012 WL 3866945, at *6 (E.D. Pa. Sept. 6, 2012) (dismissing negligent misrepresentation claim where plaintiff could not allege that he justifiably relied on the defendants' promises).

      ***Second***, plaintiffs do not identify when the alleged misrepresentations were made, who made them, or how they were communicated. As such, the allegations in the amended complaints cannot plausibly support plaintiffs' intentional or negligent misrepresentation claims. *See, e.g.*, *Dwyer*, 431 A.2d at 1037 (affirming lower court's decision sustaining preliminary objections to plaintiff's intentional misrepresentation claim where plaintiff did not allege what facts were misrepresented, what false information was given, nor in what way he was "tricked"); *Presbyterian Med. Ctr.*, 832 A.2d at 1073 (affirming order sustaining preliminary objections to complaint where plaintiff failed to "establish every element of its fraud claim with sufficient particularity"); *Bethpage Fed. Credit Union*, 2019 WL 5303904, at *2 (sustaining preliminary objections to fraud and negligent misrepresentation claims due to plaintiff's failure to satisfy Rule 1019(b)'s particularity requirements); *Black v. Cmty. Educ. Ctrs., Inc.*, Civ. A. No. 12-6102, 2014 WL 859313, at *6 (E.D. Pa. Mar. 4, 2014) (finding plaintiff's claims of misrepresentation and fraud failed because she did not allege the instances of mischaracterization with specificity); *Scott v.*

-18-

Case ID: 220302606
Control No.: 23096781

*Bimbo Bakeries, USA, Inc.*, Civ. A. No. 10-3154, 2012 WL 645905, at *6 (E.D. Pa. Feb. 29, 2012) (dismissing negligent misrepresentation claim where plaintiffs did not "allege when these alleged misrepresentations were made, who made them, or how they were communicated").

## V. PLAINTIFFS' FAILURE TO DIFFERENTIATE CLAIMS BETWEEN ABBOTT AND MEAD JOHNSON WARRANTS DISMISSAL OF COUNTS I-V.

Despite clear guidance from the Court, plaintiffs' amended complaints still fail to differentiate between Abbott and Mead Johnson. Rule 1019(a) of the Pennsylvania Rules of Civil Procedure provides that a complaint must set forth the material facts upon which a claim is based. Pa. R. Civ. P. 1019(a). And "even under the most liberal notice pleading requirements," that means that "a plaintiff must differentiate between defendants." *Coyne v. Holy Fam. Apartments*, Civ. A. No. 19-4583, 2020 WL 2063475, at *4 (E.D. Pa. Apr. 29, 2020); *see also Bouchon*, 176 A.3d at 260 (affirming dismissal of complaint where several paragraphs of the complaint did not differentiate between the defendants in averring the conduct and claims).

Ignoring this clear law, plaintiffs' amended complaints are riddled with allegations about the conduct of "Defendant Manufacturers," or "Abbott and/or Mead Johnson." *See, e.g.,* Reference Am. Compl. ¶¶ 1-2, 12-13, 19, 21-24, 26-27, 30-31, 33-44, 46, 52, 54-59, 62, 78-84, and 85-130.[22] But the amended complaints do not allege any facts establishing which specific product from which specific manufacturer gave rise to plaintiffs' claims, nor do they adequately allege the specific conduct attributable to each manufacturer. Abbott is left to guess what role plaintiffs believe it played in the events at issue, placing a burden on Abbott that is not contemplated or condoned by Pennsylvania's fact pleading rules. Because plaintiffs continue to fail to distinguish between defendants in their amended complaints, all claims against Abbott should be dismissed,

---

[22] These allegations appear in all of the amended complaints, though paragraph numbers may differ.

Case ID: 220302606
Control No.: 23096781

or alternatively, the paragraphs in which plaintiffs fail to differentiate between defendants should be stricken—which would leave only a shell of a complaint that would warrant dismissal in any event.

## VI. PLAINTIFF-PARENT'S CLAIMS ARE TIME-BARRED IN 20 CASES AND SHOULD BE DISMISSED

Plaintiff-parents' claims in 20 cases[23] are time-barred by Pennsylvania law, which sets a two-year statute of limitations on actions to recover damages for personal injury based on negligent, intentional, or otherwise tortious conduct. *See* 42 Pa. Cons. Stat. § 5524(2) & (7).

The statute of limitations on plaintiff-parents' claims began to run shortly after their infants' birth date, when the infants allegedly developed NEC. Accordingly, 20 of the 21 lawsuits filed by plaintiffs are time-barred because, although they allege infant birth dates between August 9, 2002 (*Walker-Savage*) and November 30, 2017 (*Moment*), and although they each allege that their infant developed NEC shortly thereafter when administered Abbott and/or Mead Johnson's products, these lawsuits were not filed until sometime between March 24, 2022 and April 4, 2022—well after the limitations period expired. Consequently, plaintiff-parents' claims are time-barred and must be dismissed. *See, e.g.*, *Hathi v. Krewstown Park Apartments*, 561 A.2d 1261, 1263 (Pa. Super. Ct. 1989); *Sayers v. Heritage Valley Md. Grp., Inc.*, 247 A.3d 1155, 1159-63 (Pa. Super. Ct. 2021).

In their amended complaints, plaintiffs add several allegations in a futile attempt to invoke the discovery rule. These allegations, however, do not save plaintiff-parents' untimely claims. For example, Plaintiffs point to a 2020 Abbott article as purported evidence of concealment, in an

---

[23] *See* Chart in Abbott Preliminary Objections, ¶ 37.

Case ID: 220302606
Control No.: 23096781

attempt to explain their delay in filing their complaints, *see* Am. Compl. ¶ 32,[24] but the article offers no support to their position, much less the "clear, precise, and convincing" evidence of fraudulent concealment necessary to support application of the discovery rule. *See K.A.R. v. T.G.L.*, 107 A.3d 770, 780 (Pa. Super. Ct. 2014) (noting that, for purposes of the discovery rule, the "plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence").

*First*, the amended complaints do not allege that any plaintiff actually relied on this Abbott article. Indeed, the amended complaints do not allege that any plaintiff actually read or was even aware of any specific statement made by Abbott.

*Second*, the cited article was published on July 22, 2020. That is years after the statute of limitations expired on these plaintiff-parents' claims, which makes it impossible for any plaintiff to have been lulled "into a false sense of security about the use of [Abbott's] products" by the article at the time of the alleged injury. *See, e.g.*, *id.* ¶ 31.[25]

*Third*, no reasonable person could have been misled by the article. In portions of the article omitted by plaintiffs, Abbott strongly encourages the use of breastmilk with premature infants, for reasons that include protection against NEC:

> If your baby is born prematurely, understanding that mother's own breastmilk is best for your baby is key to delivering not only nutrients, but also HMOs and other immune-protective factors. And since breastmilk protects against NEC, work closely with your baby's physician and dietician to understand how to support a good breastmilk supply, so that your preterm baby gets as much breastmilk as possible.

---

[24] Same allegation found at Am. Compl. ¶ 29: *Ross, Wiggins, Taylor*; Am. Compl. ¶ 30: *McMillian, Stills, Williams*; Am. Compl. ¶ 31: *Moment, Kajuffa, Parker*; Am. Compl. ¶ 32: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Wieger SP*; Am. Compl. ¶ 33: *Sanders*.

[25] Same allegation found at Am. Compl. ¶ 28: *Ross, Wiggins, Taylor*; Am. Compl. ¶ 29: *McMillian, Stills, Williams*; Am. Compl. ¶ 30: *Moment, Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Kajuffa, Parker*; Am. Compl. ¶ 31: *Henderson, Short, Thomas, Walker-Savage, Wieger MP, Wieger SP*; Am. Compl. ¶ 32: *Sanders*.

Case ID: 220302606
Control No.: 23096781

The Role of HMOs in Reducing NEC, https://www.nutritionnews.abbott/pregnancy-childhood/prenatal-breastfeeding/the-promising-role-of-hmos-in-reducing-risk-of-nec/ (July 22, 2020). Needless to say, the actual document controls over the misleading excerpts cited in the amended complaint, neither of which can save plaintiff-parents' untimely claims.[26]

## VII. PLAINTIFFS' REQUESTS FOR PUNITIVE DAMAGES LACK THE REQUISITE LEGAL SUFFICIENCY AND FACTUAL SPECIFICITY AND FAIL TO PLEAD A LEGALLY SUFFICIENT BASIS FOR PUNITIVE DAMAGES

Plaintiffs' requests for punitive damages should be stricken, as their demands are both legally and factually insufficient, and fail to clear the high bar for punitive damages under Pennsylvania law. In Pennsylvania, "'[p]unitive damages' are damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct." *See Focht v. Rabada*, 268 A.2d 157, 159 (Pa. Super. Ct. 1970) (quoting RESTATEMENT OF TORTS § 908(1)). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005); *see also Phillips v. Cricket Lighters*, 883 A.2d 439, 446 (Pa. 2005) ("Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others.").

To support a request for punitive damages, the plaintiff must sufficiently allege that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and

---

[26] The only other statements attributed to Abbott in the amended complaints are (1) allegations that Abbott's website at one point stated: "for infants who are not breastfed . . . infant formula is the only appropriate, safe alternative to meet babies' nutritional needs" and (2) a statement concerning a singular product, NeoSure, that "[d]uring her first full year, feed her Similac Neosure, a nutrient-enriched formula for babies who were born prematurely, and help support her development." *See, e.g.*, Am. Compl. ¶¶ 47-48. Again, however, the amended complaints fail to allege that any plaintiff actually read or was aware of these statements, that the statements are themselves misleading, or even that any infant was fed NeoSure as opposed to something else.

Case ID: 220302606
Control No.: 23096781

that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Luddy*, 870 A.2d at 772. Conduct is "willful" when "the actor desired to bring about the result that followed, or at least was aware that it was substantially certain to ensue." *Evans v. Philadelphia Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965). Moreover, "reckless indifference," interchangeable with "wanton" misconduct, occurs when "the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *McClellan v. Health Maintenance Org. of Pa.*, 604 A.2d 1053, 1061 (Pa. Super. Ct. 1992); *see also Smith v. Brown*, 423 A.2d 743, 745 (Pa. Super. Ct. 1980) (quoting Evans, 212 A.2d at 443).

To begin, plaintiffs' requests for punitive damages with respect to Count III (negligence) and Count V (negligent misrepresentation) are wholly improper. As Pennsylvania law makes clear, "[p]unitive damages may not be awarded for misconduct which constitutes ordinary negligence . . . ." *See Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985) (citing RESTATEMENT OF TORTS (SECOND) § 908, comment e)). Here, by plaintiffs' own admission, Counts III and V sound plainly in ordinary negligence, and the accompanying demands for punitive damages are thus legally insufficient. *See* Am. Compl. ¶ 106 ("Abbott and Mead, directly or indirectly, negligently, and/or defectively made, created, manufactured, designed, assembled, tested, marketing, sold, and/or distributed the cow's milk-based infant products at issue in this litigation and thereby breached their duty to the general public and Plaintiff Parent.");[27] *id.* ¶ 126

---

[27] Same allegation found at Am. Compl. ¶ 103: *Taylor*; Am. Compl. ¶ 104: *Moment, Stills, Williams*; Am. Compl. ¶ 106: *Henderson, Short, Thomas, Walker-Savage, Wieger MP*; Am. Compl. ¶ 107: *Sanders, Wieger SP*; Am. Compl. ¶ 110: *Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 116: *McMillian*.

Case ID: 220302606
Control No.: 23096781

("Abbott and Mead were negligent or careless in not determining those representations to be false.").[28]

Plaintiffs' requests for punitive damages in each of Counts I through V also fail because they are pleaded with insufficient specificity. Plaintiffs make no effort to provide factual support for their requests for punitive damages against Abbott. Instead, plaintiffs baldly and repeatedly demand judgment "[f]or punitive damages . . . resulting from the Defendant' Manufacturers' oppressive, fraudulent, and/or malicious conduct . . . ." *See* Am. Compl. at Count I (prayer for relief); *id.* at Count II (prayer for relief); *id.* at Count III (prayer for relief); *id.* at Count VI (prayer for relief); *id.* at Count V (prayer for relief). Nowhere do plaintiffs support these bald assertions of "malicious" conduct with any allegations of fact.

At most, plaintiffs allege that Abbott "knew (or reasonably should have known) that use of their cow's milk-based products significantly increased the risk of NEC," *see, e.g.*, Am. Compl. ¶ 88,[29] but such allegations are woefully insufficient. Plaintiffs cannot merely incant the word "knowledge" and make it so; rather, plaintiffs must provide factual support for their bald assertions. *See Whiting v. Nationwide Ins. Co.*, 9 Pa. D. & C.3d 789, 792 (1979) (dismissing plaintiffs' punitive damages request where "factual averments in support of . . . conclusory allegations are totally lacking"). Plaintiffs fail to do so here.

---

[28] Same allegation found at Am. Compl. ¶ 123: *Taylor*; Am. Compl. ¶ 124: *Moment, Stills, Williams*; Am. Compl. ¶ 126: *Henderson, Short, Thomas, Walker-Savage, Wieger MP*; Am. Compl. ¶ 127: *Sanders, Wieger SP*; Am. Compl. ¶ 130: *Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 136: *McMillian*.

[29] Same allegation found at Am. Compl. ¶ 85: *Taylor*; Am. Compl. ¶ 86: *Moment, Stills, Williams*; Am. Compl. ¶ 88: *Henderson, Short, Thomas, Walker-Savage, Wieger MP*; Am. Compl. ¶ 89: *Sanders, Wieger SP*; Am. Compl. ¶ 92: *Goodmond Ryh G., Goodmond Rya G., Mays, Watson, Kajuffa, Parker, Ross, Wiggins*; Am. Compl. ¶ 98: *McMillian*.

-24-

Case ID: 220302606
Control No.: 23096781

For all these reasons, Abbott respectfully requests that this Court strike plaintiffs' requests for punitive damages as wholly conclusory, lacking the requisite factual specificity, and legally insufficient.

## VIII. PLAINTIFFS FAIL TO VERIFY THEIR AMENDED COMPLAINTS UNDER RULE 1024(C)

Finally, plaintiffs' amended complaints should also be stricken because they are not verified—despite yet another opportunity to correct this basic error. Rule 1024 mandates that "[e]very pleading containing an averment of fact not appearing of record in the action . . . shall state that the averment . . . is true upon the signer's personal knowledge or information and belief and shall be verified." *See* Pa. R. Civ. P. 1024(a). Subsection (c) of the Rule also explicitly mandates that:

> [t]he verification shall be made by one or more of the parties filing the pleading unless all the parties (1) lack sufficient knowledge or information, or (2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of the person's information as to matters not stated upon his or her own knowledge and the reason why the verification is not made by a party.

*Id.* at 1024(c).

Once again, plaintiffs' amended complaints are neither verified by plaintiffs themselves nor by their counsel. *See* Am. Compl. Consequently, they should be stricken for failure to comply with Pa. R. Civ. P. 1028(a)(2) and 1024(c).

## CONCLUSION

For the foregoing reasons, Abbott's preliminary objections to plaintiffs' amended complaints should be sustained, and plaintiffs' claims against Abbott should be dismissed.

Case ID: 220302606
Control No.: 23096781

Dated: September 28, 2023

Respectfully Submitted:

*/s/ Sean P. Fahey*
Sean P. Fahey (PA Bar No. 73305)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
3000 Two Logan Square
Philadelphia, PA 19103
215.981.4296
Sean.Fahey@troutman.com

*/s/ Ronni E. Fuchs*
Ronni E. Fuchs (PA Bar No. 65561)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
301 Carnegie Center, Suite 400
Princeton, NJ 08540
609.951.4183
Ronni.Fuchs@troutman.com

*/s/ Joseph E. O'Neil*
Joseph E. O'Neil (PA Bar No. 29053)
Meaghann C. Porth (PA Bar No. 307629)
Ryan J. O'Neil (PA Bar No. 314034)
**CAMPBELL CONROY & O'NEIL, P.C.**
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
610.964.6388
JONeil@CampbellTrialLawyers.com
MPorth@campbell-trial-lawyers.com
RONeil@campbell-trial-lawyers.com

*/s/ Marques Hillman Richeson*
Marques Hillman Richeson (admitted *pro hac vice*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44114
216.586.7195
mhricheson@jonesday.com

*/s/ Jennifer B. Flannery*
Jennifer B. Flannery (PA Bar No. 74546)
**JONES DAY**
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
404.581.8008
jbflannery@jonesday.com

*Attorneys for Defendant Abbott Laboratories*

Case ID: 220302606
Control No.: 23096781

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I will serve a true and correct copy of the foregoing in accordance with Pa. R. Civ. P. 440 on all parties not served electronically. All other parties will be electronically served by the court in accordance with Pa. R. Civ. P. 205.4(g).

Dated: September 28, 2023          */s/ Ronni E. Fuchs*
                                                   Ronni E. Fuchs

## CERTIFICATE OF COMPLIANCE

I, Ronni E. Fuchs, hereby certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts, that require filing confidential information and documents differently than non-confidential information and documents.

*/s/ Ronni E. Fuchs*

# EXHIBIT A

Case ID: 220302606
Control No.: 23096781

**KLINE & SPECTER, P.C.**

By:

    Thomas R. Kline, Esq.
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.

Attorney I.D. Nos.: 28895 / 77764 / 313702 / 320927 / 205677

125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Jack.oneill@klinespecter.com



*Filed and Attested by the Office of Judicial Records 08 SEP 2023 04:13 pm E. HAURIN*

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor,<br><br>        *Plaintiff,*<br><br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL,<br><br>        *Defendants.* | **IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**<br><br>**CIVIL TRIAL DIVISION**<br><br>**MARCH TERM 2022**<br>**NO. 2606** |

## NOTICE TO PLEAD AND DEFEND

<table>
<tr><td align="center"><b>NOTICE</b></td><td align="center"><b>ADVISO</b></td></tr>
<tr><td>You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.</td><td>Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usno el no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.</td></tr>
</table>

1

Case ID: 220302606
Control No.: 23096781

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

2

Case ID: 220302606
Control No.: 23096781

KLINE & SPECTER, P.C.
By:
    Thomas R. Kline, Esq.
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos.: 28895 / 77764 / 313702 /
320927 / 205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Jack.oneill@klinespecter.com

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor,<br><br>*Plaintiff*,<br><br>  v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL,<br><br>*Defendants.* | IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL TRIAL DIVISION<br><br>MARCH TERM 2022<br>NO. 2606 |

## FIRST AMENDED COMPLAINT

Plaintiff brings this Amended Complaint and Demand for Jury Trial (the "Amended Complaint") against Mead Johnson & Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories (collectively "the Defendant Manufacturers"), and The Trustees of the University of Pennsylvania d/b/a Penn Medicine and Pennsylvania Hospital of the University of

3

Case ID: 220302606
Control No.: 23096781

Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively "Penn Medicine" or "Pennsylvania Hospital"), together "Defendants." Plaintiff alleges the following upon personal knowledge as to Plaintiff's own acts and experiences and upon information and belief, including investigation conducted by Plaintiff's attorneys, as to all other matters.

## I.    INTRODUCTION

1.      This action arises out of the injuries suffered by a premature infant (the "Injured Infant") who was given the Defendant Manufacturers' cow's milk-based infant feeding products at Pennsylvania Hospital. Pennsylvania Hospital, managed by Penn Medicine, acquired and supplied the Defendant Manufacturers' products to the Injured Infant and negligently failed to warn of their unreasonably dangerous properties in a reasonable manner. This caused the Injured Infant to develop necrotizing enterocolitis ("NEC"), a life-altering and potentially deadly disease that largely affects premature babies who are given cow's milk-based feeding products. As a result, the Injured Infant was seriously injured, resulting in long term health effects and accompanying harm to their parent ("the Plaintiff Parent").

2.      Plaintiff brings these causes of action against Defendants to recover for injuries that are the direct and proximate result of the Injured Infant's consumption of the Defendant Manufacturers' unreasonably dangerous cow's milk-based infant feeding products, which were acquired and supplied without adequate warning to the Injured Infant at Pennsylvania Hospital, owned and operated by Penn Medicine.

## II.    PARTIES

3.      Plaintiff Christina Taylor is a natural adult person and a resident of Delaware. Ms. Taylor is the parent and natural guardian of I.H., a minor. Ms. Taylor's address is 9 Aidone Drive, New Castle, Delaware 19720.

Case ID: 220302606
Control No.: 23096781

4.      Defendant Mead Johnson Nutrition Company is a corporation, incorporated under the laws of the State of Delaware. Its principal place of business is Illinois.  Defendant Mead Johnson & Company, LLC, is a limited liability company, organized under the laws of the State of Delaware. Its citizenship is that of its sole member, Mead Johnson Nutrition Company.  Defendants Mead Johnson Nutrition Company and Mead Johnson & Company, LLC, (together, "Mead") are manufacturers of cow's milk-based infant feeding products and market many of these products under the "Enfamil" brand name.

5.      Defendant Abbott Laboratories ("Abbott") is a corporation, incorporated under the laws of the State of Illinois.  Its principal place of business is in Illinois.  Abbott is a manufacturer of cow's milk-based infant feeding products and markets many of its products under the "Similac" brand name.

6.      Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital is a non-profit corporation incorporated and registered to do business under the laws of the Commonwealth of Pennsylvania.  Its principal place of business is Philadelphia, Pennsylvania. Pennsylvania Hospital is a registered name of The Pennsylvania Hospital of the University of Pennsylvania Health System.  The sole member of The Pennsylvania Hospital of the University of Pennsylvania Health System is The Trustees of the University of Pennsylvania.

7.      Defendant The Trustees of the University of Pennsylvania d/b/a Penn Medicine is a non-profit corporation registered to do business in the Commonwealth of Pennsylvania.  Its principal place of business is Philadelphia, Pennsylvania. Penn Medicine is a registered name of The Trustees of the University of Pennsylvania.

### III.      JURISDICTION AND VENUE

Case ID: 220302606
Control No.: 23096781

8.     This Court has jurisdiction in this matter pursuant to 42 Pa. C.S.A. § 931. Defendants conduct authorized business in the Commonwealth of Pennsylvania. They have sufficient minimum contacts with and purposefully avail themselves of the markets of this Commonwealth. This suit arises out of Defendants' forum-related activities, such that the Court of Common Pleas of Philadelphia County's exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice.

9.     Venue is proper in the Court of Common Pleas of Philadelphia County pursuant to Rules 1006(b), 1006(c)(1), and 2179(a) of the Pennsylvania Rules of Civil Procedure because Defendants are corporations or similar entities that regularly conduct business in Philadelphia County, which is also the county where Plaintiff's causes of action arose, and the county where the occurrences took place out of which Plaintiff's causes of action arose.

10.     This action is not subject to the Compulsory Arbitration Program of the Court of Common Pleas of Philadelphia County because the amount in controversy, excluding interest and costs, is in excess of $50,000.

## IV.     FACTUAL ALLEGATIONS

### *I.H.'s NEC Diagnosis*

11.     I.H. was born prematurely at Pennsylvania Hospital in Philadelphia, Pennsylvania on October 9, 2010.

12.     At birth, I.H.'s gestational age was approximately 25 weeks and she weighed 879 grams. Upon information and belief, I.H. was fed Similac and/or Enfamil cow's milk-based products by staff at Pennsylvania Hospital after her birth.

13.     Upon information and belief, I.H. developed NEC after ingesting Defendant Manufacturers' products.

6

14.     I.H.'s diagnosis of NEC occurred during her course of treatment at Defendant Hospital's NICU.  I.H. suffered injuries, including but not limited to, a diagnosis of NEC, NEC treatment including surgery, and gastrointestinal issues, and she continues to suffer other long-term health effects.

### Cow's Milk-Based Feeding Products Are Known to Cause NEC

15.     NEC is a devastating disease that is the most frequent and lethal gastrointestinal disorder affecting preterm infants.   NEC develops when harmful bacteria breach the walls of the intestine, causing portions of the intestine to become inflamed and often to die.   Once NEC develops, the condition can progress rapidly from mild feeding intolerance to systemic and fatal sepsis.   Up to 30 percent of NEC-diagnosed infants die from the disease.

16.     Preterm and low-birth-weight infants are especially susceptible to NEC because of their underdeveloped digestive systems.   Extensive scientific research, including numerous randomized controlled trials, has confirmed that cow's milk-based feeding products cause NEC in preterm and low-birth-weight infants, which in turn may lead to other medical complications, surgeries, long-term health problems, and death.

### Safer, Nutritionally Superior Alternatives to Cow's Milk-Based Products Exist

17.     A range of options are available that allow preterm and low-birth-weight infants to be fed exclusively human milk-based nutrition.   For example, in addition to the mother's own milk, an established network delivers pasteurized donor breast milk to hospitals nationwide.  Moreover, hospitals have access to shelf-stable formula and fortifiers derived from pasteurized breast milk.

18.     A diet based exclusively on breast milk and breast milk fortifiers provides all the nutrition necessary to support premature and low-birth-weight infants without the elevated risk of NEC associated with cow's milk-based products.

7

19.    The Defendant Manufacturers' products not only pose a threat to infants' health, but also displace the breast milk they could otherwise receive.    This displacement only increases infants' vulnerability to NEC.

20.    Breast milk-based nutrition nourishes infants while creating a significantly lower risk of NEC.

21.    At the time the Injured Infant was fed the Defendant Manufacturers' products, the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death.

22.    Despite the scientific consensus that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants, the Defendant Manufacturers have made no changes to their products or the products' packaging, guidelines, instructions, or warnings.    Instead, they have continued to sell their unreasonably dangerous products.    In addition, they incentivize hospitals that know the risks to use their products by providing them to the hospital for free or at a significant discount, in order that vulnerable infants and their families will become accustomed to using their products before discharge.  And, in fact, the Defendant Manufacturers offer contracts to hospitals—which the hospitals accept—that actually *prevent* the health care providers from offering alternative products—even safer ones— on pain of risking the hospital's advantageous formula pricing strategy.

### Ms. Taylor Discovers Her Claim

23.    Because of the Defendants' concealment and misrepresentations, described more fully herein, Ms. Taylor did not know, and had no reason to know or suspect, that I.H.'s NEC could have been caused by the Defendant Manufacturers' products.

Case ID: 220302606
Control No.: 23096781

***Despite Exercising Diligence, a Reasonable Investigation Did Not Reveal and***
***Would Not Have Revealed a Factual Basis Earlier***
***Because Defendants Hid the Cause of NEC from Ms. Taylor***

24.     Despite exercising reasonable diligence, Ms. Taylor was unable to have made the discovery earlier via a reasonable investigation because the Defendants in this litigation concealed the wrongful cause of I.H.'s injuries.

25.     Ms. Taylor is a layperson with no medical background or training that would have given her any reason to doubt the response she received from her Penn Medicine health care providers at the time.

26.     Given that Penn Medicine's health care providers were in charge of the care of her newborn infant, Ms. Taylor had no reason to doubt their word.

27.     Additionally, the risk of necrotizing enterocolitis was not disclosed on the labeling or packaging of *any* of the Defendant Manufacturers' products.

28.     What is more, necrotizing enterocolitis is a disease that can occur in children who are *not* fed the Defendant Manufacturers' products, and the Defendant Manufacturers have worked to mislead parents into a false sense of security about the use of those products.   Publicly disseminated materials from each Defendant Manufacturer disguise the role their products play in causing the disease—and affirmatively say, even today, that their products are safe and do not cause NEC. In fact, some publicly disseminated materials from the formula manufacturers even suggest that formula may help *reduce* the risk of this terrible and potentially fatal disease.

29.     For example, Abbott's website stays that "[t]he specific cause of NEC is unknown, but it's most often seen in very low birth weight premature babies," and that "about 10% of babies who are born prematurely develop NEC."  The website suggests that "new preliminary studies" suggest for the first time that "NEC prevention may . . . be possible" with the use of human milk

9

Case ID: 220302606
Control No.: 23096781

oligosaccharides to "dramatically curb intestinal inflammation" and reduce the risk of NEC. Abbott states that these human milk oligosaccharides are found in "certain Similac formulas" although they are "not currently available in Similac's premature infant formulas."[1]  Likewise, the website for Mead Johnson's products states that necrotizing enterocolitis is "one of the most common and serious intestinal disease[s] among premature babies."  And it deflects responsibility from Mead Johnson's products: "Necrotizing enterocolitis happens when tissue in the small or large intestine is injured or inflamed."[2]

30.     Because of the misleading information distributed by the Defendant Manufacturers, as further detailed below, any search conducted by Ms. Taylor immediately after I.H.'s diagnosis, or at any time prior to seeing an the advertisement, would not have led a reasonable person to suspect that the Defendant Manufacturers' products could have caused I.H.'s injuries.

31.     Ms. Taylor also did not know, and had no reason to know or suspect, that Penn Medicine breached its duty of care by distributing the Defendant Manufacturers' products to her.  Not only was Ms. Taylor unaware that the Defendant Manufacturers' products caused I.H.'s injuries and death, but the Defendant Manufacturers' distribution agreements with Penn Medicine—which allowed Penn Medicine to secure sweetheart deals for otherwise expensive premature infant formula in exchange for product placement and access to the hospital staff—were also not public or knowable to Ms. Taylor, nor could any reasonable investigation outside of litigation have uncovered the terms of those agreements.

---

[1] The Role of HMOs in Reducing NEC, https://www.nutritionnews.abbott/pregnancy-childhood/prenatal-breastfeeding/the-promising-role-of-hmos-in-reducing-risk-of-nec/ (last visited July 28, 2023).

[2] Special Feeding Concerns for Preemies, https://www.enfamil.com/articles/special-feeding-concerns-for-preemies/ (last visited July 29, 2023).

Case ID: 220302606
Control No.: 23096781

***Despite Exercising Reasonable Diligence, the Defendants' Fraudulently Concealed the Risks
of NEC from Defendant Manufacturers' Products to Divert, Prevent, and Mislead Plaintiff
Regarding the Cause of Her Child's NEC Diagnosis***

32.     In addition to the averments above, the Defendants have acted in concert to fraudulently

convey false and misleading information concerning the risk of NEC, and potentially death, caused

by Defendant Manufacturers' preterm infant formula products.

33.     The Defendants' actions as set forth herein constitute knowing misrepresentation,

omission, suppression, and concealment of material facts, made with the intent that Plaintiff would

rely upon such concealment, suppression, or omission, in connection with the use of Defendants'

preterm infant products.

