IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAYLOR, on her own behalf and as Parent and Natural Guardian of I.H., a Minor, | )<br>)<br>) |
| *Plaintiff*, | )<br>) |
| v. | ) Case No. 24-cv-11764 |
| MEAD JOHNSON & COMPANY, LLC; MEAD JOHNSON NUTRITION COMPANY; and ABBOTT LABORATORIES, | )<br>)<br>)<br>) |
| *Defendants*. | )<br>) |

**PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION TO REMAND**

This Court has disposed of this case before. It is one of six similar cases that Defendant Abbott Laboratories ("Abbott") improperly removed from Pennsylvania state court *more than two years ago* on the premise that the Hospital Defendants were fraudulently joined. The Court made quick work of this argument, admonishing Defendants not to claim fraudulent joinder on this specious theory. So what has changed? As a matter of bedrock jurisdictional principles, precisely nothing. The state trial court dismissed the Hospital Defendants over Plaintiff's objection, subsequently clarifying that Plaintiff could amend her complaint to beef up her factual allegations. Blackletter law confirms that a dismissal of a defendant over plaintiff's opposition does not convert what was a permissible joinder into a fraudulent one. It is particularly true when predicated on a state pleading standard that flexibly authorizes a plaintiff to replead.

The Court should remand for a second time for two independent reasons. *First*, Abbott's roundtrip to federal court comes more than *two and a half years* after this action began in Pennsylvania state court, and just one business day before the state court was to set it for trial in

May or June 2025. That is long after the one-year statutory deadline. And Abbott has no basis to circumvent the deadline by claiming "bad faith" when this Court has already rejected its fraudulent joinder argument in 2022.

*Second*, an involuntary dismissal of a non-diverse defendant does not support removal. Abbott knew that the so-called voluntary-involuntary doctrine applies here, as another federal court rejected the same "nearly frivolous" arguments Abbott makes now in its order remanding a case even before it could be transferred by the JPML. Dkt. 8-1 ("*Ennix Order*") at 6.

At root, what Abbott wants to argue is that Christina Taylor and her injured child I.H. did not really care about the negligent hospital policies that caused severe injuries, joining that defendant instead for the sole purpose of litigating this case in state court. Abbott presents no evidence of such intent; on the contrary, Plaintiff has been pursuing the case against the hospital, including by taking the hospital deposition. And *other* plaintiffs in this litigation who sued hospital defendants along with infant formula manufacturers like Abbott have proven through their actions that they fully intend to hold the hospitals responsible for their wrongdoing. For example, after the state court dismissed the hospital defendants without prejudice in *Ennix v. Abbott Laboratories*, Abbott removed the case to federal court, and the federal court swiftly remanded the case back to state court. *Id.* at 1–2, 9–10. Upon returning to state court, the *Ennix* plaintiff moved for leave to amend to replead the claims against the hospital defendants. Ex. 1. If the *Ennix* plaintiff sued the hospital defendants solely to avoid federal jurisdiction, she had no reason to try to replead them back in after remand.

Of course, whether and where to bring suit against a hospital is a complicated strategic decision that must account for multiple factors, including what forum such a suit would be heard in. The forum impacts the applicable law, the scope of discovery, the time to trial, what witnesses

2

could be compelled to testify, the standard for expert testimony, and a legion of other factors that influence how a suit will proceed, the damages at stake, and the likelihood of success. *Not considering these issues, including jurisdictional issues, would be a true disservice to a plaintiff.*

But fortunately, the Court need not (indeed, cannot) sift through the strategic decisions Ms. Taylor made to determine whether it has jurisdiction. As the Court already told Abbott two years ago, "fraudulent joinder analysis includes no inquiry into the plaintiff's subject intent or motive." *In re Abbott Labs. Preterm Infant Nutrition Prods. Liab. Litig.*, 2022 WL 3716277, at *4 (N.D. Ill. Aug. 29, 2022). "[N]o Seventh Circuit precedent recogniz[es] the significance of . . . evidence of intent," because "the dispositive question is the legal viability of the plaintiff's claim, without reference to subjective intent." *In re Abbott Labs. Preterm Infant Nutrition Prods. Liab. Litig.*, 2022 WL 3586150, at *4 (N.D. Ill. Aug. 22, 2022); *Majewski v. Dick's Sporting Goods, Inc.*, 2021 WL 76819, at *3 (N.D. Ill. Jan. 8, 2021) (fraudulent joinder "does not suggest malfeasance or call into question the subjective intent of the plaintiff"); *see also* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723.1 (4th ed. 2020).