34.     Plaintiff did not know, and could not learn, the truth concerning the uses, risks and benefits

of Defendant Manufacturers' preterm infant products due to Defendants' deliberate

misrepresentations and concealment, suppression and omission of material facts and important

information regarding the risks of NEC, and potentially death, from the products.

35.     Moreover, Defendant Hospital further participated in the intentional concealment—on

information and belief, it allowed the Defendant Manufacturers' sales representatives into its

hospital to provide samples and free products that did not warn of their serious dangers, and to

provide "education" to its NICU staff that was incomplete as to the true risks of feeding their

patients the Defendant Manufacturers' products.

36.     Additionally, Defendant Hospital failed to inform Ms. Taylor that the Defendant

Manufacturers' products caused Plaintiff's NEC, even when she directly asked the cause.  As noted

above, after learning of Plaintiff's NEC diagnosis, Ms. Taylor was understandably concerned

about the degrading health of her newborn infant.  But even though Defendant Hospital knew of

the increased risk of NEC from formula, it did not disclose that the formula provided to I.H. could

Case ID: 220302606
Control No.: 23096781

increase the risk of NEC to preterm infants. Not one person at the NICU mentioned that the Defendant Manufacturers' formula products could have been the cause of Plaintiff's injuries.

37.     Defendant Hospital was aware that the Defendant Manufacturers' products caused NEC in premature infants. Defendant Hospital was also aware that the Defendant Manufacturers did not provide warnings on their products. However, Defendant Hospital did not warn Ms. Taylor of the risks of the products. Instead, and notwithstanding the sweetheart deal Defendant Hospital agreed to in exchange for preterm infant formula at little to no cost, Defendant Hospital repeatedly informed Ms. Taylor that it would do everything it could possibly do to keep her infant safe. Though this was clearly not true given the known risks of preterm formula for babies like I.H., it was enough for Ms. Taylor to trust that Defendant Hospital was providing preterm formula in the best interest of her child.

38.     Defendants' affirmative acts of fraud and concealment, as averred herein, diverted, prevented, and/or mislead Plaintiff from discovering the medical cause of her child's NEC diagnosis.

### The Defendant Manufacturers' False and Misleading Marketing Regarding Cow's Milk-Based Infant Products

39.     Abbott and Mead have aggressively marketed their cow's milk-based products as medically endorsed and nutritionally equivalent alternatives to breast milk, including prior to the Injured Infant's birth.

40.     Abbott's and Mead's marketing approach includes targeting the parents of preterm infants while they are still in the hospital with messages that the Defendant Manufacturers' cow's milk formulas and fortifiers are necessary for the growth and development of their vulnerable children. Often these tactics implicitly discourage mothers from breastfeeding, which reduces the mother's supply of breast milk. None of the Defendant Manufacturers' marketing materials, including their

12

Case ID: 220302606
Control No.: 23096781

promotional websites, reference the science showing how significantly their products increase the risk of NEC.

41.     Undoubtedly aware of the impact of their advertising, the Defendant Manufacturers, along with other formula manufacturers, are willing to spend massive sums to disseminate their message.

42.     Recognizing the abuse and dangers of infant formula marketing, in 1981, the World Health Assembly—the decision-making body of the World Health Organization—developed the International Code of Marketing of Breast-milk Substitutes ("the Code"), which required companies to acknowledge the superiority of breast milk, the negative effect on breastfeeding of introducing partial bottle-feeding, and the difficulty of reversing the decision not to breastfeed. The Code also forbade advertising or other forms of promotion of formula to the general public, as well as providing sample products to mothers or members of their families.

43.     While Abbott and Mead acknowledge the Code on their websites and claim to support the effort to encourage mothers to breastfeed for as long as possible, this is little more than lip service. Instead, the Defendant Manufacturers' aggressive marketing exploits new parents' darkest fears— that the nutrition they are supplying to their child will not provide the best chance of survival— while wholly failing to warn that their products come with a significantly increased risk of NEC.

44.     For example, Abbott's website, on a paged titled "Infant Formula Marketing," states: "We agree with the World Health Organization that breastfeeding provides the best nutrition for babies, and we support its goal to increase breastfeeding. We also recognize that for infants who aren't breastfed—for medical reasons or otherwise—infant formula is the only appropriate, safe alternative to meet babies' nutritional needs." This statement ignores the existence of donor milk, as well as human milk-based formula.

Case ID: 220302606
Control No.: 23096781

45.     Abbott markets and sells multiple products specifically targeting preterm and low-birthweight infants, including Liquid Protein Fortifier, Similac NeoSure, Similac Human Milk Fortifiers, Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30. In advertising these products, Abbott emphasizes the products' purported ability to assist underdeveloped babies in reaching their growth targets. For example, on the since-edited webpage regarding Similac NeoSure, Abbott noted: "Your premature baby didn't get her full 9 months in the womb, so her body is working hard to catch up. During her first full year, feed her Similac NeoSure, a nutrient-enriched formula for babies who were born prematurely, and help support her development." Yet, no mention was made of the accompanying significantly increased risk of NEC. At some point, the website was edited to remove this statement. However, upon information and belief, the statement remained on the website until at least December 2020.

46.     Mead markets and sells multiple products specifically targeting premature infants, including Enfamil NeuroPro EnfaCare Infant Formula, Enfamil Premature Infant Formula 24 Cal High Protein, Enfamil Premature Infant Formula 30 Cal with Iron, Enfamil Premature Infant Formula 24 Cal with Iron, Enfamil Premature Infant Formula 20 Cal with Iron, Enfamil 24 Cal Infant Formula, and Enfamil Human Milk Fortifier (acidified liquid and powder). In advertising these products, Mead emphasizes the purported similarities between its formula and breast milk, while failing to include any information about the nutritional deficits and dangers that accompany formula use. For example, the since-edited webpage for Enfamil Enfacare stated: "Premature babies fed Enfamil® formulas during the first year have achieved catch-up growth similar to that of full term, breastfed infants" and noted that Enfamil formulas include "expert-recommended

14

levels of DHA and ARA (important fatty acids found naturally in breast milk) to support brain and eye development."

47.    One Enfamil advertisement, introducing a new product line called Enfamil NeuroPro, is entirely focused on favorably comparing Enfamil's formula to breast milk, without any mention of the product's extreme risks. Indeed, the terms "human milk" and "breast milk" are used 13 times in the advertisement, including in such statements as "for decades human milk has inspired the advancements in Enfamil formulas and now through extensive global research, we are taking an even closer look at human milk" and "only Enfamil NeuroPro has a fat blend of MFGM and DHA previously found only in breast milk." The webpage for the product has made similar manipulative claims, stating "Enfamil is backed by decades of breast milk research and multiple clinical studies" and it claims that "to create our best formulas, we collaborated on some of the most extensive breast milk studies to date[.]"

48.    Formula manufacturers have long used their relationships with hospitals and the discharge process to encourage parents to substitute formula for breast milk.  They offer free or reduced-cost formula to hospitals for use with infants before discharge.  And they offer free formula, coupons, and even entire gift baskets to parents before their infants' discharge from the NICU or hospital.

49.    Through this early targeting, the Defendant Manufacturers create brand loyalty under the guise of a "medical blessing," in hopes that new parents continue to use formula after they leave the hospital, resulting in increased expense for parents, significantly increased risk for babies, and increased profit for the Defendant Manufacturers.  The Defendant Manufacturers' giveaways and gift baskets send confusing signals to mothers who are simultaneously being encouraged to breastfeed by their healthcare professionals, and they have been shown to negatively impact breastfeeding rates.

15

Case ID: 220302606
Control No.: 23096781

50.     Further, when the Defendant Manufacturers recognized a shift in the medical community towards an exclusive breast milk-based diet for premature infants, Abbott developed a product called "Similac Human Milk Fortifier," and Mead developed "Enfamil Human Milk Fortifier." These names are misleading in that they suggest that the products are derived from breast milk, when, in fact, they are cow's milk-based products.   The packaging appears as:




51.     The Defendant Manufacturers have designed powerful misleading marketing campaigns to deceive parents into believing that: (1) cow's milk-based products are safe, including for preterm infants; (2) cow's milk-based products are equal, or even superior, substitutes to breast milk; (3) cow's milk-based products are necessary for proper growth and development of preterm infants; and (4) physicians consider the Defendant Manufacturers' cow's milk-based products to be a first choice.   This marketing scheme is employed despite all Defendants knowing of and failing to warn

Case ID: 220302606
Control No.: 23096781

of the extreme risk of NEC and death that cow's milk-based products pose to preterm infants like the Injured Infant.

52.     The Defendant Manufacturers have also designed powerful marketing campaigns to both the general public and health care providers at hospitals like Pennsylvania Hospital.   The Defendant Manufacturers know that sales made to hospitals are key drivers of brand loyalty, and thus are a key opportunity to drive better downstream business—*i.e.*, retail purchases by parents after they have left the hospital.   On information and belief, the Defendant Manufacturers know that the formula products used in a hospital's NICU are related to getting and keeping the overall hospital contracts.   And the Defendant Manufacturers know that, just like any celebrity endorsement, when mothers of newborn infants see medical professionals using a certain brand, the mothers are more likely to continue to purchase that same brand after discharge.   The Defendant Manufacturers are thus heavily motivated to ensure that NICU departments are using their products.

53.     Abbott and Mead Johnson focus their sales teams and training heavily on hospital NICU departments.   They train their sales representatives how to increase the number of babies on their formula, and they emphasize the need to be the dominant formula manufacturer in the NICU so they can own that profitable ground and secure a great return on their substantial investment in NICU formula and other products.

54.     To leverage hospitals' NICUs and secure babies in the hospital and at retail, the Manufacturer Defendants pull out all the stops to convince hospitals, including Defendant Hospital, to purchase their products.   For example: Abbott and Mead Johnson provide samples of their products to hospitals for free.

17

Case ID: 220302606
Control No.: 23096781

55.     On information and belief, to get the hospitals on board with supplying their formula for premature infants, Abbott and Mead Johnson work with hospitals to secure contracts that have special pricing discounts if a certain level of the formula-fed babies in the hospital receive just that one manufacturer's products; similar to a restaurant being a Coke or Pepsi restaurant.  And notwithstanding the increased risk of the Defendant Manufacturers' products for the hospitals' most fragile patients—the preterm infants—the decision makers at these hospitals seek out these types of contracts to better the hospitals' own bottom lines.

56.     On information and belief, Abbott and Mead Johnson also seek promises and/or assurances that the full range of health care providers at the hospitals, including the nurse practitioners and other staff who would pull the infant formula off the shelf, are grabbing the respective company's own formula products to give to the preterm infants.  The goal of this tactic was to ensure that the Defendant Manufacturers and key people at the hospital would be sending a shared message that the preterm infant formula products were safe and without risk, even though that is not what the science said.

57.     Prior to I.H.'s birth, Abbott sent sales representatives to Defendant Hospital.  Those sales representatives provided information about Abbott's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Abbott's products were safe to give to preterm infants like I.H.  Abbott maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed.  These sales representatives did not disclose that Abbott's products could cause NEC in preterm infants.

58.     Prior to I.H.'s birth, Mead Johnson sent sales representatives to Defendant Hospital.  Those sales representatives provided information about Mead Johnson's products to Defendant

Case ID: 220302606
Control No.: 23096781

Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Mead Johnson's products were safe to give to preterm infants like I.H. Mead Johnson maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. These sales representatives did not disclose that Mead Johnson's products could cause NEC in preterm infants.

59.     Mead Johnson and Abbott believed and intended that the misrepresentations that its sale representatives shared with Defendant Hospital would be used to make feeding decisions for preterm infants like I.H.

### *The Defendant Manufacturers' Inadequate Warnings*

60.     Although Mead promotes an aggressive marketing campaign designed to convince parents that its cow's milk-based products are safe and necessary for the growth of a premature infant, the product is in fact extremely dangerous for premature infants. Enfamil products significantly increase the chances of a premature infant developing potentially fatal NEC.

61.     The Enfamil products Mead markets specifically for premature infants are commercially available at retail locations and online. No prescription is necessary.

62.     Despite knowing of the risk of NEC, the packaging of Mead's products does not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with Mead's products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

63.     Mead cites no medical literature or research to guide the use of its products.

64.     Despite knowing of the risk of NEC, Mead did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

19

Case ID: 220302606
Control No.: 23096781

65. Mead deceived the public, parents, physicians, other medical professionals, and medical staff into believing that Enfamil products were a safe and necessary alternative, supplement and/or substitute to breast milk.

66. Mead Johnson failed to provide, and continues to fail to provide, a full accounting of the risk of NEC as documented, by underrepresenting and misrepresenting the risk to the public and the medical community.

67. Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Mead failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies. Like Mead, Abbott promotes an aggressive marketing campaign designed to make parents believe that its products are safe and necessary for the growth of premature infants, despite the products in fact being extremely dangerous for premature infants. Abbott's products significantly increase the chances of a premature infant getting potentially fatal NEC.

68. The products Abbott markets specifically for premature infants are available at retail locations and online. No prescription is necessary.

69. Despite knowing of the risk of NEC, Abbott did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Abbott likewise did not provide instructions or guidance for how to avoid NEC.

70. Abbott deceived the public, parents, physicians, other medical professionals, and medical staff into believing that its products were a safe and necessary alternative, supplement and/or substitute to breast milk.

Case ID: 220302606
Control No.: 23096781

71.     Despite knowing of studies documenting an increased risk of NEC from its products, Abbott did not act to make parents or the medical community aware of those risks, and instead took steps to conceal or prevent those risks from becoming public.  Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Abbott failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies.

### *Penn Medicine's Failure to Warn*

72.     On information and belief, Penn Medicine, which operates Pennsylvania Hospital, was aware of the significantly increased risk of NEC and death associated with providing Abbott's and Mead's cow's milk-based products to its premature infant patients.  It knew or should have known that feeding these cow's milk-based products can cause NEC in premature infants who otherwise would not have developed this devastating condition.  However, instead of warning of the dangers, or supplying breast milk-based feeding products to preterm infants like the Injured Infant, Penn Medicine has continued to source, distribute, and supply the Defendant Manufacturers' products in its hospitals without any adequate warning.

73.     To that end, Penn Medicine has participated in studies designed to increase the use of donor milk while, at the same time, reducing formula feeding in neonates.   The University of Pennsylvania School of Nursing, an affiliate of Penn Medicine, has conducted extensive research into the risks associated with feeding formula to premature infants.   It recently partnered with the National Institute of Nursing Research to publish clinical determinations based on its experience "changing hospital systems and influencing policy," and its findings were unequivocal:

> This is what we know about the science of human milk: it reduces the risk of necrotizing enterocolitis, reduces the risk of infection, [and] creates greater enteral feed tolerance and more rapid weaning from intravenous nutrition. . . .

Other Penn Medicine research has similarly concluded that "[h]uman milk decreases the incidence

Case ID: 220302606
Control No.: 23096781

and severity of . . . necrotizing enterocolitis (NEC)."

74.　　Penn Medicine also purports to adhere to the tenets of the "Baby Friendly Hospital Initiative," which seeks to increase rates of breastfeeding initiation, exclusivity, and diet duration. The "Baby Friendly Hospital Initiative" specifically targets a reduction in the rates of NEC in preterm infants by encouraging implementation of exclusive breast milk diets among new mothers. Although Pennsylvania Hospital has maintained its "Baby Friendly" designation for years, it has not eliminated or restricted the use of formula or fortifier for preterm infants in its hospitals.

75.　　Finally, medical providers and staff at Penn Medicine have acknowledged the risks associated with providing the Defendant Manufacturers' cow's milk-based products to premature infant patients instead of breast milk-based nutrition.　In an internal newsletter from 2012 touting donor milk programs, Penn Medicine acknowledged the benefits of a human milk-based diet, quoting a staff lactation consultant:

> Donor milk is not inexpensive. It costs about $4.25 per ounce, but the return on investment is huge. "Preemies given mother's milk get discharged three to four days sooner and also have a six to 10 times lower risk of getting a gastrointestinal complication called necrotizing enterocolitis," Carpenter said, adding that the infection can cost up to $250,000 to treat. The average cost to provide a preemie with donor milk: $125.

76.　　These statements demonstrate that Penn Medicine knew or should have known of the high increased risk of NEC for premature infants posed by the Defendant Manufacturers' products.

77.　　Although Penn Medicine knew or should have known of the serious danger of the Defendant Manufacturers' products, it has continued to purchase, supply, and distribute these products to preterm infants without providing full and adequate warnings of the attendant risks to parents, healthcare professionals, and other medical staff at its relevant facilities.　As a result, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products at Pennsylvania

Case ID: 220302606
Control No.: 23096781

Hospital, causing their injuries. This occurred even though hospitals across the country, including Pennsylvania Hospital, warn and obtain consent from parents before providing other safer forms of nutrition, such as donor breast milk.

78.     Penn Medicine's failure to warn of the risks posed by the Defendant Manufacturers' products is entrenched (and compounded) by the financial benefits it accrues from its relationships with the Defendant Manufacturers. On information and belief, it has received the Defendant Manufacturers' cow's milk-based products for free and/or at a significant discount, and has granted their sales representatives access to its healthcare professionals and medical staff. These sales representatives have provided deceptive information that Penn Medicine reasonably knew or should have known would ultimately reach parents through those staff. This arrangement dovetails with the Defendant Manufacturers' own marketing strategies" and use of salespersons.

### *Safer Alternative Designs*

79.     The Defendant Manufacturers' cow's milk-based products made specifically for premature infants are unreasonably unsafe for those infants. The Defendant Manufacturers could have used pasteurized breast milk instead of cow's milk in their products, which would have produced a safer product.

80.     Prolacta Bioscience manufactures and sells breast milk-based feeding products, specifically designed for preterm infants, which contain no cow's milk. This alternative design provides all the necessary nutrition for growth and development that cow's milk-based products provide, without the same unreasonably dangerous and deadly effects.

81.     On information and belief, Abbott and Mead were aware of the significantly increased risk of NEC and death associated with their cow's milk-based products, and instead of warning of the dangers, or removing them altogether, Abbott and Mead have continued to use cow's milk as the

Case ID: 220302606
Control No.: 23096781

foundation of their products.

## CAUSES OF ACTION
## COUNT I: STRICT LIABILITY FOR DESIGN DEFECT
### (Against Abbott and Mead)

82.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

83.     Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was not unreasonably dangerous.

84.     Abbott and Mead also owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was merchantable and reasonably suited for their intended use.

85.     Abbott and Mead knew that their products would be used to feed premature infants like the Injured Infant and knew (or reasonably should have known) that use of their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, and that such use was therefore unreasonably dangerous to premature infants, not reasonably suited for the use intended, not merchantable, and had risks that exceeded a reasonable buyer's expectations. Nonetheless, they continued to sell and market their defective products as appropriate for premature infants.

86.     The Injured Infant ingested Abbott and/or Mead's unreasonably dangerous cow's milk-based products. The risks of feeding those products to the Injured Infant outweighed the benefits. An ordinary consumer would not expect those products to carry a significant risk of serious injury and death from NEC.

87.     Abbott and Mead knew (or reasonably should have known) that breast milk-based nutrition did not carry the same risks of NEC, serious injury, and death that their products do.

24

88.   Abbott's and Mead's products contained cow's milk at the time they left the manufacturing facility.

89.   Abbott and Mead did not develop a human-milk based product that was safer for premature infants and did not reformulate their products to reduce the risk of NEC, serious injury, and death, even though doing so was economically and technologically feasible and even though pasteurized breast milk was an available alternative.

90.   Abbott's and/or Mead's products were fed to the Injured Infant, which caused and/or increased the risk of their NEC and injuries.

91.   As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.  Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a.   For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.   For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.   For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

Case ID: 220302606
Control No.: 23096781

    d.      For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

    e.      For interest as permitted by law;

    f.      For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

    g.      For such other and further relief as the Court deems proper.

## COUNT II:  STRICT LIABILITY FOR FAILURE TO WARN
### (Against Abbott and Mead)

92.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

93.    Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide adequate warnings or instructions about the dangers and risks associated with the use of their products with preterm infants, specifically including but not limited to the risk of NEC, serious injury, and death.

94.    Abbott's and Mead's duty to warn is part of their general duty to design, manufacture, and sell their infant products in a manner that is reasonably safe for their foreseeable uses.    By designing their products with cow's milk-based ingredients, Abbott and Mead undertook a duty to warn of the unreasonable risk of harm posed by those ingredients, specifically including the significantly increased risk of NEC, severe injury, and death.    The failure to warn makes the products at issue in this litigation unreasonably dangerous.

95.    Specifically, Abbott and Mead breached their duty to warn of the foreseeable risks of the infant products at issue in this litigation because they knew or should have known that their cow's

Case ID: 220302606
Control No.: 23096781

milk-based premature infant products would be fed to premature infants like the Injured Infant, and that their products might cause the Injured Infant to develop NEC, severe injury, or death, yet they failed to provide adequate warnings of those risks. Among other risks, the Defendant Manufacturers:

a. Failed to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

b. Failed to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

c. Inserted warnings and instructions on their products that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

d. "Black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infant; and/or

e. Failed to disclose well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

f. Failed to insert a warning or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

g. Failed to provide a warning in a method reasonably calculated or expected

27

Case ID: 220302606
Control No.: 23096781

to reach the parents of newborns, like the Plaintiff Parent; and/or

h.    Failed to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products.

96.    Abbott's and Mead's products contained cow's milk at the time they left the manufacturing facility.

97.    As a direct and proximate result of the inadequacy of the warnings and the pervasive marketing campaigns suggesting the safety and necessity of the Defendant Manufacturers' products, the Injured Infant were fed cow's milk-based products, which caused and/or increased risk of their developing NEC.

98.    The unwarned-of risks are not of a kind that an ordinary consumer would expect. Had physicians and medical staff known of the extreme risk associated with feeding premature infants cow's milk-based formula, they would not have fed the Injured Infant those products.    Had the Plaintiff Parent known of the significant risks of feeding the Injured Infant cow's milk-based formula, they would not have allowed such products to be fed to the Injured Infant.

99.    As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.    Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a.    For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.    For damages for past, present, and future emotional distress, loss of

28

Case ID: 220302606
Control No.: 23096781

enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.    For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.    For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.    For interest as permitted by law;

f.    For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.    For such other and further relief as the Court deems proper.

## COUNT III: NEGLIGENCE
### (Against Abbott and Mead)

100.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

101.    Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to exercise reasonable care to design, test, manufacture, inspect, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

102.    At all times relevant to this action, the Injured Infant's healthcare professionals and medical

29

staff used the products at issue in their intended manner and for their intended purpose.

103. Abbott and Mead, directly or indirectly, negligently, and/or defectively made, created, manufactured, designed, assembled, tested, marketed, sold, and/or distributed the cow's milk-based infant products at issue in this litigation and thereby breached their duty to the general public and the Plaintiff Parent.

104. Specifically, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based infant products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by:

    a. Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

    b. Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

    c. Inserting warnings and instructions that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

    d. Failing to insert a large and prominent "black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infants; and/or

    e. Failing to provide well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

    f. Failing to insert a warning or instruction to healthcare professionals and

Case ID: 220302606
Control No.: 23096781

other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

g. Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns, like the Plaintiff Parent; and/or

h. Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products.

105. In addition, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes in infants who ingest their products.

106. As a direct and proximate result of the Defendant Manufacturers' failure to act in a reasonably prudent manner and their breach of duty, the Injured Infant was fed cow's milk-based products, which caused and/or increased the risk of their developing NEC.

107. Had Abbott and Mead satisfied their duties to the consuming public in general, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

108. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers,

Case ID: 220302606
Control No.: 23096781

individually, jointly and severally, as follows:

a.    For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.    For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.    For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.    For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.    For interest as permitted by law;

f.    For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.    For such other and further relief as the Court deems proper.

### COUNT IV:  INTENTIONAL MISREPRESENTATION
### (Against Abbott and Mead)

109.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

110.    At all times relevant to this action, the Injured Infant consumed the Defendant Manufacturers' products in their intended manner and for their intended purpose.

32

Case ID: 220302606
Control No.: 23096781

111.    Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, fulsome information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

112.    Abbott and Mead breached their duty through misrepresentations made to consumers, physicians, and medical staff in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable and intended recipients of this information.

113.    Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis and prior to the time the Injured Infant was fed their products:

      a.    That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

      b.    That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

      c.    That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or

      d.    That cow's milk-based products were safe for premature infants; and/or

      e.    That cow's milk-based products were necessary for optimum growth; and/or

      f.    That cow's milk-based products were similar or equivalent to breast milk;

33

Case ID: 220302606
Control No.: 23096781

and/or

g.    That their products were safe and more like breast milk than other infant products and that they had removed the harmful ingredients of cow's milk when, in fact, the cow's milk in their products was still capable of causing NEC, serious injury, and death; and/or

h.    That their products were based on up-to-date science, which made them safe for premature infants; and/or

i.    Omitting the material fact that their products significantly increased the risk of NEC in premature infants.

114.    Abbott and Mead had actual knowledge, or, at a minimum, a reckless indifference, to whether the aforementioned misrepresentations were false. The Defendant Manufacturers' misrepresentations were intended to, and in fact did, mislead physicians and medical staff, including the Injured Infant's physicians and medical staff, to provide their infant products to babies, including the Injured Infant.

115.    The Plaintiff Parent was not aware that these misrepresentations were false and justifiably relied on them. The Defendant Manufacturers' misrepresentations induced the Plaintiff Parent to allow their children to be fed Abbott's and Mead's infant products, in reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging. Had Abbott and Mead not committed these intentional misrepresentations, the Injured Infant would not have been exposed to the Defendant Manufacturers' unreasonably dangerous cow's milk-based products.

116.    As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased risk of their developing NEC and subsequent injuries.

Case ID: 220302606
Control No.: 23096781

117.     As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a.     For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.     For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.     For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.     For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.     For interest as permitted by law;

f.     For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.     For such other and further relief as the Court deems proper.

Case ID: 220302606
Control No.: 23096781

## COUNT V: NEGLIGENT MISREPRESENTATIONS
### (Against Abbott and Mead)

118.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

119.    At all times relevant to this action, the Injured Infant consumed the products at issue in their intended manner and for their intended purpose.

120.    Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, and complete information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

121.    In the course of their business, Abbott and Mead breached their duty through misrepresentations made to consumers, physicians, and medical staff in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable recipients of this information.

122.    Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis and prior to the time the Injured Infant was fed their products:

   a.    That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

   b.    That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

36

Case ID: 220302606
Control No.: 23096781

c. That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or

d. That cow's milk-based products were safe for premature infants; and/or

e. That cow's milk-based products were necessary for optimum growth; and/or

f. That cow's milk-based products were similar or equivalent to breast milk; and/or

g. That their products were safe and more like breast milk than other infant products and that they had removed the harmful ingredients of cow's milk when, in fact, the cow's milk in their products was still capable of causing NEC, serious injury, and death; and/or

h. That their products were based on up-to-date science, which made them safe for premature infants; and/or

i. Omitting the material fact that their products significantly increased the risk of NEC in premature infants.

123. Abbott and Mead were negligent or careless in not determining those representations to be false.

124. The Defendant Manufacturers' misrepresentations were intended to and did in fact induce physicians and medical staff, including the Injured Infant's physicians and medical staff, to provide their products to babies, including the Injured Infant.

125. The Defendant Manufacturers' misrepresentations induced, and were intended to induce, the Plaintiff Parent to allow their child to be fed Abbott's and Mead's infant products, in justifiable reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging. Had Abbott and Mead not committed these negligent

Case ID: 220302606
Control No.: 23096781

misrepresentations, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

126.     As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased of their developing NEC and subsequent injuries.

127.     As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.    Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

      a.     For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

      b.     For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

      c.     For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

      d.     For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

      e.     For interest as permitted by law;

Case ID: 220302606
Control No.: 23096781

f.      For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.      For such other and further relief as the Court deems proper.

### COUNT VI:  FAILURE TO WARN
### (Against Penn Medicine and Pennsylvania Hospital)

128.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

129.    Penn Medicine and Pennsylvania Hospital as purchaser, supplier, and/or distributor of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to purchase, supply, and distribute products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose, and/or to formulate, adopt, and enforce adequate rules and policies for the same.

130.    At all times relevant to this action, the Injured Infant used the cow's milk-based products purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

131.    Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital, managing these individuals during their treatment of the Injured Infant.

132.    Penn Medicine and Pennsylvania Hospital negligently, outrageously, and recklessly supplied and distributed the Defendant Manufacturers' milk-based infant feeding products to these healthcare professionals and medical staff for use on premature infants, including the Injured Infant.

133.    Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute,

Case ID: 220302606
Control No.: 23096781

and/or sell their products at Pennsylvania Hospital. The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff. These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products to consumers, such as the Plaintiff Parent.

134.    Penn Medicine and Pennsylvania also knowingly, and intentionally, allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

135.    Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that they acquired, distributed, and supplied the Defendant Manufacturers' cow's milk-based infant products that these products significantly increased the risk of NEC, serious injury, and death.

136.    Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

> a.    Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or
>
> b.    Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or
>
> c.    Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an

Case ID: 220302606
Control No.: 23096781

informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

d.  Failing to provide its healthcare professionals and medical staff with the well- researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

e.  Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns; and/or

f.  Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

g.  Failing to prevent the Defendant Manufacturers' sales representatives from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

137.    Reasonable hospitals under the same or similar circumstances would have warned of the above risks, would have instructed their healthcare professionals and medical staff—as well as patients—on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

138.    Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

Case ID: 220302606
Control No.: 23096781

139.   Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to warn its medical providers and patients about the Defendant Manufacturers' unreasonably dangerous products, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

140.   As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

141.   As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the Defendant Manufacturers' unreasonably dangerous products, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

a.   For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.   For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine's conduct;

c.   For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

42

d.     For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from Penn Medicine and Pennsylvania Hospital's oppressive, outrageous, reckless, and/or malicious conduct, as permitted by law;

e.     For interest as permitted by law;

f.     For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.     For such other and further relief as the Court deems proper.

**COUNT VII:  CORPORATE LIABILITY OF HEALTH-CARE PROVIDER**
**(Against Penn Medicine and Pennsylvania Hospital)**

142.    Plaintiff incorporates by references each of the preceding paragraphs as if fully set forth herein.

143.    At all relevant times, Penn Medicine and Pennsylvania Hospital owed a duty of care to the Injured Infant to ensure their safety and well-being while the Injured Infant was under the care of Pennsylvania Hospital staff.   Specifically, Penn Medicine and Pennsylvania Hospital had a duty to the Injured Infant to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the Injured Infant.   Further, Penn Medicine and Pennsylvania Hospital owed a duty to the Injured Infant to oversee its healthcare professionals and medical staff that provided patient care to the Injured Infant.