Similarly, "it 'is not inherently bad faith to use strategy to defeat federal jurisdiction.'" *Herron v. Graco, Inc.*, 2016 WL 7239915, at *4 (S.D. Ill. Dec. 15, 2016) (quoting *Brazell v. Gen. Motors, LLC*, 2015 WL 1486932, at *4 (D.S.C. Mar. 30, 2015)). "[T]he plaintiff is the master of the complaint, and can plead her cause of action to avoid federal jurisdiction." *Lowdermild v. U.S. Bank Nat'l Ass'n,*, 479 F.3d 994, 999 (9th Cir. 2007), *overruling in part on other grounds recognized by Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013); *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1273 (D.N.M. 2014) ("There is nothing wrong with plaintiffs having a preference for state court, nor is there anything inherently invidious or 'bad faith' about using deliberate tactics to defeat federal jurisdiction.").

While suing a non-diverse defendant in part to defeat federal jurisdiction is entirely allowed under the law, what is *not* allowed is using the removal statute to avoid trial. The Pennsylvania state court repeatedly told Abbott that one of the six removed cases would be set for trial in May or June 2005. These six plaintiffs, including Ms. Taylor, sat for depositions and responded to discovery requests, knowing that the effort was the price of obtaining the access to justice promised by the judiciary. If anything smacks of bad faith, it is Abbott's decision to remove for a second time on the *same* baseless grounds as its first bite at the apple mere *days* before cases were to be set for trial. That contumacious abuse of the removal statute is precisely why Congress authorized this Court to award fees and costs. That remedy could not be more warranted.

As this Court has already held, Ms. Taylor pleaded colorable claims against the Hospital Defendants. That is dispositive of Abbott's fraudulent joinder arguments. The Court should grant Plaintiff's motion and remand this case to Pennsylvania state court.

**ARGUMENT**

**I.      Abbott's Removal Was Untimely.**

Abbott's removal is untimely under 28 U.S.C. § 1446(c)(1) because it occurred more than a year after this litigation began in state court. Alternatively, even if this case was removable, it is untimely under 28 U.S.C. § 1446(b) because it was filed more than 30 days after the original and amended complaints were filed. Under any scenario, remand is required.

**A. Abbott's Removal is Untimely under 28 U.S.C. § 1446(c)(1)**

Abbott's removal of this case more than two years after it began is barred because "[a] case may not be removed" on the basis of diversity jurisdiction "more than 1 year after the commencement of the action." 28 U.S.C. § 1446(c)(1). Abbott's only response is that the nontextual exception for bad faith applies because, it claims, the Hospital Defendants are being

4

sued only to defeat federal jurisdiction and that Plaintiff has no intention to actually litigate her claims against them. Opp. at 12–14.

While Abbott may claim it has the ability to read Plaintiff's mind, it offers not a shred of evidence that its self-serving assertion is correct. In fact, it is demonstrably false, and undersigned counsel, unlike Abbott, is in a position to know. As addressed below, Abbott cannot even prove fraudulent joinder, let alone bad faith.

Regardless, even accepting Abbott's wild conjecture, that is not close to enough to establish bad faith. "[T]he bad-faith exception to the one-year timing requirement codified in Section 1446(c)(1) is not the same thing as the fraudulent joinder doctrine." *McVey v. Anaplan, Inc.*, 2020 WL 5253853, at *3 (N.D. Ill. Sept. 3, 2020). "[I]t 'is not inherently bad faith to use strategy to defeat federal jurisdiction.'" *Herron v. Graco, Inc.*, 2016 WL 7239915, at *4 (S.D. Ill. Dec. 15, 2016) (quoting *Brazell v. Gen. Motors, LLC*, 2015 WL 1486932, at *4 (D.S.C. Mar. 30, 2015)); *Lowdermild v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007); *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1273 (D.N.M. 2014).

When Ms. Taylor was deciding to bring this case in consultation with her counsel, she was fully entitled to consider which potential defendants to sue, how that choice would impact the forum, and how the forum would affect the probability she could obtain a jury trial. For example, while Plaintiff believes that the science is overwhelmingly supportive of causation in this litigation, plaintiffs are allowed to consider whether a court will apply the *Frye* standard (as they do in Pennsylvania state court) or the Rule 702 standard (as they do in federal court). It is nothing approaching bad faith to prefer one to the other. Similarly, plaintiffs are entitled to weigh practical and economic considerations, like location of experts, time to trial, and the cost of trial. Consulting a client on the pros and cons of suing certain parties and how it will impact these factors is honoring

fiduciary duties, not bad faith. Without even a hint of bad faith to point to, Abbott's removal is untimely under Section 1446(c)(1) and the case must be remanded.