144.    Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to formulate, adopt, and enforce adequate rules and policies for the purchase, supply, distribution, and use of products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose and ensured quality care for the Injured Infant.

145.    At all times relevant to this action, the Injured Infant used the cow's milk-based products

43

Case ID: 220302606
Control No.: 23096781

purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

146.    Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute, and/or sell their products at Pennsylvania Hospital.   The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff.   These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products.

147.    Penn Medicine and Pennsylvania Hospital also knowingly allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

148.    Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that it formulated, adopted, and enforced its rules for the acquisition, distribution, and supply of the Defendant Manufacturers' cow's milk-based infant products, including the access afforded the Defendant Manufacturer's sales representatives, that these products significantly increased the risk of NEC, serious injury, and death for premature infants.

149.    Penn Medicine and Pennsylvania Hospital  knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

Case ID: 220302606
Control No.: 23096781

150.    Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

    a.    Failing to formulate, adopt, and enforce adequate rules and policies that would have restricted the use of cow's milk-based products for feeding premature babies; and/or

    b.    Failing to formulate, adopt, and enforce adequate rules and policies that warned the Plaintiff Parent that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

    c.    Failing to formulate, adopt, and enforce adequate rules and policies that warned its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature babies like the Injured Infant; and/or

    d.    Failing to formulate, adopt, and enforce adequate rules and policies to instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

    e.    Failing to formulate, adopt, and enforce adequate rules and policies to provide its healthcare professionals and medical staff with the well-researched and well- established studies that link cow's milk-based products to NEC and death in premature infants; and/or

    f.    Failing to formulate, adopt, and enforce adequate rules and policies to

45

Case ID: 220302606
Control No.: 23096781

ensure a warning in a method reasonably calculated/expected to reach the parents of newborns, like the Plaintiff Parent; and/or

g.      Failing to formulate, adopt, and enforce adequate rules and policies to prevent the Defendant Manufacturers' sales representative from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants; and/or

h.      Failing to establish a donor milk program that was sufficient to meet the needs of the premature babies, like the Injured Infant.

151.    A reasonable hospital under the same or similar circumstances would have formulated, adopted, and enforced adequate policies, and rules to restrict the feeding of cow's milk-based products to premature babies, including developing an adequate donor milk program, instructing its healthcare professionals and medical staff on the safe use of Defendants Manufacturers' cow's milk-based products, and restricting the marketing of the Defendant Manufacturers' unreasonably dangerous products to its healthcare professionals, medical staff, and parents of premature infants under its care.

152.    Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to formulate, adopt, and enforce adequate rules and policies to ensure the quality care of its patients, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

153.    As a direct and proximate result of Penn Medicine and Pennsylvania Hospital failure to formulate and enforce adequate policies and rules related to the danger posed by the Defendant

46

Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

154.    As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital negligent, reckless, and outrageous conduct the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

155.    In the alternative, Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to oversee the practicing healthcare professionals and medical staff that provided the products at issue to infants under Pennsylvania Hospital's care, including the Injured Infant.

156.    Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital and was responsible for overseeing those individuals during their treatment of the Injured Infant.

157.    Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, recklessly, and outrageously breached its duty by:

>    a.    Failing to oversee its healthcare professionals and medical staff on their use of cow's milk-based products for feeding premature babies; and/or
>
>    b.    Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or
>
>    c.    Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature

Case ID: 220302606
Control No.: 23096781

babies like the Injured Infant; and/or

d.     Failing to oversee its healthcare professionals and medical staff to restrict their feeding of cow's milk-based products to premature babies; and/or

e.     Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

f.     Failing to provide its healthcare professionals and medical staff with the well- researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

g.     Failing to provide its healthcare professionals and medical staff with warnings about the dangers of the Defendants' Manufacturers products in a method reasonably calculated/expected to reach the parents of newborns; and/or

h.     Failing to provide statistical evidence to its healthcare professionals and medical staff showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

i.     Failing to oversee its healthcare professionals and medical staff to ensure that the Defendant Manufacturers' sales representatives' misrepresentations that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants had not influenced the use and/or misuse of the Defendant Manufacturers' products.

48

Case ID: 220302606
Control No.: 23096781

158.    A reasonable hospital under the same or similar circumstances would have warned of the above risks, would have instructed its healthcare professionals and medical staff on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

159.    A reasonable hospital under the same or similar circumstances would have overseen and managed its healthcare professionals and medical staff to ensure that they received proper training and updating on the risks associated with feeding cow's milk-based formula to premature infants.

160.    Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to oversee its healthcare professionals and medical staff who provide patient care, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

161.    As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to oversee its healthcare professionals and medical staff on the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

162.    As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's negligent and reckless conduct, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.    Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

a.    For compensatory damages in an amount to be proven at trial and in

Case ID: 220302606
Control No.: 23096781

excess of $50,000 and this Court's arbitrational limit;

b.  For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine and Pennsylvania Hospital's conduct;

c.  For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.  For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from Penn Medicine's oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.  For interest as permitted by law;

f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.  For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

163.  Plaintiff hereby demands a jury trial for all claims triable.


Dated:  __9/8/2023_____

                                        Respectfully submitted,

                                        **KLINE & SPECTER, P.C.**


                        By:     __/s/ Timothy A. Burke_____
                                        Thomas R. Kline, Esq.
                                        Tobias L. Millrood, Esq.
                                        Elizabeth A. Crawford, Esq.

Case ID: 220302606
Control No.: 23096781

Timothy A. Burke, Esq.
John P. O'Neill, Esq.
Attorney I.D. Nos.: 28895 / 77764 / 313702 /
320927 / 205677

Benjamin Whiting, Esq. (pro hac vice)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
Fax: (312) 971-3502
ben.whiting@kellerpostman.com

Case ID: 220302606
Control No.: 23096781

# EXHIBIT A-46

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No. 320927
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.               Attorney for Plaintiffs



Filed and Attested by the
Office of Judicial Records
17 OCT 2023 10:17 am
G. IMPERATO

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a minor, | March Term, 2022 |
| Plaintiff, | No. 02606 |
| v. | |
| MEAD JOHNSON & COMPANY, LLC, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

### PRAECIPE TO ATTACH VERIFICATION TO AMENDED COMPLAINT

Please attach Plaintiff's Verification to the Amended Complaint filed of record on

September 8, 2023, with regard to the above-captioned matter.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Dated: October 17, 2023

s/ Timothy A. Burke

TIMOTHY A. BURKE, ESQ.
Attorneys for Plaintiffs

Case ID: 220302606

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2023, I caused a true and correct copy of the

foregoing document to be served by electronic filing to all counsel of record.


Dated: October 17, 2023                  /s/ Timothy A. Burke
                                         TIMOTHY A. BURKE

**VERIFICATION**

I, _Christina Taylor_____, verify that the statements made in Plaintiff's

Amended Complaint are true and correct to the best of my knowledge, information, and belief. I

understand that false statements made herein are subject to the penalties of 18 Pa. C.S. § 4904,

relating to unsworn falsification to authorities.

Dated: October _16__, 2023          By: _____

# EXHIBIT A-47

FILED
17 OCT 2023 05:11 pm
Civil Administration
T. FOBBS

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a minor, | March Term, 2022 |
| Plaintiff, | No. 02606 |
| v. | |
| MEAD JOHNSON & COMPANY, LLC, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>ORDER</u>

AND NOW this the _____ day of _____, 2023, upon consideration of Defendants The Pennsylvania Hospital of the University of Pennsylvania Health System and the Trustees of the University of Pennsylvania's Preliminary Objections to the Plaintiffs' Amended Complaint, Plaintiffs' Answer thereto, and all other appropriate considerations, it is hereby ORDERED, ADJUDGED and DECREED that Defendants' Preliminary Objections are OVERRULED.

BY THE COURT

_____
J.

Case ID: 220302606
Control No.: 23096274

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. 320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.                    Attorney for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a minor, | March Term, 2022 |
| Plaintiff, | No. 02606 |
| v. | |
| MEAD JOHNSON & COMPANY, LLC, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFFS' REPSONSE TO PRELMINIARY OBJECTIONS OF DEFENDANTS THE PENNSYLVANIA HOSPITAL OF THE UNVIERSITY OF PENNSYLVANIA HEALTH SYSTEM AND THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA TO PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendants'

Preliminary Objections and responds to Defendants' Preliminary Objections and Evidentiary

Exhibits as follows:

1

Case ID: 220302606
Control No.: 23096274

1.      Admitted.

2.      Denied. The instant Plaintiffs have only one pending lawsuit in this Commonwealth related to Minor J.C. development of NEC after ingesting co-Defendants Abbot and Mead's milk-based infant formula.

3.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

4.      Admitted only that Plaintiffs have asserted Product Liability claims against Manufacturing Defendants Mead and Abbott, and theories of Failure to Warn and Corporate Liability against the Moving Hospital Defendants. Plaintiffs deny Defendants' footnote regarding supposed conclusions of the FDA. By way of further response, see Plaintiffs' attached memorandum of law.

5.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

6.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

7.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

8.      Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

9.      Admitted only the Moving Defendants have filed the instant Preliminary Objections.  By way of further response, see Plaintiffs' attached memorandum of law.

10.      Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

11.      Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

12.      Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

Case ID: 220302606
Control No.: 23096274

13.     Denied as a conclusion of law to which no response is required. By way of further response, Plaintiff's Complaint alleges that Defendant HUP failed to warn medical professionals and parents of infants of the increased risk of a serious and potentially fatal disease posed by the infant formula they supplied.

14.     Denied as a conclusion of law to which no response is required.

15.     Denied as a conclusion of law to which no response is required. By way of further response, a supplier of goods will be liable for their negligent failure to warn foreseeable users of a chattel under Section 388 of the Second Restatement of Torts, which has been incorporated into Pennsylvania law, if:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for the physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
>
> RST 2 § 388.

*See, e.g.*, *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa. Super. 390, 396 (1987) (applying RST 2 § 388 to a metal part supplier).

16.     Denied as a conclusion of law to which no response is required. By way of further response, the threshold inquiry is whether the product is unreasonably dangerous for the use for which it is supplied. RST 2 § 388; *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa. Super. 390, 396 (1987). A supplier under this Section will be liable if they supply a chattel for use, which they know or should have known is dangerous, and they fail to warn the user of that danger and to

3

Case ID: 220302606
Control No.: 23096274

advise proper precautions. *See Hopkins v. E.I. Du Pont De Nemours & Co.*, 199 F.2d 930, 932-33 (3d Cir. 1952) (applying Pennsylvania law) (citing *Maize*, 352 Pa. at 55). Under this Section, a supplier's disclosures will be insufficient if they fall below the standard of care that would be taken by a "reasonable man in a similar situation." *Binder*, 360 Pa. Super. at 398. The greater the potential danger of the instrumentality, the greater the duty to warn against foreseeable and known dangers. *See Thomas v. Arvon Prod's*, 424 Pa. 365, 369-70 (1967); 352 Pa. at 56. "[T]he care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are *reasonably* to be anticipated as a result of the conduct in question." 360 Pa. Super. at 398 (citations omitted) (emphasis in original). When another actor "acts as the nexus between the supplier and the actual user of the dangerous chattel," the supplier cannot "escape the duty to disclose by cavalierly relying on the [other actor] to somehow pass the information along to the actual user." *Id.*

17. Denied as a conclusion of law to which no response is required.

18. Denied as a conclusion of law to which no response is required.

19. Denied as a conclusion of law to which no response is required. By way of further response, in reviewing whether to sustain preliminary objections in the nature of a demurrer, all material facts properly pled in the complaint, as well as all inferences reasonably deducible therefrom, are to be deemed as admitted. *Kohler v. McCrory Stores*, 532 Pa. 130, 135 (1992). If a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling the demurrer. *Mahoney v. Furches*, 503 Pa. 60, 66 (1983) (citing *Birl v. Phila. Elec. Co.*, 402 Pa. 297, 302 (1960)). Plaintiff's Complaint contains properly pled material facts that numerous academic and scientific studies, which were known to Defendants, have established the

Case ID: 220302606
Control No.: 23096274

link between bovine-based formula and increased risk of NEC in premature infants. These well-pled facts must be taken as true at this stage; thus, Defendant's demurrer should be denied.

20.    Denied as a conclusion of law to which no response is required. By way of further response, in reviewing whether to sustain preliminary objections in the nature of a demurrer, all material facts properly pled in the complaint, as well as all inferences reasonably deducible therefrom, are to be deemed as admitted. *Kohler v. McCrory Stores*, 532 Pa. 130, 135 (1992). If a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling the demurrer. *Mahoney v. Furches*, 503 Pa. 60, 66 (1983) (citing *Birl v. Phila. Elec. Co.*, 402 Pa. 297, 302 (1960)). Plaintiff's Complaint contains properly pled material facts that numerous academic and scientific studies, which were known to Defendants, have established the link between bovine-based formula and increased risk of NEC in premature infants. These well-pled facts must be taken as true at this stage; thus, Defendant's demurrer should be denied.

21.    Denied as a conclusion of law to which no response is required.

22.    Denied as a conclusion of law to which no response is required. By way of further response, Section 388 applies to any supplier of a chattel to another, as explained in Section 388's accompanying comment:

> c. Persons included as "suppliers." The rules stated in this Section and throughout this Topic apply to determine the liability of any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control, without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used. These rules, therefore, apply to sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third person. They apply to all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous, and irrespective of whether the bailment is for use, transportation, safekeeping, or repair. They also apply to one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it. (See § 403.)

RST 2 § 388 cmt. c.

Case ID: 220302606
Control No.: 23096274

*See also Maize v. Atlantic Refin. Co.*, 352 Pa. 51, 56 (1945) ("This court has laid down the rule that any one who is responsible for the existence of any dangerous instrumentality or substance with which persons are likely to come in contact must 'impose a measure of control that is adequate to the protection of human beings' from it.").

23.     Denied, Plaintiffs incorporate their response to the above paragraph.

24.     Denied, Plaintiffs incorporate their response to ¶ 22.

25.     Denied as a conclusion of law to which no response is required. In this case, Defendants failed to adequately communicate the facts, risks, benefits, and alternatives associated with the use of bovine-based formula to preterm infants' parents, so that could knowingly choose whether to consent on behalf of preterm infants. Defendants' duty to warn was even greater by virtue of the fact that parents could not be expected to know the risk of NEC associated with bovine-based formula and given the seriousness of NEC as a disease.

26.     Denied as a conclusion of law, Plaintiffs incorporate their response to ¶ 25.

27.     Denied as a conclusion of law, Plaintiffs incorporate their response to ¶ 25.

28.     Denied as a conclusion of law, Plaintiffs incorporate their response to ¶ 25.

29.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

30.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

31.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

32.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096274

33.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

34.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

35.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

36.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

37.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

38.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

39.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

40.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

41.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

42.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

43.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096274

44.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

45.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

46.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

47.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

48.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

49.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

50.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

51.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

52.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

53.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

54.    Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096274

55.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

56.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

57.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

58.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

59.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

60.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

61.     Denied. Instant Plaintiffs have one lawsuit.

62.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

63.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

64.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

65.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

66.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096274

67.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

68.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

69.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

70.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

71.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

72.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

73.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

74.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

75.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

76.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

77.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096274

78.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

79.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

80.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

81.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

82.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

83.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

84.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

85.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

86.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

87.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

88.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096274

89.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

90.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

91.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

92.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

93.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

94.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

95.     Denied. Plaintiffs have filed a praecipe to supplement the necessary verification which is docked and added to Plaintiffs' Amended Complaint.

96.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

WHEREFORE, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants' Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 17, 2023          By:      _/s/Timothy A. Burke, Esquire_

THOMAS KLINE, ESQUIRE

12

Case ID: 220302606
Control No.: 23096274

TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*

**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

Case ID: 220302606
Control No.: 23096274

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. 320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.       Attorney for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a minor, | March Term, 2022 |
| Plaintiff, | No. 02606 |
| v. | |
| MEAD JOHNSON & COMPANY, LLC, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REPSONSE TO PRELMINIARY OBJECTIONS OF DEFENDANTS THE PENNSYLVANIA HOSPITAL OF THE UNVIERSITY OF PENNSYLVANIA HEALTH SYSTEM AND THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA TO PLAINTIFFS' AMENDED COMPLAINT**

I.     **Matter Before the Court**

1

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendants' Preliminary Objections and respond to the Defendants' Preliminary Objections and Evidentiary Exhibits as follows:

II.     **Counter Statement of Questions Involved**

1.  Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Failure to Warn" claims where Plaintiffs have adequately alleged that bovine-based formula is unreasonably dangerous and substantially increases the risk for the development of NEC in preterm infants, and where Plaintiffs are not required under the pleading standard to cite to evidence (such as medical studies) in their Complaint in support of ultimate issues that will have to be proven at trial?

    *Suggested answer in the affirmative.*

2.  Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Failure to Warn" claims where Plaintiffs have adequately alleged Defendants breached their duty as the hospital system and/or healthcare provider by failing to adequately communicate the facts, risks, benefits, and alternatives associated with the use of bovine-based formula to preterm infants' parents, so that the parents could knowingly choose whether to consent on behalf of preterm infants?

    *Suggested answer in the affirmative.*

3.  Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Corporate Negligence" cause of action where Defendant hospital systems engaged in systemic negligence by failing to enact policies and procedures to prevent bovine-milk based formula from being fed to pre-term infants.

    *Suggested answer in the affirmative.*

Case ID: 220302606
Control No.: 23096274

4.  Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Corporate Negligence" cause of action where Defendant Trustees of the University of Pennsylvania are a governing body and overseer of the Hospital of the University of Pennsylvania ("HUP"), who are in charge of enacting the HUP policies and procedures at issue in Plaintiffs' Amended Complaint, subjecting them to Plaintiffs' Corporate Negligence claims.

    *Suggested answer in the affirmative.*

5.  Whether this Honorable Court should deny Defendants Preliminary Objections as to sufficiency of the pleadings where Plaintiffs have sufficient and adequately summarized material facts that inform and notify the Defendants of the claims which they must defendant?

    *Suggested answer in the affirmative.*

6.  Whether this Honorable Court should deny Defendants Preliminary Objections as to punitive damages where Plaintiffs have adequately plead facts providing a basis for punitive damages?

    *Suggested answer in the affirmative.*

7.  Whether this Honorable Court should deny Defendants Preliminary Objections for Plaintiff Parents claims where the Plaintiff parents have sufficient plead counts for individual harm as well as the harm on behalf of the Minor Plaintiff in the Amended Complaint and where those claims are not barred by the statute of limitations?

    *Suggested answer in the affirmative.*

Case ID: 220302606
Control No.: 23096274

8. Whether this Honorable Court should deny Defendants Preliminary Objections where Plaintiff's necessary verification has been filed by way of a praecipe to attach to Plaintiffs' Amended Complaint?

*Suggested answer in the affirmative.*

### III. Plaintiffs Have Sufficiently Alleged that Pennsylvania Hospital and HUP Failed to Warn Healthcare Professionals and Parents of the Unreasonable Risk of NEC Posed by Bovine-Based Formula to Premature Infants under Count VI.

The moving Hospital Defendants failed to warn parents of premature infants, and their guardian parents, of the risk associated with goods they were supplying to those infants while under their care. A supplier of goods will be liable for their negligent failure to warn foreseeable users of that chattel under Section 388 of the Second Restatement of Torts, which has been incorporated into Pennsylvania law, if:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for the physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

RST 2 § 388.

*See, e.g.*, *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa. Super. 390, 396 (1987) (applying RST 2 § 388 to a metal part supplier). Section 388 applies to any supplier of a chattel to another, as explained in Section 388's accompanying comment:

> c. Persons included as "suppliers." The rules stated in this Section and throughout this Topic apply to determine the liability of any person who for any purpose or in

4

Case ID: 220302606
Control No.: 23096274

> any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control, without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used. These rules, therefore, apply to sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third person. They apply to all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous, and irrespective of whether the bailment is for use, transportation, safekeeping, or repair. They also apply to one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it.

See § 403 RST 2 § 388 cmt. C; *see also Maize v. Atlantic Refin. Co.*, 352 Pa. 51, 56 (1945) ("This court has laid down the rule that anyone who is responsible for the existence of any dangerous instrumentality or substance with which persons are likely to come in contact must 'impose a measure of control that is adequate to the protection of human beings' from it.").

A supplier under this Section will be liable if they supply a chattel for use, which they know or should have known is dangerous, and they fail to warn the user of that danger and to advise proper precautions. *See Hopkins v. E.I. Du Pont De Nemours & Co.*, 199 F.2d 930, 932-33 (3d Cir. 1952) (applying Pennsylvania law) (citing *Maize*, 352 Pa. at 55). Under this Section, a supplier's disclosures will be insufficient if they fall below the standard of care that would be taken by a "reasonable man in a similar situation." *Binder*, 360 Pa. Super. at 398. The greater the potential danger of the instrumentality, the greater the duty to warn against foreseeable and known dangers. *See Thomas v. Arvon Prod's*, 424 Pa. 365, 369-70 (1967); 352 Pa. at 56. "[T]he care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are *reasonably* to be anticipated as a result of the conduct in question." 360 Pa. Super. at 398 (citations omitted) (emphasis in original). When another actor "acts as the nexus between the supplier and the actual user of the dangerous chattel," the supplier cannot "escape the duty to disclose by cavalierly relying on the [other actor] to somehow pass the information along to the actual user." *Id.*

Case ID: 220302606
Control No.: 23096274

In this case, Defendants failed to adequately communicate the facts, risks, benefits, and alternatives associated with the use of bovine-based formula to preterm infants' parents, so that could knowingly choose whether to consent on behalf of preterm infants. Defendants' duty to warn was even greater by virtue of the fact that parents could not be expected to know the risk of NEC associated with bovine-based formula and given the seriousness of NEC as a disease.

Defendants Pennsylvania Hospital and Hospital of the University of Pennsylvania argue that Plaintiff cannot state a claim for failure to warn because they were not a manufacturer of formula. However, since Plaintiffs' claims sounds in negligence, Defendant does not need to be a commercial manufacturer. Here, Defendants were responsible for providing the infant formula to medical practitioners and the NICU at their hospitals and by extension, to patients, and were therefore, suppliers for purposes of Section 388. Moreover, Plaintiff has alleged that the formula caused an increased risk when fed to infants, in other words, when it was used for its intended usage. Plaintiffs' Amended Complaint alleges that hospitals, including HUP, entered into financially advantageous relationships with codefendant manufacturers Abbott and Mead at various times to purchase, supply, and distribute bovine-based formula to their medical professionals, knowing that these products would then be provided to infants being treated by these providers in their facilities. Hence, Defendants knowingly supplied these instrumentalities to end users, who were not merely foreseeable, but the intended recipients of the formula. Further, the Hospitals' liability is not negated by the fact that others acted as intermediaries when they negligently failed to warn their own providers of these risks and facilitated their providers receiving inaccurate information, which inaccurately downplayed the risk of NEC, from the manufacturers' sales personnel. Moreover, as shown by their own internal correspondence and the relevant academic and medical literature surrounding NEC and bovine-formula in pre-term infants,

Case ID: 220302606
Control No.: 23096274

Defendants knew or should have known that bovine-based formula posed an increased risk of NEC to premature infants. Since NEC is a dangerous and potentially fatal disease, there was an even greater duty on Defendants to adequately warn foreseeable users of this known risk or take steps to make sure that the intermediaries they controlled, namely medical professionals, reliably communicated these risks to parents. Hence, the Hospitals failed to warn parents of the dangerous conditions associated with the formula, which parents had no reason to suspect, while supplying this formula for purposes of Section 388.

IV. **Plaintiffs' Complaint Sufficiently Alleges Facts That Support Their Claims of Corporate Liability of The Moving Health Care Provers, Thus These Claims Should not Be Dismissed**

In *Thompson v. Nason Hospital*, 591 A.2d 703, 708 (Pa. 1991), the Pennsylvania Supreme Court recognized the doctrine of corporate liability, holding that a hospital may be found directly liable for negligence if it fails to meet any of the following four duties: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

In considering whether the plaintiff could sustain corporate negligence claims based on these allegations, the *Edwards* court analyzed the *Thompson* decision and delineated the standards required to sustain such a claim:

> The Thompson theory of corporate liability will not be triggered every time something goes wrong in a hospital which harms a patient . . . To establish corporate negligence, a plaintiff must show more than an act of negligence by an individual for whom the hospital is responsible. Rather, *Thompson* requires a plaintiff to show that **the hospital itself is breaching a duty and is somehow substandard**…Thompson contemplates a **kind of 'systemic negligence'**…

*Id*. at 1386-87 (citations omitted and emphasis added).

Case ID: 220302606
Control No.: 23096274

The facts and allegations in Plaintiffs' complaint clearly and succinctly articulate claims of a "systemic negligence" taking place at Penn and HUP, namely that the hospital engaged in a practice of entering into financially advantageous relationships with codefendant manufacturers Abbott and Mead at various times to purchase, supply, and distribute bovine-based formula to their medical professionals, knowing that these products would then be provided to infants being treated by these providers in their facilities. Hence, Defendants knowingly supplied these instrumentalities to end users, who were not merely foreseeable, but the intended recipients of the formula. Further, the Hospitals' liability is not negated by the fact that others acted as intermediaries when they negligently failed to warn their own providers of these risks and facilitated their providers receiving inaccurate information, which inaccurately downplayed the risk of NEC, from the manufacturers' sales personnel, because it is alleged that the hospitals themselves decided which formula product would be stocked and supplied in their respective NICU's and pre-term infant hospital facilities.

Further, Plaintiffs allege in their Amended Complaint that:

A reasonable hospital under the same or similar circumstances would have overseen and managed its healthcare professionals and medical staff to ensure that they received proper training and updating on the risks associated with feeding cow's milk-based formula to premature infants. Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to oversee its healthcare professionals and medical staff who provide patient care, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products. As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to oversee its healthcare professionals and medical staff on the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

See Plaintiffs' Amended Complaint, at ¶¶162-164.

Case ID: 220302606
Control No.: 23096274

Moreover, as shown by their own internal correspondence and the relevant academic and medical literature surrounding NEC and bovine-formula in pre-term infants, Defendants knew or should have known that bovine-based formula posed an increased risk of NEC to premature infants.

Finally, corporate liability can attach to a hospital system when there is a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients. Here Moving Defendants are the responsible corporate entities of Pennsylvania Hospital and Hospital of the University of Pennsylvania (HUP). Defendants had the duty to formulate, adopt, and enforce adequate rules and policies regarding the administration of certain formulations of baby formulas to pre-term infants in their care, and to not supply and/or have a policy of not administering bovine based formula to preterm infants which is shown in the literature to increase risk of developing NEC to those patients. Therefore, Plaintiffs' Corporate Liability claims should not be dismissed.

V.    **Plaintiffs' Complaint Sufficiently Alleges that Defendant Colluded to Distribute and Sell Dangerous Products, and Failed to Warn Medical Practitioners of these Risks. Plaintiffs' Claims for Punitive Damages Should Therefore Not be Dismissed.**

Punitive damages may be awarded for "'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Hutchison v. Luddy*, 582 Pa. 114, 121 (2005) (quoting *Feld v. Merriam*, 506 Pa. 383, 395 (1984)). Punitive damages must be based on conduct that is "wanton," "willful," or "reckless." 582 Pa. at 121. As such, in Pennsylvania, to withstand preliminary objections, a plaintiff must allege that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id.* Pennsylvania courts have repeatedly held that a jury should determine whether punitive damages are warranted. *SHV Coal, Inc. v. Cont'l Grain Co.*, 526 Pa. 489, 495 (1991) ("The determination of whether a

9

Case ID: 220302606
Control No.: 23096274

person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused."). Furthermore, to the extent that there is any doubt about whether the standard for punitive damages has been met, that doubt must be resolved in the Plaintiff's favor at this stage. *See Theodore v. Del. Valley Sch. Dist.*, 575 Pa. 321, 333 (2003).

For example, in *Hall v. Episcopal Long Term Care*, plaintiffs alleged that the neglect of a nursing home's staff led to the plaintiff-decedent's death. 54 A.3d 381, 394-95 (Pa. Super. 2012). The plaintiff argued that the "evidence of understaffing, falsification of records, substandard facility conditions, and improper treatment of the deceased's pain, all of which Episcopal failed to correct despite knowledge of such" demonstrated sufficiently knowing conduct to underly punitive damages. *Id.* at 394-95. The trial court concluded that punitive damages were not warranted because the nursing home's negligence "did not rise to the level of reckless disregard." *Id.* at 397 (quoting the trial court opinion). The Superior court reversed the trial court's directed verdict on the issue of punitive damages and held that the issue of punitive damages should have proceeded to the jury as "the Estate presented evidence establishing Episcopal acted in an outrageous fashion in reckless disregard to the rights of others and created an unreasonable risk of physical harm to the residents of the nursing home." *Id.* at 396-97. In so holding, the Court discussed *Scampone*, where the Superior Court likewise held that the issue of punitive damages against one defendant should have proceeded to a jury, since they jointly engaged in conduct with a codefendant that warranted punitive damages against that defendant. *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 627 (Pa. Super. 2017) ("the punitive damages trial must include Highland since, according to Mr. Scampone's evidence, its employees colluded with Grane

Case ID: 220302606
Control No.: 23096274

employees in some of the actions that warranted imposition of punitive damages, i.e., the alteration of patient records.").

In this case, Plaintiff has alleged that Penn Medicine and HUP purchased, supplied, and distributed bovine-based products, manufactured by codefendants Abbott and Mead, which they knew posed an increased risk of a serious and deadly disease to infants, in order to cut costs. The Hospital Defendants colluded with codefendants to supply Abbott and Mead's products to medical professionals at HUP and failed to warn these professionals about the known risks of these products. Defendants failed to warn healthcare professionals of the known risks of NEC posed by these products, and failed to establish a practice or policy of ensuring that these products were not fed to premature infants, as established in scientific literature, and instead arranged for these treaters to interact with Abbott and Mead salespersons. They then failed to prevent codefendants' sales representatives from making misrepresentations about the increased risk of NEC posed by bovine, instead of human-nutrition based products, and failed to correct these misrepresentations. As a result, Defendants knowingly distributed codefendants' products to practitioners who they knew would provide them to patients, in order to save costs to the Hospitals. Hence, Defendants colluded to pose an unreasonable risk of harm to minor Plaintiff and other infants.