What's more, Abbott does not even dispute that Plaintiff engaged in discovery with the Hospital Defendants, deposed their representative, and opposed their dismissal. That alone is sufficient to preclude a finding of bad faith. *See Henning v. Barranco*, 2021 WL 5578767, at *4 (N.D. Ill. Nov. 30, 2021). Abbott may believe that Plaintiff should have litigated differently or asked different questions at the deposition of the Hospital Defendants' corporate representative, but it should be beyond peradventure that this Court's jurisdiction does not turn on whether Plaintiff's counsel litigated against a different defendant to Abbott's satisfaction. The one case Abbott musters is not to the contrary. *In re Asbestos Prods. Liab. Litig.*, 2016 WL 42464193, at *3 (E.D. Pa. Aug. 11, 2016) (Plaintiff "did not seek any real discovery" and "quickly canceled" deposition of defendant's "corporate designee[]" after noticing it). This case should be promptly remanded so Ms. Taylor can continue to push her case to trial in her preferred forum.

### B. Abbott's Removal is Untimely under 28 U.S.C. § 1446(b)

Abbott's removal is separately untimely because—even if Abbott could prove fraudulent joinder or bad faith (which it cannot)—removal occurred more than 30 days after it was first ascertainable that this case was removable. 28 U.S.C. § 1446(b)(1). The original complaint was filed in March 2022 and, if the Hospital Defendants were fraudulently joined prior to their dismissal, then they necessarily must have also been fraudulently joined when Plaintiff's first complaint was filed. Abbott's removal in October 2024 occurred long after the 30-day deadline passed.

Abbott's only response is to point to "the second amended complaint." Opp. at 11; *id.* at 10 ("Abbott's position is that the hospital defendants were fraudulently joined in plaintiff's most *recent* complaint."); *id.* at 11 ("[T]he relevant allegations are those in the second amended

6

complaint. Those 'scant' allegations . . . demonstrate that plaintiff's joinder of the hospitals was fraudulent." (citation omitted)). Abbott does not come close to showing any legal differences between the pleadings to show that the amended one revealed a fraudulent joinder while the first one showed permissible joinder. But even accepting Abbott's position, removal was still untimely because the second amended complaint was filed in July 2024. Dkt. 1-9 at 167; *see Poulos*, 959 F.2d at 73 n.4.

Because Abbott does not actually focus on any differences between the pleadings, then either the initial pleading that the Court remanded or the most recent complaint were actually removable when they were filed, and the deadline for removal is long past in either scenario. *See Craig & Landreth, Inc. v. Protective Prop. & Cas. Co.*, 2024 WL 379821, at *4 (S.D. Ind. Feb. 1, 2024) (where fraudulent joinder was ascertainable from initial complaint, "Defendants' 30-day period in which to timely file a notice of removal and assert the fraudulent joinder argument began ticking when they received a copy of the initial complaint"); *Lenzenhuber v. Misonix, Inc.*, 2023 WL 3250723, at *6 (E.D. Mo. May 4, 2023) ("If the defendant could have ascertained fraudulent joinder from the face of the plaintiff's complaint, the defendant must remove the cause within 30 days of receipt of the initial pleading.").

**II.     The Voluntary/Involuntary Rule Applies Because the Hospital Defendants Were Involuntarily Dismissed.**

Under binding precedent, Abbott's removal is barred because a suit becomes removable "only if the plaintiff *voluntarily* dismisse[s] a non-diverse defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992); *Maiden v. Liberty Mut. Ins. Co.*, 2016 WL 3227984, at *5 (C.D. Ill. June 3, 2016) (similar). Here, the Pennsylvania state court granted the Hospital Defendants motion to dismiss over Plaintiff's opposition, so the dismissal was not voluntary. The

7

voluntary/involuntary rule therefore requires remand. *Maiden*, 2016 WL 3227984, at *6; *Ennix Order* at 5–6.

Abbott's response is frivolous. It argues that the dismissal really came with Plaintiff's acquiescence because she did not immediately move for reconsideration or file an *interlocutory* appeal. Opp. at 6. Abbott's novel argument has no basis in law. It hinges entirely on a Seventh Circuit footnote discussing—without adopting—another footnote in a Second Circuit case. *Poulos*, 952 F.2d 69, 72 n.3 (7th Cir. 1992) (discussing *Quinn v. Aetna Life & Cas. Co.*, 616 F.3d 37, 40 n.2 (2d Cir. 1980)). All the Second Circuit footnote says is that the voluntary/involuntary rule does not bar removal where "no appeal could occur" from the dismissal of the diversity destroying defendant. It says nothing impelling plaintiff to seek immediate, extraordinary relief such as an interlocutory appeal or a motion for reconsideration. *Quinn*, 616 F.3d at 40 n.2 (observing that voluntary/involuntary rule prohibits removal where "a party might secure a reversal on appeal in state court of the non-diverse party's dismissal").