## VI.  **Plaintiff Has Adequately Pled the Facts and Damages at Issue**

Defendant asserts that Plaintiffs' Amended Complaint fails to adequately plead facts regarding liability and injuries claimed. Defendant is wrong and their Preliminary Objections should be overruled. A complaint must give a defendant fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). As the Superior Court has noted:

> Rule 1019(a) requires fact pleading. The purpose of 1019(a) is to require the pleader to disclose the material facts **sufficient to enable the adverse party to prepare**

11

**his case**. A complaint therefore must do more than give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. It should formulate the issues by fully summarizing the material facts. Material facts are ultimate facts, i.e., those facts essential to support the claim. <u>**Evidence from which such facts may be inferred not only need not but should not be alleged. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense.**</u>

*Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted)(emphasis added).

In assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc.*, 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co.*, 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendants advance several arguments regarding the alleged deficiencies of facts and injuries, all of which are incorrect:

- Defendants assert that Plaintiffs' Amended Complaint does not state whether the infant actually ingested the product at issue. In contrast, Plaintiffs have pled that the infant "was fed Similac and/or Enfamil cow's milk-based products" and developed NEC "after ingesting Defendant Manufacturers' products." *See* Plaintiff's Second Amended Complaint at ¶¶ 11-12.

Case ID: 220302606
Control No.: 23096274

- Defendants assert that Plaintiffs' Amended Complaint does not indicate which product was ingested. However, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products." Id. at ¶ 11. Absent discovery, Plaintiff is limited to the detail provided in the medical records, the details of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiff must be allowed to conduct full discovery to determine which manufacturer and brand each Hospital system had a distribution agreement with during certain periods of time, as that information, such as brand, is not often elicited in the medical records. Further, the Defendants themselves are the ones with the information such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

- Defendants argue that Plaintiffs have not met their burden under fact pleading to show that the product was unreasonably dangerous because allegedly plaintiffs' claims are "unsupported by any specific studies or trials in the Amended Complaint." See Def. Preliminary Objections, at 8. However, as noted above, the Superior Court has ruled that in relation to pleading facts, "evidence from which such facts may be inferred not only need not but should not be alleged," which is entirely contrary to Defendants' arguments herein. See *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974)

- Defendants assert that Plaintiff has not pled the period of time during which the product at issue was ingested. However, Plaintiff alleged in the Complaint that the infant "was fed Similac and/or Enfamil cow's milk-based products by [hospital staff] after her birth." Id. Plaintiff's birth date is included in the Complaint.

- Defendants assert that Plaintiff failed to plead when the minor was diagnosed with NEC. However, Plaintiff pled that the infant's "diagnosis of NEC occurred during [the infant's] course of treatment at Defendant Hospital's NICU." *Id*. at ¶ 13. Plaintiffs averments adequately summarize the material facts necessary such that the Defendants are on notice of the claim of which they must defend, and notably the moving Defendants are the exact hospitals where the Plaintiff was initially treated for NEC, thus they have access to the exact same medical as the Plaintiffs which show the exact dates of treatment which are summarily referred to in Plaintiffs' Amended Complaint.

- Defendants assert that Plaintiffs did not plead the treatment the infant received following the ingestion of the NEC and resulting injuries. Defendant cites no authority for the proposition that a plaintiff must describe the specific treatment an injured party underwent following injuries resulting from the tortious conduct of a defendant.

- Defendants assert that Plaintiffs have not adequately pled the injuries suffered as a result of the product. Plaintiff has adequately pled the injuries suffered by the infant who ingested Defendant's product, specifically "a diagnosis of NEC, treatment

13

Case ID: 220302606
Control No.: 23096274

with antibiotics, blood transfusions and surgery, feeding difficulties, developmental delays, neurological issues, gastrointestinal issues, growth issues, short bowel syndrome, heart/lung/liver/kidney issues, mobility and walking difficulties, learning disabilities." Id. at ¶ 13.

Accordingly, Defendant's Preliminary Objections should be overruled as Plaintiffs Allegations should withstand challenge under 1019(a) because they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and they are sufficiently specific so as to enable Defendants to prepare their defense.

## VII. Plaintiff-Parents' Claims Against Penn Medicine and HUP Are Not Time-Barred And Should Not Be Dismissed

Plaintiffs have clearly plead claims sounding in negligence on behalf of all plaintiffs, not just the injured minor plaintiff. Indeed, in the complaint, Plaintiff lists under Counts VI and VII, that "As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's negligent and reckless conduct, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries." See Plaintiffs' Amended Complaint at ¶144, 165. Therefore, Defendants no additional specificity needs to be plead as to which claims apply which Plaintiffs, and Plaintiffs' Amended Complaint complies with Pa.R.C.P. 1020, which does not require Plaintiff Parents and Plaintiffs Minors to plead separate claims for sperate Plaintiffs as Defendant suggests.

Further, Plaintiff-parents' claims are not barred by the discovery rule on two distinct grounds. The discovery rule is an exception [to the statute of limitations] that tolls the statute of limitations when an injury or its cause is not reasonably knowable." In re Risperdal Litig., 656 Pa. 649, 661 (2019). "Under the "discovery rule," the statute of limitations begins to run when a plaintiff knows, or reasonably should have known, that: (1) an injury has been sustained; and (2) the injury has been caused by another party's conduct." Ward v. Rice, 828 A.2d 1118, 1121 (Pa. Super. 2003) (citing Citsay v. Reich, 380 Pa. Super. 366, 369 (1988)). For the discovery rule to

Case ID: 220302606
Control No.: 23096274

apply, the plaintiff must have exercised the due diligence that would be expected of a reasonable person in the plaintiff's position. 828 A.2d at 1121. A plaintiff must begin exercising reasonable diligence once they know the "the salient facts concerning the occurrence of his injury and *who or what caused it*." *Romah v. Hygienic Sanitation Co.*, 705 A.2d 841, 857 (Pa. Super. 1997) (emphasis added). While reasonable diligence is an objective standard, "it is also flexible […] to take into account differences between persons, their capacity to meet certain situations and circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account the fallibility of human beings."" 828 A.2d at 1121-22 (quoting RST 2d § 283 cmt's b-c). Whether someone has exercised reasonable diligence "may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected at random from the community whose standard is to be applied." *Petri v. Smith*, 307 Pa. Super. 261, 271-72 (1982).

Under the discovery rule, if a plaintiff's delay is because the assurances of their physicians lull the patient into a false sense of security, this may toll the statute of limitations. *See Acker v. Palena*, 260 Pa. Super. 214, 222 (1978); *Barshady v. Schlosser*, 226 Pa. Super. 260, 263-64 (1973). The Pennsylvania Supreme Court has "expressly declined to hold, as a matter of law, that a layperson may be charged with knowledge greater than that which was communicated to her by the medical professionals who provided treatment and diagnosis." *In re Risperdal Litig.*, 656 Pa. at 662 (citing *Wilson v. El-Daief*, 600 Pa. 161, 179-180 (2009)). If a plaintiff alleges that their delay was due to their reasonably relying upon the reassurances of their physicians, then, while construing the pleadings in the light most favorable to the moving party, a plaintiff's claims will not be time-barred. *Acker v. Palena*, 260 Pa. Super. 214, 223-24 (1978).

Case ID: 220302606
Control No.: 23096274

Likewise, the under the similar but distinct doctrine of fraudulent concealment, a form of equitable estoppel, the statute of limitations will be tolled if a plaintiff's delay is induced by reliance on the fraudulent concealment of the defendant. *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 95-96 (1964). If, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Romah*, 705 A.2d at 857 (internal quotations omitted). A defendant does not need to intentionally deceive a plaintiff for the doctrine of fraudulent concealment to apply; instead, fraudulent concealment encompasses "fraud in the broadest sense which includes an unintentional deception." 416 Pa. at 96 (citation omitted). It is for the factfinder to determine whether a defendant made representations that could have induced this reliance on the part of the plaintiff. *Id.* For example, in *Romah*, the Superior Court held that the issue of whether the plaintiff's claims for gross negligence and punitive damages were tolled because the defendant concealed studies and other information from the EPA and the public that showed that the defendant's product caused increased risk of blood cell depression in men was a factual issue for the jury. 705 A.2d at 861.

Plaintiffs have alleged that all of the medical providers that Plaintiff-parents interacted with at the Hospital failed to provide them with any information regarding the increased risk of NEC to premature infants posed by the bovine-based formula that the practitioners provided. Likewise, plaintiffs have alleged that the parents were not presented with the comparative risk of NEC of these products as compared to any other alternatives. Plaintiff-parents relied upon the representations, or lack thereof, provided by the medical professionals who were treating their infant. Further, Plaintiff alleged that Plaintiff-parents had no medical background or training and therefore could not be expected to have greater medical knowledge than these providers. Plaintiff-

16

parents thereby reasonably relied upon, and were lulled into a false sense of security by, the assurances of the physicians treating their children. Moreover, Plaintiff has alleged that Defendants made false representations, in line with their financially advantageous relationship that they possessed with codefendant manufacturers Abbott and Mead, about the relative risks of bovine-based formula, in order to induce reliance on the part of Plaintiff-parents and thereby conceal the true source and cause of their infant's injury. Defendant hospitals facilitated interactions between medical providers and codefendant manufacturers' sales personnel, who Defendant hospital knew would mislead medical providers about the risk of NEC posed by its products. Thus, under both the discovery rule and doctrine of fraudulent concealment, Plaintiff-parents' claims are not time-barred.

## VIII. Plaintiffs Have Filed the Proper Verifications For Their Amended Complaint

Pennsylvania Rule of Civil Procedure 1024 requires that pleadings containing averments of fact not appearing of record in the action shall state that the averment is true upon the signer's personal knowledge or information and belief and shall be verified. *See* Pa.R.C.P. 1024. Plaintiff has obtained and produced proper verification as required by the Rules. Accordingly, Defendants' objection should be overruled. All such verifications have been or will be attached by way of a praecipe to attach filed to Plaintiffs' Amended Complaint.

## IX. Request In The Alternative To Amend The Complaint

Although Plaintiff strenuously maintains the sufficiency of all of the Counts contained within the Complaint, should this Court be inclined to grant any of Defendants' specific Preliminary Objections, Plaintiff respectfully requests permission to amend the pleadings.

**WHEREFORE**, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants'

Case ID: 220302606
Control No.: 23096274

Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their

Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 17, 2023    By:    */s/Timothy A. Burke, Esquire*

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*

**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

18

Case ID: 220302606
Control No.: 23096274

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2023, I caused a true and correct copy of the foregoing document to be served by electronic filing to all counsel of record.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 17, 2023      By:    */s/Timothy A. Burke, Esquire*

                                           TIMOTHY A. BURKE, ESQUIRE

Case ID: 220302606
Control No.: 23096274

# EXHIBIT A-48

**FILED**
24 OCT 2023 10:23 am
**Civil Administration**
**A. CLARKE**

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al.,<br>              Plaintiff,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>       Defendants. | :<br>:   MARCH TERM, 2022<br>:   No. 220302588<br>:<br>: |
| BRANDY GOODMOND, et al.,<br>              Plaintiff,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>       Defendants. | :<br>:   APRIL TERM, 2022<br>:   No. 220400208<br>:<br>: |
| BRANDY GOODMOND, et al.,<br>              Plaintiff,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>       Defendants. | :<br>:   APRIL TERM, 2022<br>:   No. 220400212<br>:<br>: |
| JANEE HENDERSON, et al.,<br>              Plaintiff,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>       Defendants. | :<br>:   APRIL TERM, 2022<br>:   No. 220400127<br>:<br>: |
| KRISTEN KAJUFFA, et al.,<br>              Plaintiff,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>       Defendants. | :<br>:   MARCH TERM, 2022<br>:   No. 220302978<br>:<br>: |
| NAFEESAH MAYS, et al.,<br>              Plaintiff,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>       Defendants. | :<br>:   MARCH TERM, 2022<br>:   No. 220302963<br>:<br>: |
| CATHERINE McMILLIAN, et al.,<br>              Plaintiff,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>       Defendants. | :<br>:   APRIL TERM, 2022<br>:   No. 220400140<br>:<br>: |
| DAMEKA MOMENT, et al., | : |

Case ID: 220302606
Control No.: 23062552

|  |  |
|---|---|
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| NYDIA PARKER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302983 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| ALEXANDRIA ROSS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302981 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| LOREN SANDERS, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| SAMAYA SHORT, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400159 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| ALICE STILLS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| CHRISTINA TAYLOR, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302606 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| NATISHA THOMAS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON | : |
| ISAIAH SAVAGE, JR., et al., | : MARCH TERM, 2022 |
| Plaintiff, | : No. 220400156 |

|  |  |  |
|---|---|---|
| v. | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| JEANNATE WATSON, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| SHANITA WIGGINS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| MELVENIA WILLIAMS, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

## **ORDER**

AND NOW this the _____ day of _____, 2023, upon consideration

of Defendant Abbott Laboratories' Preliminary Objections to the Plaintiffs' Amended Complaint,

Plaintiffs' Answer thereto, and all other appropriate considerations, it is hereby ORDERED,

ADJUDGED and DECREED that Defendants' Preliminary Objections are OVERRULED.

BY THE COURT

_____
J.

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| HOLLI CARTER, et al., Plaintiff, v. MEAD JOHNSON & COMPANY, LLC, et al., Defendants. | MARCH TERM, 2022 No. 220302588 |
|---|---|
| BRANDY GOODMOND, et al., Plaintiff, v. MEAD JOHNSON & COMPANY, LLC, et al., Defendants. | APRIL TERM, 2022 No. 220400208 |
| BRANDY GOODMOND, et al., Plaintiff, v. MEAD JOHNSON & COMPANY, LLC, et al., Defendants. | APRIL TERM, 2022 No. 220400212 |
| JANEE HENDERSON, et al., Plaintiff, v. MEAD JOHNSON & COMPANY, LLC, et al., Defendants. | APRIL TERM, 2022 No. 220400127 |
| KRISTEN KAJUFFA, et al., Plaintiff, v. | MARCH TERM, 2022 No. 220302978 |

1

Case ID: 220302606
Control No.: 23062552

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | |
| NAFEESAH MAYS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302963 |
| CATHERINE McMILLIAN, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400140 |
| DAMEKA MOMENT, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400142 |
| NYDIA PARKER, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302983 |
| ALEXANDRIA ROSS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302981 |
| LOREN SANDERS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400153 |
| SAMAYA SHORT, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400159 |
| ALICE STILLS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302617 |

Case ID: 220302606 <br> Control No.: 23062552

| | |
|---|---|
| CHRISTINA TAYLOR, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220302606<br>:<br>:<br>: |
| NATISHA THOMAS, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220400158<br>:<br>: |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220400156<br>:<br>:<br>: |
| JEANNATE WATSON, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220302967<br>:<br>: |
| GINA WIEGER, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220302614<br>:<br>: |
| GINA WIEGER, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220302601<br>:<br>: |
| SHANITA WIGGINS, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220302986<br>:<br>: |
| MELVENIA WILLIAMS, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>:　APRIL TERM, 2022<br>:　No. 220400141<br>:<br>: |

3

Case ID: 220302606<br>Control No.: 23062552

### PLAINTIFFS' REPSONSE TO ABBOTT LABORATORIES' PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant Abbott Laboratories' Preliminary Objections and responds to Defendant's Preliminary Objections and Evidentiary Exhibits as follows:

1.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

2.      Admitted.

3.      Admitted.

4.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

5.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law. Plaintiffs amended complaints contain additional factual pleadings that were not contained in the initially filed Complaints.

6.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

7.      This is an incorporation paragraph to which no response is required.

8.      Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately pled that the product at issue is unreasonably dangerous.  Defendant's Preliminary Objections should be overruled.

Case ID: 220302606
Control No.: 23062552

9. Denied as a conclusion of law to which no response is required. To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995). By way of further response, Plaintiff has adequately pled that the product at issue is unreasonably dangerous. Defendant's Preliminary Objections should be overruled.

10. Denied. By way of further response, Defendant's assertion that Plaintiff's Second Amended Complaint is "devoid of any facts showing" Defendant's products are "unreasonably dangerous" is patently incorrect. Plaintiff's Second Amended Complaint includes dozens of paragraphs explaining the dangers of Defendant's product, including an entire section of the Complaint titled "***Cow's Milk-Based Feeding Products Are Known to Cause NEC.***" For example, Plaintiff pleads that there is an "elevated risk of NEC associated with cow's milk-based products" and that "the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death." See Plaintiff's Second Amended Complaint at ¶ ¶ 17, 20. Further, as relates the user's awareness of the danger, Plaintiff's Complaint details how Defendant's product labels failed to warn doctor and parents of the increased risk of NEC. Finally, Plaintiff's Complaint details several safer alternative designs that also speak to the manufacturer's ability to eliminate the danger, including donor breast milk, pasteurized breast milk, breast milk fortifiers, and breast milk-based products designed for pre-term infants. Id. at ¶ ¶ 16-20, 86-88. Accordingly, Defendant's Preliminary Objections should be denied.

Case ID: 220302606
Control No.: 23062552

11.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately pled that the product at issue is unreasonably dangerous.  Defendant's Preliminary Objections should be overruled.

12.     This is an incorporation paragraph to which no response is required.

13.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Defendant's Preliminary Objections should be overruled.

14.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Specifically, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products."  See Plaintiff's Second Amended Complaint at ¶¶ 11.  Absent discovery, Plaintiff is limited to the detail

Case ID: 220302606
Control No.: 23062552

provided in the medical records, all of which are included in Plaintiff's Complaint. Defendant cites <u>Cummins v. Firestone Tire & Rubber Co.</u> in support of their position. 495 A.2d 963 (Pa. Super. Ct. 1985). In <u>Cummins</u>, preliminary objections were sustained because the "manufacturer or seller" could not be determined, even if the plaintiff were afforded discovery. <u>Id.</u> at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products. As such, Defendant's Preliminary Objections should be overruled. This is an incorporation paragraph to which no response is required.

15.     Denied as a conclusion of law to which no response is required. To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. <u>Powell v. Drumheller</u>, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995). By way of further response, Plaintiff has adequately identified the product that caused the injury at issue. Specifically, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products." <u>See</u> Plaintiff's Second Amended Complaint at ¶¶ 11. Absent discovery, Plaintiff is limited to the detail provided in the medical records, all of which are included in Plaintiff's Complaint. Defendant cites <u>Cummins v. Firestone Tire & Rubber Co.</u> in support of their position. 495 A.2d 963 (Pa. Super. Ct. 1985). In <u>Cummins</u>, preliminary objections were sustained because the "manufacturer or seller" could not be determined, even if the plaintiff were afforded discovery. <u>Id.</u> at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products. As such, Defendant's Preliminary Objections should be overruled.

Case ID: 220302606
Control No.: 23062552

16.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

17.     This is an incorporation paragraph to which no response is required.

18.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Defendant's Preliminary Objections should be overruled.

19.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Specifically, Plaintiff pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products." See Plaintiff's Second Amended Complaint at ¶ 11.  Absent discovery, Plaintiff is limited to the detail provided in the medical records, all of which are included in Plaintiff's Complaint.  Defendant cites Cummins v. Firestone Tire & Rubber Co. in support of their position. 495 A.2d 963 (Pa. Super. Ct. 1985).  In Cummins, preliminary objections were sustained because the "manufacturer or seller" could not be determined, even if the plaintiff were afforded discovery. Id. at 968.  Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also

8

Case ID: 220302606
Control No.: 23062552

identified, and discovery will likely reveal even further detail about those products. As such, Defendant's Preliminary Objections should be overruled.

20.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

21.     This is an incorporation paragraph to which no response is required.

22.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

23.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

24.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

25.     This is an incorporation paragraph to which no response is required.

26.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

27.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

28.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

29.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

30.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23062552

31.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

32.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

33.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

34.     This is an incorporation paragraph to which no response is required.

35.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

36.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

37.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

38.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

39.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

40.     This is an incorporation paragraph to which no response is required.

41.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

42.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23062552

43.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

44.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

45.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

46.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

47.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

48.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

49.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

50.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

51.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

52.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

WHEREFORE, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendant's Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

11

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 24, 2023          By:     <u>*/s/Timothy A. Burke, Esquire*</u>

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*


**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

12

Case ID: 220302606
Control No.: 23062552

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| BRANDY GOODMOND, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| BRANDY GOODMOND, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| JANEE HENDERSON, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| KRISTEN KAJUFFA, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302978 |

1

Case ID: 220302606
Control No.: 23062552

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: |
| NAFEESAH MAYS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |
| CATHERINE McMILLIAN, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |
| DAMEKA MOMENT, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |
| NYDIA PARKER, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |
| ALEXANDRIA ROSS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |
| LOREN SANDERS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |
| SAMAYA SHORT, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |
| ALICE STILLS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: |

Case-specific terms:

NAFEESAH MAYS — MARCH TERM, 2022 No. 220302963

CATHERINE McMILLIAN — APRIL TERM, 2022 No. 220400140

DAMEKA MOMENT — APRIL TERM, 2022 No. 220400142

NYDIA PARKER — MARCH TERM, 2022 No. 220302983

ALEXANDRIA ROSS — MARCH TERM, 2022 No. 220302981

LOREN SANDERS — APRIL TERM, 2022 No. 220400153

SAMAYA SHORT — APRIL TERM, 2022 No. 220400159

ALICE STILLS — MARCH TERM, 2022 No. 220302617

Case ID: 220302606<br>Control No.: 23062552

| | |
|---|---|
| CHRISTINA TAYLOR, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | MARCH TERM 2022 <br> No. 220302606 |
| NATISHA THOMAS, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | MARCH TERM, 2022 <br> No. 220400158 |
| TRINA WALKER-SAVAGE and CLIFTON <br> ISAIAH SAVAGE, JR., et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | MARCH TERM, 2022 <br> No. 220400156 |
| JEANNATE WATSON, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | MARCH TERM, 2022 <br> No. 220302967 |
| GINA WIEGER, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | MARCH TERM, 2022 <br> No. 220302614 |
| GINA WIEGER, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | MARCH TERM, 2022 <br> No. 220302601 |
| SHANITA WIGGINS, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | MARCH TERM, 2022 <br> No. 220302986 |
| MELVENIA WILLIAMS, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>       Defendants. | APRIL TERM, 2022 <br> No. 220400141 |

Case ID: 220302606 <br> Control No.: 23062552

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REPSONSE TO ABBOTT LABORATORIES' PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT**

**I.**     **Matter Before the Court**

     Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant's Preliminary Objections and respond to the Defendants' Preliminary Objections and Evidentiary Exhibits as follows:

**II.**     **Counter Statement of Questions Involved**

1. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Counts I-V where Plaintiffs have adequately plead and alleged that bovine-based formula is unreasonably dangerous and substantially increases the risk for the development of NEC in preterm infants, and where Plaintiffs are not required under the pleading standard to cite to evidence (such as medical studies) in their Complaint in support of ultimate issues that will have to be proven at trial?

   *Suggested answer in the affirmative.*

2. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' strict liability claims (Counts I and II) where Plaintiffs' claims are properly plead and legally sufficient?

   *Suggested answer in the affirmative.*

3. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligence claim (Count III) where Plaintiffs' claim is properly plead and legally sufficient.

   *Suggested answer in the affirmative.*

Case ID: 220302606
Control No.: 23062552

4. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligent misrepresentation claims (Counts IV and V) where Plaintiffs' claim is properly plead and legally sufficient?

   *Suggested answer in the affirmative.*

5. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Amended Complaint wherein Plaintiff does not need to differentiate between the Defendants when the tortious conduct alleged to have been perpetrated by the two manufacturing Defendants is identical in nature and actions?

   *Suggested answer in the affirmative.*

6. Whether this Honorable Court should deny Defendants Preliminary Objections as to the Plaintiff Parents claims for Negligent Infliction of Emotional Distress where those claims are tolled and therefore not barred by the statute of limitations?

   *Suggested answer in the affirmative.*

7. Whether this Honorable Court should deny Defendants Preliminary Objections as to Plaintiffs' Punitive Damages claims in Counts I through V of the Amended Complaint where Plaintiffs have adequately plead conduct which is sufficiently plead and adequate for a subsequent finding by a jury for Punitive Damages?

   *Suggested answer in the affirmative.*

8. Whether this Honorable Court should deny Defendants Preliminary Objections where Plaintiffs' necessary verifications have been filed by way of a praecipe to attach to Plaintiffs' Amended Complaints?

   *Suggested answer in the affirmative.*

Case ID: 220302606
Control No.: 23062552

### III.     Plaintiff has Adequately Plead That Defendant's Products Are Unreasonably Dangerous

Defendant asserts that Plaintiff's Amended Complaint fails to plead that Defendant's products are "unreasonably dangerous." Defendant is incorrect in this assertion, and their Preliminary Objections should be overruled.

Defendant's Preliminary Objections on this argument seem to rely heavily on their distrust of the science cited by Plaintiff regarding the dangers of their products. This argument is inappropriate at the Preliminary Objections stage. Rather, a complaint must only give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In arguing that Plaintiffs' studies cited in their amended complaint are somehow inadequate to show the product is unreasonably dangers, Defendants fail to realize that Pennylvania law does require Plaintiffs to support any pleadings with evidence to pass preliminary objection. Indeed, the Superior Court has previously held that **"**[e]vidence from which such facts [alleged in a complaint] may be inferred <u>not only need not but should not be alleged</u>. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense." *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted)(emphasis added).

Further, in assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc*., 69

Case ID: 220302606
Control No.: 23062552

D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.*, 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co.,* 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendant's assertion that Plaintiffs' Amended Complaint is "devoid of any facts showing" Defendant's products are "unreasonably dangerous" is patently incorrect. Plaintiffs' Amended Complaint includes dozens of paragraphs explaining the dangers of Defendant's product.

In determining whether a product is "unreasonably dangerous," the Court must consider seven factors:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> (2) The safety aspects of a product—the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3) The availability of a substitute product which would meet the same need and not be as unsafe.
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility on the part of the manufacturer, of spreading the loss of setting the price of the product or carrying liability insurance.

*Riley v. Warren Mfg., Inc.,* 688 A.2d 221, 225 (1997). The Court need not make a finding on all seven factors to determine that a product is unreasonably dangerous. *Id.*

Case ID: 220302606
Control No.: 23062552

Here, Plaintiff's Second Amended Complaint has adequately pled that the products at issue are unreasonably dangerous. For example, Plaintiff's Second Amended Complaint includes an entire section titled "***Cow's Milk-Based Feeding Products Are Known to Cause NEC.***" Further, Plaintiff pleads that there is an "elevated risk of NEC associated with cow's milk-based products" and that "the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death." See Plaintiff's Second Amended Complaint at ¶¶ 17, 20. Further, as relates the user's awareness of the danger, Plaintiff's Complaint details how Defendant, including through their product labels, failed to warn doctor and parents of the increased risk of NEC. Finally, Plaintiff's Complaint details several safer alternative designs that also speak to the manufacturer's ability to eliminate the danger, including donor breast milk, pasteurized breast milk, breast milk fortifiers, and breast milk-based products designed for pre-term infants. *Id*. at ¶¶ 16-20, 86-88.

Defendant cites *Orange Stones Co. v. City of Reading*, a case involving violation of an ordinance by a business in support of its contentions that Plaintiffs have not adequately plead that their products are unreasonably dangerous. There, the party filing preliminary objections claimed that plaintiff's complaint was deficient because it provided no facts to support its contention that the defendant acted "maliciously," "without probable cause," and "with the specific intent. *Orange Stones Co. v. City of Reading,* 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014). The trial court sustained the preliminary objections, agreeing that the plaintiff had pled no facts to support this contention. *Id*. at 10126. Thus, the Court reasoned, these contentions were "bald assertions." *Id.*

Here, the instant Plaintiffs' allegations are not merely bald assertions. As discussed above, Plaintiffs have pled dozens of paragraphs to support their contention that the products at issue are "unreasonably dangerous" and specifically plead that medical studies show that feeding preterm

8

infants cow's milk-based formula, as opposed to human breast milk (donor or otherise), substantially increases the risk of them developing NEC and possibly dying or being otherwise seriously injured. Accordingly, because Plaintiffs' Amended Complaint adequately pleads that Defendant's products are unreasonably dangerous, Defendant's Preliminary Objections should be denied.

**IV.** **Plaintiffs' Amended Complaints Have Adequately Identified The Products At Issue For Both Their Product Liability and Negligence Claims**

Defendant asserts that Plaintiff's Second Amended Complaint fails to identify the product at issue. Defendant is wrong and their Preliminary Objections should be overruled.

A complaint must give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates, P.C.,* 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc.,* 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co.,* 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Case ID: 220302606
Control No.: 23062552

Plaintiff has clearly and adequately identified the product that caused the injury at issue to the best of their ability at this time. Specifically, Plaintiff pled that the infant was fed the Defendants' specific "Similac and/or Enfamil cow's milk-based products." *See* Plaintiffs' Amended Complaint at ¶ 11. Absent discovery on the supply of each particular brand to each particular hospital, Plaintiff is limited to the detail provided in the medical records and the Plaintiff parents recollection, all of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiffs must be allowed to conduct full discovery to determine which of the two manufacturers' brand of cow's milk-based formula each Hospital system had a supply agreement with during certain periods of time, as that information, such as the formula brand, is not often elicited in the medical records. In fact, the hospital Defendants themselves are the ones with the best access to the information needed such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

Defendant cites *Cummins v. Firestone Tire & Rubber Co.* in support of their position that Plaintiffs have not adequately identified the product at issue. 495 A.2d 963 (Pa. Super. Ct. 1985). In *Cummins*, preliminary objections were sustained because the **"manufacturer or seller"** could not be determined, *even if the plaintiff were afforded discovery*. *Id.* at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products and which brand was fed to the Plaintiff during certain period of time, namely around the birth of each Plaintiff. As such, Defendant's Preliminary Objections should be overruled.