The only other case cited by Abbott reaffirms the principle: the voluntary/involuntary rule does not apply if the nondiverse defendant's "dismissal . . . was final" and could not be appealed. *Varicose Sols., LLC v. Vascular Sols., Inc.*, 2014 WL 115408, at *3 (N.D. Ill. Mar. 12, 2014). This inapplicable exception to the voluntary/involuntary rule has not been embraced by the Seventh Circuit, and should not be adopted by this Court because the removal statute "should be strictly construed, and . . . any doubts regarding removability should be resolved against accepting removal jurisdiction." *Campbell v. Bayou Steel Corp.*, 338 F. Supp. 2d 896, 902 (N.D. Ill. 2004) (Pallmeyer, J.); *see First Merchs. Trust Co. v. Wal-Mart Stores East, LP*, 630 F. Supp. 2d 964, 967 (S.D. Ind. 2008) (rejecting the exception because "[i]f the premise for allowing removal is that the state court's dismissal is final, the challenge then becomes determining when it is truly final.

8

Trying to determine when time to appeal a state court decision has truly and finally expired can be difficult[.]").

Regardless, even if this Court accepted Abbott's novel legal argument, the voluntary/involuntary rule applies because Plaintiff can still appeal the interlocutory dismissal of the Hospital Defendants after final judgment. In Pennsylvania, as in federal court, "failure to file an appeal of an interlocutory order does not waive any objections to the interlocutory order." Pa. R. Civ. P. 311(g)(1). Even Abbott acknowledges that the state court's action allowing Plaintiff to replead her claims was done, at the very least, to "preserve [Plaintiff's] right to appeal." Opp. at 11. Thus, under every precedent cited by Abbott, the voluntary/involuntary rule applies and remand must be granted. *Poulos*, 959 F.2d at 72 (voluntary/involuntary rule is meant to avoid "yo-yo effect" where "the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party"); *see also Vogel v. Merck & Co., Inc.*, 476 F. Supp. 2d 996, 1003–04 (S.D. Ill. 2007) ("[T]he voluntary-involuntary rule . . . ensur[es] that a federal court does not exercise jurisdiction in a removed case on the basis of an involuntary dismissal . . . that is susceptible to reversal on appeal[.]").

Abbott's only other basis to avoid the voluntary/involuntary rule is that the Hospital Defendants were supposedly fraudulently joined. Opp. at 7–11. It is telling that the state *trial court* did not say the claims against the Hospital Defendants were frivolous or devoid of merit. Regardless, Abbott's argument conflates different doctrines. Fraudulent joinder is about whether a defendant has been fraudulently joined from inception. This Court rightly rejected that argument over two years ago. *See In re Abbott Labs., et al., Preterm Infant Nutrition Prods. Liab. Litig.*, 2022 WL 7501283, at *4 (N.D. Ill. Oct. 12, 2022). The voluntary/involuntary doctrine is about protecting against precisely what Abbott is attempting here: taking an interlocutory, appealable

9

dismissal of a diversity destroying defendant over plaintiff's objection as a license to remove the case to federal court. Said bluntly: Plaintiff respectfully believes the state trial court's dismissal was erroneous. Nothing in the dismissal order suggests Plaintiff's position is frivolous or that the original joinder was fraudulent. That can be the beginning and the end of the jurisdictional inquiry.[1] *Durham v. Shiley Inc.*, 1994 WL 583351, at *3 (N.D. Ill. Oct. 21, 1994).

Even if the Court considered the state court's dismissal, that does not establish fraudulent joinder because the motion to dismiss standard is *higher* than the fraudulent joinder standard, *In re Abbott Labs. Preterm Infant Nutrition Prods. Liab. Litig.*, 2022 WL 3716277, at *4 (N.D. Ill. Aug. 29, 2022), and a dismissal for pleading deficiencies that can be corrected does not establish that a plaintiff's claims have no chance of success, *Korein Tillery, LLC v. Advanced Analytical Consulting Grp., Inc.*, 2017 WL 4005926, at *4 (S.D. Ill. Sept. 12, 2017).