## V. Plaintiffs Have Plead Their Misrepresentation Claims With Adequate Specificity, They Therefore Should Not Be Dismissed

The requirements of Pennsylvania's rules as to the sufficiency of pleadings with relation to a misrepresentation claim are satisfied if a plaintiff pleads facts sufficient to permit defendants

Case ID: 220302606
Control No.: 23062552

to prepare a defense. *Commonwealth v. National Apartment Leasing Company,* 108 Pa.Commonwealth Ct. 300, 529 A.2d 1157 (1987); *see also McGinn v. Valloti,* 363 Pa.Superior Ct. 88, 525 A.2d 732 (1987); *see also Foster v. Peat Marwick Main & Co.*, 138 Pa. Cmwlth. 147, 156, 587 A.2d 382, 387 (1991), *aff'd sub nom. Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 544 Pa. 387, 676 A.2d 652 (1996). Here, when the complaint is examined in its entirety, it clearly describes a course of conduct alleged to be fraudulent or misrepresentative sufficient to notify Abbott for purposes of defending the claim. *National Apartment Leasing.* In fact, Plaintiffs devotes several pages of their Amended Complaint to facts describing the misrepresentation conduct of Defendant Abbott wherein they allege, inter alia, that:

> Prior to [Plaintiff's] birth, Abbott sent sales representatives to Defendant Hospital. Those sales representatives provided information about Abbott's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. ***This information indicated that Abbott's products were safe*** to give to preterm infants like [Plaintiffs]. Abbott maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. ***These sales representatives did not disclose that Abbott's products could cause NEC in preterm infants***… Mead Johnson and Abbott believed and intended that the misrepresentations that its sale representatives shared with Defendant Hospital would be used to make feeding decisions for preterm infants like [Plaintiff]… ***Despite knowing of the risk of NEC, Abbott did not warn of the significantly increased risk of NEC*** (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Abbott likewise did not provide instructions or guidance for how to avoid NEC.

*See* Plaintiffs' Amended Complaint, at ¶¶ 60-62, 72 (emphasis added).

Clearly, Plaintiffs have articulated their misrepresentation claims with sufficient particularity to allow for Defendant Abbott to have adequate notice of their claim and know the material facts such that they can formulate a defense. As seen above, Plaintiffs' Amended Complaint states 1) the misrepresentations of safety that were relayed by Abbott, 2) that those

Case ID: 220302606
Control No.: 23062552

misrepresentations were made by Abbott to the Plaintiffs' healthcare providers, and thereafter to the Plaintiff Parents, 3) who then relied upon the misrepresentation of safety to decide what formula to feed their children, and finally 4) that Abbott was aware of the potential for their formula to case NEC prior to the misrepresentations being made. Defendants' arguments that Plaintiffs have failed to articulate what misrepresentations were made such that they can adequately form a defense are spurious, and their preliminary objections should be summarily denied.

**VI.** **Plaintiffs Have Adequately Pleaded Facts Against Both Mead and Abbott For Conduct Which Is Sufficiently Similar Between The Two Manufacturing Defendants Such That They Are On Notice Of Plaintiffs' Claims Against Them**

Defendant argues in its Preliminary Objections that Plaintiffs' Amended Complaint fails to plead with particularity facts that differentiate between the two manufacturing Defendants, Abbott and Mead. In support of this contention, Defendant cites to *Coyne v. Holy Fam. Apartments*. *See Coyne v. Holy Fam. Apartments*, No. CV 19-4583, 2020 WL 2063475, at *4 (E.D. Pa. Apr. 29, 2020). However, when one references the case cited by Defendant, and examines the *entire* quote from the Court, which is notably absent from Defendant's brief, one sees that the *Coyne* Court held that, "even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants[,] ***[and] [a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim***." *Id.,* at 4.

Here, although Plaintiffs' Complaints do often refer to both Abbott and Mead throughout their complaint in tandem, this is because Plaintiffs allege that ***both*** Abbott and Mead engaged in nearly identical conduct of concealing and misrepresenting the harmfulness of their bovine-based infant formula, and instead marketed those products to hospitals and parents as a safe formula to

Case ID: 220302606
Control No.: 23062552

be fed to premature infants, despite knowing its propensity to increase the risk of development of NEC in preterm infants. *See* Plaintiffs' Amended Complaint, generally. In a situation such as this, where both Defendants engaged in the same tortious activity, there is no pleading requirement that Plaintiff plead the conduct of each Defendant separately by "differentiating" their claims between each Defendant as Abbott suggests. Indeed, as the Court in *Coyne* noted, where a Plaintiff has pleaded allegations against multiple defendants that include specific wrongdoing attributable to each of those proposed Defendants, the Plaintiff's claims should not be dismissed as Defendants are **both** adequately on notice of the Claims that they **both** must defend, respectively.

### VII. Plaintiffs' Complaint Sufficiently Alleges that Defendant Consciously Disregarded the Risks Posed by the Products that they Manufactured, Distributed, and Sold Absent Adequate Warnings, Supporting Punitive Damages

Punitive damages may be awarded for "'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Hutchison v. Luddy*, 582 Pa. 114, 121 (2005) (quoting *Feld v. Merriam*, 506 Pa. 383, 395 (1984)). Punitive damages must be based on conduct that is "wanton," "willful," or "reckless." 582 Pa. at 121. As such, in Pennsylvania, to survive preliminary objections, a plaintiff must allege that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id*. For instance, in *Engle v. BT* Indus. AB, 41 Pa. D. & C.4th 25, 26, 33-34 (Pa.C.P. 1999), plaintiffs brought a products liability suit based on the manufacturers' negligence, strict liability claims, and breach of warranty. The defendant's motion to strike the plaintiff's punitive damages claim was denied. In denying the defendant's motion, the Court stated that the "plaintiff has alleged that the defendants introduced a defective product into the stream of commerce with the knowledge of defects and the possible harm that they would cause. Such conduct, if proven, may well be interpreted as exhibiting the type of reckless indifference that may trigger punitive damages." *Id*. Hence, when a manufacturer

13

Case ID: 220302606
Control No.: 23062552

has a subjective appreciation of the risk of harm posed by a product, and then introduces said product into the stream of commerce regardless, this conduct may rise to the level of conscious disregard required to warrant punitive damages. Further, to the extent that there is any doubt about whether the standard for punitive damages is met, that doubt must be resolved in the Plaintiff's favor at this stage. See *Theodore v. Del. Valley Sch. Dist*., 575 Pa. 321, 333 (2003).

Plaintiffs have alleged that Abbott and Mead knowingly distributed a product that they knew posed an extreme danger to infants for profit. Abbott and Mead knew that the bovine-based products they supplied posed an increased risk of NEC, an extremely serious disease which can cause death, to premature infants, as compared to other economically and technologically feasible alternatives, such as human nutrition-based alternatives. Instead, Abbott and Mead chose to continue to produce bovine-based products, marketing them specifically towards pre-term infants, and not formulate alternatives that they knew would reduce the risk of NEC to premature infants. Hence, Abbott and Mead knowingly produced products that they knew could cause harm to infants and chose to place them into the stream of commerce, in some cases marketing those products for use with pre-term infants, in conscious disregard of the risk posed to infants.

Abbott and Mead also knew that the ordinary consumer would not expect these products to pose an increased risk of NEC and despite this, failed to warn consumers about the increased risk of NEC posed by their bovine-based products. Plaintiff alleges that Abbott and Mead failed to provide warnings to consumers that adequately and thoroughly described the increased risk of NEC posed by their products, as demonstrated by significant scientific evidence, in a way that was reasonably calculated to communicate these risks to parents of infants. Similarly, this failure to disclose substantial risks and communicate them in a way that would adequately inform parents was knowing and intentional conduct on the part of Abbott and Mead that evinces a conscious

14

disregard of the risk posed by their products. Therefore, these allegations rise to the level of conscious disregard required to justify the issue of punitive damages proceeding at this stage.

**VIII.**  **Plaintiff-Parents' Claims Against Defendants Are Not Time-Barred And Should Not Be Dismissed**

Defendants' Preliminary Objections should be denied because Plaintiff's negligent infliction of emotional distress ("NIED") claim, brought under the bystander theory of liability, conforms with Pennsylvania legal precedent. Plaintiff-Parents contemporaneously observed a traumatic event injuring their child which satisfies the requisite element of an NIED claim.

Under Pennsylvania law, a plaintiff may pursue a claim for NIED in four different situations: "(1) where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) where the plaintiff was subjected to a physical impact; (3) where the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) where the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. 2008), *aff'd,* 36 A.3d 83 (Pa. 2011). The fourth scenario—the "bystander" theory of liability—arises where the plaintiff's distress is a foreseeable result of witnessing a loved one's injury. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

Based on the precedent set forth in *Sinn v. Burd*, Pennsylvania courts permit a plaintiff to recover for NIED as a "bystander" if the plaintiff's injury was reasonably foreseeable in light of three factors: "(1) whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it, (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence, and (3) whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Sinn*, 404 A.2d at 685 (quoting *Dillon v. Legg*, 441 P.2d

Case ID: 220302606
Control No.: 23062552

912, 920 (Cal. 1968)). To prevail, the plaintiff must show some form of "discrete and identifiable traumatic event" which caused the plaintiff's distress. *Turner v. Med. Ctr., Beaver, PA, Inc.*, 686 A.2d 830, 832–33 (Pa. Super. 1996) (quoting *Love v. Cramer*, 606 A.2d 1175, 1177 (Pa. Super. 1992)). While interpreting *Sinn*, the Pennsylvania Superior Court has held the definition of "sensory and contemporaneous observance" depends on "whether the emotional shock was immediate and direct rather than distant and indirect, and not upon the sense employed in seeing the accident." *Krysmalski by Krysmalski v. Tarasovich*, 622 A.2d 298, 303 (Pa. Super. 1993). The plaintiff alleging NIED must also assert a physical manifestation of the emotional harm. *See Banyas v. Lower Bucks County Hospital*, 437 A.2d 1236, 1239–40 (Pa. Super. 1981).

Here, Plaintiff has satisfied all prongs of the "bystander" theory of NIED. First, they were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. Second, Plaintiffs' shock was a direct emotional impact from their contemporaneous observance of their child in the hospital. Finally, Plaintiffs and their child are obviously closely related. Plaintiffs' emotional distress from this negligence was completely foreseeable and has resulted in physical manifestations including depression and other harms.

In their Preliminary Objections, Defendants argue that Plaintiff did not assert a specific cause of action. However, Defendants fail to recognize it is well-settled Pennsylvania law that a complaint that contains facts that support a specific cause of action does, in fact, assert said action. *Bartanus v. Lis*, 480 A.2d 1178, 1182 (Pa. Super. 1984) (ruling that "[e]ven though appellant did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged" because "the complainant need only state the material facts upon which a cause of action is based").

Case ID: 220302606
Control No.: 23062552

Pennsylvania is a fact pleading state whereby the Complaint must provide defendants with notice of the basis of the claim and a summary of the facts essential to support that claim. *Alpha Tau Omega Fraternity*, 464 A.2d at 1352. Under the Pennsylvania Rules of Civil Procedure, a complainant must list the material facts underlying his claim "in a concise and summary form." Pa.R.C.P. 1019(a); *see Thompson Coal Co. v. Pike Cole Co.*, 412 A.2d 466, 468 (Pa. 1979).

When read in the context of the Complaint as a whole, as required by law, Plaintiff clearly asserts an NIED claim. Notably, Plaintiff includes extensive factual allegations in paragraphs eleven (11) through eighty-two (82), the entirety of which must be considered when interpreting every other paragraph of the Complaint. *See* Plaintiff's Complaint at 11–82. Within those extensive factual allegations, the "bystander" theory of liability is clearly asserted as the plaintiff-parents' distress is a foreseeable result of witnessing the injury of their child resulting from Defendants' negligence. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

In sum, Plaintiff's NIED claim under a "bystander" theory of liability is sufficiently pled. Plaintiffs were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. There was a direct emotional impact from this contemporaneous observance of their child in the hospital.

Further, Plaintiff-parents' claims are not time-barred because Defendant Abbott prevented Plaintiff-parents from learning the true cause of their infant's injury. The discovery rule is an exception [to the statute of limitations] that tolls the statute of limitations when an injury or its cause is not reasonably knowable." In re Risperdal Litig., 656 Pa. 649, 661 (2019). "Under the "discovery rule," the statute of limitations begins to run when a plaintiff knows, or reasonably should have known, that: (1) an injury has been sustained; and (2) the injury has been caused by another party's conduct." *Ward v. Rice*, 828 A.2d 1118, 1121 (Pa. Super. 2003) (citing *Citsay v.*

Case ID: 220302606
Control No.: 23062552

*Reich*, 380 Pa. Super. 366, 369 (1988)). For the discovery rule to apply, the plaintiff must have exercised the due diligence that would be expected of a reasonable person in the plaintiff's position. 828 A.2d at 1121. A plaintiff must begin exercising reasonable diligence once they know the "the salient facts concerning the occurrence of his injury and who or what caused it." *Romah v. Hygienic Sanitation Co.,* 705 A.2d 841, 857 (Pa. Super. 1997) (emphasis added). While reasonable diligence is an objective standard, "it is also flexible […] to take into account differences between persons, their capacity to meet certain situations and circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account the fallibility of human beings."" 828 A.2d at 1121-22 (quoting RST 2d § 283 cmt's b-c). Whether someone has exercised reasonable diligence "may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected at random from the community whose standard is to be applied." *Petri v. Smith*, 307 Pa. Super. 261, 271-72 (1982).

Under the discovery rule, if a plaintiff's delay is because the assurances of their physicians lull the patient into a false sense of security, this may toll the statute of limitations. *See Acker v. Palena*, 260 Pa. Super. 214, 222 (1978); *Barshady v. Schlosser*, 226 Pa. Super. 260, 263-64 (1973). The Pennsylvania Supreme Court has "expressly declined to hold, as a matter of law, that a layperson may be charged with knowledge greater than that which was communicated to her by the medical professionals who provided treatment and diagnosis." In re Risperdal Litig., 656 Pa. at 662 (citing *Wilson v. El-Daief*, 600 Pa. 161, 179-180 (2009)). If a plaintiff alleges that their delay was due to their reasonably relying upon the reassurances of their physicians, then, while construing the pleadings in the light most favorable to the moving party, a plaintiff's claims will not be time-barred. *Acker v. Palena*, 260 Pa. Super. 214, 223-24 (1978).

Case ID: 220302606
Control No.: 23062552

Likewise, the under the similar but distinct doctrine of fraudulent concealment, a form of equitable estoppel, the statute of limitations will be tolled if a plaintiff's delay is induced by reliance on the fraudulent concealment of the defendant. *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 95-96 (1964). If, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Romah*, 705 A.2d at 857 (internal quotations omitted). A defendant does not need to intentionally deceive a plaintiff for the doctrine of fraudulent concealment to apply; instead, fraudulent concealment encompasses "fraud in the broadest sense which includes an unintentional deception." *Nesbitt, supra*, 416 Pa. at 96 (citation omitted). It is for the factfinder to determine whether a defendant made representations that could have induced this reliance on the part of the plaintiff. Id. For example, in Romah, the Superior Court held that the issue of whether the plaintiff's claims for gross negligence and punitive damages were tolled because the defendant concealed studies and other information from the EPA and the public that showed that the defendant's product caused increased risk of blood cell depression in men was a factual issue for the jury. *Romah, supra*, 705 A.2d at 861.

Plaintiffs have alleged that manufacturers Abbott and Mead took numerous steps to prevent Plaintiff-parents from learning the cause of their infant's injuries. Defendants disseminated materials to the public that intentionally misled parents about the risk of NEC posed by their products, which affirmatively stated, and still state, that their products do not cause the disease, or worse still, may reduce the risk of NEC. For instance, Abbott published numerous misleading statements on its publicly available website that misrepresented the link between its bovine-based formula and the risk of NEC in premature infants. In addition, Defendant manufacturers trained and directed its sales personnel to mislead medical providers about the risk of NEC posed by its

19

Case ID: 220302606
Control No.: 23062552

products. Further, Defendant manufacturers did not provide warnings on their packaging or products, thereby also concealing the known risk of NEC from parents. Thus, under both the discovery rule and doctrine of fraudulent concealment, Plaintiff-parents' claims are not time-barred.

## IX. Plaintiffs Have Filed the Proper Verifications For Their Amended Complaints

Pennsylvania Rule of Civil Procedure 1024 requires that pleadings containing averments of fact not appearing of record in the action shall state that the averment is true upon the signer's personal knowledge or information and belief and shall be verified. *See* Pa.R.C.P. 1024. Plaintiff has obtained and produced proper verification as required by the Rules. Accordingly, Defendants' objection should be overruled. All such verifications have been and/or will immediately be attached by way of a praecipe to attach filed to Plaintiffs' Amended Complaint.

## X. Request In The Alternative To Amend The Complaint

Although Plaintiff strenuously maintains the sufficiency of all of the Counts contained within the Complaint, should this Court be inclined to grant any of Defendants' specific Preliminary Objections, Plaintiff respectfully requests permission to amend the pleadings.

**WHEREFORE**, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants' Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 24, 2023               By:     */s/Timothy A. Burke, Esquire*

20

Case ID: 220302606
Control No.: 23062552

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*


**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

Case ID: 220302606
Control No.: 23062552

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2023, I caused a true and correct copy of the foregoing

document to be served by electronic filing to all counsel of record.


Respectfully submitted,


**KLINE & SPECTER**,
A Professional Corporation

Date: October 24, 2023        By:        */s/Timothy A. Burke, Esquire*

TIMOTHY A. BURKE, ESQUIRE

22

Case ID: 220302606
Control No.: 23062552

# EXHIBIT A-49

**FILED**
24 OCT 2023 04:18 pm
**Civil Administration**
**A. CLARKE**

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al., : <br>          Plaintiff, : <br>     v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br>       Defendants. : | MARCH TERM, 2022 <br> No. 220302588 |
| BRANDY GOODMOND, et al., : <br>          Plaintiff, : <br>     v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br>       Defendants. : | APRIL TERM, 2022 <br> No. 220400208 |
| BRANDY GOODMOND, et al., : <br>          Plaintiff, : <br>     v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br>       Defendants. : | APRIL TERM, 2022 <br> No. 220400212 |
| JANEE HENDERSON, et al., : <br>          Plaintiff, : <br>     v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br>       Defendants. : | APRIL TERM, 2022 <br> No. 220400127 |
| KRISTEN KAJUFFA, et al., : <br>          Plaintiff, : <br>     v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br>       Defendants. : | MARCH TERM, 2022 <br> No. 220302978 |
| NAFEESAH MAYS, et al., : <br>          Plaintiff, : <br>     v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br>       Defendants. : | MARCH TERM, 2022 <br> No. 220302963 |
| CATHERINE McMILLIAN, et al., : <br>          Plaintiff, : <br>     v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br>       Defendants. : | APRIL TERM, 2022 <br> No. 220400140 |
| : | |

Case ID: 220302606
Control No.: 23096740

| | |
|---|---|
| DAMEKA MOMENT, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | : APRIL TERM, 2022<br>: No. 220400142<br>:<br>:<br>: |
| NYDIA PARKER, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | : MARCH TERM, 2022<br>: No. 220302983<br>:<br>:<br>: |
| ALEXANDRIA ROSS, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | : MARCH TERM, 2022<br>: No. 220302981<br>:<br>:<br>: |
| LOREN SANDERS, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400153<br>:<br>: |
| SAMAYA SHORT, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400159<br>:<br>: |
| ALICE STILLS, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302617<br>:<br>: |
| CHRISTINA TAYLOR, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | : MARCH TERM, 2022<br>: No. 220302606<br>:<br>: |
| NATISHA THOMAS, et al.,<br>   Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   Defendants. | : MARCH TERM, 2022<br>: No. 220400158<br>:<br>: |
| | : |

Case ID: 220302606<br>Control No.: 23096740

| | | |
|---|---|---|
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al., | : | MARCH TERM, 2022 |
| Plaintiff, | : | No. 220400156 |
| v. | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| JEANNATE WATSON, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| SHANITA WIGGINS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| MELVENIA WILLIAMS, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

## **ORDER**

AND NOW this the _____ day of _____, 2023, upon consideration

of Defendant Mead Johnson & Company, LLC and Mead Johnson Nutrition Company's

(collectively referred to as, "Mead Johnson" or "Moving Defendants") Preliminary Objections to

the Plaintiffs' Amended Complaint, Plaintiffs' Answer thereto, and all other appropriate

Case ID: 220302606
Control No.: 23096740

considerations, it is hereby ORDERED, ADJUDGED and DECREED that Moving Defendants'

Preliminary Objections are OVERRULED.

BY THE COURT


_____
J.

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302588<br>:<br>: |
| BRANDY GOODMOND, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400208<br>:<br>: |
| BRANDY GOODMOND, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400212<br>:<br>: |
| JANEE HENDERSON, et al.,<br>　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400127<br>:<br>: |
| KRISTEN KAJUFFA, et al.,<br>　　　　　　Plaintiff,<br>　　　v. | :<br>: MARCH TERM, 2022<br>: No. 220302978 |

1

Case ID: 220302606
Control No.: 23096740

MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

NAFEESAH MAYS, et al., :
     Plaintiff, : MARCH TERM, 2022
    v. : No. 220302963
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

CATHERINE McMILLIAN, et al., :
     Plaintiff, : APRIL TERM, 2022
    v. : No. 220400140
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

DAMEKA MOMENT, et al., :
     Plaintiff, : APRIL TERM, 2022
    v. : No. 220400142
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

NYDIA PARKER, et al., :
     Plaintiff, : MARCH TERM, 2022
    v. : No. 220302983
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

ALEXANDRIA ROSS, et al., :
     Plaintiff, : MARCH TERM, 2022
    v. : No. 220302981
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

LOREN SANDERS, et al., :
     Plaintiff, : APRIL TERM, 2022
    v. : No. 220400153
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

SAMAYA SHORT, et al., :
     Plaintiff, : APRIL TERM, 2022
    v. : No. 220400159
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

ALICE STILLS, et al., :
     Plaintiff, : MARCH TERM, 2022
    v. : No. 220302617
MEAD JOHNSON & COMPANY, LLC, et al., :
     Defendants. :

Case ID: 220302606
Control No.: 23096740

| | |
|---|---|
| CHRISTINA TAYLOR, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302606 <br> : <br> : <br> : |
| NATISHA THOMAS, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220400158 <br> : <br> : |
| TRINA WALKER-SAVAGE and CLIFTON <br> ISAIAH SAVAGE, JR., et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220400156 <br> : <br> : <br> : |
| JEANNATE WATSON, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302967 <br> : <br> : <br> : |
| GINA WIEGER, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302614 <br> : <br> : |
| GINA WIEGER, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302601 <br> : <br> : |
| SHANITA WIGGINS, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302986 <br> : <br> : |
| MELVENIA WILLIAMS, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400141 <br> : <br> : |

3

Case ID: 220302606 <br> Control No.: 23096740

## <u>PLAINTIFFS' REPSONSE TO MEAD JOHNSON'S PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT</u>

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant Mead Johnson & Company, LLC and Mead Johnson Nutrition Company's (collectively referred to as, "Mead Johnson" or "Moving Defendants") Preliminary Objections and responds to Defendant's Preliminary Objections and Evidentiary Exhibits as follows:

1.  Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

2.  Admitted.

3.  Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

4.  Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

5.  Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law. Plaintiffs amended complaints contain additional factual pleadings that were not contained in the initially filed Complaints.

6.  Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

7.  Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096740

8.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

9.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

10.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

11.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

12.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

13.      Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

14.      Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

15.      Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096740

16. Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

17. Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

18. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

19. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

20. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

21. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

22. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

23. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

24. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

25. Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096740

26.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

27.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

28.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

29.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

30.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

31.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

32.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

33.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

34.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

35.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

36.　　Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096740

37.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

38.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

39.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

40.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

41.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

42.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

43.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

44.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

45.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

46.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

47.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302606
Control No.: 23096740

48.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

49.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

50.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

51.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

52.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

53.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

WHEREFORE, for the reasons more fully set forth in Plaintiffs' accompanying Memorandum of Law, Plaintiffs respectfully request that this Honorable Court deny Defendant's Preliminary Objections, or, in the alternative, Order that Plaintiffs are permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 24, 2023          By:     _/s/Timothy A. Burke, Esquire_

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
_Attorneys for Plaintiffs_

Case ID: 220302606
Control No.: 23096740

**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

Case ID: 220302606
Control No.: 23096740

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

HOLLI CARTER, et al.,
　　　　　Plaintiff,　　　　　:　MARCH TERM, 2022
　　　　v.　　　　　　　　　:　No. 220302588
MEAD JOHNSON & COMPANY, LLC, et al.,
　　　　　Defendants.

BRANDY GOODMOND, et al.,
　　　　　Plaintiff,　　　　　:　APRIL TERM, 2022
　　　　v.　　　　　　　　　:　No. 220400208
MEAD JOHNSON & COMPANY, LLC, et al.,
　　　　　Defendants.

BRANDY GOODMOND, et al.,
　　　　　Plaintiff,　　　　　:　APRIL TERM, 2022
　　　　v.　　　　　　　　　:　No. 220400212
MEAD JOHNSON & COMPANY, LLC, et al.,
　　　　　Defendants.

JANEE HENDERSON, et al.,
　　　　　Plaintiff,　　　　　:　APRIL TERM, 2022
　　　　v.　　　　　　　　　:　No. 220400127
MEAD JOHNSON & COMPANY, LLC, et al.,
　　　　　Defendants.

KRISTEN KAJUFFA, et al.,
　　　　　Plaintiff,　　　　　:　MARCH TERM, 2022
　　　　v.　　　　　　　　　:　No. 220302978

1

Case ID: 220302606
Control No.: 23096740

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | |

| | |
|---|---|
| NAFEESAH MAYS, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | MARCH TERM, 2022<br>No. 220302963 |

| | |
|---|---|
| CATHERINE McMILLIAN, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | APRIL TERM, 2022<br>No. 220400140 |

| | |
|---|---|
| DAMEKA MOMENT, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | APRIL TERM, 2022<br>No. 220400142 |

| | |
|---|---|
| NYDIA PARKER, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | MARCH TERM, 2022<br>No. 220302983 |

| | |
|---|---|
| ALEXANDRIA ROSS, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | MARCH TERM, 2022<br>No. 220302981 |

| | |
|---|---|
| LOREN SANDERS, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | APRIL TERM, 2022<br>No. 220400153 |

| | |
|---|---|
| SAMAYA SHORT, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | APRIL TERM, 2022<br>No. 220400159 |

| | |
|---|---|
| ALICE STILLS, et al.,<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. : | MARCH TERM, 2022<br>No. 220302617 |

Case ID: 220302606
Control No.: 23096740

| | |
|---|---|
| CHRISTINA TAYLOR, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | : MARCH TERM, 2022<br>: No. 220302606<br>:<br>:<br>:<br>: |
| NATISHA THOMAS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220400158<br>:<br>:<br>: |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220400156<br>:<br>:<br>: |
| JEANNATE WATSON, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302967<br>:<br>:<br>: |
| GINA WIEGER, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302614<br>:<br>:<br>: |
| GINA WIEGER, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302601<br>:<br>:<br>: |
| SHANITA WIGGINS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302986<br>:<br>:<br>: |
| MELVENIA WILLIAMS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400141<br>:<br>:<br>: |

Case ID: 220302606<br>Control No.: 23096740

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REPSONSE TO MEAD JOHNSON'S PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT**

**I.      Matter Before the Court**

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant Mead Johnson & Company, LLC and Mead Johnson Nutrition Company's (collectively referred to as, "Mead Johnson" or "Moving Defendants") Preliminary Objections and respond to the Moving Defendants' Preliminary Objections and Evidentiary Exhibits as follows:

**II.      Counter Statement of Questions Involved**

1.   Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Counts I-V where Plaintiffs have adequately plead and alleged that bovine-based formula is unreasonably dangerous and substantially increases the risk for the development of NEC in preterm infants, and where Plaintiffs are not required under the pleading standard to cite to evidence (such as any medical studies) in their Complaint in support of ultimate issues that will have to be proven at trial?

*Suggested answer in the affirmative.*

2.   Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' strict liability claims (Counts I and II) where Plaintiffs' claims are properly plead and legally sufficient?

*Suggested answer in the affirmative.*

3.   Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligence claim (Count III) where Plaintiffs' claim is properly plead and legally sufficient.

*Suggested answer in the affirmative.*

Case ID: 220302606
Control No.: 23096740

4. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligent misrepresentation claims (Counts IV and V) where Plaintiffs' claim is properly plead and legally sufficient?

   *Suggested answer in the affirmative.*

5. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Amended Complaint where Plaintiff has adequately pleaded all necessary facts and damages to allow for Defendants to prepare their defense to Plaintiffs' claims?

   *Suggested answer in the affirmative.*

6. Whether this Honorable Court should deny Defendants Preliminary Objections as to the Plaintiff Parents claims for Negligent Infliction of Emotional Distress where those claims are tolled and therefore not barred by the statute of limitations?

   *Suggested answer in the affirmative.*

7. Whether this Honorable Court should deny Defendants Preliminary Objections as to Plaintiffs' Punitive Damages claims in Counts I through V of the Amended Complaint where Plaintiffs have adequately plead conduct which is sufficiently plead and adequate for a subsequent finding by a jury for Punitive Damages?

   *Suggested answer in the affirmative.*

8. Whether this Honorable Court should deny Defendants Preliminary Objections where Plaintiffs' necessary verifications have been filed by way of a praecipe to attach to Plaintiffs' Amended Complaints?

   *Suggested answer in the affirmative.*


**III.** **Plaintiff has Adequately Plead That Defendant's Products Are Unreasonably Dangerous**

Case ID: 220302606
Control No.: 23096740

Defendant asserts that Plaintiff's Amended Complaint fails to plead that Defendant's products are "unreasonably dangerous." Defendant is incorrect in this assertion, and their Preliminary Objections should be overruled.

Defendant's Preliminary Objections on this argument seem to rely heavily on their distrust of the science cited by Plaintiff regarding the dangers of their products. This argument is inappropriate at the Preliminary Objections stage. Rather, a complaint must only give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In arguing that Plaintiffs' studies cited in their amended complaint are somehow inadequate to show the product is unreasonably dangers, Defendants fail to realize that Pennsylvania law does require Plaintiffs to support any pleadings with evidence to pass preliminary objection. Indeed, the Superior Court has previously held that **"**[e]vidence from which such facts [alleged in a complaint] may be inferred <u>not only need not but should not be alleged</u>. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense." *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted)(emphasis added).