With nothing new about the underlying facts or law to rely on, Abbott is left to try and sift through differences in wording in Plaintiff's First and Second Amended Complaints. *See* Opp. at 8–9. But the trial court's dismissal of the claims against the Hospital Defendants was not a determination on the merits nor did it foreclose the possibility of pleading claims against the Hospital Defendants,[2] and this Court already held that the same claims could succeed. *In re Abbott*

---

[1] Abbott incorrectly argues that a court looks to the time of removal to determine fraudulent joinder instead of the time of joinder, Opp. at 10–11, by citing to cases that involve determination of the amount in controversy or the operative complaint for removal jurisdiction. *See e.g.*, *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (1993) ("bears the burden of showing that the amount in controversy is sufficient"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 870 F. Supp. 2d 587, 592–93 (S.D. Ill. 2012) ("removal jurisdiction is determined at the time of removal and is not affected by post-removal events, including amendments to the pleadings"). Such cases have no relevance here.

[2] Abbott argues that the dismissal of the Hospital Defendants was with prejudice—which would still be subject to reconsideration or appeal—because the trial court corrected its dismissal order after removal. Opp. at 10–11. There is a substantial difference between entering a new order and

*Labs. Preterm Infant Nutrition Prods. Liab. Litig.*, 2022 WL 3586150, at *8 (N.D. Ill. Aug. 22, 2022) ("The court cannot say Plaintiffs have no chance of success on this claim."). Further, fraudulent joinder focuses on whether *claims* have "no chance of success"—not whether a particular complaint's *allegations* are sufficient. *Schumacher v. Sterigenics U.S., LLC*, 394 F. Supp. 3d 837, 847 (N.D. Ill. 2019) (quoting *Poulos*, 959 F.2d at 73). Supposed pleading deficiencies are not a basis to find fraudulent joinder. *Hardaway v. Merck & Co.*, 2006 WL 2349965, at *2 (S.D. Ill. Aug. 11, 2006) (granting remand motion where defendant argued that "Plaintiffs have failed adequately to plead their claims" against non-diverse defendant); *Korein Tillery*, 2017 WL 4005926, at *4 (even though defendant's argument "may be enough to support dismissal of the complaint—without prejudice and with leave to replead—this pleading shortcoming does not show by clear and convincing evidence that Korein Tillery cannot establish a fraud cause of action" as "a court is likely to allow Korein Tillery leave to replead"). The voluntary/involuntary rules therefore applies and requires remand.

## III.   Plaintiff is Entitled to Her Fees and Costs in Seeking Remand.

Abbott had no objectively reasonable basis for this removal. This removal is improper for a litany of independent reasons.

Yet Abbott removed this case and five others for a second time on the eve of obtaining a trial setting. The reason is not far to seek. Abbott seeks to slow Plaintiff's access to justice. Again. Plaintiff should be awarded her fees and costs associated with this motion. Absent that authorized relief, Abbott will have zero disincentive to continue its dilatory removals. A game where Abbott achieves its objectives even after it inevitably loses Plaintiff's motion to remand is one it is more

---

correcting a mistake in an order that was made before removal. Abbott should not reap the benefit of a typographical error that was corrected after removal. But even if the state court lacked jurisdiction to correct an error in a pre-removal order, the attempt to correct the order indicates that Plaintiff will be able to replead her claims against the Hospital Defendants on remand.

11

than content to continue playing. But litigation is not a game to Ms. Taylor and I.H., and Abbott's shameful maneuver robbing them of a trial date should not go unpunished.

## CONCLUSION

Plaintiff respectfully requests that the Court remand this case to Pennsylvania state court and award Plaintiff her attorneys' fees and costs.

Dated: December 23, 2024

Respectfully submitted,

/s/ *Ben Whiting*
Ashley Keller (ARDC # 6300171)
Ben Whiting (ARDC # 6307321)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Tel: (312) 741-5220
ack@kellerpostman.com
ben.whiting@kellerpostman.com

Tobias L. Millrood
Elizabeth A. Crawford
Timothy A. Burke
John P. O'Neill
**KLINE & SPECTER, P.C.**
1525 Locust St.
Philadelphia, PA 19102
Tel: (215) 772-1000
tobi.millrood@klinespecter.com
elizabeth.crawford@klinespecter.com
timothy.burke@klinespecter.com
jack.oneill@klinespecter.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on December 23, 2024, the foregoing document was filed with the Court and served on all counsel of record via the Court's CM/ECF system.

                                                    /s/ *Ben Whiting*
                                                    Ben Whiting