Further, in assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc*., 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.*, 75 D&C 185 (1950); accord

Case ID: 220302606
Control No.: 23096740

*Cmwlth v. Bell Tel Co.,* 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendant's assertion that Plaintiffs' Amended Complaint is "devoid of any facts showing" Defendant's products are "unreasonably dangerous" is patently incorrect. Plaintiffs' Amended Complaint includes dozens of paragraphs explaining the dangers of Defendant's product.

In determining whether a product is "unreasonably dangerous," the Court must consider seven factors:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> (2) The safety aspects of a product—the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3) The availability of a substitute product which would meet the same need and not be as unsafe.
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility on the part of the manufacturer, of spreading the loss of setting the price of the product or carrying liability insurance.

*Riley v. Warren Mfg., Inc.,* 688 A.2d 221, 225 (1997). The Court need not make a finding on all seven factors to determine that a product is unreasonably dangerous. *Id*.

Here, Plaintiff's Second Amended Complaint has adequately pled that the products at issue are unreasonably dangerous. For example, Plaintiff's Second Amended Complaint includes an

7

Case ID: 220302606
Control No.: 23096740

entire section titled "***Cow's Milk-Based Feeding Products Are Known to Cause NEC.***" Further, Plaintiff pleads that there is an "elevated risk of NEC associated with cow's milk-based products" and that "the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death." *See* Plaintiffs' Amended Complaint at ¶¶ 17, 20. Further, as relates the user's awareness of the danger, Plaintiff's Complaint details how Defendant, including through their product labels, failed to warn doctor and parents of the increased risk of NEC. Finally, Plaintiff's Complaint details several safer alternative designs that also speak to the manufacturer's ability to eliminate the danger, including donor breast milk, pasteurized breast milk, breast milk fortifiers, and breast milk-based products designed for pre-term infants. *Id*. at ¶¶ 16-20, 86-88.

Defendant cites *Orange Stones Co. v. City of Reading*, a case involving violation of an ordinance by a business in support of its contentions that Plaintiffs have not adequately plead that their products are unreasonably dangerous. There, the party filing preliminary objections claimed that plaintiff's complaint was deficient because it provided no facts to support its contention that the defendant acted "maliciously," "without probable cause," and "with the specific intent. *Orange Stones Co. v. City of Reading,* 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014). The trial court sustained the preliminary objections, agreeing that the plaintiff had pled <u>no facts</u> to support this contention. *Id*. at 10126. Thus, the Court reasoned, these contentions were "bald assertions." *Id.*

Here, the instant Plaintiffs' allegations are not merely bald assertions. As discussed above, Plaintiffs have pled dozens of paragraphs to support their contention that the products at issue are "unreasonably dangerous" and specifically plead that medical studies show that feeding preterm infants cow's milk-based formula, as opposed to human breast milk (donor or otherwise), substantially increases the risk of them developing NEC and possibly dying or being otherwise

Case ID: 220302606
Control No.: 23096740

seriously injured. Accordingly, because Plaintiffs' Amended Complaint adequately pleads that Defendant's products are unreasonably dangerous, Defendant's Preliminary Objections should be denied.

**IV.**      **Plaintiffs' Amended Complaints Have Adequately Identified The Products At Issue For Both Their Product Liability and Negligence Claims**

Defendant asserts that Plaintiff's Second Amended Complaint fails to identify the product at issue. Defendant is wrong and their Preliminary Objections should be overruled.

A complaint must give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates, P.C.,* 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc.,* 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co.,* 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Plaintiff has clearly and adequately identified the product that caused the injury at issue to the best of their ability at this time. Specifically, Plaintiff pled that the infant was fed the Defendants' specific "Similac and/or Enfamil cow's milk-based products." *See* Plaintiffs'

Case ID: 220302606
Control No.: 23096740

Amended Complaint at ¶ 11. Absent discovery on the supply of each particular brand to each particular hospital, Plaintiff is limited to the detail provided in the medical records and the Plaintiff parents recollection, all of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiffs must be allowed to conduct full discovery to determine which of the two manufacturers' brand of cow's milk-based formula each Hospital system had a supply agreement with during certain periods of time, as that information, such as the formula brand, is not often elicited in the medical records. In fact, the hospital Defendants themselves are the ones with the best access to the information needed such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

Defendant cites *Cummins v. Firestone Tire & Rubber Co.* in support of their position that Plaintiffs have not adequately identified the product at issue. 495 A.2d 963 (Pa. Super. Ct. 1985). In *Cummins*, preliminary objections were sustained because the **"manufacturer or seller"** could not be determined, *even if the plaintiff were afforded discovery*. *Id.* at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products and which brand was fed to the Plaintiff during certain period of time, namely around the birth of each Plaintiff. As such, Defendant's Preliminary Objections should be overruled.

**V.**     **Plaintiff Has Adequately Pled the Facts and Damages at Issue**

Defendant asserts that Plaintiffs' Amended Complaint fails to adequately plead facts regarding liability and injuries claimed. Defendant is wrong and their Preliminary Objections should be overruled. A complaint must give a defendant fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). As the Superior Court has noted:

Case ID: 220302606
Control No.: 23096740

> Rule 1019(a) requires fact pleading. The purpose of 1019(a) is to require the pleader
> to disclose the material facts **sufficient to enable the adverse party to prepare
> his case**. A complaint therefore must do more than give the defendant fair notice of
> what the plaintiff's claim is and the grounds upon which it rests. It should formulate
> the issues by fully summarizing the material facts. Material facts are ultimate facts,
> i.e., those facts essential to support the claim. <u>Evidence from which such facts
> may be inferred not only need not but should not be alleged.</u> **Allegations will
> withstand challenge under 1019(a) if (1) they contain averments of all of the
> facts a plaintiff will eventually have to prove in order to recover, and (2) they
> are sufficiently specific so as to enable defendant to prepare his defense.**

*Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations

omitted)(emphasis added).

In assessing whether particular paragraphs in a complaint satisfy this requirement, they

must be read in context with all other allegations in the complaint to determine whether the

defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v.

Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining

whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation

be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc*., 69

D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord

*Cmwlth v. Bell Tel Co.*, 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine

"whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if

it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery

is sought so that he may know without question upon what grounds to make his defense." *McNeil

v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendants advance several arguments regarding the alleged deficiencies of facts and

injuries, all of which are incorrect:

- Defendants assert that Plaintiffs' Amended Complaint does not state whether the
  infant actually ingested the product at issue. In contrast, Plaintiffs have pled that
  the infant "was fed Similac and/or Enfamil cow's milk-based products" and

Case ID: 220302606
Control No.: 23096740

developed NEC "after ingesting Defendant Manufacturers' products." <u>See</u> Plaintiff's Second Amended Complaint at ¶¶ 11-12.

- Defendants assert that Plaintiffs' Amended Complaint does not indicate which product was ingested. However, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products." *Id*. at ¶ 11. Absent discovery, Plaintiff is limited to the detail provided in the medical records, the details of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiff must be allowed to conduct full discovery to determine which manufacturer and brand each Hospital system had a distribution agreement with during certain periods of time, as that information, such as brand, is not often elicited in the medical records. Further, the Defendants themselves are the ones with the information such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

- Defendants argue that Plaintiffs have not met their burden under fact pleading to show that the product was unreasonably dangerous because allegedly plaintiffs' claims are "unsupported by any specific studies or trials in the Amended Complaint." See Def. Preliminary Objections, at 8. However, as noted above, the Superior Court has ruled that in relation to pleading facts, "evidence from which such facts may be inferred not only need not but should not be alleged," which is entirely contrary to Defendants' arguments herein. See *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974)

- Defendants assert that Plaintiff has not pled the period of time during which the product at issue was ingested. However, Plaintiff alleged in the Complaint that the infant "was fed Similac and/or Enfamil cow's milk-based products by [hospital staff] after her birth." *Id.* Plaintiff's birth date is included in the Complaint.

- Defendants assert that Plaintiff failed to plead when the minor was diagnosed with NEC. However, Plaintiff pled that the infant's "diagnosis of NEC occurred during [the infant's] course of treatment at Defendant Hospital's NICU." *Id*. at ¶ 13. Plaintiffs' averments adequately summarize the material facts necessary such that the Defendants are on notice of the claim of which they must defend, and notably the moving Defendants are the exact hospitals where the Plaintiff was initially treated for NEC, thus they have access to the exact same medical as the Plaintiffs which show the exact dates of treatment which are summarily referred to in Plaintiffs' Amended Complaint.

- Defendants assert that Plaintiffs did not plead the treatment the infant received following the ingestion of the NEC and resulting injuries. Defendant cites no authority for the proposition that a plaintiff must describe the specific treatment an injured party underwent following injuries resulting from the tortious conduct of a defendant.

Case ID: 220302606
Control No.: 23096740

- Defendants assert that Plaintiffs have not adequately pled the injuries suffered as a result of the product. Plaintiff has adequately pled the injuries suffered by the infant who ingested Defendant's product, specifically "a diagnosis of NEC, treatment with antibiotics, blood transfusions and surgery, feeding difficulties, developmental delays, neurological issues, gastrointestinal issues, growth issues, short bowel syndrome, heart/lung/liver/kidney issues, mobility and walking difficulties, learning disabilities." Id. at ¶ 13.

Accordingly, Defendant's Preliminary Objections should be overruled as Plaintiffs Allegations should withstand challenge under 1019(a) because they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and they are sufficiently specific so as to enable Defendants to prepare their defense.

### VI. Plaintiffs Have Plead Their Intentional and Negligent Misrepresentation Claims With Adequate Specificity, They Therefore Should Not Be Dismissed

The requirements of Pennsylvania's rules as to the sufficiency of pleadings with relation to a misrepresentation claim are satisfied if a plaintiff pleads facts sufficient to permit defendants to prepare a defense. *Commonwealth v. National Apartment Leasing Company,* 108 Pa.Commonwealth Ct. 300, 529 A.2d 1157 (1987); *see also McGinn v. Valloti,* 363 Pa.Superior Ct. 88, 525 A.2d 732 (1987); *see also Foster v. Peat Marwick Main & Co.*, 138 Pa. Cmwlth. 147, 156, 587 A.2d 382, 387 (1991), *aff'd sub nom. Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 544 Pa. 387, 676 A.2d 652 (1996). Here, when the complaint is examined in its entirety, it clearly describes a course of conduct alleged to be fraudulent or misrepresentative sufficient to notify Mead for purposes of defending the claim. *National Apartment Leasing.* In fact, Plaintiffs devotes several pages of their Amended Complaint to facts describing the misrepresentation conduct of Defendant Mead wherein they allege, inter alia, that:

> Prior to [Plaintiff's] birth, Mead sent sales representatives to Defendant Hospital. Those sales representatives provided information about Mead's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. ***This information indicated that Mead's products were safe*** to give to preterm infants like [Plaintiffs]. Mead maintains call logs

13

Case ID: 220302606
Control No.: 23096740

that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. ***These sales representatives did not disclose that Mead's products could cause NEC in preterm infants***… Mead Johnson and Mead believed and intended that the misrepresentations that its sale representatives shared with Defendant Hospital would be used to make feeding decisions for preterm infants like [Plaintiff]… ***Despite knowing of the risk of NEC, Mead did not warn of the significantly increased risk of NEC*** (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

*See* Plaintiffs' Amended Complaint, at ¶¶ 60-62, 72 (emphasis added).

Clearly, Plaintiffs have articulated their misrepresentation claims with sufficient particularity to allow for Defendant Mead to have adequate notice of their claim and know the material facts such that they can formulate a defense. As seen above, Plaintiffs' Amended Complaint states 1) the misrepresentations of safety that were relayed by Mead, 2) that those misrepresentations were made by Mead to the Plaintiffs' healthcare providers, and thereafter to the Plaintiff Parents, 3) who then relied upon the misrepresentation of safety to decide what formula to feed their children, and finally 4) that Mead was aware of the potential for their formula to case NEC prior to the misrepresentations being made. Defendants' arguments that Plaintiffs have failed to articulate what misrepresentations were made such that they can adequately form a defense are spurious, and their preliminary objections should be summarily denied.

**VII.** **Plaintiffs' Complaint Sufficiently Alleges that Defendant Consciously Disregarded the Risks Posed by the Products that they Manufactured, Distributed, and Sold Absent Adequate Warnings, Supporting Punitive Damages**

Punitive damages may be awarded for "'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Hutchison v. Luddy*, 582 Pa. 114, 121 (2005) (quoting *Feld v. Merriam*, 506 Pa. 383, 395 (1984)). Punitive damages must be based on conduct that is "wanton," "willful," or "reckless." 582 Pa. at 121. As such, in Pennsylvania, to survive preliminary objections, a plaintiff must allege that (1) a defendant had a

14

subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id*. For instance, in *Engle v. BT* Indus. AB, 41 Pa. D. & C.4th 25, 26, 33-34 (Pa.C.P. 1999), plaintiffs brought a products liability suit based on the manufacturers' negligence, strict liability claims, and breach of warranty. The defendant's motion to strike the plaintiff's punitive damages claim was denied. In denying the defendant's motion, the Court stated that the "plaintiff has alleged that the defendants introduced a defective product into the stream of commerce with the knowledge of defects and the possible harm that they would cause. Such conduct, if proven, may well be interpreted as exhibiting the type of reckless indifference that may trigger punitive damages." *Id*. Hence, when a manufacturer has a subjective appreciation of the risk of harm posed by a product, and then introduces said product into the stream of commerce regardless, this conduct may rise to the level of conscious disregard required to warrant punitive damages. Further, to the extent that there is any doubt about whether the standard for punitive damages is met, that doubt must be resolved in the Plaintiff's favor at this stage. See *Theodore v. Del. Valley Sch. Dist*., 575 Pa. 321, 333 (2003).

Plaintiffs have alleged that Abbott and Mead knowingly distributed a product that they knew posed an extreme danger to infants for profit. Abbott and Mead knew that the bovine-based products they supplied posed an increased risk of NEC, an extremely serious disease which can cause death, to premature infants, as compared to other economically and technologically feasible alternatives, such as human nutrition-based alternatives. Instead, Abbott and Mead chose to continue to produce bovine-based products, marketing them specifically towards pre-term infants, and not formulate alternatives that they knew would reduce the risk of NEC to premature infants. Hence, Abbott and Mead knowingly produced products that they knew could cause harm to infants

Case ID: 220302606
Control No.: 23096740

and chose to place them into the stream of commerce, in some cases marketing those products for use with pre-term infants, in conscious disregard of the risk posed to infants.

Abbott and Mead also knew that the ordinary consumer would not expect these products to pose an increased risk of NEC and despite this, failed to warn consumers about the increased risk of NEC posed by their bovine-based products. Plaintiff alleges that Abbott and Mead failed to provide warnings to consumers that adequately and thoroughly described the increased risk of NEC posed by their products, as demonstrated by significant scientific evidence, in a way that was reasonably calculated to communicate these risks to parents of infants. Similarly, this failure to disclose substantial risks and communicate them in a way that would adequately inform parents was knowing and intentional conduct on the part of Abbott and Mead that evinces a conscious disregard of the risk posed by their products. Therefore, these allegations rise to the level of conscious disregard required to justify the issue of punitive damages proceeding at this stage.

## VIII. Plaintiff-Parents' Claims Against Defendants Are Not Time-Barred And Should Not Be Dismissed

Defendants' Preliminary Objections should be denied because Plaintiff's negligent infliction of emotional distress ("NIED") claim, brought under the bystander theory of liability, conforms with Pennsylvania legal precedent. Plaintiff-Parents contemporaneously observed a traumatic event injuring their child which satisfies the requisite element of an NIED claim.

Under Pennsylvania law, a plaintiff may pursue a claim for NIED in four different situations: "(1) where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) where the plaintiff was subjected to a physical impact; (3) where the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) where the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011). The fourth scenario—the "bystander"

16

theory of liability—arises where the plaintiff's distress is a foreseeable result of witnessing a loved one's injury. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

Based on the precedent set forth in *Sinn v. Burd*, Pennsylvania courts permit a plaintiff to recover for NIED as a "bystander" if the plaintiff's injury was reasonably foreseeable in light of three factors: "(1) whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it, (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence, and (3) whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Sinn*, 404 A.2d at 685 (quoting *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)). To prevail, the plaintiff must show some form of "discrete and identifiable traumatic event" which caused the plaintiff's distress. *Turner v. Med. Ctr., Beaver, PA, Inc.*, 686 A.2d 830, 832–33 (Pa. Super. 1996) (quoting *Love v. Cramer*, 606 A.2d 1175, 1177 (Pa. Super. 1992)). While interpreting *Sinn*, the Pennsylvania Superior Court has held the definition of "sensory and contemporaneous observance" depends on "whether the emotional shock was immediate and direct rather than distant and indirect, and not upon the sense employed in seeing the accident." *Krysmalski by Krysmalski v. Tarasovich*, 622 A.2d 298, 303 (Pa. Super. 1993). The plaintiff alleging NIED must also assert a physical manifestation of the emotional harm. *See Banyas v. Lower Bucks County Hospital*, 437 A.2d 1236, 1239–40 (Pa. Super. 1981).

Here, Plaintiff has satisfied all prongs of the "bystander" theory of NIED. First, they were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. Second, Plaintiffs' shock was a direct emotional impact from their contemporaneous observance of their child in the hospital. Finally, Plaintiffs and their child are

Case ID: 220302606
Control No.: 23096740

obviously closely related. Plaintiffs' emotional distress from this negligence was completely foreseeable and has resulted in physical manifestations including depression and other harms.

In their Preliminary Objections, Defendants argue that Plaintiff did not assert a specific cause of action. However, Defendants fail to recognize it is well-settled Pennsylvania law that a complaint that contains facts that support a specific cause of action does, in fact, assert said action. *Bartanus v. Lis*, 480 A.2d 1178, 1182 (Pa. Super. 1984) (ruling that "[e]ven though appellant did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged" because "the complainant need only state the material facts upon which a cause of action is based").

Pennsylvania is a fact pleading state whereby the Complaint must provide defendants with notice of the basis of the claim and a summary of the facts essential to support that claim. *Alpha Tau Omega Fraternity*, 464 A.2d at 1352. Under the Pennsylvania Rules of Civil Procedure, a complainant must list the material facts underlying his claim "in a concise and summary form." Pa.R.C.P. 1019(a); *see Thompson Coal Co. v. Pike Cole Co.*, 412 A.2d 466, 468 (Pa. 1979).

When read in the context of the Complaint as a whole, as required by law, Plaintiff clearly asserts an NIED claim. Notably, Plaintiff includes extensive factual allegations in paragraphs eleven (11) through eighty-two (82), the entirety of which must be considered when interpreting every other paragraph of the Complaint. *See* Plaintiff's Complaint at 11–82. Within those extensive factual allegations, the "bystander" theory of liability is clearly asserted as the plaintiff-parents' distress is a foreseeable result of witnessing the injury of their child resulting from Defendants' negligence. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

Case ID: 220302606
Control No.: 23096740

In sum, Plaintiff's NIED claim under a "bystander" theory of liability is sufficiently pled. Plaintiffs were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. There was a direct emotional impact from this contemporaneous observance of their child in the hospital.

Further, Plaintiff-parents' claims are not time-barred because Defendant Mead prevented Plaintiff-parents from learning the true cause of their infant's injury. The discovery rule is an exception [to the statute of limitations] that tolls the statute of limitations when an injury or its cause is not reasonably knowable." In re Risperdal Litig., 656 Pa. 649, 661 (2019). "Under the "discovery rule," the statute of limitations begins to run when a plaintiff knows, or reasonably should have known, that: (1) an injury has been sustained; and (2) the injury has been caused by another party's conduct." *Ward v. Rice*, 828 A.2d 1118, 1121 (Pa. Super. 2003) (citing *Citsay v. Reich*, 380 Pa. Super. 366, 369 (1988)). For the discovery rule to apply, the plaintiff must have exercised the due diligence that would be expected of a reasonable person in the plaintiff's position. 828 A.2d at 1121. A plaintiff must begin exercising reasonable diligence once they know the "the salient facts concerning the occurrence of his injury and who or what caused it." *Romah v. Hygienic Sanitation Co.,* 705 A.2d 841, 857 (Pa. Super. 1997) (emphasis added). While reasonable diligence is an objective standard, "it is also flexible […] to take into account differences between persons, their capacity to meet certain situations and circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account the fallibility of human beings."" 828 A.2d at 1121-22 (quoting RST 2d § 283 cmt's b-c). Whether someone has exercised reasonable diligence "may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected

19

Case ID: 220302606
Control No.: 23096740

at random from the community whose standard is to be applied." *Petri v. Smith*, 307 Pa. Super. 261, 271-72 (1982).

Under the discovery rule, if a plaintiff's delay is because the assurances of their physicians lull the patient into a false sense of security, this may toll the statute of limitations. *See Acker v. Palena*, 260 Pa. Super. 214, 222 (1978); *Barshady v. Schlosser*, 226 Pa. Super. 260, 263-64 (1973). The Pennsylvania Supreme Court has "expressly declined to hold, as a matter of law, that a layperson may be charged with knowledge greater than that which was communicated to her by the medical professionals who provided treatment and diagnosis." In re Risperdal Litig., 656 Pa. at 662 (citing *Wilson v. El-Daief*, 600 Pa. 161, 179-180 (2009)). If a plaintiff alleges that their delay was due to their reasonably relying upon the reassurances of their physicians, then, while construing the pleadings in the light most favorable to the moving party, a plaintiff's claims will not be time-barred. *Acker v. Palena*, 260 Pa. Super. 214, 223-24 (1978).

Likewise, the under the similar but distinct doctrine of fraudulent concealment, a form of equitable estoppel, the statute of limitations will be tolled if a plaintiff's delay is induced by reliance on the fraudulent concealment of the defendant. *Nesbitt v. Erie Coach Co*., 416 Pa. 89, 95-96 (1964). If, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Romah*, 705 A.2d at 857 (internal quotations omitted). A defendant does not need to intentionally deceive a plaintiff for the doctrine of fraudulent concealment to apply; instead, fraudulent concealment encompasses "fraud in the broadest sense which includes an unintentional deception." *Nesbitt, supra*, 416 Pa. at 96 (citation omitted). It is for the factfinder to determine whether a defendant made representations that could have induced this reliance on the part of the plaintiff. Id. For example, in Romah, the Superior Court held that the issue of whether

Case ID: 220302606
Control No.: 23096740

the plaintiff's claims for gross negligence and punitive damages were tolled because the defendant concealed studies and other information from the EPA and the public that showed that the defendant's product caused increased risk of blood cell depression in men was a factual issue for the jury. *Romah, supra*, 705 A.2d at 861.

Plaintiffs have alleged that manufacturers Abbott and Mead took numerous steps to prevent Plaintiff-parents from learning the cause of their infant's injuries. Defendants disseminated materials to the public that intentionally misled parents about the risk of NEC posed by their products, which affirmatively stated, and still state, that their products do not cause the disease, or worse still, may reduce the risk of NEC. For instance, Mead published numerous misleading statements on its publicly available website that misrepresented the link between its bovine-based formula and the risk of NEC in premature infants. In addition, Defendant manufacturers trained and directed its sales personnel to mislead medical providers about the risk of NEC posed by its products. Further, Defendant manufacturers did not provide warnings on their packaging or products, thereby also concealing the known risk of NEC from parents. Thus, under both the discovery rule and doctrine of fraudulent concealment, Plaintiff-parents' claims are not time-barred.

## IX. __Plaintiffs Have Filed the Proper Verifications For Their Amended Complaints__

Pennsylvania Rule of Civil Procedure 1024 requires that pleadings containing averments of fact not appearing of record in the action shall state that the averment is true upon the signer's personal knowledge or information and belief and shall be verified. *See* Pa.R.C.P. 1024. Plaintiff has obtained and produced proper verification as required by the Rules. Accordingly, Defendants' objection should be overruled. All such verifications have been and/or will immediately be attached by way of a praecipe to attach filed to Plaintiffs' Amended Complaint.

Case ID: 220302606
Control No.: 23096740

**X.**     <u>**Request In The Alternative To Amend The Complaint**</u>

Although Plaintiff strenuously maintains the sufficiency of all of the Counts contained within the Complaint, should this Court be inclined to grant any of Defendants' specific Preliminary Objections, Plaintiff respectfully requests permission to amend the pleadings.

**WHEREFORE**, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants' Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 24, 2023       By:     <u>*/s/Timothy A. Burke, Esquire*</u>

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*

**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

Case ID: 220302606
Control No.: 23096740

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2023, I caused a true and correct copy of the foregoing document to be served by electronic filing to all counsel of record.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 24, 2023     By:     */s/Timothy A. Burke, Esquire*

TIMOTHY A. BURKE, ESQUIRE

23

Case ID: 220302606
Control No.: 23096740

# EXHIBIT A-50

FILED
27 OCT 2023 11:11 am
Civil Administration
C. ARTWELL

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 875-0609
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

**WELSH & RECKER, P.C.**
Catherine M. Recker, Esquire
Amy B. Carver, Esquire
Richard D. Walk, III, Esquire
306 Walnut Street
Philadelphia, PA  19106
215-972-6430
cmrecker@welshrecker.com
abcarver@welshrecker.com
rwalk@welshrecker.com

**ATTORNEYS FOR DEFENDANTS
MEAD JOHNSON & COMPANY, LLC,
AND MEAD JOHNSON NUTRITION
COMPANY**

---

| | |
|---|---|
| **CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor** : <br>                 Plaintiff, : <br>    v. : <br>   : <br> **MEAD JOHNSON & COMPANY, LLC, et al.,** : <br>               Defendants. : | **COURT OF COMMON PLEAS PHILADELPHIA COUNTY** <br><br> **MARCH TERM, 2022 No. 2606** |

### MEAD JOHNSON & COMPANY'S REPLY IN SUPPORT OF PRELIMINARY OBJECTIONS TO PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's opposition confirms that her claims must be dismissed.  Plaintiff and other similarly situated plaintiffs in these cases have filed dozens of nearly identical complaints alleging that their children were given "Similac and/or Enfamil" branded

1

Case ID: 220302606
Control No.: 23096740

formula and/or fortifier, which caused them to develop necrotizing enterocolitis ("NEC").[1]

And this is an *amended* complaint. Plaintiff initially filed her complaint in March 2022—

more than eighteen months ago. Mead Johnson & Company ("Mead") filed preliminary

objections on grounds similar to those cited here, and Plaintiff was given leave to amend.

Plaintiff's amendments are plainly insufficient and do not meaningfully address—let alone

cure—the arguments that Mead raised in its initial set of objections. In some instances,

Plaintiff's amended complaint is *identical* to her original complaint. Pennsylvania is a fact

pleading state, and Plaintiff has not pled sufficient facts. In this product liability case,

Plaintiff has failed to plead even the product that she claims caused the alleged injury.

Nor has Plaintiff adequately pled that this *class of products* is causally associated with

NEC. While Plaintiff has provided "general notice" that she believes *some product* caused

I.H. to develop NEC, she has wholly failed to meet her burden to put Mead on notice

about which of its many products is the alleged culprit. Further, *as her opposition*

*acknowledges*, she has failed to plead the basic elements of the causes of action she

now claims to assert. Her opposition does nothing to fix these errors. Plaintiff's claims

should therefore be dismissed.

## I. Plaintiff's Claims Should Be Dismissed Because She Fails To Allege That A Specific Product Caused Her Injury

Pennsylvania law gives Plaintiff the burden of "summariz[ing] the essential facts to

support the claim." *McShea v. City of Phila.*, 606 Pa. 88, 96, 995 A.2d 334 (2010). In a

case alleging that plaintiffs were injured by ingesting a specific product, the identity of that

product undoubtedly qualifies as an essential fact. *Baker v. Rangos*, 324 A,2d 498, 505–

---

[1] NEC is a tragic syndrome that affects 2-5% of premature infants. It affects approximately 10% of all babies weighing less than 3½ pounds. *See* https://www.cincinnatichildrens.org/health/n/nec.

Case ID: 220302606
Control No.: 23096740

06 (Pa. Super. 1974) (requiring plaintiff to allege "all of the facts a plaintiff will eventually have to prove in order to recover"). Numerous courts have held as much. *E.g.*, *Gay v. A. O. Smith Corp.*, 545 F. Supp. 3d 255, 262 (W.D. Pa. 2021) (granting summary judgment in asbestos case where plaintiff "never cited a specific instance when he could recall working with an asbestos-containing GE product"); *In re McNeil Consumer Healthcare, Mktg. & and Sales Pracs. Litig.*, 2011 WL 2802854, at **9–10 (E.D. Pa. July 15, 2011) ("[P]laintiffs fail to allege any personal harm arising [from Defendant's alleged wrongs]. This deficiency follows from the plaintiffs' failure to allege which particular products they purchased.").

But instead of identifying a specific product by its name, Plaintiff merely identifies "Similac and/or Enfamil," two different trademarks from two different companies. Am. Compl. at ¶¶ 12, 90. Similac is a trademark for a line of products sold by Defendant Abbot, while Enfamil is a trademark for a line of products sold by Defendant Mead Johson. By using the intentionally ambiguous phrase "and/or," Plaintiff fails even to identify which Defendant manufactured the product at issue, and she therefore fails to allege sufficient facts to state a claim against either Defendant. This vague phrasing is identical to the phrasing Plaintiff used in her original complaint and was one of the issues raised in Mead's first set of Preliminary Objections.

"Similac and/or Enfamil" are not product names. They are *brand umbrellas* that contain a variety of *product lines*, which themselves contain multiple *products*. Plaintiff's own complaint admits that "Mead markets and sells multiple products." *Id.* at ¶ 49. She then identifies *eight separate* products. *Id.* Likewise, Plaintiff acknowledges that "Abbott markets and sells multiple products" and then identifies *seven different* products. *Id.* at ¶

3

Case ID: 220302606
Control No.: 23096740

48.   All told, Plaintiff's "product identification" spans *fifteen unique products* across two different manufacturers.  And these are not even all of the products under the "Similac and/or Enfamil" brand names.   *See* https://hcp.meadjohnson.com/s/products/category/a4K4J000001uk3DUAQ/hospital-feeding-system (listing nine different hospital feeding products).  Moreover, some of these products are formulas, which are fed to infants as substitutes for breastmilk, and some are fortifiers, which are used to *supplement* breastmilk.   According to Plaintiff's allegations, I.H. may have received any one "and/or" a combination of these products.  As is the case with virtually every product liability action, it is not enough to merely allege the brand name of a product line.  Plaintiff must allege the actual product.  The suggestion that merely identifying the umbrella brand of fifteen separate products manufactured by two different companies is sufficient identification is wholly unfounded.

Further, this is information that Plaintiff, except in rare cases, should already have in her possession.  Plaintiff's suggestion that she needs "discovery on the supply of each particular brand to each particular hospital" in order to determine which product I.H. was fed is misguided.  I.H.'s own hospital records, to which Plaintiff would have access, should show what products were administered to I.H. by her medical professionals.  No discovery from Mead Johnson or Abbott is needed.[2]  Nor would such discovery reveal information sufficient to show what products I.H. was fed.  Neither Mead nor Abbott have access to Plaintiff's confidential medical information, which would contain feeding schedules and physician notes about the type of product (including whether formulas or fortifiers were

---

[2] As described above, Plaintiff has had more than a full year to collect and review her hospital records and establish which, if any, product the hospital fed to I.H.  As her amended complaint makes clear, she has still not identified any product.

Case ID: 220302606
Control No.: 23096740

used)—if any—Plaintiff was fed while in the hospital. *Kegerise v. Susquehanna Twshp. Sch. Dist.*, 2017 WL 2424047, at *3 (M.D. Pa. June 5, 2017) (no discovery necessary when party was already in possession of relevant information). Plaintiff plainly does not need Mead or Abbott's permission or involvement to access information found in her own medical files.

Plaintiff's allegations are boilerplate. This is all the more clear because *every complaint* uses *identical* language when referring to the products plaintiffs were allegedly given. The reason Plaintiff cannot plead a specific product has nothing to do with Mead and everything to do with Plaintiff's failure to conduct even a modest review of I.H.'s hospital records. Plaintiff's failure to identify with specificity the products that I.H. was fed is fundamental and is fatal to each of her claims.

## II. Plaintiff Does Not Adequately Plead That Cow-Based Feeding Products Cause NEC.

Plaintiff's "entire section titled '***Cow's Milk-Based Feeding Products Are Known to Cause NEC***'" in her complaint spans *six sentences*, none of which contain any kind of citation or reference. Opp. at 8 (emphasis in original); Am. Compl. at ¶¶ 15–16. The first four sentences describe NEC generally, the fifth sentence provides that preterm infants are "especially susceptible to NEC because of their underdeveloped digestive systems." *Id.* at ¶ 16. It is only in the sixth and final sentence where Plaintiff says, with no supporting allegation, that "[e]xtensive scientific research, including numerous randomized controlled trials, has confirmed that cow's milk-based feeding products cause NEC in preterm and low-birth-weight infants." Plaintiff cites no studies for this proposition—unsurprisingly, given that to Mead's knowledge there are no studies showing that cow's milk-based feeding products cause NEC.

Case ID: 220302606
Control No.: 23096740

These bald assertions are insufficient to withstand a preliminary objection. *See* Pa. R. Civ. P. 1019(b); *Weiner v. Am.Honda Motor Co., Inc.*, 718 A.2d 305, 307 (Pa. Super. 1998) ("The threshold inquiry in all products liability cases is whether there is a defect which rendered the product unreasonably dangerous."). Plaintiff has provided no study definitively showing that any of defendants' products *cause* NEC because there is no such study. At best, Plaintiff can offer studies showing that breastmilk has a protective effect against NEC. This information is uncontroversial, well-known, and actively promoted by defendant. *See* Promoting Breast Milk, MeadJohnson.com, https://hcp.meadjohnson.com/s/hcpm-subpage/a4b4J000000JFeAQAW/human-milk (last visited Oct. 23, 2023) ("Breast milk is naturally perfect for infants, providing unique benefits to mother and baby" and listing some "key components and benefits" of breast milk). Plaintiff's claims should be dismissed for these reasons and the reasons more fully articulated in Mead's preliminary objections.

### III. Parent-Plaintiff's Claims Should Be Dismissed.

In her opposition, Plaintiff, for the first time, uses the term negligent infliction of emotional distress. Opp. at 16. As Plaintiff herself admits, any plaintiff "alleging NIED must also assert a physical manifestation of the emotional harm." Opp. at 17. She is not wrong. "Physical injury must be averred to sustain a cause of action for negligent infliction of emotional distress." *Armstrong v. Paoli Memorial Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993) (collecting cases); *see also* Restatement (Second) of Torts § 463A. Indeed, as Mead argued in its preliminary objections, "[n]o cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Mot. at 19 (quoting *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985

6

Case ID: 220302606
Control No.: 23096740

A.2d 840, 841 n.3 (Pa. 2009)); *see also Miller v. Evenflo Co., Inc.*, 2009 WL 10689606, at *4 (W.D. Pa. Dec. 21, 2009) (dismissing plaintiff-parents' tort claims where only physical injury was to minor plaintiff).

The parent-plaintiff here alleged *no physical injury*. She states for the first time only in her opposition that I.H.'s injuries caused her to suffer "physical manifestations including depression and other harms." Opp. at 18. Arguments are not allegations, and parent-plaintiff's claims must therefore be dismissed. *Armstrong*, 633 A.2dat 609 (Pa. Super. Ct. 1993); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1239–40 (Pa. Super. 1981) ("[G]iven the restrictions that our courts have consistently imposed on recovery for this tort, we would err in finding a cause of action without an allegation of bodily harm.").

### IV. Plaintiff's Misrepresentation Claims Should Be Dismissed For Failure To Allege Specificity And Reliance (Counts IV and V).

Any claim for misrepresentation, whether negligent or intentional, requires plaintiff to plead the alleged fraud with specificity. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999). And as Pennsylvania's supreme court has explained, "[a]verments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation[.]" *Bata v. Cent.-Penn Nat. Bank of Phila.*, 224 A.2d 174, 179 (Pa. 1966); *see also* Pa. R. Civ. P. 1019(b) ("Averments of fraud . . . shall be averred with particularity.").

In her reply, Plaintiff points to bald, generic assertions that Mead Johnson representatives did not warn of the risk of NEC—a risk for which Plaintiff offers no evidence other than her *ipse dixit*. This is a far cry from the "exact statements or actions plaintiff alleges constitute the fraudulent misrepresentation." *Youndt v. First Nat'l Bank*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005). And nothing that Plaintiff points to in her

Case ID: 220302606
Control No.: 23096740

opposition comes remotely close to meeting this threshold.  Plaintiff does not—and cannot—quote any Mead representative, as she did not hear any Mead representative make any kind of representation.  Nor does Plaintiff point to any specific misrepresentation that Mead allegedly made.  And, finally, Plaintiff does not even identify any allegations in her opposition supporting the proposition that Plaintiff's healthcare providers relied on Mead's purported misrepresentation.  These failures doom her claims of misrepresentation.  *See, e.g.*, Mot. at Ex. B *In re Mead Johnson Product Cases*, CJC-23-005257, at 6–8 (Cal. Sup. Ct. July 7, 2023); *Scott v. Bimbo Bakeries, USA, Inc.*, Civ. A. No. 10-3154, 2012 WL 645905, at *6 (E.D. Pa. Feb. 29, 2012) (dismissing misrepresentation claim for failing to "allege when these alleged misrepresentations were made, who made them, or how they were communicated"); *Casino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (Cal. Ct. App. 2014) ("[W]hen a plaintiff asserts fraud against a corporation, the plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.") (internal quotation marks omitted); *Peterson v. Clark Lake Homes Inc.*, A22-0398, 2022 WL 16910578, at *4 (Minn. Ct. App. (Nov. 14, 2022) (requiring identification of the "who, what, when, where, and how" for a claim of fraud); *Black v. Cmty. Educ. Ctrs., Inc.*, Civ. A. No. 12-6102, 2014 WL 859313, at *6 (E.D. Pa. Mar. 4, 2014) (dismissing fraud claims for lack of specificity).

## V.     Plaintiff's Punitive Damages Claims Should Be Struck.

Merely pleading outrageous conduct is insufficient to maintain a claim for punitive damages. *See Brownawell v. Bryan*, 40 Pa. D. & C.3d 604, 606 (Pa. Com. Pl. 1985). "Punitive damages are an extreme remedy available in only the most exceptional

Case ID: 220302606
Control No.: 23096740

matters." *Wagner v. Onofrey*, 2006 Pa. Dist. & Cnty. Dec. LEXIS 333, *11 (Pa. Com. Pl. 2006) (citing *Phillips v. Cricket Lighters*, 584 Pa. 179, 188, 883 A.2d 439, 445 (2005)).

For the reasons stated in Mead's Preliminary Objections, Plaintiff's complaint is devoid of any allegation or evidence that would enable her to maintain a claim for punitive damages. At best, Plaintiff alleges that Mead failed to warn physicians of a risk Plaintiff also alleges those physicians already knew. Am Compl. at ¶¶ 72–76. This is insufficient to maintain a claim for punitive damages.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: October 27, 2023

/s/ Kenneth A. Murphy
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire

**WELSH & RECKER, P.C.**

/s/ Catherine M. Recker
Catherine M. Recker, Esquire
Amy B. Carver, Esquire
Richard D. Walk, III, Esquire

**Attorneys for Defendants,**
**Mead Johnson & Company, LLC and**
**Mead Johnson Nutrition Company**

9

Case ID: 220302606
Control No.: 23096740

## CERTIFICATE OF SERVICE

I, Kenneth A. Murphy, Esquire, do hereby certify that on this day I caused a true and correct copy of the foregoing Preliminary Objections of Defendants Mead Johnson & Company and Mead Johnson Nutrition Company to Plaintiffs' Complaint, and accompanying Memorandum of Law, to be served via electronic filing, on the following counsel of record, addressed as follows:

**Kline & Specter, P.C.**
Thomas R. Kline, Esquire
Tobias Millrood, Esquire
Elizabeth Crawford, Esquire
Melissa Merk, Esquire
Timothy A. Burke, Esquire
Helen Lawless, Esquire
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
tom.kline@klinespecter.com
tobi.millrood@klinespecter.com
melissa.merk@klinespecter.com
elissa.crawford@klinespecter.com
timothy.burke@klinespecter.com
helen.lawless@klinespecter.com
*Attorneys for Plaintiffs*

**Burns White, LLC**
James Young, Esquire
Richard Margulies, Esquire
Susan R. Engle, Esquire
1880 John F. Kennedy Blvd., 10th Floor
Philadelphia, PA 19103
jayoung@burnswhite.com
rsmargulies@burnswhite.com
sengle@burnswhite.com
*Counsel for Defendants, The Trustees of the University of Pennsylvania d/b/a The Hospital of the University of Pennsylvania and The Trustees of the University of Pennsylvania d/b/a Penn Medicine*

**Campbell Conroy & O'Neil, PC**
Joseph E. O'Neil, Esquire
Meghann C. Porth, Esquire
Ryan J. O'Neil, Esquire

1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
joneil@campbelltriallawyers.com
mporth@campbelltriallawyers.com
roneil@campbelltriallawyers.com
*Attorneys for Defendant, Abbott Laboratories*

**Jones Day**
Jennifer B. Flannery, Esquire
Marques Hillman Richeson
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
jbflannery@jonesday.com
mhricheson@jonesday.com
*Attorneys for Defendant, Abbott Laboratories*

**Troutman Pepper Hamilton Sanders, LLP**
Sean P. Fahey, Esquire
Ronni E. Fuchs, Esquire
3000 Two Logan Square
Philadelphia, PA 19103
sean.fahey@troutman.com
ronni.fuchs@troutman.com
*Attorneys for Defendant, Abbott Laboratories*

**Eckert Seamans Cherin Mellot**
Donald Brooks, Jr., Esquire
Brooke A. Scicchitano, Esquire
50 S. 16th Street, 22nd Floor
Philadelphia, PA 19102
dbrooks@eckertseamans.com
bscicchitano@eckertseamans.com
*Attorneys for Defendant, Thomas Jefferson University Hospitals, Inc d/b/a Thomas Jefferson University Hospital and Thomas Jefferson University d/b/a Jefferson Health System*

By:     /s/ Kenneth A. Murphy
         Kenneth A. Murphy, Esquire

Dated: October 27, 2023

2

Case ID: 220302606
Control No.: 23096740

# EXHIBIT A-51

FILED
02 NOV 2023 09:52 am
Civil Administration
A. CLARKE

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | | |
|---|---|---|
| HOLLI CARTER, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302588 |
| BRANDY GOODMOND, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400208 |
| BRANDY GOODMOND, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400212 |
| JANEE HENDERSON, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400127 |
| KRISTEN KAJUFFA, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302978 |
| NAFEESAH MAYS, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302963 |
| CATHERINE McMILLIAN, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400140 |

| | |
|---|---|
| DAMEKA MOMENT, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:  APRIL TERM, 2022<br>:  No. 220400142<br>:<br>:<br>: |
| NYDIA PARKER, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:  MARCH TERM, 2022<br>:  No. 220302983<br>:<br>: |
| ALEXANDRIA ROSS, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:  MARCH TERM, 2022<br>:  No. 220302981<br>:<br>: |
| LOREN SANDERS, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:  APRIL TERM, 2022<br>:  No. 220400153<br>:<br>: |
| SAMAYA SHORT, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:  APRIL TERM, 2022<br>:  No. 220400159<br>:<br>: |
| ALICE STILLS, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:  MARCH TERM, 2022<br>:  No. 220302617<br>:<br>: |
| CHRISTINA TAYLOR, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:  MARCH TERM, 2022<br>:  No. 220302606<br>:<br>: |
| NATISHA THOMAS, et al.,<br>*Plaintiff,*<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | :<br>:<br>:  MARCH TERM, 2022<br>:  No. 220400158<br>:<br>: |

2

Case ID: 220302606<br>Control No.: 23096781

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> MARCH TERM, 2022 <br> No. 220400156 |
| JEANNATE WATSON, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : <br> : <br> : <br> : <br> MARCH TERM, 2022 <br> No. 220302967 |
| GINA WIEGER, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : <br> : <br> : <br> : <br> MARCH TERM, 2022 <br> No. 220302614 |
| GINA WIEGER, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : <br> : <br> : <br> : <br> MARCH TERM, 2022 <br> No. 220302601 |
| SHANITA WIGGINS, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : <br> : <br> : <br> : <br> MARCH TERM, 2022 <br> No. 220302986 |
| MELVENIA WILLIAMS, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : <br> : <br> : <br> : <br> APRIL TERM, 2022 <br> No. 220400141 |

3

Case ID: 220302606 <br> Control No.: 23096781

**ABBOTT LABORATORIES' REPLY IN SUPPORT OF
PRELIMINARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINTS**

Plaintiffs' response only confirms that Abbott's preliminary objections should be sustained, and that the claims against Abbott should be dismissed.[1] Rather than fixing the obvious pleading defects recognized by this Court at the July conference, plaintiffs seek to justify them. Flouting their second opportunity to plead specific facts supporting their claims, plaintiffs once again fail to identify the specific product that allegedly caused their infant's injuries, fail to differentiate between the product manufacturers, and fail to allege facts showing that plaintiffs saw, heard, or were otherwise exposed to purportedly false representations made by Abbott about its products, let alone that plaintiffs relied upon any such representations. Plaintiffs' response brief in no way justifies their repeated failure to plead the essential elements of their causes of action, nor can plaintiff-parents save their untimely claims by invoking the term "negligent infliction of emotional distress" for the very first time in their opposition. For these reasons, all of plaintiffs' claims against Abbott should be dismissed.

**I.  Plaintiffs' Strict Liability and Negligence Claims (Count I-III) Should Be Dismissed For Repeated Failure to Identify the Specific Product That Allegedly Caused Their Infant's Injuries**

Plaintiffs do not deny that they must identify the specific product that caused their infant's injuries under Pennsylvania law. Nor could they. Pennsylvania courts have uniformly upheld the product identification requirement, confirming that to state a products liability claim, a plaintiff must allege that a ***particular product*** of a ***particular defendant manufacturer*** caused their injuries. *See Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 968–69 (1985) (holding that

---

[1] Plaintiffs make a number of flawed claims and arguments in their response brief, all of which Abbott denies. For purposes of brevity, however, Abbott focuses this reply on a few dispositive issues, as well as claims and arguments that plaintiffs raised for the very first time. Abbott hereby incorporates and preserves all arguments made in its opening brief, including that plaintiffs failed to plead facts sufficient to show an unreasonably dangerous defect, and failed to plead a legally sufficient basis for punitive damages.

Case ID: 220302606
Control No.: 23096781

plaintiff's failure to identify the offending product was "a fatal deficiency to [strict liability] claim"); *Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 191 (Pa. Super. Ct. 1993) (holding a defendant must be identified as the manufacturer, distributor, or seller of the offending product before the injuries suffered by the plaintiff may be found to be proximately caused by some negligent act or omission of the defendant).

Consistent with Pennsylvania law, this Court recognized that plaintiffs' original complaints failed to adequately identify the products administered to their infants, and allowed plaintiffs an opportunity to cure this fatal deficiency. Plaintiffs made no attempt to do so.

As in their original complaints, plaintiffs once again allege in their amended complaints that their infants were administered "Similac and/or Enfamil" products. *Compare* Am. Compl. ¶ 11 *with* Compl. ¶ 12. These allegations remain insufficient. As plaintiffs themselves recognize, "Similac" and "Enfamil" are the brand names used by Abbott and Mead Johnson, respectively, to market and sell ***multiple*** preterm infant nutrition products. *See* Am. Compl. ¶¶ 4-5, 48-48. In fact, these are brands that apply to a large category of preterm and term nutrition products. Because plaintiffs fail to specifically allege which brand – and which of the many products sold under the "Similac" and "Enfamil" brand names were administered to their infants, their strict liability and negligence claims against Abbott fail for lack of product identification. *See Klein v. Council of Chem. Assocs.*, 587 F. Supp. 213, 221 (E.D. Pa. 1984) (dismissing strict liability claim where plaintiffs did not identify the specific product sold or distributed by the defendants that caused the plaintiffs' harm).

Plaintiffs contend in their response brief that a plaintiff may be somehow excused from satisfying Pennsylvania's product identification requirement where future discovery might lead a plaintiff to this information. This is a misreading of Pennsylvania law. As courts have made clear,

Case ID: 220302606
Control No.: 23096781

plaintiffs cannot escape their obligation to identify the specific product from the specific manufacturer that allegedly caused harm by mere pronouncements of their future "inten[t] to conduct extensive industry-wide discovery." *Klein*, 587 F. Supp. at 221 (holding that plaintiffs cannot rely on theories of alternative liability or joint and several liability to excuse them from identifying the specific product they claim caused their injuries); *see also* Abbott's Preliminary Objections at 13-15. This is particularly true in instances involving separate manufacturers, one of whom may not be a proper defendant. *See* Section III, infra. And the present "inability of plaintiffs to name specific products" is plaintiffs' own fault—a result of "plaintiffs' failure to investigate." *Klein*, 587 F. Supp. at 222

There is no excuse for this critical pleading failure. Prior to filing their amended complaints, nearly every plaintiff was provided medical records by the hospital defendant at which their infant was born that contain information about which product their infant was administered. As such, the failure in plaintiffs' amended complaints to identify the specific product that allegedly caused their infants' injuries is entirely unjustified. In any event, a "plaintiff is not excused from pleading the facts necessary to sustain [her] cause of action on the ground that the facts were known to the defendant and not to the plaintiff," particularly where, as is the case here, plaintiff has not availed herself of available discovery. *Gross v. United Engineers & Constructors Inc.*, 302 A.2d 370, 372 (1973) (affirming the trial court's dismissal for want of specificity in pleading where it found that plaintiff failed to pursue available discovery or amend the complaint). Because plaintiffs do not—and cannot—provide any principled justification for their repeated failure to identify the specific product that allegedly caused harm, plaintiffs' strict liability and negligence claims should be dismissed.

Case ID: 220302606
Control No.: 23096781

## II. Plaintiffs' Intentional and Negligent Misrepresentation Claims (Counts IV–V) Should Be Dismissed For Repeated Failure to Plead with Particularity

Plaintiffs' misrepresentation claims likewise warrant dismissal because plaintiffs have repeatedly failed to plead specific facts supporting such fraud-based claims. Despite the concerns the Court expressed at the July conference, plaintiffs again fail to allege with any specificity that they saw or heard any Abbott representation, let alone a specific misrepresentation. Nor do plaintiffs allege any facts to support justifiable reliance on any purported statement by Abbott.

While plaintiffs generally allege that Abbott representatives did not warn hospital defendants' staff of the risk of NEC, *see* Pl.'s Memo. of Law at 11 (citing Am. Compl. ¶¶ 60-62, 72), such generalized allegations do not come anywhere close to satisfying Pennsylvania's heightened pleading requirements for fraud. *See* Pa. R. Civ. P. 1019(b). Tellingly, plaintiffs cannot identify any actual statement made by any particular Abbott representative to any particular hospital staff member—and any such statement would not have been made to plaintiffs in any event. *See Feudale v. Aqua Pa., Inc.*, 122 A.3d 462, 466 n.5 (Pa. Commw. Ct. 2015) (concluding that plaintiff failed to "allege[ ] any justifiable reliance on his part on the [alleged false representation], nor could he, as the alleged false representation was not made to him, but instead to [a third party]").

Indeed, despite multiple opportunities, plaintiffs still have not alleged that Abbott made any representations directly to them, or that they read, saw, heard, or were otherwise exposed to any specific product label or any other specific representation from Abbott before their infant was administered Abbott's products. *See Youndt v. First Nat'l Bank*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005) (holding, "at the very least, a plaintiff must set forth the exact statements or actions plaintiff alleges constitute the fraudulent misrepresentations"). Further, even if alleged misrepresentations to hospitals could provide the basis for a cognizable claim (they do not), plaintiffs have not alleged

7

Case ID: 220302606
Control No.: 23096781

with specificity when these statements were made, who made them, to whom, and how they were communicated. These factual deficiencies are fatal to plaintiffs' misrepresentation claims.

## III. Plaintiffs' Claims Should Be Dismissed For Repeated Failure to Differentiate Between Abbott and Mead Johnson

Plaintiffs concede that their amended complaints fail to differentiate between Abbott and Mead Johnson. *See* Pl.'s Memo. of Law at 12 ("Plaintiffs' Complaints do often refer to both Abbott and Mead throughout their complaint in tandem"). But, despite clear guidance from the Court on this issue, plaintiffs contend that they are not required to differentiate their claims because their amended complaints allege that Abbott and Mead Johnson "engaged in nearly identical conduct." *Id.* In making this argument, plaintiffs wholly misconstrue Pennsylvania law.

Pursuant to Rule 1020(a), plaintiffs are required to plead distinct, differentiated, and separate causes of action against defendants who, as here, are not jointly and severally liable. *See Bouchon v. Citizen Care, Inc.*, 176 A.3d 244, 260–61 (2017).[2] In these 21 cases, plaintiffs' amended complaints involve: [a] different infants born across different decades, [b] at four different hospitals, who [c] allegedly suffered different injuries after being administered some unidentified preterm infant formula or fortifier product, [d] manufactured by either Abbott or Mead Johnson. Because Abbott and Mead Johnson are direct competitors who manufacture different products at different locations, using different formulations and different ingredients, and market their products differently, plaintiffs have no basis for asserting joint and several liability as a matter of law. *See* Abbott's Preliminary Objections at 19-20. Plaintiffs nonetheless continue to lump

---

[2] *See also Gen. State Auth. v. Lawrie & Green*, 356 A.2d 851, 854 (1976) (holding that, although the plaintiff's allegations made clear that the form of action may be identical against both defendants, Rule 1020(a) required dismissal because the plaintiff relied upon separate and distinct conduct to support their respective causes of action); *Bassaro v. de Levie*, 236 A.3d 1069 (Pa. Super. Ct. 2020) (holding that a plaintiff must state clearly in a separate count each individual cause of action asserted against each individual defendant, including the facts pertaining to every element of that count).

Case ID: 220302606
Control No.: 23096781

Abbott and Mead Johnson together without differentiating between the distinct acts or omissions of these distinct corporations, and the distinct products they manufacture. As a result, Abbott lacks clarity regarding its alleged role in these cases, and whether it is even a proper party. Accordingly, plaintiffs' claims against Abbott should be dismissed.

## IV. Plaintiffs' Amended Complaints Do Not Allege Viable Negligent Infliction of Emotional Distress Claims on Behalf of Plaintiff-Parents

In their response, plaintiffs seek to save their untimely claims by arguing for the first time in their response brief that they have stated negligent infliction of emotional distress (NIED) claims on behalf of the plaintiff-parents under a "bystander" theory. *See* Pl.'s Memo. of Law at 15-19. In Pennsylvania, a bystander can recover for NIED only if: (1) the plaintiff was located near the scene of the accident; (2) the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident; and (3) the plaintiff and the victim were closely related. *See Huddleston v. Infertility Ctr. of Am.*, 700 A.2d 453, 462 (Pa. Super. Ct. 1997). In addition to these three elements, a physical injury must be averred to sustain a cause of action for NIED. *See Armstrong v. Paoli Mem'l Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993); *Abadie v. Riddle Mem'l Hosp.*, 589 A.2d 1143, 1145 (Pa. Super. Ct. 1991).

Here, as a threshold matter, plaintiffs fail to comply with the Rule 1020(a) requirement that "each cause of action" be set forth in a "separate count containing a demand for relief." Further, even if plaintiff-parents had specifically set forth a NIED claim in their amended complaints (they did not), these newly minted NIED claims would have failed as a matter of law. Plaintiff-parents do not allege that they suffered any physical injury. Moreover, plaintiff-parents do not allege any facts showing that they suffered "a direct emotional impact" from the "contemporaneous observance" of their infants developing NEC. Under these circumstances, Pennsylvania courts routinely dismiss NIED claims. *See, e.g., Mazzagatti v. Everingham by Everingham*, 516 A.2d

Case ID: 220302606
Control No.: 23096781

672, 679 (1986) (holding where plaintiff has no contemporaneous sensory perception of the injury, any claimed emotional distress results more from the particular emotional makeup of the plaintiff rather than from the nature of defendant's actions); *Tackett v. Encke*, 509 A.2d 1310, 1312 (Pa. Super. Ct. 1986) (preliminary objections to parent's claim for NIED damages properly sustained where parent did not witness a "discrete and identifiable traumatic event," but rather was injured emotionally by witnessing, over time, her son's reaction to a pulmonary fat embolism). Accordingly, plaintiff-parents' improperly-pled, time-barred NIED claims should be dismissed.

## **CONCLUSION**

For all these reasons, as well as those set forth in Abbott's opening brief, which is expressly incorporated herein, Abbott's preliminary objections should be sustained, and all claims against Abbott should be dismissed.

Dated: November 2, 2023

Respectfully Submitted:

/s/ *Sean P. Fahey*
Sean P. Fahey (PA Bar No. 73305)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
3000 Two Logan Square
Philadelphia, PA 19103
215.981.4296
Sean.Fahey@troutman.com

/s/ *Ronni E. Fuchs*
Ronni E. Fuchs (PA Bar No. 65561)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
301 Carnegie Center, Suite 400
Princeton, NJ 08540
609.951.4183
Ronni.Fuchs@troutman.com

/s/ *Joseph E. O'Neil*
Joseph E. O'Neil (PA Bar No. 29053)
Meaghann C. Porth (PA Bar No. 307629)
Ryan J. O'Neil (PA Bar No. 314034)
**CAMPBELL CONROY & O'NEIL, P.C.**
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
610.964.6388
JONeil@CampbellTrialLawyers.com
MPorth@campbell-trial-lawyers.com
RONeil@campbell-trial-lawyers.com

/s/ *Marques Hillman Richeson*
Marques Hillman Richeson (admitted *pro hac vice*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44114
216.586.7195

Case ID: 220302606
Control No.: 23096781

mhricheson@jonesday.com
*Attorneys for Defendant Abbott Laboratories*

Case ID: 220302606
Control No.: 23096781

## **CERTIFICATE OF SERVICE**

I hereby certify that I will serve a true and correct copy of the foregoing in accordance with

Pa. R. Civ. P. 440 on all parties not served electronically. All other parties will be electronically

served by the court in accordance with Pa. R. Civ. P. 205.4(g).


Dated: November 2, 2023                    */s/ Ronni E. Fuchs*
                                           _____
                                           Ronni E. Fuchs

## **CERTIFICATE OF COMPLIANCE**

I, Ronni E. Fuchs, hereby certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts, that require filing confidential information and documents differently than non-confidential information and documents.

*/s/ Ronni E. Fuchs*
Ronni E. Fuchs

# EXHIBIT A-52

# PHILADELPHIA COURT OF COMMON PLEAS
## PETITION/MOTION COVER SHEET

| CONTROL NUMBER: |
|---|
| 23110845 |
| **(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)** |

### FOR COURT USE ONLY

| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |
|---|---|
| | 11/27/2023 |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response. Status may be obtained online at http://courts.phila.gov*

March Term, 2022
*Month*        *Year*
No.        02606

Name of Filing Party:
CHRISTINA TAYLOR-PLF
I H-PLF

TAYLOR ETAL VS MEAD JOHNSON & COMPANY, LLC ETAL

**INDICATE NATURE OF DOCUMENT FILED:**
- ☐ Petition *(Attach Rule to Show Cause)*  ☒ Motion
- ☐ Answer to Petition  ☐ Response to Motion

Has another petition/motion been decided in this case?  ☒ Yes  ☐ No
Is another petition/motion pending?  ☒ Yes  ☐ No
*If the answer to either question is yes, you must identify the judge(s):*
JUDGE CARPENTER

| TYPE OF PETITION/MOTION (see list on reverse side) | PETITION/MOTION CODE (see list on reverse side) |
|---|---|
| MOT TO COMPEL DEPOSITION | MTCDD |

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

**I. CASE PROGRAM**

DAY FORWARD/MAJOR JURY PROGRAM

Name of Judicial Team Leader: JUDGE LINDA CARPENTER
Applicable Petition/Motion Deadline: 10/19/2023
Has deadline been previously extended by the Court: NO

**II. PARTIES** *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

JAMES A YOUNG
 BURNS WHITE LLC 1880 JOHN F. KENNEDY BOULEVARD 10TH FLOOR , PHILADELPHIA PA 19103
SEAN P FAHEY
 TROUTMAN PEPPER 3000 TWO LOGAN SQ 18TH AND ARCH STREETS , PHILADELPHIA PA 19103-2799
KENNETH A MURPHY
 TUCKER LAW GROUP, LLC 1801 MARKET STREET SUITE 2500 , PHILADELPHIA PA 19103-6996
MARQUES HILLMAN RICHESON
 JONES DAY 901 LAKESIDE AVENUE NORTH POINT , CLEVELAND OH 44114

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

November 3, 2023        TIMOTHY A. BURKE

*(Attorney Signature/Unrepresented Party)*        *(Date)*        *(Print Name)*        *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date. No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-File# 2311008336
03-NOV-23 15:51:39

**FILED**
03 NOV 2023 01:32 pm
**Civil Administration**
J. BOYD

| | |
|---|---|
| TERRAINE ABDULLAH, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>     Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302583<br>:<br>: |
| HOLLI CARTER, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>     Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302588<br>:<br>: |
| SHONDERA DRAYTON, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>     Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302594<br>:<br>: |
| JANEE HENDERSON, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>     Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400127<br>:<br>: |
| SHEMIKA JOHNSON, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>     Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400162<br>:<br>: |
| DAMEKA MOMENT, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>     Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400142<br>:<br>: |
| LOREN SANDERS, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>     Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400153<br>:<br>: |
| SAMAYA SHORT, et al.,<br>       Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al., | :<br>: APRIL TERM, 2022<br>: No. 220400159<br>: |

| | |
|---|---|
| Defendants. | : |
| ALICE STILLS, et al.,<br>  Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>: MARCH TERM, 2022<br>No. 220302617 |
| CHRISTINA TAYLOR, et al.,<br>  Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>: MARCH TERM, 2022<br>No. 220302606 |
| NATISHA THOMAS, et al.,<br>  Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>: MARCH TERM, 2022<br>No. 220400158 |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>  Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>:<br>: MARCH TERM, 2022<br>No. 220400156 |
| ROBERT WHITFIELD, et al.,<br>  Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>: APRIL TERM, 2022<br>No. 220400145 |
| GINA WIEGER, et al.,<br>  Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>: MARCH TERM, 2022<br>No. 220302614 |
| GINA WIEGER, et al.,<br>  Plaintiff,<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>: MARCH TERM, 2022<br>No. 220302601 |
| MELVENIA WILLIAMS, et al.,<br>  Plaintiff,<br>v.<br>  MEAD JOHNSON & COMPANY,<br>  LLC, et al., | :<br>:<br>:<br>: APRIL TERM, 2022<br>: No. 220400141<br>: |

Case ID: 220302606
Control No.: 23110845

| Defendants. | : |
| --- | --- |
| IVYANN WITHERSPOON, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400138 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

### ORDER

**AND NOW** this _____ day of _____, 2023, upon consideration of Plaintiff's Motion to Compel Deposition of Defendant, Hospital of The University of Pennsylvania's Corporate Designee, and any response thereto, is hereby **ORDERED** that said Motion is **GRANTED.**

**IT IS FURTHER ORDERED** that counsel for Defendant shall make Defendant's Corporate Designee available within 20 days of the date of this Order, on a mutually agreeable date and time.

BY THE COURT:

_____
J.

*Discovery Deadline: February 5, 2024*

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

| | |
|---|---|
| TERRAINE ABDULLAH, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220302583 |
| HOLLI CARTER, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220302588 |
| SHONDERA DRAYTON, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220302594 |
| JANEE HENDERSON, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | APRIL TERM, 2022<br>No. 220400127 |
| SHEMIKA JOHNSON, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | APRIL TERM, 2022<br>No. 220400162 |
| DAMEKA MOMENT, et al., : | |

Case ID: 220302606
Control No.: 23110845

| | | |
|---|---|---|
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| LOREN SANDERS, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| SAMAYA SHORT, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400159 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ALICE STILLS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| CHRISTINA TAYLOR, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302606 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| NATISHA THOMAS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| TRINA WALKER-SAVAGE and CLIFTON | : | |
| ISAIAH SAVAGE, JR., et al., | : | MARCH TERM, 2022 |
| Plaintiff, | : | No. 220400156 |
| v. | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ROBERT WHITFIELD, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400145 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       Defendants. | : |
| GINA WIEGER, et al., | : |
|       Plaintiff, | :   MARCH TERM, 2022 |
|     v. | :   No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|       Defendants. | : |
| | |
|       MELVENIA WILLIAMS, et al., | : |
|    Plaintiff, | :   APRIL TERM, 2022 |
| v. | :  No. 220400141 |
|       MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
|       IVYANN WITHERSPOON, et al., | : |
|    Plaintiff, | :   APRIL TERM, 2022 |
| v. | :  No. 220400138 |
|       MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

## PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF CORPORATE DESIGNEE

Plaintiffs, by and through their counsel, Kline & Specter, P.C., submit this Motion to Compel the Deposition of Defendant Hospital of the University of Pennsylvania's Corporate Designee as follows:

## FACTUAL BACKGROUND

1. This action arises out of the injuries suffered by premature infants who were given the Defendant Manufacturers' bovine-based infant feeding products at the named Defendant Hospital. The Defendant Hospital acquired and supplied the Defendant Manufacturers' products to the Injured Infants and negligently failed to warn of their unreasonably dangerous properties in a reasonable manner. This caused the Injured premature Infants to develop necrotizing enterocolitis ("NEC"), a life-altering and potentially deadly disease that largely affects premature babies who are given bovine-based feeding products. As a result, the Injured Infants were

Case ID: 220302606
Control No.: 23110845

seriously injured, resulting in long term health effects and accompanying harm to their parent ("the Plaintiff Parent").

2.   Plaintiffs bring these causes of action against Defendants to recover for injuries that are the direct and proximate result of the Injured Infants' consumption of the Defendant Manufacturers' unreasonably dangerous bovine-based infant feeding products, which were acquired and supplied without adequate warning to the Injured Infants by the Defendant Hospital.

3.   Plaintiffs commenced these actions by filing complaints in March and April of 2022.

4.   On August 17, 2023, Plaintiff's Counsel emailed Defense Counsel indicating the need to depose Defendant's Corporate Designee. See Email of August 17, 2023, and corresponding Letter and Notice of Deposition attached hereto as Exhibit "A".

5.   On September 27, 2023, Plaintiff's Counsel emailed Defense Counsel to follow up on the August 17, 2023, request to depose Defendant's Corporate Designee because Defendants never provided dates for said deposition. See Email of September 27, 2023, attached hereto as Exhibit "B".

6.   On October 11, 2023, Plaintiff's Counsel emailed Defense Counsel a Notice of Deposition to depose Defendant's Corporate Designee on November 1, 2023, because Defendants never provided dates for said deposition. See Email of October 11, 2023, and corresponding Notice of Deposition attached hereto as Exhibit "C".

7.   On October 30, 2023, Defendants emailed Plaintiffs refusing to produce Defendant's Corporate Designee for deposition on November 1, 2023. See Email of October 30, 2023, attached hereto as Exhibit "D".

8.   To date, Defense counsel has not provided any available dates for the deposition of Defendant's Corporate Designee.

9. Pennsylvania Rule of Civil Procedure 4001 states in relevant part that a "party may take the testimony of any person, including a party, by deposition upon oral examination … for the purpose of discovery … or for preparation or trial of a case."

10. Plaintiffs will be severely prejudiced in their ability to prepare their cases for trial and/or resolve these cases through settlement without this deposition.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an Order in the form attached hereto, compelling the deposition of Defendant's Corporate Designee within twenty (20) days of this Order or suffer appropriate sanctions upon application to this Court.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By:    _/s/ John P. O'Neill_____
       JOHN P.  O'NEILL, ESQUIRE
       TIMOTHY A. BURKE, ESQUIRE
       *Attorneys for Plaintiffs*

DATE:  November 3, 2023

Case ID: 220302606
Control No.: 23110845

## **VERIFICATION**

I, JOHN P. O'NEILL, ESQUIRE, hereby state that I am counsel for the Plaintiff in the above action and verify that the statements made in the foregoing **Plaintiff's Motion to Compel Depositions**, are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_____

JOHN P. O'NEILL, ESQUIRE

DATED:    November 3, 2023

## CERTIFICATE OF SERVICE

I, JOHN P. O'NEILL, ESQUIRE, hereby certify that on the date appearing below, a true and correct copy of **Plaintiff's Motion to Compel Depositions** was served upon the following counsel of record for all parties via the Court's electronic filing system:

**KLINE & SPECTER, P.C.**

By:    */s/ John P. O'Neill*

JOHN P. O'NEILL, ESQUIRE
*Attorneys for Plaintiffs*

DATE: November 3, 2023

FILED

03 NOV 2023 01:32 pm

Civil Administration

J. BOYD

# EXHIBIT A

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| **From:** | Carol Lippmann |
| **To:** | jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Timothy Burke; Elizabeth Crawford; Jack O'Neill; Patrick Sidebotham; Ben Whiting; Mark Weinstein; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey@troutman.com; dbrooks@eckertseamans.com; Brooke Scicchitano; Jennifer V. Weachter |
| **Bcc:** | NECPhiladelphiaGeneralZ3453077@klinespecter.filevineapp.com |
| **Subject:** | NEC Infant Formula Litigation \| The Pennsylvania Health System d/b/a Pennsylvania Hospital |
| **Date:** | Thursday, August 17, 2023 8:09:00 PM |
| **Attachments:** | 2023-08-17 Letter to Penn Hospital re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Hospital.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The The Pennsylvania Health System d/b/a Pennsylvania Hospital.


Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

Case ID: 220302606
Control No.: 23110845

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                               TOBI.Millrood@Klinespecter.com

———

**215-772-1358**

**800-597-9585**

FAX: **215-792-5502**

August 17, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

> Re:  Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
> Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
> Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
> Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
> Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
> Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
> Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
> Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital. This notice applies to the following the following cases pending against The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital in the infant formula litigation.

- Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
- Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
- Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
- Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
- Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
- Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
- Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
- Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Page 2

Very truly yours,

Tobias L. Millrood

Enclosure
cc:     All Counsel of Record (via email only)

Case ID: 220302606
Control No.: 23110845

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | | |
|---|---|---|
| TERRAINE ABDULLAH, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| | | |
| HOLLI CARTER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| | | |
| SHONDERA DRAYTON, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| | | |
| ALICE STILLS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| | | |
| CHRISTINA TAYLOR, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302606 |

1

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : |
| GINA WIEGER, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302614 <br> : <br> : |
| GINA WIEGER, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302601 <br> : <br> : |
| JANEE HENDERSON, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400127 <br> : <br> : |

**NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL**

TO:    James A. Young, Esquire
       Burns White LLC
       1880 John F. Kennedy Blvd., 10th Floor
       Philadelphia, PA 19103

     **KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take

the deposition(s) of one or more Corporate Designees of The Pennsylvania Hospital of

the University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively,

"Defendants") on ___, 2023 at 10:00 a.m. at _____.

     The deposition will be taken before a person duly authorized to administer oaths and

will be recorded by video and stenographic means.

     Defendants are requested to designate one or more officers, directors, managing agents, or

other persons who shall be authorized to testify to matters known or reasonably available to the

2

Case ID: 220302606 <br> Control No.: 23110845

organization and who is the individual most knowledgeable about the Neonatal Intensive Care

Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002

to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;
12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;
13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.
14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;
15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

Case ID: 220302606
Control No.: 23110845

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through

4

Case ID: 220302606
Control No.: 23110845

lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

/s/Tobias L. Millrood

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

Case ID: 220302606
Control No.: 23110845

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>301 Carnegie Center, Suite 400 | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com |

6

Case ID: 220302606<br>Control No.: 23110845

| | |
|---|---|
| Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br> Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | *Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com |

Case ID: 220302606<br>Control No.: 23110845

| | |
|---|---|
| *Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | *Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER, P.C.**

By: <u>*/s/ Tobias L. Millrood*</u>
      Tobias L. Millrood
      1525 Locust Street
      Philadelphia, PA 19102
      Phone: 215-772-1000
      Fax: 215-772-1359
      tobi.millrood@klinespecter.com

Dated: August 17, 2023            *Plaintiff's' Counsel*

8

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| **From:** | Carol Lippmann |
| **To:** | jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Jack O"Neill; Elizabeth Crawford; Helen Lawless; Ben Whiting; Mark Weinstein; Patrick Sidebotham; Timothy Burke; jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com; dbrooks@eckertseamans.com; Brooke Scicchitano; Jennifer V. Weachter; Sean.Fahey@troutman.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com |
| **Bcc:** | NECPhiladelphiaGeneralZ3453077@klinespecter.filevineapp.com |
| **Subject:** | NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| **Date:** | Thursday, August 17, 2023 8:07:00 PM |
| **Attachments:** | 2023-08-17 Letter to Penn Medecine re NoD.pdf |
| | NEC Corp Designee NoD - UPH dba Penn Medicine.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.


Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C**.**
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

Case ID: 220302606
Control No.: 23110845

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                        TOBI.MILLROOD@KLINESPECTER.COM

_____

**215-772-1358**

**800-597-9585**

FAX: **215-792-5502**

August 17, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

   Re: Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
      McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
      Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
      Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
      Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
      Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
      Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
      Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145
      Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
      Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
      Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Dear Counsel:

   Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant the Trustees of the University of Pennsylvania d/b/a Penn Medicine. This notice applies to the following the following cases pending against the Trustees of the University of Pennsylvania d/b/a Penn Medicine in the infant formula litigation.

- Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
- McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
- Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
- Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
- Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
- Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
- Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
- Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145

Page 2

- Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
- Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
- Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Very truly yours,

Tobias L. Millrood

Enclosure
cc:      All Counsel of Record (via email only)

Case ID: 220302606
Control No.: 23110845

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| SHEMIKA JOHNSON, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400162 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| CATHERINE McMILLIAN, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| DAMEKA MOMENT, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| LOREN SANDERS, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SAMAYA SHORT, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400159 |

1

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: |
| NATISHA THOMAS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220400158<br>:<br>:<br>: |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220400156<br>:<br>:<br>: |
| ROBERT WHITFIELD, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400145<br>:<br>:<br>: |
| MELVENIA WILLIAMS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400141<br>:<br>:<br>: |
| DELQUAN HINES, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400136<br>:<br>:<br>: |
| IVYANN WITHERSPOON, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400138<br>:<br>:<br>: |

### NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE

TO:    James A. Young, Esquire
       Richard S. Margulies, Esquire
       Susan R. Engle, Esquire
       BURNS WHITE LLC
       1880 John F. Kennedy Boulevard, 10th FL

Case ID: 220302606
Control No.: 23110845

Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of the Trustees of the University of Pennsylvania d/b/a Penn Medicine (collectively, "Defendants") on _____, 2023 at 10:00 a.m. at

_____.

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

3

Case ID: 220302606
Control No.: 23110845

10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;

12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;

13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.

14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;

15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials

4

Case ID: 220302606
Control No.: 23110845

relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

/s/Tobias L. Millrood

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

5

Case ID: 220302606
Control No.: 23110845

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson & Company LLC and* Mead Johnson Nutrition Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and University of Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Penn Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

Case ID: 220302606<br>Control No.: 23110845

| | |
|---|---|
| TROUTMAN PEPPER HAMILTON SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br> Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com |

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER, P.C.**

By: */s/ Tobias L. Millrood*
Tobias L. Millrood
1525 Locust Street
Philadelphia, PA 19102
Phone: 215-772-1000
Fax: 215-772-1359
tobi.millrood@klinespecter.com

Dated: August 17, 2023                                    *Plaintiff's' Counsel*

8

Case ID: 220302606
Control No.: 23110845

FILED
03 NOV 2023 01:32 pm
Civil Administration
J. BOYD

# EXHIBIT B

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| **From:** | Elizabeth Crawford |
| **To:** | Carol Lippmann; jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Timothy Burke; Jack O"Neill; Patrick Sidebotham; Ben Whiting; Mark Weinstein; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey; Donald J. Brooks Jr.; Brooke Scicchitano; Jennifer V. Weachter |
| **Subject:** | Re: NEC Infant Formula Litigation | The Pennsylvania Health System d/b/a Pennsylvania |
| **Date:** | Wednesday, September 27, 2023 11:57:25 AM |

Counsel: Following up on dates for our notice of deposition of the corporate designee(s) of the Pennsylvania Health System. Please provide dates at your earliest opportunity. Thank you.

**Elizabeth A. Crawford, Esquire**

*Partner*

KLINE & SPECTER

1525 LOCUST STREET

PHILADELPHIA, PA 19102

P: 215-792-5619

E: ELIZABETH.CRAWFORD@KLINESPECTER.COM

W: WWW.KLINESPECTER.COM/ELIZABETHCRAWFORD

---

**From:** Carol Lippmann <Carol.Lippmann@klinespecter.com>
**Sent:** Thursday, August 17, 2023 8:09 PM
**To:** jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Patrick Sidebotham <Patrick.Sidebotham@klinespecter.com>; Ben Whiting <ben.whiting@kellerpostman.com>; Mark Weinstein <mark.weinstein@kellerpostman.com>; cmrecker@welshrecker.com <cmrecker@welshrecker.com>; abcarver@welshrecker.com <abcarver@welshrecker.com>; rwalk@welshrecker.com <rwalk@welshrecker.com>; kmurphy@tlgattorneys.com <kmurphy@tlgattorneys.com>; holson@tlgattorneys.com <holson@tlgattorneys.com>; Sean.Fahey <Sean.Fahey@Troutman.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>; Brooke Scicchitano <bscicchitano@eckertseamans.com>; Jennifer V. Weachter <JWeachter@eckertseamans.com>
**Subject:** NEC Infant Formula Litigation | The Pennsylvania Health System d/b/a Pennsylvania Hospital

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The The Pennsylvania Health System d/b/a Pennsylvania Hospital.

Thank you,

**Carol Lippmann**

Case ID: 220302606
Control No.: 23110845

Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

| From: | Elizabeth Crawford |
|---|---|
| To: | Carol Lippmann; jayoung; rsmargulies; srengle@burnswhite.com |
| Cc: | Tobi Millrood; Melissa Merk; Jack O'Neill; Helen Lawless; Ben Whiting; Mark Weinstein; Patrick Sidebotham; Timothy Burke; Donald J. Brooks Jr.; Brooke Scicchitano; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com |
| Subject: | Re: NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| Date: | Wednesday, September 27, 2023 11:58:03 AM |

Counsel: Following up on dates for our notice of deposition of the corporate designee(s) of Penn Medicine. Please provide dates at your earliest opportunity. Thank you.

**Elizabeth A. Crawford, Esquire**
*Partner*
KLINE & SPECTER
1525 LOCUST STREET
PHILADELPHIA, PA 19102
P: 215-792-5619
E: ELIZABETH.CRAWFORD@KLINESPECTER.COM
W: WWW.KLINESPECTER.COM/ELIZABETHCRAWFORD

---

**From:** Carol Lippmann <Carol.Lippmann@klinespecter.com>
**Sent:** Thursday, August 17, 2023 8:07 PM
**To:** jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Helen Lawless <Helen.Lawless@klinespecter.com>; Ben Whiting <ben.whiting@kellerpostman.com>; Mark Weinstein <mark.weinstein@kellerpostman.com>; Patrick Sidebotham <Patrick.Sidebotham@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>; Brooke Scicchitano <bscicchitano@eckertseamans.com>; Jennifer V. Weachter <JWeachter@eckertseamans.com>; Sean.Fahey <Sean.Fahey@Troutman.com>; kmurphy@tlgattorneys.com <kmurphy@tlgattorneys.com>; holson@tlgattorneys.com <holson@tlgattorneys.com>; cmrecker@welshrecker.com <cmrecker@welshrecker.com>; abcarver@welshrecker.com <abcarver@welshrecker.com>; rwalk@welshrecker.com <rwalk@welshrecker.com>
**Subject:** NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

FILED

03 NOV 2023 01:32 pm

Civil Administration

J. BOYD

# EXHIBIT C

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| **From:** | Amanda Bee |
| **To:** | jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Philip Pasquarello; Helen Lawless; Jack O"Neill; Patrick Sidebotham; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey; Donald J. Brooks Jr.; bscicchitano@eckertseamans.com; Jennifer V. Weachter; Carol Lippmann |
| **Subject:** | NEC Infant Formula Litigation \| The Pennsylvania Health System d/b/a Pennsylvania Hospital |
| **Date:** | Wednesday, October 11, 2023 3:33:41 PM |
| **Attachments:** | NEC Corp Designee NoD - UPH dba Penn Hospital 10.11.23.pdf<br>2023-10-11 Letter to Penn Hospital re NoD.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Pennsylvania Health System d/b/a Pennsylvania Hospital.

Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                                      TOBI.MILLROOD@KLINESPECTER.COM

_____

**215-772-1358**

**800-597-9585**

FAX: **215-792-5502**

October 11, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

      Re:   Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
                Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
                Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
                Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
                Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
                Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
                Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
                Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Dear Counsel:

      Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant The
Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania
Hospital. This notice applies to the following the following cases pending against The
Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania
Hospital in the infant formula litigation.

- Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
- Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
- Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
- Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
- Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
- Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
- Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
- Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Case ID: 220302606
Control No.: 23110845

Page 2

Very truly yours,

Tobias L. Millrood

Enclosure
cc:     All Counsel of Record (via email only)

Case ID: 220302606
Control No.: 23110845

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| TERRAINE ABDULLAH, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| HOLLI CARTER, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SHONDERA DRAYTON, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| ALICE STILLS, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| CHRISTINA TAYLOR, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302606 |

1

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | |
| GINA WIEGER, et al., : Plaintiff, : v. : MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | MARCH TERM, 2022 No. 220302614 |
| GINA WIEGER, et al., : Plaintiff, : v. : MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | MARCH TERM, 2022 No. 220302601 |
| JANEE HENDERSON, et al., : Plaintiff, : v. : MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | APRIL TERM, 2022 No. 220400127 |

**NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL**

TO:  James A. Young, Esquire
Burns White LLC
1880 John F. Kennedy Blvd., 10th Floor
Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively, "Defendants") on November 1, 2023 at 10:00 a.m. at the office of Kline & Specter, P.C. at 1525 Locust Street, Philadelphia, PA 19102.

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or

2

other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;
12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;
13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.
14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;
15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

3

Case ID: 220302606
Control No.: 23110845

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through

4

lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

_____

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

Case ID: 220302606
Control No.: 23110845

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine*<br><br>Kathleen M. Kramer, Esquire<br>Gabor Ovari, Esquire<br>MARSHALL DENNEHEY, P.C.<br>2000 Market Street, Suite 2300<br>Philadelphia, PA 19103<br>Tel: (215) 575-2600<br>kmkramer@mdwcg.com<br>ggovari@mdwcg.com<br><br>*Attorneys for Defendant, The Trustees of the*<br>*University of Pennsylvania d/b/a The*<br>*Hospital of the University of Pennsylvania* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place |

6

Case ID: 220302606<br>Control No.: 23110845

| | |
|---|---|
| Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br>Noel.Ix@Troutman.com<br>Christopher.Brolley@troutman.com;<br>Brett.Broczkowski@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br> Berwyn, PA 19312<br>Tel: (610) 964-1900<br>joneil@campbelltriallawyers.com<br>mporth@campbelltriallawyers.com<br>roneil@campbelltriallawyers.com<br><br>Margues Hillman Richeson, Esquire<br>JONES DAY<br>901 Lakeside Avenue<br>North Point<br>Cleveland, Ohio 44114<br>Tel: (216) 586-7195<br>mhricheson@jonesday.com<br><br>Jennifer B. Flannery, Esquire<br>Attorney ID No. 75546<br>JONES DAY<br>1221 Peachtree Street, N.E., Suite 400<br>Atlanta, GE 30361<br>Tel: (404) 581-8008<br>jbflannery@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | 50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire | Donald J. Brooks, Jr., Esquire |

Case ID: 220302606<br>Control No.: 23110845

| Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |
|---|---|

**KLINE & SPECTER, P.C.**

By: _____

Tobias L. Millrood
1525 Locust Street
Philadelphia, PA 19102
Phone: 215-772-1000
Fax: 215-772-1359
tobi.millrood@klinespecter.com

Dated: October 11, 2023

*Plaintiff's' Counsel*

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| **From:** | Amanda Bee |
| **To:** | jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Helen Lawless; Philip Pasquarello; Jack O'Neill; Patrick Sidebotham; Donald J. Brooks Jr.; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; bsicchitano@eckertseamans.com; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann |
| **Subject:** | NEC Infant Formula Litigation \| The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| **Date:** | Wednesday, October 11, 2023 3:33:38 PM |
| **Attachments:** | 2023-10-11 Letter to Penn Medecine re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Medicine 10.11.23.pdf<br>2023-10-11 Letter to Penn Medecine re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Medicine 10.11.23.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

  Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

Case ID: 220302606
Control No.: 23110845

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                              TOBI.MILLROOD@KLINESPECTER.COM

———————

**215-772-1358**

**800-597-9585**

FAX: 215-792-5502

October 11, 2023

**Via Email Only**

James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10ᵗʰ FL
Philadelphia, PA 19103

> Re:  Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
> McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
> Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
> Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
> Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
> Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
> Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
> Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145
> Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
> Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
> Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant the Trustees of the University of Pennsylvania d/b/a Penn Medicine. This notice applies to the following the following cases pending against the Trustees of the University of Pennsylvania d/b/a Penn Medicine in the infant formula litigation.

- Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
- McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
- Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
- Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
- Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
- Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
- Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
- Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145

Case ID: 220302606
Control No.: 23110845

Page 2

- Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
- Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
- Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Very truly yours,

Tobias L. Millrood

Enclosure
cc:     All Counsel of Record (via email only)

Case ID: 220302606
Control No.: 23110845

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| SHEMIKA JOHNSON, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : <br> : <br> : <br> : | APRIL TERM, 2022 <br> No. 220400162 |
| CATHERINE McMILLIAN, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : <br> : <br> : <br> : | APRIL TERM, 2022 <br> No. 220400140 |
| DAMEKA MOMENT, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : <br> : <br> : <br> : | APRIL TERM, 2022 <br> No. 220400142 |
| LOREN SANDERS, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : <br> : <br> : <br> : | APRIL TERM, 2022 <br> No. 220400153 |
| SAMAYA SHORT, et al., <br> Plaintiff, <br> v. | : <br> : <br> : | APRIL TERM, 2022 <br> No. 220400159 |

1

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>: |
| NATISHA THOMAS, et al.,<br>　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220400158<br>:<br>: |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220400156<br>:<br>:<br>: |
| ROBERT WHITFIELD, et al.,<br>　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>:　APRIL TERM, 2022<br>:　No. 220400145<br>:<br>: |
| MELVENIA WILLIAMS, et al.,<br>　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>:　APRIL TERM, 2022<br>:　No. 220400141<br>:<br>: |
| DELQUAN HINES, et al.,<br>　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>:　APRIL TERM, 2022<br>:　No. 220400136<br>:<br>: |
| IVYANN WITHERSPOON, et al.,<br>　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400138<br>:<br>: |

### NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE

TO:　James A. Young, Esquire
　　　Richard S. Margulies, Esquire
　　　Susan R. Engle, Esquire
　　　BURNS WHITE LLC
　　　1880 John F. Kennedy Boulevard, 10th FL

2

Case ID: 220302606
Control No.: 23110845

Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of the Trustees of the University of Pennsylvania d/b/a Penn Medicine (collectively, "Defendants") on November 1, 2023 at 10:00 a.m. at the office of Kline & Specter, P.C. at 1525 Locust Street, Philadelphia, PA 19102.

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

3

Case ID: 220302606
Control No.: 23110845

10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;

12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;

13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.

14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;

15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials

4

Case ID: 220302606
Control No.: 23110845

relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

5

Case ID: 220302606
Control No.: 23110845

**CERTIFICATE OF SERVICE**

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com |

Case ID: 220302606
Control No.: 23110845

| | |
|---|---|
| TROUTMAN PEPPER HAMILTON SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br>Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

7

Case ID: 220302606<br>Control No.: 23110845

| rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER,**

**P.C.** By: _____
Tobias L. Millrood
1525 Locust Street
Philadelphia, PA 19102
Phone: 215-772-1000
Fax: 215-772-1359
tobi.millrood@klinespecter.com

Dated: October 11, 2023          *Plaintiff's' Counsel*

8

FILED
03 NOV 2023 01:32 pm
Civil Administration
J. BOYD

# EXHIBIT D

Case ID: 220302606
Control No.: 23110845

| From: | Engle, Susan R. |
|---|---|
| To: | Amanda Bee; jayoung; rsmargulies |
| Cc: | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Helen Lawless; Philip Pasquarello; Jack O"Neill; Patrick Sidebotham; Donald J. Brooks Jr.; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; bscicchitano@eckertseamans.com; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann |
| Subject: | RE: NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| Date: | Monday, October 30, 2023 1:17:02 PM |
| Attachments: | image569267.PNG image5c0afc.PNG |

Good afternoon all,

We are in receipt corporate designee notices to our clients unilaterally scheduling depositions for November 1, 2023. We write to advise that we will not be able to produce corporate designees on behalf of our clients on that date, but we are working diligently to obtain the information requested via discovery and the corporate designee notices and will be in contact regarding promptly rescheduling these depositions. Please feel to reach out with any questions or concerns.

Best,

Susan Engle

## Susan R. Engle, Esq.
**Member**



1880 John F. Kennedy Boulevard, 10th Floor · Philadelphia, PA 19103
215-587-1669 (O) · 215-587-1699 (F)
srengle@burnswhite.com · burnswhite.com



**From:** Amanda Bee <Amanda.Bee@klinespecter.com>
**Sent:** Wednesday, October 11, 2023 3:34 PM
**To:** Young, James A. <jayoung@burnswhite.com>; Margulies, Richard S. <rsmargulies@burnswhite.com>; Engle, Susan R. <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Helen Lawless <Helen.Lawless@klinespecter.com>; Philip Pasquarello <Philip.Pasquarello@KlineSpecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Patrick Sidebotham

<Patrick.Sidebotham@klinespecter.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>;
ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com;
bscicchitano@eckertseamans.com; Jennifer V. Weachter <JWeachter@eckertseamans.com>;
Sean.Fahey <Sean.Fahey@Troutman.com>; kmurphy@tlgattorneys.com; holson@tlgattorneys.com;
cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann
<Carol.Lippmann@klinespecter.com>
**Subject:** NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn
Medicine

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate
Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

  Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

We intend to send this transmission (including any attachments) only to the
appropriate recipients. If you received this message in error, please notify the sender
by replying to this message and then delete it from your system. This transmission
may contain confidential or privileged information and may constitute non-public
information. Use, disclosure, dissemination, distribution, or reproduction of this
message by unintended recipients is not authorized and may be unlawful. Unless
otherwise stated by the sender, this transmission (including any attachments) does
not create or confirm a contract, agreement, offer or acceptance between the sender
and any recipient.

Case ID: 220302606
Control No.: 23110845